## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and<br>SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Civil Action No.: 1:23-cv-10511-WGY |

## [PROPOSED] SCHEDULING AND CASE MANAGEMENT ORDER

1.    **Case Schedule**.  Unless otherwise specified, days will be computed according to Federal Rule of Civil Procedure 6(a).  The Parties agree that no motions to dismiss, motions for judgment on the pleadings, or motions for summary judgment will be filed.  The Court hereby adopts the following schedule:

| Parties' Joint Statement on Case Schedule |
|---|
| The Parties are largely in agreement with respect to the proposed case schedule.<br><br>However, for the small number of disputed issues that still remain, the Parties have included<br><br>below the proposed case schedule a concise explanation of their respective positions. |

| Parties' Proposed Schedule | |
|---|---|
| **Event** | **Date** |
| Fact discovery begins | March 17, 2023 |
| Date by which any other parties shall be joined or the pleadings amended | April 4, 2023 |
| Parties serve preliminary trial fact witness list and list of experts that they intend to call | May 1, 2023 |
| Close of fact discovery | June 28, 2023 |
| Parties exchange final trial witness lists (including experts) | June 30, 2023 |

| | |
|---|---|
| Close of supplemental fact discovery (see Paragraph 9) | July 31, 2023 |
| Deadline to file Summary Judgment Motions[1] | August 1, 2023 |
| Parties exchange initial deposition designations | August 3, 2023 |
| Parties exchange deposition counter-designations | August 10, 2023 |
| Parties exchange initial exhibit lists | August 17, 2023 |
| Parties to meet and confer on confidentiality procedures for trial evidence | August 18, 2023 |
| Parties submit proposed order (or competing orders) concerning procedures for treatment of competitively sensitive information at trial | August 21, 2023 |
| Each Party informs each non-party of all documents produced by that non-party that are on that Party's exhibit list and all depositions of that non-party that have been designated by any Party | August 22, 2023 |
| Parties exchange draft sections of pretrial memorandum, including objections (based on evidentiary issues and confidentiality) to exhibits and deposition designations | September 1, 2023 |
| Parties exchange revised exhibit list at noon ET | September 8, 2023 |
| Parties file any motions *in limine* | September 11, 2023 |
| Joint Pretrial Memorandum to be filed | September 15, 2023 |
| Oppositions to any motions *in limine* | September 20, 2023 |
| Replies to any oppositions to motions *in limine* | September 26, 2023 |
| Trial Briefs pursuant to L.R. 16.5(f) | October 9, 2023 |
| Parties submit final trial exhibits to Court | October 16, 2023 |
| Trial begins | October 16, 2023 |

| **Plaintiffs' Proposed Expert Discovery Schedule** | |
|---|---|
| ***Plaintiffs'*** Initial Expert Report(s) | July 6, 2023 (backup materials 1 day later) |
| ***Defendants'*** Rebuttal Expert Report(s) to Initial Expert Report(s) | August 3, 2023 (backup materials 1 day later) |
| ***Plaintiffs'*** Reply Expert Report(s) to Rebuttal Expert Report(s) | August 25, 2023 (backup materials 1 day later) |

| **Defendants' Proposed Expert Discovery Schedule** | |
|---|---|
| ***Parties'*** Initial Expert Report(s) | July 6, 2023 (backup materials 1 day later) |
| ***Parties'*** Rebuttal Expert Report(s) to Initial Expert Report(s) | August 10, 2023 (backup materials 1 day later) |
| No Reply Reports | N/A |

---

[1] All parties have agreed to waive motions for summary judgment.

| Close of expert discovery[2] | September 8, 2023 |
| --- | --- |

**Plaintiffs' Position on Expert Discovery Schedule**

**Sequential expert reports:** Plaintiffs' proposed sequence of expert reports—Plaintiffs' report(s), then Defendants' rebuttal(s), then Plaintiffs' reply or replies—is appropriate because it reflects Plaintiffs' ultimate burden to prove that Defendants' proposed merger is unlawful. Plaintiffs' proposed report sequence follows the case in this District challenging JetBlue's Northeast Alliance with American Airlines, *see* ECF 76 at 2, *United States v. American Airlines Grp., Inc. and JetBlue Airways Corp.*, No. 21-cv-11558-LTS (D. Mass.), and scheduling orders in many recent merger cases, *see, e.g.*, ECF 46 at 2, *United States v. ASSA ABLOY AB*, No. 22-cv-2791 (D.D.C.); ECF 42 at 3-4, *United States v. UnitedHealth Grp. Inc.*, No. 22-cv-481 (D.D.C.); ECF 70 at 7, *United States v. U.S. Sugar Corp.*, No. 21-cv-1644 (D. Del.); *see also* ECF 71 at 2, *United States v. U.S. Airways Grp., Inc.*, No. 13-cv-1236 (D.D.C.) (setting deadlines for plaintiffs', then defendants', then "supplemental and/or rebuttal" reports in airline merger case).

**Reply report(s):** Defendants' proposal to limit expert reports to two simultaneous rounds would frustrate the purpose of expert discovery by preventing the experts from fully joining issue on areas of dispute—under Defendants' proposed schedule, Defendants' expert(s) will file opening report(s) without knowing what they are disputing, and Plaintiffs' expert(s) will never be able to respond to critiques of their analysis. Defendants' proposed schedule also leaves 21 days of expert discovery after rebuttal report(s). This time would better be used to sharpen the issues with a reply.

As this Court did in *Ford v. Takeda Pharm. U.S.A., Inc.*, the Court should grant Plaintiffs'

| Close of expert discovery[2] | August 31, 2023 |
| --- | --- |

**Defendants' Position on Expert Discovery Schedule**

**Simultaneous exchange of expert reports:** Defendants propose to have two simultaneous exchanges of expert reports (an opening and rebuttal, with the opening by both sides being full initial reports), rather than three rounds of non-simultaneous disclosures as Plaintiffs propose. Defendants' proposal would:

a. make the best use of time to conduct expert discovery, which is significant in this expedited merger case;
b. allow each side two reports, thus ensuring Defendants and Plaintiffs have an equal opportunity to express all opinions and respond to the other side's expert(s), and
c. eliminate the frequent dispute over whether Plaintiffs' reply expert report has "new" analyses, thus entitling Defendants to a rebuttal report.

Defendants' proposal is consistent with Fed. R. Civ. P. 26(a)(2)(D) and simultaneous exchanges that occurred in merger and airline matters involving DOJ, as well as in matters before this Court. *See, e.g., U.S. v. Bertelsmann SE & Co. KGaA et al.*, No. 21-2886-FYP (D.D.C.), ECF No. 53; *U.S. v. United Cont'l Holdings, Inc. et al.*, No. 2:15-cv-07992-WHW-CLW (D.N.J.), ECF No. 24; *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 1:19-cv-12533-WGY (D. Mass.), ECF No. 39.

Plaintiffs' assertion that Defendants' proposal would deprive Plaintiffs' expert(s) of any opportunity to submit a reply underscores why the simultaneous exchange proposed by Defendants is superior. Defendants' proposal

---

[2] All parties must make their experts available for deposition by this date for the close of expert discovery.

request for expert reply report(s) in light of Plaintiffs' burden of proof.  ECF 62 at 9-10, No. 21-cv-10090-WGY (D. Mass.).  Other cases cited by Defendants are unavailing to them because the CMO in *Bertelsmann* provided for reply reports, *see* ECF 69 at 2, No. 21-cv-2886 (D.D.C.), and in *Bio-Rad*, which involved patent claims and antitrust counterclaims, the parties agreed to "[s]upplemental . . . [r]eports."  ECF 230 at 1-2, No. 19-cv-12533-WGY (D. Mass.).

**Close of expert discovery:**  Plaintiffs ask for a schedule that allows for development of this case with the benefit of full expert discovery. The schedule is sufficiently expedited and appropriately considers the observance of national holidays.  Defendants, whose previous request for trial a week after Labor Day anticipated the time exigencies of this case, will be able to conduct depositions during the Aug. 26-Sept. 8 period.

provides both sides an equal opportunity to respond to the other side's expert(s).  Indeed, if Plaintiffs' proposal is accepted, Defendants would be in the very place Plaintiffs now complain is unfair (i.e., where Plaintiffs submit a reply to which no response is allowed). Finally, Plaintiffs' protests about not being able to submit a reply could be addressed by having three rounds of simultaneous submissions, a proposal previously made by Defendants that Plaintiffs rejected.

The *Ford* case cited by Plaintiffs is inapposite because no party was seeking simultaneous expert reports, and defendants were trying to limit plaintiffs to a single report.

**Close of expert discovery**:  Because Defendants propose only two rounds of expert reports (rather than three), the Parties can complete expert depositions and any remaining expert discovery in advance of the Labor Day holiday, rather than the week of the holiday. Under Defendants' proposal, the Parties would have 21 days from the submission of the rebuttal reports, until August 31, 2023, to conduct expert depositions and complete expert discovery.  In addition, Defendants' proposed schedule would provide the parties with sufficient time to account for expert depositions when they submit revised exhibit lists (September 8), *in limine* motions (September 11), and the Joint Pre-Trial Memorandum (September 15).

| Plaintiffs' Proposed Date Certain for Post-Trial Briefing and Oral Closing Arguments | |
| --- | --- |
| Post-trial proposed findings of fact and conclusions of law to be filed | To be set at the final pre-trial conference; alternatively, on or after December 1, 2023 |
| Oral closing arguments | Next business day following the close of evidence |

| Defendants' Proposed Date Certain for Post-Trial Briefing and Oral Closing Arguments | |
| --- | --- |
| Post-trial proposed findings of fact and conclusions of law to be filed | November 17, 2023 |
| Oral closing arguments | November 20, 2023 or at the Court's earliest |

|  |  | convenience after submission of post-trial proposed findings of fact and conclusions of law |
| --- | --- | --- |
| **Plaintiffs' Position on Date Certain for Post-Trial Briefing and Oral Closing Arguments** | | **Defendants' Position on Date Certain for Post-Trial Briefing and Oral Closing Arguments** |
| Because pre-trial submissions will likely clarify the key factual and legal issues for resolution by the Court, Plaintiffs propose to defer setting the schedule for post-trial submissions until the final pre-trial conference.  If the Court, however, prefers to set a deadline for proposed findings of fact and conclusions of law now, Plaintiffs respectfully request that such deadline be set for on or after December 1, 2023.  The "outside date" chosen by Defendants for consummation of their merger is not until July 24, 2024. Plaintiffs' proposal takes into account the need to submit briefing and related materials to the Court as soon as possible, but balances that against the need to provide the parties— including eight Plaintiffs—sufficient time to review, synthesize, and summarize effectively what will be a lengthy transcript and voluminous record.  Plaintiffs defer to the Court regarding the date of closing arguments, but would prefer it be scheduled the first business day following the presentation of evidence or as soon thereafter as the Court's schedule permits. | | This is an expedited merger matter where the parties' and public interest favor a decision by the end of the year or as soon as practicable. To help facilitate a speedy resolution and allow the parties and the Court to plan ahead, everyone benefits from a fully set schedule. Thus, Defendants seek to include a date for post-trial submissions and closing arguments. Defendants also respectfully submit that conducting closing arguments after the parties' post-trial submissions is beneficial because the Court will have all of the factual and legal disputes before it in written form at the time the parties are making their closing arguments.<br><br>The so-called "outside date," which is the day by which the Proposed Transaction must be closed to avoid termination of the agreement, does not provide a reason to delay an otherwise expedited case schedule.  To the extent the "outside date" has any relevance, it supports Defendants' proposal for prompt post-trial briefing and argument, which will allow the Court sufficient time to render a decision and still leave time for appeal.  In addition, the Department of Transportation (DOT) is proposing to conduct a separate and wholly unprecedented additional review of the merger to be commenced after a final decision is rendered in this case.  While Defendants dispute the DOT's basis and proposed timing for such a proceeding, it nevertheless creates the potential for additional proceedings and delay after the Court renders a judgment here.<br><br>Moreover, it is not necessary to wait for a trial to "clarify the key factual and legal issues" before setting post-trial deadlines, as Plaintiffs |

claim.  Trial will provide no clarification on the schedule—the only issue in dispute.  In any event, the DOJ conducted a year-long investigation, under a frequently litigated statute, and served a complaint identifying the relevant factual and legal issues.  There is no reason to not set all of the deadlines now, other than to try to create delay.

2.     **Service of Complaint.**  Counsel for Defendants, acting on behalf of Defendants, have accepted service of the Complaint and have waived formal service of a summons.

3.     **Discovery Conference.**  The Parties' prior consultations, submissions to the Court on March 20, 2023, and submission of this [Proposed] Order satisfy the Parties' obligations under Federal Rule of Civil Procedure 26(f) and Local Rule 16.1(b).

4.     **Completion of Proposed Transaction.**  Defendants have agreed that they will not close, consummate, or otherwise complete the Proposed Transaction until 12:01 a.m. on the 10th day following the entry of the judgment by the Court in this matter, and only if the Court enters an appealable order that does not prohibit consummation of the transaction.  For purposes of this Order, "Proposed Transaction" means the proposed acquisition of Spirit Airlines, Inc. by JetBlue Airways Corporation.

5.     **Jurisdiction and Venue.**  Defendants have consented to personal jurisdiction and venue in this Court.

6.     **Discovery of Confidential Information.**  The Court has entered a protective order governing the discovery and production of confidential information in this action (ECF No. 66) (the "Protective Order").  A copy of the Protective Order shall be included with any subpoenas served on non-parties.

7.     **Attorney Communications.**  The Parties need not preserve nor produce in discovery the following categories of documents: (a) documents sent solely between outside

counsel for Defendants (or persons employed by or acting on behalf of such counsel) or solely between counsel for Plaintiffs (or persons employed by the U.S. Department of Justice or Plaintiff States' Offices of the Attorney General); and (b) documents that were not directly or indirectly furnished to any non-Party, such as internal memoranda, authored by Defendants' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for Plaintiffs (or persons employed by the U.S. Department of Justice or Plaintiff States' Offices of the Attorney General).

8.      **Initial Disclosures.**  The Parties, having agreed to a mutual exchange of investigative materials, have therefore agreed to waive the exchange of disclosures under Federal Rule of Civil Procedure 26(a)(1).

9.      **Timely Service of Fact Discovery and Supplemental Discovery.**  All discovery, including discovery served on non-parties, must be served in time to permit completion of responses by the close of fact discovery.  However, notwithstanding any other provision of this Order, each Party may issue supplemental discovery requests, including document requests for custodial files and deposition notices, related to any person identified on a Party's final trial witness list who was not identified on that Party's preliminary trial witness list within 7 days of receipt of final trial witnesses lists; provided, however, that (i) no additional depositions may be sought from any person who was previously deposed during this action (not including depositions pursuant to Civil Investigative Demands) and (ii) no additional document requests may be served on any person that was previously a custodian.  The deadline for supplemental discovery related to new witnesses in Paragraph 1 shall apply; provided, however, that the Parties may agree to reasonable modifications to that deadline.  Notwithstanding any other deadlines in this Order, a Party may take limited discovery related to the authenticity of any

document on that Party's exhibit list to which the opposing side objects on the ground that such document is inauthentic.

10.    **Written Discovery on Parties.**

(a)    **Document Requests.**  There is no limit on the number of requests for the production of documents that may be served by the Parties.  The Parties must serve any objections to requests for productions of documents within 7 business days after the requests are served.  Within 3 business days of service of any objections, the Parties must meet and confer to attempt to resolve in good faith any objections and to agree on custodians to be searched.  The Parties must make good-faith efforts to make rolling productions of responsive productions (to the extent not subject to any objections or custodian issues that have not been resolved) no later than 14 days after service of the request for production.  The Parties must make good-faith efforts to substantially complete production of documents, data, or data compilations no later than 28 days after service of the requests for production and must make good-faith efforts to complete production within 40 days after service of the requests for production, unless otherwise extended by agreement between the Parties.  In accordance with Local Rule 26.1(c), Plaintiffs collectively may serve two separate sets of requests for production on each Defendant, and Defendants collectively may serve two sets of requests for the production on each Plaintiff.  Given the expedited schedule for fact discovery, any second set of requests for production must be served no later than 30 days before the close of fact discovery and must be limited to (a) requests seeking information or documents that such Party did not reasonably know to request in a first set of requests for production (e.g., related to information discovered during the course of a deposition or public announcements by a Party), or (b) "go get" requests for production not calling for custodial review.  Notwithstanding Local Rule 26.1(c), if any Party seeks additional

documents or information following a second set of requests for production based on newly obtained information that such Party could not have reasonably known to request prior to service of the second set of requests for production, the Parties shall meet-and-confer in good faith.

(b) **Data Requests.** In response to any requests to which data or data compilations are responsive, the Parties will meet and confer in good faith regarding the requests and, as needed, will seek prompt assistance from employees knowledgeable about the content, storage, and production of data.

(c) **Interrogatories.** This Order expressly modifies Local Rule 26.1(c) such that Interrogatories are limited to 10 by Plaintiffs collectively to Defendants and to 10 by Defendants collectively to Plaintiffs. Subparts shall be governed by Local Rule 26.1(c). The Parties must serve any objections to interrogatories within 7 business days after the interrogatories are served. Within 3 business days of service of any objections, the Parties must meet and confer to attempt to resolve the objections. Parties shall fully respond to interrogatories no later than 28 days after service of the interrogatories.

(d) **Requests for Admission.** This Order expressly modifies Local Rule 26.1(c) such that Requests for Admission are limited to 10 by Plaintiffs collectively to Defendants and to 10 by Defendants collectively to Plaintiffs. Subparts shall be governed by the provision of Local Rule 26.1(c) concerning interrogatory subparts. The Parties must serve any objections to requests for admission within 7 business days after the requests are served. Within 3 business days of service of any objections, the Parties must meet and confer to attempt to resolve the objections. Parties shall make good-faith efforts to fully respond to requests for admission no later than 28 days after service of the requests.

11.   **Document Subpoenas to Non-Parties.**  The Parties will in good faith cooperate with each other with regard to any discovery to non-parties in an effort to minimize the burden on non-parties.  Each Party must serve a copy of any subpoena to a non-party on the other Parties at the same time as the subpoena is served on the non-party.  Every subpoena to a non-party shall include a cover letter requesting that (a) the non-party Bates-stamp each document with a production number and any applicable confidentiality designation prior to producing it; and (b) the non-party provide to the other Parties copies of all productions at the same time as they are produced to the requesting Party.  If a non-party fails to provide copies of productions to the other Parties, the requesting Party shall provide such copies to the other Parties, in the format the productions were received by the requesting Party, within 3 business days of the requesting Party receiving such materials from the non-party.  In addition, if a non-Party produces documents or electronically stored information that are not Bates-stamped, the Party receiving those materials shall request that the non-party Bates-stamp all documents or electronically stored information and produce such Bates-stamped copies to all Parties simultaneously.  Within 2 business days of any agreement with a non-party, each Party must provide the other Parties with a copy of any written communication (including email) with any non-party concerning any modifications, extensions, or other negotiations concerning the non-party's response to the subpoena, or in the case of an oral modification, a written record summarizing the oral modification.

| Plaintiffs' Proposal | Defendants' Proposed Additional Language in Paragraph 11 Regarding Disputes with Subpoena Recipients |
|---|---|
| [Strike Defendants' proposed additional language.] | The Parties shall use best efforts to ensure that this Court handles all third-party discovery disputes. This will streamline the litigation, avoid delays in other jurisdictions, offer predictability and consistency in discovery rulings, and help inform the Court |

|  | on the relevant issues. As a result, where any Party seeks the Court's intervention in a discovery dispute involving a third party, it shall join the third party in communications with the Court to set a hearing. Where a third party files a discovery motion in a different court, Plaintiffs or Defendants shall inform that court of this Order and seek transfer here. |
|---|---|
| **Plaintiffs' Position** | **Defendants' Position** |
| Defendants' proposal for all disputes concerning third-party subpoenas served on non-parties in other districts to be heard in this District is contrary to the Federal Rules of Civil Procedure, which appropriately balance non-parties' interests and address non-party disputes on a case-by-case basis.  Under Rule 45, motions to compel and motions to quash or modify a subpoena are to be heard in "the court for the district where compliance is required."  Fed. R. Civ. P. 45(d).  The Court should not adopt Defendants' proposal to categorically undermine this rule, especially as any court presiding over a non-party dispute can be advised of the discovery schedule.  Non-party discovery disputes should proceed as envisioned by Rule 45 unless "the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  In the absence of a concrete dispute with a non-party (like the disputes that arose in the FTC/Meta litigation before the order on which Defendants rely), Defendants cannot satisfy the "exceptional circumstances" standard. Defendants' proposal is also flawed because it seeks to bind non-parties, impacts how other courts in other districts construe their jurisdiction, and conscripts Plaintiffs into supporting hypothetical future motions to transfer. | Defendants have served over 30 third-party subpoenas for documents on entities located in twenty different states or territories. Plaintiffs have also started serving document subpoenas on non-parties (thus far on a subset of the entities whom Defendants have served). The parties have agreed that fact discovery would close on June 28, 2023—which leaves twelve weeks for completing meet and confers, producing documents, engaging in any motion practice regarding the document subpoenas, and deposing some of the third parties. Thus, having a streamlined subpoena enforcement process is important; and having consistent subpoena enforcement under this Court's supervision will ensure the Court is presented with the evidence that will help in the decision on the merits.  This type of order is consistent with Rule 45. In fact, it is the same order Judge Boasberg recently entered in the FTC's antitrust lawsuit against Meta pending in the United States District Court for the District of Columbia. Based on the proceedings in the Meta case, it appears that this order was both efficient and effective in reducing the number of disputes with non-parties. Of the dozens of subpoenas issued in that case, just a handful have resulted in motion practice. Further, this order would not prejudice Plaintiffs in any way; non-party disputes would be handled efficiently, consistently, and in Plaintiffs' chosen venue.

Following a case-by-case basis, as Plaintiffs propose, will only lead to delay.  Moreover, |

| | their quotation of the Rules is inapposite.  The Rules expressly allow for one Court to hear all non-party subpoena disputes, and that is all that Defendants request.  So Plaintiffs' claim that they would bind non-parties and impact how other courts in other districts construe their jurisdiction, simply disagrees with the Rule.  Finally, Plaintiffs' move to make subpoena enforcement more difficult prejudices Defendants.  Over its yearlong investigation, DOJ took significant non-party discovery; Defendants have taken none.  Thus, making subpoena enforcement will have significant detrimental impact on Defendants, and no impact on DOJ.  Simply stated, DOJ already took its non-party discovery.  That is why Plaintiffs are willing to agree to nationwide service of trial subpoenas, so they can drag any witness to this Court for trial, but then they inconsistently claim it is unfair for non-party subpoena enforcement to work the same way. |
|---|---|

12. **Depositions.**

(a)      **Number.**  Each side is limited to 30 fact depositions of witnesses.  The following depositions do not count against the deposition cap imposed by the preceding sentences:  (i) depositions of any persons identified on a Party's final trial witness list who were not identified on that Party's preliminary trial witness list; (ii) depositions of the Parties' designated expert witnesses; (iii) depositions taken in response to Civil Investigative Demands; and (iv) depositions taken for the sole purpose of establishing the location, authenticity, or admissibility of documents produced by any Party or non-party, provided that such depositions may be noticed only after the Party taking the deposition has taken reasonable steps to establish location, authenticity, or admissibility through other means, and further provided that such depositions must be designated at the time that they are noticed as being taken for the sole purpose of establishing the location, authenticity, or admissibility of documents.

(b)     **Scheduling.**  The Parties shall use reasonable efforts to reduce the burden on witnesses noticed for depositions and to accommodate the witnesses' schedules.  Depositions shall be conducted in-person in the locations where witnesses reside or are employed, unless the noticing Party or Parties and the witness mutually agree otherwise; provided, however, that any deposition of a witness under the Parties' control must take place in the United States.  If a Party serves a non-Party a subpoena for the production of documents or electronically stored information and a subpoena commanding attendance at a deposition, the Party serving those subpoenas must schedule the deposition for a date at least 7 business days after the return date for the document subpoena, and if the Party serving those subpoenas agrees to extend the date of production for the document subpoena in a way that would result in fewer than 7 business days between the extended production date and the date scheduled for that non-party's deposition, the date scheduled for the deposition must be postponed to be at least 7 business days following the extended production date, unless all other Parties consent to fewer than 7 business days.

(c)     **Time.**  Except as provided in this paragraph, depositions of fact witnesses are limited to no more than one day of 7 hours on the record unless agreed by the witness or ordered by the Court.  A Plaintiff noticing a deposition may cede some or all of its examination time to another Plaintiff.  A Defendant noticing a deposition may cede some or all of its examination time to another Defendant.  During non-party depositions, the non-noticing side will receive at least two hours of examination time.  If a non-party deposition is noticed by both sides, then time will be divided equally between the sides, and the deposition of the non-party will count as one deposition for both sides.  Pursuant to Federal Rule of Civil Procedure 30(d), because Defendants are negotiating divestiture agreements with one or more divestiture buyers, whose testimony is likely to be material to multiple issues on which different sides bear the

burden of proof, the length of depositions of divestiture buyers or their employees noticed by both sides is extended to 10 hours on the record, divided equally between the sides, and may be continued through a second day if agreed with the deponent in advance, to permit both sides to fairly examine the deponent; provided, however, that this shall not preclude such a deponent from seeking a shorter deposition after meeting and conferring with the noticing Parties.

(d) **Objections.**  Any objection made by any Party in a deposition preserves that objection for every Party.

(e) **CID Depositions.**  Any Party may further depose any person whose deposition was taken pursuant to a Civil Investigative Demand ("CID"), and the fact that such person's deposition was taken pursuant to a CID may not be used as a basis for any Party to object to that person's deposition.  Depositions taken pursuant to CID may be used at trial if admissible under the Federal Rules of Civil Procedure.

(f) **Rule 30(b)(6) Depositions.**  Plaintiffs may issue two notices per Defendant of that Defendant's deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, for a total of 7 hours on the record per each deposition, regardless of whether Defendants designate more than one witnesses to testify on their behalf.   Plaintiffs must serve any second notice of a Defendant's deposition under Rule 30(b)(6), which must be limited to topics that Plaintiffs did not include in the first notice and that otherwise has not been addressed through other deposition testimony, no later than 30 days before the close of fact discovery. Where a witness testifying on behalf of a Defendant under Rule 30(b)(6) has also been noticed as a fact witness, the Parties shall confer regarding whether it is reasonable to take both depositions on the same day.  Each deposition of a Party to be taken under Federal Rule of Civil Procedure

30(b)(6) counts as one deposition for the purpose of the limit in Paragraph 12(a), regardless of the number of witnesses produced to testify on the matters for examination in that deposition.

13.    **Previously Served Discovery Requests.**  For purposes of calculating deadlines under this Order, any discovery requests served prior to the entry of this Order shall be deemed to have been served on the later of the date of the March 21, 2023 scheduling conference and the date actually served.

14.    **Discovery from Northeast Alliance Litigation.**  Documents and other discovery materials produced in *United States et al. v. American Airlines Group Inc. and JetBlue Airways Corporation*, Case No. 1:21-cv-11558 (D. Mass.) (the "NEA Case"), may be used in this action as though they were produced in this action.

15.    **Discovery from Executive-Branch Agencies.**  Defendants having sought discovery from various federal and state executive branch agencies pursuant to Rule 45 subpoenas, the time periods in Paragraph 10 of this Order for discovery on Parties shall not apply to discovery requests to such agencies (other than the U.S. Department of Justice and Plaintiff States' Offices of the Attorney General), regardless of the form of the requests.

16.    **ESI Specifications.**  Parties shall produce all documents and ESI in accordance with the U.S. Department of Justice's Standard Specifications for Production of ESI, except when producing documents and ESI received from non-parties.  Parties need not produce voicemail messages, except in the case where they are contained within a Party's e-mail system. With regard to productions by Defendants to Plaintiffs, the deduplication protocol remains in effect as in any production during the Investigation.

17.    **Privilege Logs.**

(a)     **Timing of Privilege Logs.**  Parties shall serve any privilege logs 30 days following substantial completion of production of documents responsive to any set of document requests.  Any documents determined not to be privileged during the preparation of privilege logs will be produced on a rolling basis and must be produced no later than service of the corresponding privilege log.

(b)     **Contents of Privilege Logs.**  Other than as identified in Paragraph 17(e), documents that are responsive to requests for production and that have been withheld or redacted on the basis of any claim of privilege and/or work product protection must be reflected on the Parties' privilege logs.  Privilege logs shall identify for each document for which the Party claims privilege: (i) whether the document is being withheld or redacted; (ii) all claims of privilege and/or attorney work product applicable to the document withheld or redacted; (iii) a description of the specific subject matter of the document or communication not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other Parties, and the Court to evaluate the applicability of the privilege; and (iv) the following non-privileged metadata: all authors, addressees, and recipients of the document; subject line (if an email) or the file name (if non-email); date of the document; type of document (e.g., .pdf, Excel, .msg); Bates range; family Bates range if applicable; and custodian(s).  Each privilege log will be produced along with a separate index containing an alphabetical list (by last name) of each name on the privilege log, identifying titles (for Party employees), company affiliations, the members of any group or email list on the log where practicable (e.g., the Board of Directors), and any name variations used in the privilege log for the same individual.

(c)     **Identification of Legal Personnel on Privilege Logs.**  For each entry of any privilege log, all attorneys acting in a legal capacity with respect to that particular document

or communication will be marked with the designation ESQ after their names (include a space before and after the "ESQ").  Further, the Parties shall identify all persons working in a legal capacity with respect to the withheld material other than attorneys, e.g., paralegals, and legal secretaries who appear on the privilege log.

(d)  **Claw-Back Privilege Logs.**  In the event that a Party seeks the return of previously produced documents on the basis of privilege ("Claw-Back"), as permitted by the Protective Order and Paragraph 18 of this Order, the disclosing Party must provide written notice and take all reasonable measures to retrieve the improperly disclosed material.  The disclosing Party must also provide a privilege log corresponding to the respective Clawed-Back documents, consistent with this Paragraph.

(e)  **Documents Presumptively Excluded from Privilege Logs.**  The parties agree that the following privileged or otherwise protected communications may be excluded from privilege logs:

i.  documents or communications sent solely between counsel for the Defendants (or persons employed by or acting on behalf of such counsel) after July 28, 2022;

ii.  documents or communications sent solely between outside counsel for either Defendant (or persons employed by or acting on behalf of such counsel) and that Defendant;

iii.  documents or communications sent solely among inside counsel (acting in a purely legal capacity) for a Defendant;

iv.  documents or communications sent solely between counsel for Plaintiffs (or persons employed by or acting on behalf of such counsel);

v.        documents authored by Defendants' outside counsel (or persons employed by or acting on behalf of such counsel) or by counsel for Plaintiffs (or persons employed by or acting on behalf of such counsel), that were not directly or indirectly furnished to any non-Party, such as internal memoranda;

vi.        documents or communications sent solely between counsel for Plaintiffs (or persons employed by or acting on behalf of such counsel) and counsel for any non-Plaintiff state (or persons employed by or acting on behalf of such counsel) up to the date that such non-Plaintiff state informed any Plaintiff that it would not join the complaint;

vii.        documents or communications sent solely between counsel for Plaintiffs and any Executive Branch agency of the United States;

viii.        documents or communications not relating to the Proposed Transaction or any investigation into and/or oversight of the Proposed Transaction sent solely between persons employed by executive branch agencies and withheld solely under the deliberative process privilege;

ix.        privileged draft contracts that were not directly or indirectly furnished to any non-party; and

x.        privileged draft regulatory filings and draft litigation filings.

xi.        non-responsive, privileged documents attached to responsive documents.

To the extent multiple Plaintiffs (e.g., the U.S. Department of Justice and Plaintiff States' Offices of the Attorney General) are on a given document, and that document is not presumptively excluded from privilege logs pursuant to this paragraph, that document need only be logged once and not by all Plaintiffs.

18.     **Inadvertent Production of Privileged or Work-Product Documents or Information.**  Pursuant to Federal Rule of Evidence 502(d), the production of a document or information subject to a claim of attorney-client privilege, work-product immunity, or any other privilege or immunity under relevant federal case law and rules does not waive any claim of privilege, work product, or any other ground for withholding production to which the Party producing the documents or information otherwise would be entitled, provided that (a) the production was inadvertent; (b) the Party producing the documents or information used reasonable efforts to prevent the disclosure of documents or information protected by the attorney-client privilege, work-product immunity, or any other privilege or immunity; and (c) the Party producing the documents or information promptly took reasonable steps after discovering the inadvertent disclosure to rectify the error, including following Federal Rule of Civil Procedure 26(b)(5)(B).

19.     **Presumptions of Authenticity.**  Documents and data produced by Parties and non-parties from their own files in this action or the NEA Case will be presumed to be authentic within the meaning of Federal Rule of Evidence 901.  Any good-faith objection to authenticity must be provided with the exchange of other objections to intended trial exhibits.  If the opposing side serves a specific good-faith written objection to authenticity, the presumption of authenticity will no longer apply and the Parties will promptly meet and confer to attempt to resolve any objection.  Any objections that are not resolved through this means or the discovery process will be resolved by the Court.

20.     **Expert Witness Disclosures and Depositions.**  Expert disclosures, including each side's expert reports, must comply with the requirements of Federal Rule of Civil Procedure 26(a)(2) and 26(b)(4), except as modified by this paragraph.  The expert report phasing and

procedural deadlines contained within this Order are not intended to change or impact in any way the formal legal burdens applicable to any Party.

(a)     Neither side must preserve or disclose, including in expert deposition testimony, the following documents or information:

(i)     any form of oral or written communications, correspondence, or work product not relied upon by the expert in forming any opinions in his or her final report shared:

(A)     between either side's counsel and that side's testifying or non-testifying expert(s);

(B)     between any agent or employee of either side's counsel and that side's own testifying or non-testifying expert(s);

(C)     between testifying and non-testifying experts;

(D)     between non-testifying experts; or

(E)     between testifying experts;

(ii)     any form of oral or written communications, correspondence, or work product not relied upon by the expert in forming any opinions in his or her final report shared between experts and any persons assisting the expert;

(iii)     the expert's notes, except for notes of interviews participated in or conducted by the expert, if the expert relied upon such notes in forming any opinions in his or her final report;

(iv)     drafts of expert reports, affidavits, or declarations; and

(v)  data formulations, data runs, data analyses, or any database-related operations not relied upon by the expert in forming any opinions in his or her final report.

(b)  The Parties agree that the following materials will be disclosed:

(i)  all final reports;

(ii)  a list by bates number of all documents relied upon by the testifying expert(s) in forming any opinions in his or her final reports;

(iii)  copies of any materials relied upon by the expert not previously produced that are not readily available publicly;

(iv)  a list of all publications authored by the expert in the previous 10 years and copies of all publications authored by the expert in the previous 10 years that are not readily available publicly;

(v)  a list of all other cases in which, during the previous 4 years, the expert testified at trial or by deposition, including tribunal and case number; and

(vi)  for all calculations appearing in the final reports, all data and programs underlying the calculations (including all programs and codes necessary to replicate the calculations from the initial ("raw") data files and the intermediate working-data files that are generated from the raw data files and used in performing the calculations appearing in the final report) and a written explanation of why any observations in the raw data were either excluded from the calculations or modified when used in the calculations.

Each expert will be deposed for only one day of 7 hours on the record with all 7 hours reserved for the side noticing the expert's deposition; provided, however, that counsel for a Party

may additionally take reasonable and appropriate redirect examination of that Party's expert(s).
Depositions of each side's experts will be conducted only after disclosure of all expert reports
and all of the materials identified in Paragraph 20(b) of this Order for all of that side's experts.

21. **Witness List.**

(a) **Preliminary Lists.** Plaintiffs collectively are limited to 20 persons
(excluding experts) on their preliminary trial witness list, and Defendants collectively are limited
to 20 persons (excluding experts) on their preliminary trial witness list. The preliminary witness
lists must include the name, employer, address, and telephone number of each witness. With
respect to third parties for which depositions are not complete, such third parties can be
identified in a corporate capacity until the depositions take place.

(b) **Final Lists.** Plaintiffs collectively are limited to 20 persons (excluding
experts) on their final trial witness list, and the Defendants collectively are limited to 20 persons
(excluding experts) on their final trial witness list. Each side's final trial witness list may
identify no more than 5 witnesses that were not identified on that side's preliminary trial witness
list. If any new witnesses are added to a final trial witness list that were not on that side's
preliminary trial witness list and not previously deposed, supplemental document discovery may
be conducted with respect to such person(s), even if outside the close of discovery, and any
deposition(s) by the other side of such witness(es) will not count against that other side's total
depositions. Any document discovery and/or deposition notices of new witnesses on the Parties'
final trial witness lists must be issued within 7 days of service of the final trial witness lists. The
final trial witness lists must comply with Federal Rule of Civil Procedure 26(a)(3)(A)(i)–(ii),
must include the name, employer, address, and telephone number of each witness, and must
include a brief summary of the subjects about which any expert witnesses will testify.

(c)      **General Principles for Witness Lists.**  In preparing preliminary trial

witness lists, final trial witness lists, and expert disclosures, the Parties must make good-faith

attempts to identify the witnesses whom they expect that they may present as live witnesses at

trial (other than solely for impeachment).  No Party may call a person to testify as a live witness

at trial (other than solely for impeachment) unless (i) that person was identified on that Party's

final trial witness list or the opposing Party's final trial witness list; (ii) all Parties agree that a

Party may call that person to testify; or (iii) that Party demonstrates good cause for allowing it to

call that person to testify, despite that Party's failure to identify that person as a trial witness

sooner.  Witnesses whose testimony will be offered into evidence at trial through designated

portions of their deposition testimony shall be identified on final trial witness lists, however

those witnesses do not count against the limits on the numbers of persons who may be identified

on those lists.

| Plaintiffs' Proposal | Defendants' Proposed Additional Language in Paragraph 21(c) Prohibiting the Affirmative Use of Depositions for Witnesses Called Live at Trial |
| --- | --- |
| [Strike Defendants' proposed language.] | No Party may designate or offer the deposition testimony of a witness as evidence if that witness will be called live at trial; provided, however, that nothing limits the use of deposition testimony for impeachment. |
| **Plaintiffs' Position** | **Defendants' Position** |
| Defendants have proposed a blanket ban on using deposition designations from a witness who will testify live at trial, with a limited exception for impeachment.  Their proposal is contrary to the Federal Rules of Civil Procedure and Federal Rules of Evidence.  It would also hinder the efficient presentation of evidence to the Court.  The Rules provide that "[a]n adverse party *may use for any purpose* | Defendants respectfully submit that if a witness testifies live at trial, the Parties can and should ask any questions they have for that witness at trial, and the live testimony would render irrelevant the deposition testimony of that same witness, except for impeachment.  Defendants' commonsense approach reduces burden on the Parties (by not having to designate, counter-designate, |

the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(4)," Fed. R. Civ. P. 32(a)(3) (emphasis added), and that statements made by opposing "party's agent or employee on a matter within the scope of that relationship and while it existed" are not hearsay, Fed. R. Evid. 801(d)(2)(D). Under Rule 32(a)(3), a party deposition may "be used by an adverse party regardless of the presence or absence of the deponent at the hearing or trial and regardless of whether the deponent is available to testify *or has testified there*." *N. Ins. Co. of N.Y. v. Albin Mfg., Inc.*, 2008 WL 3285852, at \*3 n.4 (D.R.I. Aug. 8, 2008) (citation omitted and emphasis added). "The rule is to be liberally construed, and though the court 'has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, it may not refuse to allow the deposition to be used merely because the party is available to testify in person.'" *Id.* (quoting 8A Wright *et al.*, *Fed. Practice & Procedure* § 2145) (brackets omitted); *see also Cmty. Counselling Serv., Inc. v. Reilly*, 317 F.2d 239, 243 (4th Cir. 1963) ("It has been consistently held that the Rule permits a party to introduce, as part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at the trial *or has testified there*.") (emphasis added).[3]

Even where a witness testifies live, designating deposition testimony of that witness promotes efficiency for the admission of documents, providing support on contextual or other background subjects for pre-trial briefs and opening statements, and permitting introduction of party admissions into the record. Defendants' request for a

counter-counter-designate, object, and negotiate over designations for a witness who will appear live) and the Court (by not having to rule on disputes or take designated testimony into evidence when the witness will be in the courtroom). Plaintiffs cite cases that primarily support the proposition that deposition testimony is not hearsay and can be used at trial even when a witness is *available* to testify. But Defendants are not seeking to limit the use of depositions based on hearsay or witness availability. Rather, Defendants seek to preclude Plaintiffs from designating deposition testimony of a witness who testifies at trial, as it would be highly redundant. DOJ itself has agreed to the approach Defendants propose in multiple other merger matters. *U.S. v. Bertelsmann SE & Co. KGaA et al.*, No. 21-2886-FYP (D.D.C.), ECF No. 119-1; *U.S. v. Assa Abloy, et al.*, No. 1:22-cv-02791-ABJ (D.D.C.), ECF No. 51. And DOJ agreed to this approach in the pre-trial order in the NEA action, which was so-ordered by Judge Sorokin. See Pretrial Order, *United States, et al. v. American Airlines Group, Inc., et al*., No. 1:21-cv-11558-LTS, ECF. 196 at ¶¶ 27-31 (providing for the use of all deposition testimony, whether or not designated, for cross-examination, impeachment, or rebuttal purposes and for the use of deposition designations only as to those not included on the parties' final trial witness lists and for any witness on either side's final witness list who neither side will be calling to testify live at trial).

---

[3] Contrary to Defendants' characterization, in *Northern Insurance* the district court admitted deposition testimony from a party witness who testified live at trial, and in *Community Counselling* the court of appeals reversed the trial court for failing to do just that.

| | |
|---|---|
| wholesale bar on such party depositions is contrary to the relevant rules and undermines judicial economy.  It is also premature now, at the outset of discovery and well before the parties exchange witness lists.<br><br>While Plaintiffs disagree with the Defendants' characterizations of proceedings in other cases, including two on the eve of trial, none of those cases imposed at the outset of a case the order that Defendants propose here to modify Rule 32(a(3).  Whatever stipulations the parties may or may not reach after discovery is concluded, the available evidence is known and trial is impending, there is no basis to require such provisions in a Case Management Order. | |

22. **Demonstrative Exhibits**.  At least one month before the start of trial, the Parties agree to meet and confer regarding a protocol for serving demonstrative exhibits on opposing counsel before the start of any trial day where any such exhibit may be introduced (or otherwise used) at trial.

23. **Service of Pleadings and Discovery on Other Parties.**  Service of all pleadings, discovery requests (including subpoenas for testimony or documents under Federal Rule of Civil Procedure 45), expert disclosures, and delivery of all correspondence in this matter must be made by ECF if required by applicable rule or otherwise by email, except when the volume of attachments requires overnight delivery of the attachments or personal delivery, to the following individuals designated by each Party:

> For Plaintiff United States of America:
>
> > Edward W. Duffy (Edward.Duffy@usdoj.gov)
> > Brendan Sepulveda (Brendan.Sepulveda@usdoj.gov)
> > John M. Briggs (John.Briggs@usdoj.gov)
> > Arianna Markel (Arianna.Markel@usdoj.gov)
> > Aaron M. Teitelbaum (Aaron.Teitelbaum@usdoj.gov)
> > John R. Thornburgh II (John.Thornburgh@usdoj.gov)

U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530

For Plaintiff Commonwealth of Massachusetts:

William T. Matlack
Daniel H. Leff
Antitrust Division
Office of the Attorney General of Massachusetts
One Ashburton Place, 18th Floor
Boston, MA 02108
William.Matlack@mass.gov
Daniel.Leff@mass.gov

For Plaintiff District of Columbia:

C. William Margrabe
Estefania Torres Paez
Office of the Attorney General for the District of Columbia
400 6th Street NW, Suite 10100
Washington, D.C.  20001
Telephone: (202) 727-6294
will.margrabe@dc.gov
estefania.torrespaez@dc.gov

For Plaintiff State of New York:

Olga Kogan (*admitted pro hac vice*)
New York State Office of the Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005
Telephone: (212) 416-8262
Email: olga.kogan@ag.ny.gov

For Plaintiff State of California:

Natalie S. Manzo
Winston. H. Chen
Komal K. Patel
Office of the California Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Telephone: (213) 269-6000
Natalie.Manzo@doj.ca.gov
Winston.Chen@doj.ca.gov

Komal.Patel@doj.ca.gov

For Plaintiff State of Maryland:

Schonette J. Walker
Gary Honick
Byron Warren
Maryland Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

For Plaintiff State of New Jersey:

Bryan S. Sanchez
Ana Atta-Alla
State of New Jersey Office of the Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, New Jersey 07102
Telephone: (973) 648-6835
Bryan.Sanchez@law.njoag.gov
Ana.Atta-Alla@law.njoag.gov

For Plaintiff State of North Carolina:

Jessica V. Sutton
Special Deputy Attorney General
North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
Tel: 919-716-6000
E-mail: jsutton2@ncdoj.gov

For Defendant JetBlue Airways Corporation:

Richard Schwed
Jessica Delbaum
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000
rschwed@shearman.com

jessica.delbaum@shearman.com

Ryan Shores
Michael Mitchell
SHEARMAN & STERLING LLP
401 9th Street, NW, Suite 800
Washington, D.C. 20004
Telephone: (202) 508-8108
ryan.shores@shearman.com
michael.mitchell@shearman.com

Rachel Mossman Zieminski
SHEARMAN & STERLING LLP
2601 Olive Street, Suite 1700
Dallas, TX 75201
Telephone: (214) 271-5385
rachel.zieminski@shearman.com

Elizabeth M. Wright
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116
Telephone: (617) 937-2349
ewright@cooley.com

For Defendant Spirit Airlines, Inc.:

Andrew C. Finch
Jay Cohen
Eyitayo St. Matthew-Daniel
Kate Wald
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212)373-3000
afinch@paulweiss.com
jaycohen@paulweiss.com
tstmatthewdaniel@paulweiss.com
kwald@paulweiss.com

Meredith Dearborn
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
535 Mission Street, 24th Floor
San Francisco, California 94105
Telephone: (650) 208-2788
mdearborn@paulweiss.com

For purposes of calculating discovery response times, electronic delivery at the time the email was received will be treated in the same manner as hand delivery at that time.

24.   **Proposed Divestitures**

| Plaintiffs' Proposed Language Regarding the Timing of Production of Certain Divestiture Documents | Defendants' Proposed Language Regarding the Timing of Production of Certain Divestiture Documents |
|---|---|
| To promote orderly and fair discovery of facts related to Defendants' proposed divestitures, in addition to the two productions containing all original draft agreements and relevant correspondence concerning the proposed divestitures of Defendants' assets in Boston Logan International Airport, LaGuardia Airport, Newark Liberty International Airport, and Fort Lauderdale-Hollywood International Airport (the "Proposed Divestitures") pursuant to CID No. 31393, Defendants will produce any additional documents concerning the Proposed Divestitures promptly after such documents are created.  Furthermore, within one business day of entering into any agreement concerning the Proposed Divestitures, Defendants will provide Plaintiffs a copy of the agreement.  Defendants must produce such evidence by or before May 8, 2023. Defendants shall not be permitted to introduce or otherwise rely on documentary evidence and/or data concerning the Proposed Divestitures tendered or generated after May 8, 2023 as such evidence is unfairly prejudicial under Federal Rule of Evidence 403.  This paragraph shall not be construed to require the exclusion of evidence arising from efforts to comply with future rulings (including changes in business plans required to comply with any such future rulings) in the NEA Case. | In addition to the two productions containing all original draft agreements and relevant correspondence concerning the proposed divestitures of Defendants' assets in Boston Logan International Airport, LaGuardia Airport, Newark Liberty International Airport, and Fort Lauderdale-Hollywood International Airport (the "Proposed Divestitures") pursuant to CID No. 31393, Defendants will produce any additional documents concerning the Proposed Divestitures in response to any document request served under Paragraph 10(a). Furthermore, within one business day of entering into any agreement concerning the Proposed Divestitures, Defendants will provide Plaintiffs a copy of the agreement.  If such agreement has not been entered by May 8, 2023, the Parties will meet and confer, if necessary, to ensure Plaintiffs have adequate discovery concerning the divestiture agreement. |

| Plaintiffs' Position | Defendants' Position |
|---|---|
| In merger challenges, Defendants often seek (1) to remedy or mitigate harms caused by the merger with collateral agreements to divest certain assets or rights (the subject of this paragraph), and (2) to promote benefits they believe will be realized if the merger is allowed to proceed (the subject of Paragraph 25). These are fact-intensive inquiries which are predictable areas of focus at trial. Here, the present disputes turn on when Defendants will create and produce a factual record purporting to support their positions.<br><br>Although "divestiture commitments" have been a keystone of JetBlue's antitrust defense for at least eleven months, JetBlue has still not entered into any agreement to actually divest those assets. Plaintiffs will be unfairly prejudiced if JetBlue is allowed to prolong divestiture negotiations so as to deprive Plaintiffs of a fair opportunity to take discovery of Defendants and the actual divestiture buyers based on any final divestiture agreements, rather than Defendants' currently tentative "plan," "draft . . . agreements" and "proposed terms." Plaintiffs accordingly propose a May 8, 2023 cutoff date for divestiture evidence on which Defendants may rely—the same date that Defendants themselves propose, and which is necessary to allow for pertinent party and third-party fact discovery.<br><br>The dispute concerns what occurs if Defendants fail to meet this deadline. Plaintiffs believe May 8, 2023 should be a genuine deadline with real consequences for non-compliance. Courts in merger cases have excluded evidence of proposed divestitures where that evidence is offered unfairly late. For example, in *FTC v. Ardagh Grp., S.A.*, No. 13-1021 (D.D.C.), the court refused to consider a divestiture that was still being negotiated while defense witnesses were | Defendants identified the assets to be divested in the Agreement and Plan of Merger among JetBlue Airways Corporation, Sundown Acquisition Corp., and Spirit Airlines Inc. on July 28, 2022, meaning that Plaintiffs have long been on notice of the assets that would be divested. Plaintiffs also already know the potential buyers of the divestiture assets and have already sought and received documents from those potential buyers in the investigation of the proposed merger. In addition, Defendants also produced divestiture-related documents in the investigation, including correspondence with the potential buyers and the draft asset purchase agreements sent by JetBlue to the potential buyers. This means that the Plaintiffs know what JetBlue and Spirit plan to sell, who they plan to sell it to, and the proposed terms offered for the sale. JetBlue is currently in negotiations to finalize the divestiture transactions, and Defendants have proposed to produce final divestiture agreements one business day after they have been signed.<br><br>Defendants have agreed to make efforts to finalize and produce those agreements no later than May 8, 2023 (the date Plaintiffs selected as the point by which they wish to have this discovery) and to discuss with Plaintiffs how to proceed if those agreements are not signed by May 8, 2023. Plaintiffs have rejected this proposal and instead overreach by seeking a draconian remedy of complete preclusion of divestiture evidence if documents are not produced by May 8, 2023. Plaintiffs' approach would severely prejudice Defendants. Plaintiffs essentially seek a predictive ruling on a *motion in limine* that has yet to be filed—before there has been any indication whether or not they will be prejudiced. Further, Plaintiffs' proposal |

being deposed.[4]  Merger case management orders routinely provide that divestiture evidence will be excluded under Rule 403 if not produced well before the end of fact discovery, as Plaintiffs propose.  *See* ECF 53 at 20-21, *United States v. Bertelsmann SE & Co. KGaA*, No. 21-2886 (D.D.C.); ECF No. 52 at 22, *United States v. AON plc*, No. 21-1633 (D.D.C.).  In another pending merger case, the schedule provided for "day-for-day" extensions of fact discovery and other pretrial deadlines if divestiture documents were not timely produced, and after divestiture-related pre-trial disputes, the court extended fact discovery and, ultimately, delayed the trial. ECF 46 at 21-22 & 1/18/13 & 4/3/23 Minute Orders, *United States v. ASSA ABLOY AB*, No. 22-cv-2791 (D.D.C.).  Here, because the Court has made clear that its trial date is firm, Plaintiffs are not seeking potential schedule extensions as in *ASSA ABLOY*.  Instead, Plaintiffs request a bright-line rule to keep this case on track while preventing unfair prejudice to Plaintiffs from delays within Defendants' control.  For the same reason, the Court should reject Defendants' "wait and see" approach as inadequate.

would place the Court in the odd position of having to analyze a merger that by its terms contemplates divestitures without being able to fully consider such divestitures if they are not completed by Plaintiffs' arbitrary date. Plaintiffs cite *U.S. v. Bertelsmann SE & Co. KGaA et al.*, No. 21-2886-FYP (D.D.C.), but that case is entirely distinguishable as there were no divestiture or license of assets reflected in the purchase agreement or at issue at trial.  Here, by contrast, the divestitures are central.  *FTC v. Ardagh Grp., S.A.*, No. 13-1021 (D.D.C.), is even less relevant.  In that case, the court declined to hear evidence of a proposed divestiture first presented to the FTC after the scheduled close of fact discovery, after expert reports were submitted, and only three weeks before the start of the trial—and even then the defendants had not identified the buyer.  In *Assa Abloy*, unlike here, the merger agreement did not require divestitures or identify the scope of divestitures, and the DOJ did not know the identity of the divestiture buyers before filing the complaint.

Defendants recognize that Plaintiffs are entitled to the final divestiture agreements and have offered to produce them promptly upon signing and to meet-and-confer in good faith should the agreements not be signed by May 8, 2023.  Unlike Plaintiffs' proposal, Defendants' approach maintains the ability of both parties to preserve their rights—including Plaintiffs' right to move to exclude evidence of the divestitures if they can demonstrate actual prejudice—regarding the use and admissibility of such evidence and is also consistent with past practice in other merger trials.

---

[4] 9/24/13 Tr.at 29, https://www.ftc.gov/sites/default/files/documents/cases/130924ardaghtranscript.pdf.

25.    **Alleged Benefits / Network Plan**

| Plaintiffs' Proposed Language Regarding the Timing of Production of Documents Relating to Alleged Benefits | Defendants' Proposed Language Regarding the Timing of Production of Certain Network Plans |
| --- | --- |
| **Alleged Benefits.**  To promote orderly and fair discovery of facts related to Defendants' future plans if the Proposed Transaction is or is not consummated, Defendants will produce plans developed for the combined JetBlue/Spirit network if the Proposed Transaction is consummated or for the separate JetBlue or Spirit networks if the Proposed Transaction is not consummated ("Network Plans") and any other future plans for JetBlue/Spirit promptly after they are developed.  Defendants must produce such evidence by or before May 8, 2023.  Defendants shall not be permitted to introduce or otherwise rely on documentary evidence and/or data concerning future plans for the purpose of supporting the claimed benefits of the Proposed Transaction tendered or generated after May 8, 2023 as such evidence is unfairly prejudicial under Federal Rule of Evidence 403.  This paragraph shall not be construed to require the exclusion of evidence arising from efforts to comply with future rulings (including changes in business plans required to comply with any such future rulings) in the NEA Case.

Defendants may seek modification of this provision of the CMO if circumstances beyond Defendants' control, unforeseeable as of May 8, 2023, require changes to Network Plans or other future plans.  Prior to moving for such modification, Defendants must promptly produce (within two business days of their creation) all documents and data regarding such modification and the reasons for such modification, and make Rule 30(b)(6) deponents available about the changes at Plaintiffs' reasonable convenience (notwithstanding any other limitations on | **Network Plan**.  Defendants will produce in response to any document request served pursuant to Paragraph 10(a) plans developed for the combined JetBlue/Spirit network if the Proposed Transaction is consummated or for the separate JetBlue or Spirit networks if the Proposed Transaction is not consummated ("Network Plans") promptly after they are developed in the ordinary course of business.  If such Network Plans are not finalized and produced by May 8, 2023, the Parties will meet and confer, if necessary, to ensure Plaintiffs have adequate discovery concerning them.  The Parties recognize that Network Plans may change as a result of subsequent or unforeseen events occurring after May 8, 2023.  Defendants will promptly produce any such changes to Plaintiffs, and Plaintiffs reserve all rights related to discovery and admissibility of such changes. |

| | |
|---|---|
| depositions).  After such production and deposition, Defendants may move for modification of this Order to allow for the potential admissibility of such evidence only on a showing of good cause and that Plaintiffs were not unfairly prejudiced. | |

| **Plaintiffs' Position** | **Defendants' Position** |
|---|---|
| Plaintiffs expect Defendants to try to show benefits of their proposed merger based on purportedly "ordinary course" documents about JetBlue's plans for the combined airline, as well as documents about JetBlue's and Spirit's contingency plans if the merger is blocked.  For example, JetBlue may try to rely on a "combined network plan" for the merged airline to support purported benefits of the merger.  Despite multiple requests during the government's pre-complaint investigation, JetBlue failed to produce a combined network plan and claimed it was deferring creating such a plan.  This decision was a tactical choice that impeded the government's ability to evaluate JetBlue's arguments about consumer benefits.  Now Defendants represent that they expect to produce their combined network plan by May 8, 2023.

Plaintiffs ask the Court to hold Defendants to this deadline to ensure a fair and efficient trial.  Defendants control when they create their own network plan and other evidence that the merger is supposedly not harmful, such as integration plans, fleet plans, and route/airport entry or exit plans.  It would be unfairly prejudicial for Defendants to rely on their own internal documents if Defendants wait until the end of fact discovery (or later) to create and produce them.  Accordingly, as with divestiture evidence, such evidence should be excluded under Rule 403 if Defendants offer it to support their case after producing it untimely.  If there are unforeseeable changed circumstances, | Defendants plan to produce the combined network plan in advance of May 8, 2023.  But the airline industry is dynamic and rapidly developing, and it is possible there could be updates to the network plan after May 8, 2023.  As with the divestiture agreements, Plaintiffs' proposal is again overreaching and seeks to pre-ordain a harsh penalty.  Defendants' proposal does not extinguish Plaintiffs' right to later seek to exclude such evidence; it merely seeks to prevent the extraordinary ruling that prejudice will be presumed at the outset of this case based on an arbitrary date.  The past several years have taught us that unexpected events can have a significant impact on travel patterns, and if something should happen that requires JetBlue to update the combined network plan (e.g., a natural disaster severely limits the ability to fly from an airport one of the airlines serves), Defendants should be permitted an opportunity to at least ask the Court to hear evidence on the changes.  Indeed, Plaintiffs' own proposal implicitly acknowledges that changes may be required based on future events by carving out an exception for a future event Plaintiffs would welcome (i.e., an adverse ruling on JetBlue's Northeast Alliance with American Airlines).

Defendants should not be forced to prematurely give up their rights to rely on such evidence if it is not produced by the arbitrary date Plaintiffs propose. Accordingly, Defendants' proposed provision contemplates that Defendants will promptly produce any revised network plans and that they will work |

| | |
|---|---|
| Plaintiffs' proposal permits Defendants to seek to modify this provision if there is good cause and Plaintiffs are not unfairly prejudiced. | in good faith to ensure that Plaintiffs have adequate discovery. Defendants' proposal here again is consistent with past practice in other merger trials and equitably preserves the rights of both parties with respect to discovery and the admissibility of such evidence. |

26.    **Nationwide Service of Trial Subpoenas.**  To assist the Parties in planning discovery, and in view of the geographic dispersion of potential witnesses in this action outside this District, the Parties are permitted, under 15 U.S.C. § 23, to issue trial subpoenas that may run into any other federal district requiring witnesses to attend this Court.  The availability of nationwide service of process, however, does not make a witness who is "unavailable" for purposes of Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804 available under those rules or otherwise affect the admissibility at trial of a deposition of a witness.

27.    **Modification of Scheduling and Case Management Order.**  Any Party may seek modification of this Order for good cause, except that the Parties may also agree to modify discovery and expert disclosure deadlines by agreement.

SO ORDERED:

_____
Hon. William G. Young
United States District Judge

Dated: April __, 2023