## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.<br><br>*Plaintiffs,*<br><br>*v.*<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.<br><br>*Defendants.* | Civil Action No. 1:23-cv-10511-WGY |

### ANSWER TO AMENDED COMPLAINT

Defendant JetBlue Airways Corporation ("JetBlue") responds to the allegations as set forth below. Any allegation not specifically and expressly admitted is denied.

### GENERAL RESPONSE

1.      Plaintiffs seek to block a transformative transaction that will bring better service and lower fares to millions of airline passengers throughout the country. Since its first flight twenty-three years ago, JetBlue has been widely recognized – including by the United States Department of Justice ("DOJ") – as an industry disruptor. But JetBlue's ability to challenge the large, dominant airlines and help passengers is limited because it is a much smaller player than the "Big Four" – American, Delta, Southwest, and United. The proposed acquisition of Spirit would turbocharge JetBlue's growth, create the first nationwide competitor to the Big Four, and result in billions of dollars of savings for the traveling public.

2.      DOJ itself has celebrated how JetBlue's entry onto routes immediately results in consumer savings. In a case tried in this courthouse at the same time that DOJ was investigating this transaction, DOJ touted that "JetBlue's reputation for lowering fares is so well known in the

airline industry that it has earned a name: the 'JetBlue Effect.'"[1]  As DOJ put it, "JetBlue is uniquely disruptive," with "a long and public track record of significantly lowering fares when it enters a market."[2]  In short, DOJ agrees that, "[i]n [the] face of consolidation, JetBlue has provided an important and steadfast source of competition" and "an important counterweight to the concentration of power held by [its] largest competitors."[3]

3.       DOJ is right: since its founding, JetBlue has been an important counterweight that disciplines the much larger "legacy" airlines (American, Delta, and United).  Consistent with its mission to bring humanity back to air travel, JetBlue has upended the false choice offered by these airlines: that consumers must choose between low fares and great service.  JetBlue's award-winning service includes the most legroom in coach, free live television, free wi-fi internet access, and complementary and unlimited name-brand snacks and drinks.  And JetBlue offers these benefits at a lower price than the legacy airlines.

4.       Because JetBlue offers a unique combination of high-quality service at low prices, when it enters one of the many routes dominated by its larger rivals, those airlines have no choice but to lower their fares and improve service to stave off the inevitable loss of consumers to JetBlue.  Across hundreds of routes, this JetBlue Effect has translated into billions of dollars in consumer savings.  Again, DOJ agrees: "When JetBlue Competes, Travelers Save Billions."[4]

5.       But JetBlue's ability to bring about these massive savings – and, more generally, its role as a "uniquely disruptive" "counterweight" – is constrained.  Today, JetBlue has less than a 5% share of airline seats in the United States, and its routes are concentrated on the East Coast.

---

[1]  Complaint at ¶ 6, *United States v. Am. Airlines*, No. 1:21-cv-11558 (D. Mass. filed Sept. 21, 2021) (hereinafter "NEA Complaint").
[2]  NEA Complaint at ¶ 36.
[3]  NEA Complaint at ¶ 5.
[4]  Plaintiffs Opening Slide Deck at 5, *United States v. Am. Airlines*, No. 1:21-cv-11558 (D. Mass. presented Sept. 27, 2022).

To put that in perspective, JetBlue is less than one-third the size of even the "smallest" member of the Big Four, United Airlines, which accounts for roughly 17% of airline seats. A combination with Spirit would give JetBlue approximately a 9% share of airline seats in the United States, make it a true national airline with routes throughout the country (and some abroad), and allow it to become a credible threat to the Big Four in hubs and routes they dominate. That will mean billions of dollars *more* in consumer savings as competition more broadly takes hold.

6.      By stubbornly refusing to acknowledge this reality in their current complaint, Plaintiffs get it exactly backwards. A combination of the sixth (JetBlue) and seventh (Spirit) largest airlines in the United States is hardly a substantial threat to airline competition; to the contrary, the combination would finally *bring* competition to the entrenched industry behemoths on a national scale. The acquisition of Spirit will allow JetBlue to dramatically expand its network and bring the JetBlue Effect to many new markets, further disrupting the dominance of the Big Four airlines. In claiming harm, DOJ not only ignores JetBlue's and Spirit's small shares (JetBlue, 5% share of airline seats; Spirit, 4%), but also that they have largely complementary networks and only "overlap" on about 11% of the nonstop routes that both airlines fly. And, even where they do overlap, they are typically dwarfed by larger competitors.

7.      In addition, to address concerns about potential "overlaps," JetBlue is making robust divestitures. Specifically, JetBlue will divest Spirit's holdings at Boston Logan International Airport, LaGuardia Airport, and Newark Liberty International Airport, as well as five gates and associated ground facilities at Fort Lauderdale-Hollywood International Airport. While DOJ has refused to engage with Defendants on these divestitures and now deems them "hypothetical" and inadequate, in the past it has consistently found divestitures good for

3

competition and consumers.  Indeed, DOJ's then-Assistant Attorney General for Antitrust testified before a subcommittee of the United States Senate in 2016 that "[c]onsumers similarly are benefiting from the slot and gate divestitures we secured when we settled our challenge to the American-US Airways merger."[5]

8.      Finally, Plaintiffs' purported concern about the loss of a ULCC like Spirit, and how that might impact cost-conscious travelers, ignores that JetBlue and other airlines will continue to offer unbundled fares and that the ULLC model will continue to be available for the smaller segment of the flying public that wants it.  In the last few years, ULCCs including Frontier, Allegiant, and Sun Country have all either grown significantly or announced plans for expansion.  Two new ULCCs, Avelo and Breeze, launched and dramatically expanded their service during the COVID-19 pandemic, one of the most difficult times in the history of the airline industry.  All of these ULCCs also have significant aircraft order books to support their growth plans.  JetBlue's extensive divestiture commitment will further ULCC expansion, as *all* of those divestitures will be made to ULCCs.

9.      At its heart, this is a pro-consumer transaction that will bring significant competition to the airline industry.  The vast majority of the flying public is serviced by the Big Four.  DOJ agrees that an antidote to their market dominance is JetBlue and that more JetBlue would mean lower prices and better service for millions of customers.  The transaction promises just that.

---

[5]  "Assistant Attorney General Bill Baer of the Antitrust Division Testifies Before Senate Judiciary Subcommittee on Antitrust, Competition Policy and Consumer Rights," March 9, 2016, available at https://www.justice.gov/opa/speech/assistant-attorney-general-bill-baer-antitrust-division-testifies-senate-judiciary.

## RESPONSE TO SPECIFIC ALLEGATIONS

JetBlue responds to the numbered paragraphs as follows:[6]

1.      JetBlue admits that Spirit offers what some refer to as "unbundled" fares.  JetBlue lacks the knowledge or information sufficient to admit or deny the remaining allegations related to Spirit in Paragraph 1, and thus denies them.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 1 and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 1.

2.      JetBlue admits that the JetBlue Effect has resulted in lower fares for consumers when JetBlue enters a new route, and that competition in the airline industry is beneficial.  JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to Spirit in Paragraph 2, and thus denies them.  JetBlue denies the allegations referencing documents in the form alleged in Paragraph 2 and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 2.

---

[6]      Except as otherwise expressly admitted herein, JetBlue denies each and every allegation in the Amended Complaint.  JetBlue further expressly denies that Plaintiffs are entitled to the requested or any other relief.  To the extent that an allegation in the Amended Complaint is admitted herein, that is not necessarily an admission that JetBlue knew a particular fact at the time of the events in issue in this action.  JetBlue expressly reserves the right to amend and/or supplement this Answer.

In responding to Plaintiffs' allegations, JetBlue states that it is not required to respond to the headings, subheadings, and footnotes within the Amended Complaint.  To the extent that a response to the headings, subheadings, and footnotes is required, JetBlue denies the averments therein to the extent that they are directed against JetBlue.  JetBlue also denies knowledge or information sufficient to form a belief as to the truth or falsity of such allegations insofar as they are related to any other entity, including, without limitation, to Spirit Airlines, Inc. (hereinafter referred to as "Spirit").

In responding to Plaintiffs' allegations, JetBlue intends to respond only as to allegations directed at JetBlue; JetBlue should not be deemed to be responding to allegations that are directed solely to any other entity, including, without limitation, to Spirit.

3.      JetBlue admits that competition in the airline industry is beneficial; that cost is a factor for some customers; and that some employers pay for some business travel.  JetBlue further admits that Spirit publicly made a statement partially referenced in Paragraph 3, but denies the allegations in the form alleged and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 3, and thus denies them.

4.      To the extent Paragraph 4 states a legal conclusion, no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue admits that it competes with many airlines and at times lowers its fares to do so.  JetBlue otherwise denies the allegations in Paragraph 4.

5.      JetBlue lacks the knowledge or information sufficient to admit or deny the allegations regarding Spirit in Paragraph 5, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 5.

6.      JetBlue lacks the knowledge or information sufficient to admit or deny the allegations regarding Spirit in Paragraph 6, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 6.

7.      JetBlue admits that it currently intends to retrofit Spirit planes to match the layout of JetBlue aircraft.  JetBlue otherwise denies the allegations in Paragraph 7.

8.      JetBlue admits that the Big Four (Delta, United, American Airlines, and Southwest) control approximately 80% of airline seats in the United States; that consolidation has occurred in the airline industry; and that JetBlue entered the Northeast Alliance with American, which DOJ has sought to enjoin, though JetBlue denies Plaintiffs' characterization of the Northeast Alliance.  JetBlue further admits that Spirit publicly made a statement partially

referenced in Paragraph 8, but denies the allegations in the form alleged and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 8.

9.      JetBlue admits that Plaintiffs bring this action for permanent injunctive relief. JetBlue otherwise denies the allegations in Paragraph 9.

10.     JetBlue admits that four airlines control approximately 80% of airline seats in the United States; that some airlines are referred to as operating "hub-and-spoke" models and offer multiple classes of service; that JetBlue competes with legacy carriers; and that airlines compete in a number of ways, including on fares and amenities.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 10, and thus denies them.

11.     JetBlue admits that Delta and Northwest merged, United and Continental merged, American and U.S. Airways merged, American acquired TWA, Southwest and AirTran merged, and Alaska and Virgin America merged.  JetBlue admits that the domestic airline industry is dominated by the Big Four airlines, which together control approximately 80% of airline seats in the United States.  JetBlue admits that it entered into the Northeast Alliance with American, the scope of which is reflected in the agreements between JetBlue and American, and otherwise denies Plaintiffs' characterization of the same.

12.     JetBlue admits that the Big Four airlines controlling approximately 80% of airline seats in the United States can lead to reduced options, high fares, and poor service.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 12 and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 12.

13.     JetBlue admits that a significant number of its customers fly for leisure purposes and admits the second and third sentences of Paragraph 13.  JetBlue otherwise denies the allegations in Paragraph 13.

14.     JetBlue admits that it offered flights to more than 100 destinations in 2022; that it had six focus cities in 2022; and that it provided service to the Caribbean and Latin American and that this service accounted for approximately 37% of its capacity, in 2021, by one measure of capacity.  JetBlue otherwise denies the allegations in Paragraph 14.

15.     JetBlue admits that it entered into the Northeast Alliance with American, the scope of which is reflected in the agreements between JetBlue and American, and otherwise denies Plaintiffs' characterization of the same.  JetBlue further admits that Spirit publicly made a statement partially referenced in Paragraph 15, but denies the allegations in the form alleged and refers the Court to the underlying document that contains the language referenced therein. JetBlue otherwise denies the allegations in Paragraph 15.

16.     JetBlue admits that Spirit is an ultra-low-cost carrier in the United States.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 16, and thus denies them.

17.     JetBlue admits that low fares can be attractive to customers.  JetBlue further admits that Spirit publicly made a statement partially referenced in Paragraph 17, but denies the allegations in the form alleged and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 17, and thus denies them.

18.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 18, and thus denies them.

19.     JetBlue admits that historically and in present day, airlines sell fares that can include an advance seat assignment, boarding group, and/or carry-on luggage.  JetBlue otherwise denies the allegations in Paragraph 19.

20.     JetBlue admits that airlines sometimes unbundle aspects of their offerings to customers.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 20, and thus denies them.

21.     JetBlue denies the first sentence of Paragraph 21 and otherwise lacks the knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 21, and thus denies them.

22.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 22, including the content of the chart referenced therein, and thus denies them.

23.     JetBlue admits the JetBlue Effect has resulted in lower fares for consumers when JetBlue enters a new route.  JetBlue denies the first and sixth sentences of Paragraph 23.  JetBlue responds that the seventh sentence is a legal argument to which no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 23, and thus denies them.

24.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to Spirit in Paragraph 24, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 24.

25.     JetBlue admits that it considered buying Spirit in 2017 and 2019-2020, and that JetBlue made an unsolicited offer to acquire Spirit on April 5, 2022.  JetBlue admits that it is part

of the Northeast Alliance with American, the scope of which is reflected in the agreements between JetBlue and American, and otherwise denies Plaintiffs' characterization of the same. JetBlue denies the allegations referencing a document in the form alleged in Paragraph 25 and refers the Court to the underlying document that contains the language referenced therein. JetBlue otherwise denies the allegations in Paragraph 25.

26.    JetBlue admits that Spirit publicly made a statement partially referenced in Paragraph 26, but denies the allegations in the form alleged and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 26, and thus denies them.

27.    JetBlue admits that it announced a tender offer for $30 per Spirit share on May 16, 2022, and urged Spirit shareholders to reject the proposed Frontier merger.  JetBlue further admits that Spirit publicly made statements partially referenced in Paragraph 27, but denies the allegations in the form alleged and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 27, including the chart referenced therein, and thus denies them.

28.    JetBlue admits that on several instances it revised its offer to purchase Spirit and that Spirit and Frontier terminated their proposed merger.  JetBlue otherwise denies the allegations in Paragraph 28.

29.    JetBlue admits that JetBlue and Spirit reached an agreement for JetBlue to acquire Spirit on July 28, 2022, the terms of which are reflected in the Agreement and Plan of Merger among JetBlue Airways Corporation, Sundown Acquisition Corp. and Spirit Airlines, Inc. dated

July 28, 2022, and that it currently plans to bring the "JetBlue Experience" to Spirit aircraft. JetBlue otherwise denies the allegations in Paragraph 29.

30.    Denied.

31.    To the extent Paragraph 31 states a legal conclusion, no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue otherwise denies the allegations in Paragraph 31.

32.    To the extent Paragraph 32 states a legal conclusion, no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue otherwise denies the allegations in Paragraph 32.

33.    To the extent Paragraph 33 states a legal conclusion, no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue admits that it provides non-stop service between Miami/Fort Lauderdale and Aguadilla, Puerto Rico, between Boston and Miami/Fort Lauderdale, and between Boston and San Juan.  JetBlue lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 33 regarding other airlines, and thus denies them.

34.    JetBlue admits that it competes with many airlines, including, at times, Spirit, and that upon closing of the proposed merger, Spirit and JetBlue will no longer be separate entities. JetBlue otherwise denies the allegations in Paragraph 34.

35.    JetBlue admits that competition in the airline industry is beneficial and that Spirit and JetBlue offer flights to and from Fort Lauderdale.  JetBlue denies the allegations referencing documents in the form alleged in Paragraph 35 and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 35.

36.     JetBlue admits that competition in the airline industry is valuable and admits that it has developed strategies to compete with Spirit and other airlines, including by offering low fares.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 36 and refers the Court to the underlying document that contains the language referenced therein. JetBlue otherwise denies the allegations in Paragraph 36.

37.     JetBlue admits that it competes with Spirit on routes touching Florida.  JetBlue denies the allegations referencing documents in the form alleged in Paragraph 37 and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 37.

38.     JetBlue denies the allegations referencing documents in the form alleged in Paragraph 38 and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 38.

39.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 39, and thus denies them.

40.     JetBlue admits some airlines have introduced unbundled fares.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 40, and thus denies them.

41.     JetBlue admits that it introduced certain unbundled fares as part of Fare Options 2.0.  JetBlue denies the allegations referencing documents in the form alleged in Paragraph 41 and refers the Court to the underlying documents that contain the language referenced therein. JetBlue otherwise denies the allegations in Paragraph 41.

42.     JetBlue admits that multiple airlines offer unbundled fares and that unbundled fares provide choices.  JetBlue otherwise denies the allegations in Paragraph 42.

43.     JetBlue admits that it competes in part on service.  JetBlue otherwise denies the allegations in Paragraph 43.

44.     JetBlue admits that one corporate incentive is to maximize profits and that competition can result in lower prices and better service.  To the extent Paragraph 44 otherwise states a legal conclusion, no response is required; if a response is deemed required, JetBlue denies the allegations.  JetBlue otherwise denies the allegations in Paragraph 44.

45.     Denied.

46.     JetBlue admits that it and other airlines file fares through ATPCO and it has utilized a form of data-scraping.  JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to other airlines in Paragraph 46, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 46.

47.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to other airlines in Paragraph 47, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 47.

48.     JetBlue admits it implemented a $10 fare increase on certain routes in May 2020; that it increased certain fares by $10 in or around April 2022; and that it has monitored other airlines' fares in the normal course of business.  JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to other airlines in Paragraph 48, and thus denies them.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 48 and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 48.

49.     Denied.

50.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations related to other airlines in Paragraph 50, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 50.

51.     JetBlue admits that it lowered fares on certain routes in or around March 2019 and that it cancelled certain fares in or around this time frame.  JetBlue otherwise denies the allegations in Paragraph 51.

52.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations as to other airlines in Paragraph 52, and thus denies them.  JetBlue otherwise denies the allegations in Paragraph 52.

53.     JetBlue lacks the knowledge or information sufficient to admit or deny the allegations as to other airlines in Paragraph 53, and thus denies them.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 53 and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 53.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     JetBlue admits that Spirit publicly made statements partially referenced in Paragraph 58, but denies the allegations in the form alleged and refers the Court to the underlying documents that contain the language referenced therein.  JetBlue lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 58, and thus denies them.

59.     Denied.

14

60.     JetBlue admits that it currently intends to retrofit some Spirit planes to match the layout of JetBlue aircraft.  JetBlue denies the allegations referencing a document in the form alleged in Paragraph 60 and refers the Court to the underlying document that contains the language referenced therein.  JetBlue otherwise denies the allegations in Paragraph 60.

61.     Paragraph 61 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

62.     JetBlue admits that air travel can save time and can be more efficient relative to other forms of travel.  The remainder of Paragraph 62 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

63.     Paragraph 63 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

64.     JetBlue admits that travelers' preferences differ; that certain fare structures may appeal to different travelers; and that advanced purchase requirements are a type of fare restriction.  The remainder of Paragraph 64 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

65.     Paragraph 65 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

66.     JetBlue admits that certain travelers may seek to depart from airports close to where they live or work and arrive at airports close to their destinations.  The remainder of Paragraph 66 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

67.     JetBlue admits that certain travelers may prefer one airport over another and admits that it may consider service from various airports in a particular metropolitan area in

setting price, depending on the circumstances.  JetBlue otherwise denies the allegations in Paragraph 67.

68.     Paragraph 68 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

69.     Paragraph 69 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

70.     Paragraph 70 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

71.     Paragraph 71 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

72.     Paragraph 72 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

73.     Paragraph 73 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

74.     JetBlue admits that it expects certain synergies and efficiencies as a result of the transaction but denies the characterization of them in Paragraph 74 and otherwise denies the allegations in Paragraph 74.

75.     Denied.

76.     Denied.

77.     Paragraph 77 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations.

78.     JetBlue admits that JetBlue and Spirit Airlines, Inc. each filed a pre-merger notification and report form with the U.S. Department of Justice and Federal Trade Commission on August 12, 2022.  JetBlue otherwise denies the allegations in Paragraph 78.

79.     JetBlue admits that it has committed to divest Spirit's holdings at Boston Logan International Airport, Newark Liberty International Airport, and LaGuardia Airport and five gates and related ground facilities at Fort Lauderdale-Hollywood International Airport.  JetBlue otherwise denies the allegations in Paragraph 79.

80.     Paragraph 80 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations, except JetBlue admits that this Court has subject-matter jurisdiction over this action.

81.     JetBlue admits the allegations in Paragraph 81 as they relate to JetBlue.  JetBlue lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 81 related to Spirit, and thus denies them.

82.     Paragraph 82 states a legal conclusion to which no response is required; if a response is deemed required, JetBlue denies the allegations, except JetBlue admits that the Court has personal jurisdiction over JetBlue, admits that venue is proper, and admits that it is a Delaware corporation headquartered in Long Island City, New York that transacts business through this judicial district.  JetBlue otherwise lacks the knowledge or information sufficient to admit or deny the allegations in Paragraph 82 related to Spirit, and thus denies them.

83.     JetBlue incorporates by reference its responses to the allegations in Paragraphs 1 through 82 as is set forth fully herein.

84.     Denied.

85.     Denied.

86.     JetBlue denies that Plaintiffs are entitled to any of the relief requested and requests that JetBlue be awarded the costs incurred in defending this action, as well as any and all other relief the Court may deem just and proper.

<center>**DEFENSES**</center>

JetBlue asserts the following separate and additional defenses, all of which are pleaded in the alternative, and none of which constitute an admission by JetBlue of any liability or wrongdoing, or that Plaintiffs are entitled to any relief whatsoever.  In asserting the following defenses, JetBlue does not assume any burden of proof, persuasion, or production with respect to any issue where the applicable law places the burden on Plaintiffs.  JetBlue reserves the right to amend this Answer to assert additional defenses when, and if, in the course of its investigation, discovery, preparation for trial, or otherwise it becomes appropriate to assert such defenses. JetBlue asserts the following defenses:

1.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs fail to state a relevant product or geographic market.

2.     Plaintiffs' claims are barred, in whole or in part, because the proposed acquisition will not lessen competition in any relevant market, particularly when accounting for divestitures.

3.     Plaintiffs' claims are barred, in whole or in part, because granting the relief sought is contrary to the public interest.

4.     The merger of JetBlue and Spirit will benefit consumers, such that the merger is in the public interest and pro-competitive.

5.     The combination of the Defendants' complementary networks will bring new routes online, increase the number and convenience of flights on existing routes,

<center>18</center>

grow capacity, increase competition with the Big Four airlines, and benefit consumers.  These consumer benefits, as well as the cost synergies and other efficiencies that will result from the merger, greatly outweigh any and all proffered anticompetitive effects.

6.     JetBlue hereby adopts and incorporates by reference any and all other defenses asserted or to be asserted by Spirit to the extent that JetBlue may share in such a defense.

7.     The foregoing defenses are raised by JetBlue without waiver of any other defenses that may become known during the discovery proceedings in this case or otherwise. JetBlue hereby reserves the right to amend or supplement its Answer to assert any other related defenses as they become available.

DATED: May 8, 2023

<div style="margin-left:50%">

_/s/  Richard F. Schwed_____

Richard F. Schwed (*Pro Hac Vice*)
Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY  10022-6069
Tel: 212-848-4000
Fax: 212-848-7179
rschwed@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Ryan Shores (*Pro Hac Vice*)
Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
ryan.shores@shearman.com
michael.mitchell@shearman.com
brian.hauser@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

Elizabeth M. Wright (MA BBO #569387)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899

</div>

eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document was filed through the ECF system and will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).


/s/ *Richard F. Schwed*

Richard F. Schwed (*Pro Hac Vice*)