# EXHIBIT B



**U.S. Department of Justice**

Antitrust Division

---

*Liberty Square Building*

*Maisie Baldwin*
*450 5th Street, N.W.*
*Washington, DC 20530*
*Phone: (202) 285-6458*
*Email: maisie.baldiwn@usdoj.gov*

March 30, 2023

**VIA EMAIL**
Southwest Airlines, Co.
c/o William Stallings
Mayer Brown LLP
1999 K Street NW
Washington, DC 20006-1101

Re:   **United States, et al. v. JetBlue Airways Corp., et al., Case No. 1:23-cv-10511 (D. Mass.)**

Dear William Stallings:

On behalf of the United States Department of Justice ("DOJ"), and pursuant to Federal Rule of Civil Procedure 45, enclosed please find a subpoena issued to Southwest Airlines Co. to produce documents and information in connection with the above referenced litigation. Thank you for agreeing to accept electronic service of the subpoena. The subpoena seeks documents and information responsive to the requests listed in Schedule A. As noted in the subpoena, the date for compliance is April 14, 2023.

Also enclosed is a copy of the Stipulated Protective Order that the Court entered on March 21, 2023 (ECF No. 66) ("Protective Order"), which governs the use and disclosure of confidential information, including information received from third parties, in the case. Please review the Protective Order prior to making any production and properly mark any confidential information in accordance with its terms.

The DOJ respectfully requests that Southwest Airlines Co. make its production in accordance with the instructions listed in Schedule A, including the format requirements listed in Appendix 1 thereto, and that all documents be Bates-stamped for identification.

Notwithstanding the request in the subpoena to produce all documents to the U.S. Attorney's Office, we would prefer you produce your response to the subpoena to the DOJ representatives and to the other parties to the litigation listed below.

| United States of America | Maisie Baldwin (maisie.baldwin@usdoj.gov) Arianna Markel (arianna.markel@usdoj.gov) Elizabeth Knight (elizabeth.knight@usdoj.gov) United States Department of Justice Antitrust Division |
|---|---|

| | |
|---|---|
| | 450 Fifth Street, NW, Suite 8000<br>Washington, DC 20530<br><br>Productions to the DOJ that are too large for email delivery should be made either by hand delivery or using DOJ's secure file transfer protocol, Justice Enterprise Filing System ("JEFS"). The undersigned DOJ attorney can facilitate JEFS access. |
| Commonwealth of Massachusetts | William T. Matlack (william.matlack@mass.gov)<br>Daniel H. Leff (daniel.leff@mass.gov)<br>Office of the Attorney General<br>One Ashburton Place, 18th Floor<br>Boston, MA 02108 |
| State of New York | Elinor R. Hoffmann (elinor.hoffmann@ag.ny.gov)<br>Morgan J. Feder (morgan.feder@ag.ny.gov)<br>Olga Kogan (olga.kogan@ag.ny.gov)<br>New York State Office of the Attorney General<br>28 Liberty Street, 20th Floor<br>New York, NY 10005 |
| District of Columbia | C. William Margrabe (will.margrabe@dc.gov)<br>Estefania Torres Paez (estefania.torrespaez@dc.gov)<br>Office of the Attorney General<br>400 6th Street, NW, Suite 10100<br>Washington, DC 20001 |
| Spirit Airlines, Inc. | Andrew C. Finch (afinch@paulweiss.com)<br>Jay Cohen (jaycohen@paulweiss.com)<br>Kate Wald (kwald@paulweiss.com)<br>Eyitayo St. Matthew-Daniel (Tstmatthewdaniel@paulweiss.com)<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br><br>Meredith Dearborn (mdearborn@paulweiss.com)<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>535 Mission Street, 24th Floor<br>San Francisco, CA 94105 |
| JetBlue Airways Corporation | Ryan Shores (ryan.shores@shearman.com)<br>Michael Mitchell (michael.mitchell@shearman.com)<br>Shearman & Sterling LLP<br>401 9th Street, NW, Suite 800<br>Washington, DC 20004<br><br>Jessica Delbaum (jessica.delbaum@shearman.com)<br>Richard F. Schwed (richard.schwed@shearman.com)<br>Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br><br>Rachel Mossman Zieminski (rachel.zieminski@shearman.com)<br>Shearman & Sterling LLP<br>2601 Olive St, 17th Floor<br>Dallas, TX 75201 |

|  | Elizabeth M. Wright (Ewright@cooley.com)<br>Cooley LLP<br>500 Boylston Street<br>Boston, MA 02116-3736 |

      Please let us know at your earliest convenience when you are available to meet and confer with us regarding Schedule A and the date and time for compliance.  Direct any questions regarding this subpoena to the undersigned counsel.

Very truly yours,

/s/ Maisie Baldwin

Trial Attorney

Enclosure

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Massachusetts

| | |
|---|---|
| United States of America, et al. | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   1:23-cv-10511-WGY |
| JetBlue Airways Corporation and Spirit Airlines, Inc. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                    Southwest Airlines Co.
                                2702 Love Field Drive, Dallas, TX 75235

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See attached Schedule A.

| Place: U.S. Attorney's Office<br>1100 Commerce Street, Third Floor<br>Dallas, TX 75242-1699 | Date and Time:<br><br>04/14/2023 12:00 pm |
|---|---|

❑ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      03/30/2023

|   *CLERK OF COURT*   | OR | |
|---|---|---|
| | | /s/ John M. Briggs |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
United States of America_____, who issues or requests this subpoena, are:
John M. Briggs, 450 Fifth St NW, Washington, DC 20530, john.briggs@usdoj.gov, (202) 676-6131

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:23-cv-10511-WGY

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows:  via electronic mail by

agreement with William Stallings _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date:     03/30/2023                             /s/ Maisie Baldwin
                                        _____
                                                *Server's signature*

                                               Maisie Baldwin
                                        _____
                                              *Printed name and title*
                                          U.S. Department of Justice
                                              Antitrust Division
                                        450 Fifth Street NW, Suite 8000
                                           Washington, DC 20530
                                        _____
                                                *Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A - RULE 45 SUBPOENA FOR THE PRODUCTION OF DOCUMENTS ISSUED TO SOUTHWEST AIRLINES CO.

If You believe that the requests in this Schedule A to the Subpoena can be narrowed in any way that is consistent with the United States of America's need for Documents and information, please discuss any questions or possible modifications with the Department of Justice representative(s) identified in the accompanying cover letter with the Subpoena.

Please produce the following:

1.      All Documents, data, and information requested in the subpoena issued to You by counsel for JetBlue and Spirit, not otherwise included in the below requests.

2.      All Documents, prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing the Transaction.

3.      All Documents, prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing consolidation in the domestic airline industry, network Capacity changes by other airlines, Capacity Discipline, industry Capacity or the impact of Capacity changes on airline or industry-wide fares, revenues, or profits.

4.      All Documents, prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing the Company's pricing and network planning strategies and processes, Including its use of the Airline Tariff Publishing Company (ATPCO) to gather information on or respond to other airlines' pricing or other business decisions.

5.      All Documents, prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing the Company's views of, or the actual or potential effects of, any actual or potential acquisitions, mergers, codeshare partnerships, joint ventures, or alliances involving JetBlue or Spirit and any other airline.

6.      All Documents, prepared by, presented to, or in the possession of an executive at

1

the Director level or above, Discussing the impact of Spirit, JetBlue, Allegiant, Avelo, Breeze, Frontier, or Sun Country to the Company's business, Including network-wide impacts and route-specific impacts.

7. All Documents, prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing the effects of changes in the scheduled airline passenger service on any route served by the Company, Including entry, changes in frequency of service, exit, or any other action Relating To changes in fares, cost structures, or other product service features.

8. Documents sufficient to the show the Company's training materials and guidelines for the following roles or functions: (i) network planning; (ii) Capacity planning; (iii) schedule management; (iv) pricing; (v) yield management; and (vi) revenue management.

9. Documents sufficient to show:

a. the types of aircraft currently in the Company's fleet, Including the number of each type of aircraft and the seat capacity of each type;

b. any orders or options held by the Company to purchase, lease, or acquire any aircraft;

c. the number and type of aircraft the Company Plans to add or remove from its fleet, separately for each calendar year from 2023 to 2027, and the seating capacity of each such aircraft;

d. the Company's current aircraft delivery schedules, Including delivery schedules for leased aircraft; and

e. the Company's current aircraft retirement schedules, Including termination or assignment for leased aircraft.

10. Produce passenger bookings and ancillary fee data, in the same format previously

produced to the Department of Justice in response to Civil Investigative Demand No. 31266, with an additional field for the passenger's home zip code.

11.     All Documents, Including reports, studies, or analyses, Including cross-price elasticity and catchment studies, Relating To travel to or from the U.S. Census Bureau combined statistical areas ("CSA") for New York-Newark (NY-NJ CSA), Washington-Baltimore-Arlington (DC-MD-VA-WV-PA CSA), and/or components therein.

12.     All Documents prepared by, presented to, or in the possession of an executive at the Director level or above, Discussing the Company's decision to begin offering Your "Wanna Get Away" fare option, from the time You first considered offering a "Wanna Get Away" fare option until You first began offering that option, even if prior to January 1, 2018.

13.     All Documents, prepared by or presented or in the possession of an executive at the Director level or above, Discussing the Company's pricing and inventory management strategies for Your "Wanna Get Away" fare option, Including: when a "Wanna Get Away" fare is made available on a particular route or flight, the volume of "Wanna Get Away" fares that are made available for purchase on a particular route or flight, and to what extent the availability of "Wanna Get Away" fares varies depending on the presence of, or fare products offered by the following airlines on a particular route: Spirit, JetBlue, Allegiant, Avelo, Breeze, Frontier, or Sun Country.

## DEFINITIONS

The terms defined below and used in each of the requests should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure and the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Massachusetts. As used herein, the following definitions and instructions apply:

1.      "**Allegiant**" means Allegiant Travel Company, its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Allegiant and any other Person.

2.      "**Avelo**" means Avelo Airlines, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Avelo and any other Person.

3.      "**Breeze**" means Breeze Aviation Group, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Breeze and any other Person.

4.      "**Capacity**" means seats and available seat miles at the route, airport, network, system-wide, or regional level.

5.      "**Capacity Discipline**" means airlines growing Capacity at a slower rate than they would have otherwise grown absent awareness of each other's Capacity Plans and accommodating and/or interdependent behavior.

6.      "**Communication**" has the meaning set forth in Local Rule 26.5(c)(1). For the avoidance of doubt, a "**Communication**" includes an inquiry, discussion, conference, conversation, negotiation, agreement, understanding, meeting, interview, letter, correspondence, note, presentation, advertisement, announcement, facsimile, electronic mail, text message, instant message, memorandum, writing, or other any other form of transmission of information, in either oral or written form.

7.      "**Discussing**" means analyzing, constituting, summarizing, reporting on, considering, recommending, setting forth, or describing a subject. Documents that contain reports, studies, forecasts, analyses, Plans, proposals, evaluations, recommendations, directives, procedures, policies, or guidelines regarding a subject should be treated as documents that discuss the subject. However, documents that merely mention or refer to a subject without further elaboration should not be treated as documents that discuss that subject.

8.      "**Document**" has the meaning set forth in Local Rule 26.5(c)(2). For the avoidance of doubt, "**Document**" includes electronically stored information, Including all electronic Communications (*e.g.*, emails and attachments, text messages, and instant messages), files, data, and databases. The term includes all metadata associated with that Document. A draft or nonidentical copy is a separate Document within the meaning of this term.

9.      "**Frontier**" means Frontier Group Holdings, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent,"

5

"subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Frontier and any other Person.

10. "**Including**" means including, but not limited to.

11. "**JetBlue**" means JetBlue Airways Corp., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between JetBlue and any other Person.

12. "**Person**" has the meaning set forth in Local Rule 26.5(c)(6). For the avoidance of doubt, "**Person**" includes JetBlue and Spirit, and it means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust. Any reference to a Person that is a business entity includes: that Person's predecessors (Including any pre-existing Person that at any time became part of that entity after a merger or acquisition), successors, parents, divisions, subsidiaries, affiliates, franchisors, and franchisees; each other Person that is directly or indirectly owned or controlled by any of them; each partnership or joint venture to which any of them is a party; all present and former directors, officers, employees, agents, attorneys, consultants, controlling shareholders (and any entity owned by any such controlling shareholder) of any of them; and any other Person acting for or on behalf of any of them.

13. "**Plan**" means a proposal, recommendation, or consideration, whether or not it has been finalized or adopted.

14. "**Relating To**" means referring to, concerning, mentioning, reflecting, pertaining to, evidencing, identifying, incorporating, summarizing, involving, describing, Discussing, commenting on, embodying, responding to, supporting, contradicting, containing, or constituting

(in whole or in part).

15.    "**Spirit**" means Spirit Airlines, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Spirit and any other Person.

16.    "**Sun Country**" means Sun Country Airline Holdings, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between Sun Country and any other Person.

17.    "**Transaction**" means JetBlue's proposed acquisition of Spirit, as set forth in the Agreement and Plan of Merger among JetBlue Airways Corporation, Sundown Acquisition Corp., and Spirit Airlines, Inc., dated July 28, 2022, as well as all prior actual and contemplated offers JetBlue made for Spirit, Including but not limited to, JetBlue offers and related extensions and amendments dated March 29, 2022, April 29, 2022, May 16, 2022, May 23, 2022, May 26, 2022, June 6, 2022, June 20, 2022, and June 30, 2022.

18.    "**You**," "**Your**," or "**the Company**," mean Southwest Airlines Co., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "parent," "subsidiary," "affiliate," and "joint venture" refer to any Person in which there is partial (25 percent or more) or total ownership or control between the Company and any other Person.

7

# INSTRUCTIONS

1.       In addition to the specific instructions below, this Subpoena incorporates the instructions set forth in Federal Rule of Civil Procedure 45 and the Local Rules of the District of Massachusetts.

2.       Unless otherwise specified, this Subpoena calls for Documents Relating To air passenger service, and not cargo service.

3.       Unless indicated separately in the request, these requests require the Company to produce all responsive Documents and data in the Company's possession, custody, or control that were created, received, or in effect from January 1, 2018 to the present and are continuing in nature. Produce responsive Documents and data as follows:

   a.       Pursuant to Fed. R. Civ. P. 45(e)(1)(A), Documents must be produced either (1) as found in the Company's files in the ordinary course of business (e.g., Documents that in their original condition were stapled, clipped, or otherwise fastened together, or maintained in separate file folders, shall be produced in such form), or (2) segregated as responsive to a specific request enumerated in these requests, with such specific request identified.

   b.       Produce hard copy Documents in hard copy form. You may submit photocopies (with color copies where necessary to interpret the Document) in lieu of original Documents, provided that the copies are true accurate and complete copies of the originals.

   c.       Any responsive Document that has been altered, Including by the addition of marginal notes, handwritten notes, underlining, date stamps, received stamps, or endorsed or filed stamps, and any draft, revision, modifications, or other version

of a responsive Document, is a responsive Document in its own right and must be produced.

d.     If any portion of any Document is responsive to any request, then the entire Document must be produced, Including all attachments and enclosures.

e.     Unless otherwise requested by Plaintiff, electronic Documents (e.g. email) and data shall be produced in electronic form only. All metadata of electronic Documents must also be produced. Electronic Documents and data shall be produced in the form of production specified in Appendix 1.

f.     Number consecutively all Documents that You produce, with a prefix identifying the name of the producing party. For each Document that You produce, indicate the Person from whose custody You produced the Document.

4.     If You are unable to respond fully to any Document request, or if You object in part to any Document request, produce Documents responsive to the remaining part of the request.

5.     If no Documents exist that are responsive to a particular request, state in writing that no responsive Documents exist.

6.     If any Document is withheld on an objection to any request, all Documents covered by that request but not subject to the objection should be produced.

7.     Before You prepare Documents or information for production in electronic form (for example, before You attempt to copy, for Your response to this Subpoena, Documents or information from an electronically stored source onto a disk or other electronic storage medium), contact a Department of Justice representative to explain the manner in which the Documents or information are stored, and the types of information that are available on the electronic source.

9

Department representatives must approve the format and production method for electronic data in advance of the submission by the Company of its response to this Subpoena.

8.      If the Company or its agent uses or intends to use software or technology to identify or eliminate potentially responsive Documents and information produced in response to this Subpoena, Including search terms, predictive coding, near de-duplication, de-duplication and email threading, identify in advance the search terms and method(s) to be used to conduct all or any part of the search.

9.      If You withhold any Document or part of any Document on the basis of privilege, please provide a privilege log consistent with Fed. R. Civ. P. 26(b)(5)(A). You may omit from the privilege log: Documents sent solely between counsel for the Company, Including in-house counsel acting solely in a legal capacity, and Documents authored by the Company's outside counsel that were not directly or indirectly furnished to any third party, such as internal law firm memoranda (if a privilege is applicable to such materials), unless such attachments are addressed and sent solely to counsel.

10.     The terms "any" means each and every.

11.     The terms "and" and "or" have both conjunctive and disjunctive meanings.

**Appendix 1**

ANTITRUST DIVISION
U.S. DEPARTMENT OF JUSTICE



STANDARD SPECIFICATIONS FOR
PRODUCTION OF ESI AND/OR HARD COPY AS
IMAGES AND TEXT
June 2019



Table of Contents

1    Introduction ......................................................................................................................3

2    Categories of Documents ................................................................................................3

   2.1    Email, Attachments, Text Messages, and Other Electronic Messages ............................3

      2.1.1    Attachments ......................................................................................................4

   2.2    Electronic Documents ......................................................................................................4

      2.2.1    Spreadsheets .....................................................................................................5

      2.2.2    Presentations .....................................................................................................5

      2.2.3    OneNote Files ...................................................................................................5

      2.2.4    Hidden Text .......................................................................................................5

      2.2.5    Embedded Files .................................................................................................5

      2.2.6    Image-Only Files ..............................................................................................5

      2.2.7    Proprietary File Types and Non-PC or Non-Windows Based Systems ..............5

      2.2.8    Archive File Types ............................................................................................5

      2.2.9    Processing Errors ..............................................................................................6

   2.3    Hard Copy Documents ......................................................................................................6

   2.4    Database Productions ........................................................................................................6

   2.5    Audio/Video Files and Digital Photos .............................................................................6

   2.6    Shared Resources ..............................................................................................................6

3    Time Zone .........................................................................................................................7

4    Deduplication ....................................................................................................................7

   4.1    Custodian Overlay File ....................................................................................................7

5    Document Control Numbering .........................................................................................8

6    Privilege Designations ......................................................................................................8

7    Production of Translations ...............................................................................................8

   7.1    Numbering Scheme of Translated Records ......................................................................9

   7.2    Metadata Fields – Translation and Foreign Language Records ........................................9

   7.3    Translation Full Text and Images ...................................................................................10

8    Sample Production ..........................................................................................................10

9    Load File Set/Volume Configuration .............................................................................10

10    Deliverables ...................................................................................................................11

11      Zip File Table of Contents ......................................................................12

Appendix 1: Image and Text File Specifications, and Load File Configuration ...........13

    Image/Native File Specifications..............................................................13

    Searchable Text File Specifications ...........................................................13

    Control List File Configuration ...............................................................14

    Metadata Load File Delimiters and Configuration ......................................14

    Opticon Image Load File (.opt) Configuration ...........................................14

    Custodian Overlay File Configuration ......................................................15

    Translation Overlay File Configuration ....................................................15

Appendix 2: Table of Requested Fields .........................................................16

Appendix 3: Checks to Make to Ensure Proper Delivery to DOJ Antitrust ...............20

    Labeling and Organization...................................................................20

    Custodial Information .........................................................................20

    Field Consistency Checks ....................................................................20

    File Consistency Checks ......................................................................20

    Translation Checks ...........................................................................21

Appendix 4: Sample Submission Index.........................................................22

# 1   Introduction

This document describes the standard specifications and procedures for making an image-based production to the Antitrust Division in the form of Unicode (UTF-8) formatted load files.

- To ensure the efficient processing and review of any electronic production, Division legal, economic, and technical staff need to resolve the details with you prior to production, and preferably before you or your vendor begin to gather and process responsive documents.
- Care must be taken to ensure that all responsive data, metadata, and custodian information are preserved in the collection process.
- Proper identification of custodian collections is critical. Custodians may be individuals or they may be shared resources, such as a server share used in common by the members of a department or group.

Production of server based, corporate database application files such as SQL or SAP, or data sets extracted from them, is not addressed in these specifications and must be discussed separately with the appropriate Division legal, economic, and technical staff to determine the optimal production format.

These fall outside the scope of an image-based production and must not be comingled with image-based productions.

# 2   Categories of Documents

Discussion regarding the details of an electronic production should focus on these categories of documents: emails and their attachments, other electronic messages (*e.g.,* instant messaging, text messages and chats), other electronic documents, hard copy documents, databases, audio and video data, foreign-language materials, and shared resources (e.g. network directories, SharePoint). General requirements for each category of document are outlined below. For descriptions of document-specific metadata and globally populated identifying information (bibliographic) fields, please refer to Appendix 2: Table of Requested Fields.

## 2.1   Email, Attachments, Text Messages, and Other Electronic Messages

Email and other electronic messages such as text messages, chats, and instant messages (IMs) must be produced as image files with related searchable text, metadata and bibliographic information. Depending on how the company's systems represent names in email messages, IMs or text messages, we may require a table of names or contact lists from custodians.

Each instant message (IM), text message, including component messages of chat conversations, should be produced as a separate record. Attachments, if any, will also be produced as separate records. The parent texts and attachments will be linked with BEGATTACH and ENDATTACH entries. Text or chat conversations are to be treated as separate thread groups linked with TXT-THREAD-GROUP entries. The entire conversation must be maintained as a single group. See the "IMs, Texts, Chats" fields outlined in Appendix 2: Table of Requested Fields for field

descriptions.

Email repositories, also known as email databases (*e.g.*, Outlook .PST, Lotus .NSF), can contain a variety of items, including messages, calendars, contacts, tasks, etc. For purposes of production, responsive items must include the "Email", "Other ESI", or "Calendar Items" fields outlined in Appendix 2: Table of

Requested Fields, from mail, calendar, contacts, tasks, notes, etc. and attached files with the family relationship preserved. Similar items found and collected outside an email repository (*e.g.*, .MSG, .EML, .HTM, .MHT) must be produced in the same manner.

2.1.1    Attachments

   g.  Inline or floating graphic objects present in emails and other documents such as Excel, Word documents, logos, backgrounds, and social media icons must remain as part of the document and not be extracted as separate attached documents.

Pay special attention to the BEGATTACH, ENDATTACH and TXT-THREAD-GROUP fields, which are used to track document groupings. The BEGATTACH and ENDATTACH fields are used to track document family groups. The TXT-THREAD-GROUP field is used to track chats or conversations in text and instant message groups. While the examples below relates to email and text families, all attachment relationships for all responsive documents are to be produced in this format.

EXAMPLE 1: ABC-00000001 a 10-page parent email, with records ABC-00000011 to ABC-00000015, ABC- 00000016 to ABC-00000020, and ABC-00000021 to ABC-00000025 as its attachments. Fields must be populated exactly as follows:

| DOCID | ENDDOC | BEGATTACH | ENDATTACH |
|---|---|---|---|
| ABC-00000001 | ABC-00000010 | ABC-00000001 | ABC-00000025 |
| ABC-00000011 | ABC-00000015 | ABC-00000001 | ABC-00000025 |
| ABC-00000016 | ABC-00000020 | ABC-00000001 | ABC-00000025 |
| ABC-00000021 | ABC-00000025 | ABC-00000001 | ABC-00000025 |

EXAMPLE 2: XYZ-00002139 a text message with records XYZ-00002140 and XYZ-00002141 attached, which is part of a chat beginning on XYZ-0002125. All texts and attachments in this chat must contain XYZ-0002125 in the TXT-THREAD-GROUP field. Fields must be populated exactly as follows:

| DOCID | ENDDOC | BEGATTACH | ENDATTACH | TXT-THREAD-GROUP |
|---|---|---|---|---|
| XYZ-00002139 | XYZ-00002139 | XYZ-00002139 | XYZ-00002141 | XYZ-00002125 |
| XYZ-00002140 | XYZ-00002140 | XYZ-00002139 | XYZ-00002141 | XYZ-00002125 |
| XYZ-00002141 | XYZ-00002141 | XYZ-00002139 | XYZ-00002141 | XYZ-00002125 |

2.2    Electronic Documents

Electronic documents include word-processing documents, spreadsheets, presentations, and all other electronic documents not specifically discussed elsewhere. Production of these items must include image files with related searchable text, metadata, and bibliographic information. *All*

*passwords and encryption must be removed from all electronic documents prior to or during processing for production.* The Division will require that any electronic documents with passwords or encryption be replaced (metadata, images, extracted text and linked natives), which may affect the timing of the company's compliance with the production request. This includes administrative/internal passwords contained in Adobe files or Microsoft Office files. Where linked native files are required, the name of the linked file must match the DOCID with the appropriate file extension.

Please note the following sections apply both to files attached to emails or other items and to loose native files.

2.2.1    Spreadsheets

Spreadsheets must be produced in native format (*e.g.*, as .XLSX files), with searchable text for the entire document, metadata, and bibliographic information. **Provide a single image of the first page of the spreadsheet or provide a single placeholder image. Do not provide images for all pages of the spreadsheet. The placeholder image must contain at a minimum the DOCID, FILENAME, and FILEPATH.** The document control number range for a spreadsheet must be a single number (*e.g.*, ABC-00000001 – ABC-00000001).

2.2.2    Presentations

Presentations must be produced in full slide image format along with speaker notes (which should follow the full images of the slides) with related searchable text, metadata, bibliographic information and linked native file. Presentations must also be produced in native format (*e.g.*, as .PPTX files).

2.2.3    OneNote Files

OneNote files must be produced in native format (e.g. as .ONE files) with related extracted text for the entire notebook, metadata, bibliographic information, and images.

2.2.4    Hidden Text

All hidden text (*e.g.*, track changes, hidden columns, hidden rows, hidden slides, hidden worksheets, mark-ups, notes) shall be expanded and rendered in the extracted text file. For files that cannot be expanded, linked native files shall be produced in addition to extracted text and images.

2.2.5    Embedded Files

For purposes of production all embedded objects or inline images (e.g. Excel, Word, logos, social media icons) shall remain embedded as part of the original source document and not be extracted as an attached separate document. Hyperlinked files must be produced as separate, attached documents upon request. Any embedded objects that cannot be rendered to images and extracted text (*e.g.,* .WAV, .AVI, .MPG files) must be produced as separate extracted files with linked native files and placeholder images and be treated as attachments to the original file.

2.2.6    Image-Only Files

All image-only files, non-searchable .PDFs, multi-page TIFFs, Snipping Tool screenshots, etc., as well as all other image types that contain text, shall be produced with associated OCR text, metadata, and bibliographic information.

2.2.7    Proprietary File Types and Non-PC or Non-Windows Based Systems

Proprietary file types, such as those generated by financial or graphic design software, must be discussed with the Division in advance of production to determine the optimal format of production.

File types from non-PC or non-Windows based systems (*e.g.,* iOS, UNIX, LINUX systems), must also be discussed with the Division in advance of production to determine the optimal format of production.

## 2.2.8   Archive File Types

Archive file types (*e.g.,* .ZIP, .RAR) must be uncompressed for processing. Each file contained within an archive file should be produced as part of a family with all other files contained in the archive. If the archive file is itself an attachment, each file contained within it must be attached to the parent. If possible a separate record should be produced for the archive file itself with no linked native file.

### 2.2.9    Processing Errors

When uncorrectable processing errors result in placeholder images, provide as much metadata, extracted text, and bibliographic information as is possible and add an entry of "Placeholder" to the EPROPERTIES field. Placeholder images for processing errors must contain at a minimum an error type notation and the DOCID, FILENAME, and FILEPATH fields.

### 2.3    Hard Copy Documents

Hard copy documents must be produced electronically and must be properly unitized, and any file folder or binder label information must be preserved and produced. Multi-page documents must be produced as single records, not as several single-page documents. All marginalia and highlighting must be visible on the images which may require scanning in color for those pages. All other pages should be produced as black-and-white image files, with related searchable OCR text and bibliographic information. Where color is required to interpret the document, such as in certain charts, that image must be produced in color. You must preserve all marginalia and highlighting, which may require scanning in color. These color images are to be produced in .JPG format. Hard copy photographs must be produced as color .JPG format files, if originally in color, or black-and-white .TIF files if originally in black-and-white. Do not produce color images as TIFFs or PDFs.

### 2.4    Database Productions

Production of server based, corporate database application files such as SQL or SAP, or data sets extracted from them, is not addressed in these specifications and must be discussed separately with the appropriate government legal, economic, and technical staff to determine the optimal production format. These fall outside the scope of an image-based production and must not be comingled with image-based productions.

Personal, desktop databases (e.g. MS Access) or data sets must be produced as a single placeholder image, extracted text, and linked native unless withheld for reasons of privilege. **The placeholder image must contain at a minimum the DOCID, FILENAME, and FILEPATH.** The document control number range must be a single number (*e.g.*, ABC- 00000039 – ABC-00000039).

### 2.5    Audio/Video Files and Digital Photos

Any file types that cannot be rendered to images and extracted text (*e.g.,* .WAV, .AVI, .MPG files) must be produced as separate records with linked native files in a format playable by Windows Media Player with placeholder images.

Digital photos are to be produced as single-page .JPG files with a resolution equivalent to the original photo with associated metadata fields.

Production of audio files created from telephone call recording systems must be produced according to the specifications in the Division's Standard Specifications for the Production of Recorded Telephone Calls, available upon request.

### 2.6    Shared Resources

Each shared resource must be produced as a separate custodian if responsive custodians have

access to it or if the shared resource contains responsive documents. The name of the group having access would be used as the custodian name, *i.e.* Marketing Drive or Accounting Dept. Directory. The company will

separately provide a brief description of each shared resource that includes a list of the custodians who have access to that shared resource.

## 3   Time Zone

Time zones for all documents should be represented by the local time normally utilized by the custodian(s) from whom the documents were collected. Do not standardize to a single time zone during processing. Ensure that dates and times visible on the images match the dates and times provided in the metadata.

## 4   Deduplication

Before starting any deduplication, provide the Division with a written description of the proposed method for deduplication, including a listing of the specific metadata compiled to generate the hash code for email families, the hash code type, and what is considered a duplicate. The Division must approve your approach prior to your proceeding. The approved methodology cannot be altered during the investigation or litigation, including the hash code type and specific metadata used.

The Division does not allow deduplication of hard copy documents, that of "loose" electronic documents (*e.g.,* presentation slides located on the custodian's C: drive) against email attachment versions of those same documents, or that of email attachments in one family against attachments in another family. All document family groups (e.g. email attachments, embedded files) must be produced together except as limited by any claim of privilege and child files should follow parent files sequentially in document control numbering. Deduplication should occur both vertically within each custodian and horizontally across custodians. Deduplication must be done in a way that preserves and produces information on blind copy (BCC) recipients of emails and other custodians whose files contain the duplicates that will be eliminated from the production as well as original file path and mailbox folder information.

These specifications do not allow for near deduplication or email threading. Deduplication and threading must be discussed separately with the Division and written consent obtained <u>prior</u> to the use of such techniques for production.

### 4.1   Custodian Overlay File

A Custodian Overlay file is to be produced when deduplicating ACROSS custodians (*i.e.,* horizontal deduplication) and data is deduplicated on a rolling basis. The file must be provided **starting with the second submission** as additional, newly deduplicated custodians are discovered for previously produced documents.

The Custodian Overlay file is a four-field delimited file consisting of the DOCID of the previously delivered document, the ALLCUSTODIANS field containing the names of newly identified custodians for the record, the newly identified FILEPATH field entries prepended with custodian name, and the newly identified FOLDERLABEL field entries prepended with custodian name for all duplicates of those records that would otherwise have been produced in the subsequent (new) submissions.

If collection and deduplication are completed prior to the first submission do not deliver separate Custodian Overlay files. All custodian names, file and folder information should be provided in the appropriate metadata fields. Each FILEPATH and FOLDERLABEL entry should be prepended with a recognizable version of custodian name from whom it was collected.

5    Document Control Numbering

Document control numbers must be uniquely and sequentially numbered across the entire production, with an endorsement burned into each image. Each document control number shall be of a consistent length, include leading zeros in the number, and be unique for each produced page. Document control numbers must contain no more than two segments separated by a hyphen. The leading segment must be the company identifier, followed by a sequential page counter separated by a hyphen (e.g., ABCCO- 00000001 or ABCCO-00000001). The structure of the document control number and the number of digits in the numeric page counter must not change in subsequent productions, nor should separators be added or deleted.

> h.    <u>Under no circumstances</u> will document control numbers contain embedded spaces, slashes (/), backslashes (\), carats (^), underscores (_), ampersands (&), hash marks (#), plus signs (+), percent signs (%), dollar signs ($), exclamation marks (!), pipes (|), periods (.), any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention (,\ / : * ? " < > | ~ @ ^). Note this also applies to any suffixes appended to document control numbers; suffixes should also be set off with the hyphen (-) character and be of a uniform number of digits.

6    Privilege Designations

Each document withheld pursuant to any claim of privilege must be represented by a record with an entry of "Privileged" in the EPROPERTIES field in addition to any other appropriate EPROPERTIES entries. The record will include the globally applied identifying information fields (COMPANIES, CUSTODIAN, ALLCUSTODIANS, MEDIAID, VOLUMENAME, and TIMEZONE) as well as non-privileged metadata fields. A single placeholder image with DOCID, FILENAME, FILEPATH and reason withheld (*e.g.,* "Privileged") must also be provided in place of the document images of each privileged document.

All documents that are part of a document family that includes a document withheld pursuant to any claim of privilege will be designated "Family Member of Priv Doc" in the EPROPERTIES field as described in Appendix 2: Table of Requested Fields.

All documents redacted pursuant to any claim of privilege will also be designated "Redacted" in the EPROPERTIES field as described in Appendix 2: Table of Requested Fields. Appropriately redacted searchable text (OCR of the redacted images is acceptable), metadata, and bibliographic information must also be provided.

7    Production of Translations

Productions of translations of foreign-language documents to the Division must be made according to the following specifications, subject to discussion or other agreement with Division attorneys and Litigation Support staff.

- Translations will be reasonably accurate renderings of the original document into the English language.

- Translations are to be produced as separate complete document records.
  - Translation records are to be produced as part of the family grouping of the foreign- language original.

- o If the foreign-language original is not part of a family grouping, the translation and the foreign-language original are to be treated as a family.
- Quality control measures will be in place to identify and correct systemic or otherwise obvious problems with translation, including:
  - o Document formatting and legibility,
  - o Translation of words and phrases with respect to the context in which they are commonly used in the production, and
  - o Translation of dialect, slang, or other non-standard usage that occurs regularly in the production.
- When incomplete or incomprehensible translations are identified by the Division, every effort will be made to produce a corrected translation within a reasonable time frame.
- Before making the first electronic production installment of translated materials, a sample of 25-50 records will be produced that demonstrates proper treatment of translated records, including metadata, images, and full text. The sample will include representative specimens of all types of translated documents to be produced.
- English language translations of previously produced documents should be produced in a separate volume and not be comingled with other production documents. An overlay file may be necessary if the foreign-language original is not part of a family grouping.

Documents that typically have more complex graphical layouts than those of narrative text documents and/or that require review in the native application for information or context (e.g., PowerPoint presentations, Excel spreadsheets) should be produced as a complete translated native record that includes metadata, full text, and imaged versions of the translated native document and a linked translated native file.

## 7.1   Numbering Scheme of Translated Records

The DOCID field of the translated document record should be populated with the DOCID number of the original document, suffixed with "-T001". In the event that a translation exceeds a single page, the suffixed numbers should increment by 1 for each page.

For example, if a 2-page foreign-language document (ABC-0012344 to ABC-0012345) results in a 3-page translation record, the relevant document control numbers would be: ABC-0012344-T001 (translation page 1), ABC-0012344-T002 (translation page 2), and ABC-0012344-T003 (translation page 3).

## 7.2   Metadata Fields – Translation and Foreign Language Records

- **Translation Record** – The metadata fields for the translation record (including BEGATTACH and ENDATTACH) should be populated identically to the metadata fields associated with the foreign-language document, except as follows:
  - o The EPROPERTIES field value(s) required (e.g., record type, privilege designations) should be supplemented with the additional notation "Translation".
- **Foreign-language Record** - The metadata fields for the foreign-language document should be supplemented as follows:

- The EPROPERTIES field must include the notation of "Translated" in addition to other relevant values (e.g., record type, privilege designations).
- **Translation Overlay File -** If the translations are not produced concurrently with the original foreign-language documents, a separate overlay file to update the metadata of the previously

loaded records that were not part of family groups must accompany the metadata load files for the translations. The overlay file must include values for the DOCID, BEGATTACH, ENDATTACH and EPROPERTIES fields for all updated records. The fields in the Translation Overlay file would be populated as follows to replace the BEGATTACH, ENDATTACH, and EPROPERTIES field contents for the previously delivered foreign-language record ABC-0021464:

| | DOCID | BEGATTACH | ENDATTACH | EPROPERTIES |
|---|---|---|---|---|
| **Overlay File Fields** | ABC-0021464 | ABC-0021464 | ABC-0021465 | Edoc; Translated |

## 7.3   Translation Full Text and Images

Full text files and images should be produced for all translation records in accordance with Appendix 1: *Image and Text File Specifications & Load File Configuration* requirements.

The formatting of the full text of the translation will not make use of characters that require special control-codes or that otherwise are not part of the standard character set.

The formatting of the full text and images of the translation will correspond to the formatting of the original foreign-language document to the extent that is technically feasible, and also to the extent necessary for text in the translation to be readily located within the original document. If it is not technically feasible, every effort will be made in consultation with the Division representatives to provide the necessary context to understand the translation.

## 8   Sample Production

Before beginning production, a sample of actual production documents from several different custodians covering files of all types, including emails with attachments, loose files including spreadsheets and presentations, redacted documents, documents withheld for privilege, translations, etc., must be provided to the Division. The sample size must be between 500 to 1000 records to be large enough to be representative and small enough to review quickly. The delivery media and transmittal documents must be clearly labeled as a sample production. The Division will take a few business days to evaluate the sample and provide feedback. If there are any problems, corrected samples will need to be resubmitted until the Division can confirm the problems are resolved. Please understand that productions prepared prior to Division approval of the sample may have to be corrected and resubmitted.

## 9   Load File Set/Volume Configuration

To assist in tracking, each piece of production media must have a unique MEDIAID assigned to it. **The MEDIAID and production date must also appear on the physical label on the media.** The MEDIAID naming scheme must start with a 2 or 3 letter prefix identifying the company followed by a 3-digit counter (*e.g.,* ABC001). The MEDIAID must increase sequentially across all subsequent productions.

Each separate volume on the delivery medium must also have a separate VOLUMENAME associated with it. On the root of the media, the top level folder(s) must be named for the volume(s).

VOLUMENAME(s) must also be indicated on the physical label of the media. The volume naming scheme must be based on the MEDIAID name followed by a hyphen, followed by a 3-digit counter (*e.g.*, ABC001-

01).  Load file volumes should be as large as practical but not contain more than 200,000 records each. The VOLUMENAME must increase sequentially on the same MEDIAID.

Under each VOLUMENAME folder, the production must be organized in 4 subfolders:

- <u>DOCLINK</u> - contains linked native files, may contain subfolders, with no more than 10,000 files per folder.
- <u>FULLTEXT</u> - may contain subfolders, with no more than 10,000 document-level text files per folder.
- <u>IMAGES</u> - may contain subfolders, with no more than 10,000 image files per folder.
- <u>LOADFILES</u> - must contain the metadata, OPT, LST, Custodian Overlay, and Translation Overlay files. All load file names begin with the VolumeName (*e.g.*, ABC001-001.LST, ABC001-001.OPT, ABC001-001-Custodian.TXT, ABC001-001-Translation.TXT, ABC001-001.TXT).

See Appendix 1: Image and Text File Specifications, and Load File Configuration for detailed configuration/formatting requirements for linked native files, image files, full text files, control list files, metadata load files, image load files, and overlay files. See Appendix 2: Table of Requested Fields for field definitions and required formats. Careful review of these sections and Appendix 3: Checks to Make to Ensure Proper Delivery to DOJ Antitrust will prevent commonly occurring problems with productions.

## 10  Deliverables

The Division accepts electronic productions loaded onto hard drives, thumb drives, CD-ROMs, or DVD- ROMs. The session must be closed when delivering on optical media (CDs/DVDs). Where the size of the production exceeds the capacity of a single DVD-ROM, hard drives must be used as the delivery medium. For each piece of media a unique identifier (MEDIAID) must be provided and must also be physically visible *on the exterior* of the physical item, including thumb drives.

    i.    The Division does not accept productions via email or those that are posted on download sites (*e.g.,* FTP, secure server). Please note that productions sent via United States Postal Service are subject to mail irradiation, and as a result will be delayed and possibly damaged.

A submission index must be delivered with each submission and must provide statistical information about the volume(s) and media produced. Loaded totals are compared to the submission index totals to confirm that all data in the production was loaded. **Provide this electronically on the deliverable media and attach electronically to the delivery notification or password email**. A sample submission index spreadsheet is included in the sample load files ZIP file (ATR Sample Submission Index Spreadsheet – 2018.xlsx).

All productions must be accompanied by a transmittal letter, as well as a copy of the submission index. The transmittal letter shall indicate: 1) the name of the matter in which it is produced, 2) the production date, 3) The MediaID numbers being produced, 4) the document control number range of the materials on each piece of production media, and 5) the name of the producing party.

It is expected that all productions will conform to the format of the final, approved sample production. Any changes to production procedures that alter output format will require prior submission of another sample production as outlined above in section 8. Sample Production.

If the media is encrypted, please supply the tool for decryption with the media, as well as instructions for decryption. A separate email must be sent with the password to decrypt.

All produced files must be scanned for, and free of, viruses. The Division will return any infected media for replacement, which may affect the timing of the company's compliance with the production request.

All password protection or encryption must be removed from the individual linked native files prior to production. Replacement of password protected or encrypted linked native files may affect the timing of the company's compliance with the production request.

The Division recognizes that occasionally unforeseen issues will arise that require replacing documents or data from a previously delivered production with new documents or corrected data. Substantive corrections may require the reproduction of the entire production volume. The production format for all corrections must be agreed upon prior to any submission of corrections. Any productions that have been created but not delivered when the need for corrections is detected must be corrected prior to delivery.

Any replacement production media will cross-reference the original MEDIAID and clearly identify that it is a replacement. The cover letter must state the reason for the replacement and must also reference the document control number range and VolumeName being replaced. Replacement productions cannot be comingled with new production records.

In the event that corrections alter the statistical information previously reported in the submission index, an updated submission index spreadsheet with the corrected final statistical information must accompany each replacement or corrected submission. **Provide this electronically on the deliverable media and attach electronically to the delivery notification or password email**.

## 11   Zip File Table of Contents

The attached zip file (ATR-2019-Specifications.zip) contains this document and a sample load file set following the guidelines set forth above.

- ATR-Sample-Submission-Index-Spreadsheet-2019.xlsx: Template file for providing statistics associated with each submission.
- ATR-Sample-Images.opt: Sample format for the image load file, an Opticon image link file.
- ATR-Sample-Control-List.LST: Sample control list for loading the full text, either extracted or OCR.
- ATR-Sample-Custodian-Overlay.txt: Sample overlay file for updating ALLCUSTODIANS, FILEPATH, and FOLDERLABEL field entries. If collection and deduplication are completed prior to the first submission do not deliver separate Custodian Overlay files. All custodian names, file path and folder information should be provided in the appropriate metadata fields. Provide on a rolling basis **starting with the second submission** if Custodian Overlay files are required and **only for the records with additional** custodian information for newly deduplicated records.
- ATR-Sample-Metadata.txt: Sample delimited text metadata load file.

14. Appendix 1: Image and Text File Specifications, and Load File Configuration

   a.   Image/Native File Specifications

   - Black and white images must be 300 DPI Group IV Single-Page TIFFs.
   - Color images must be provided in single page .JPG format.
     o   Do not provide color TIFFs instead of .JPG format.
   - Image file names should match the page identifier for that specific image and end with the .TIF or .JPG extension. Example: ACME-0003072.TIF
     o   Page identifiers are to be endorsed in the lower right corner of each image.
   - File and folder names must not contain spaces, commas, underscores, ampersands, slashes, back slashes, hash marks, plus signs, percent signs, exclamation marks, periods other than prior to the file extension, any character used as a delimiter in the metadata load files, or any character not allowed in Windows file-naming convention ( , _ & \ / # + % ! : * ? “ < > | ~ @ ^ ).
     o   Note this also applies when any suffixes have been appended to document control numbers; suffixes should be set off with the hyphen (-) character.
   - Images for a given document must reside together in the same folder.
   - The maximum number of image files should be limited to 10,000 per folder.
   - Native file names must match the document control number for that specific record and end with the appropriate file extension.
   - The maximum number of native files in a subfolder should be limited to 10,000 per folder.
   - Any encryption or password protection must be removed from all native format files produced.
     o   Remove any administrative/internal passwords contained in Adobe files or Microsoft Office files.
   - Redactions must be marked with the word "Redacted" in the searchable text, on the image, and in the EPROPERTIES field.
   - Dates and times appearing on images must match dates and times provided in the metadata.

   b.   Searchable Text File Specifications

   - Complete extracted text should be provided with all records, except for documents that originated as hard copy or redacted documents.
     o   For hard copy documents, provide OCR text.
     o   For redacted documents, provide OCR text for the redacted version with the redacted portion(s) marked "Redacted".
   - There should be a single extracted/OCR text file per document.
     o   The UTF-8 Unicode character set should be used for all extracted/OCR text files in a production.
     o   Use consistent carriage return and line feed (CRLF) delimiters for end of line markers in all extracted/OCR text files in a production.
     o   Do not include extracted/OCR text as a field in the metadata load file.
   - Extracted text of email and other electronic messages such as text messages, chats, and instant messages must include all From, DateSent, To, and Subject heading information not just the body of the message.
     o   Dates and times must match dates and times provided in the metadata.
   - The name of the text file must be the same as the document's first page/document control number, with a .TXT extension: DOCID.TXT.

- Redactions must be marked with the word "Redacted" in the searchable text, on the image, and in the EPROPERTIES field.
- Place text files under the "FULLTEXT" subdirectory for the Volume and provide a Control List file for loading in the "LOADFILES" subdirectory for the Volume on the delivery media.

c.  Control List File Configuration

- The name of the file is VOLUMENAME.LST.
- The file consists of two fields without a header row: DOCID and the full path to the extracted/OCR text as it exists on the delivery media. The fields are separated by a single comma (,).
- Example control list entries:
  ACME-0003072,D:\ACM001-001\FULLTEXT\ACME-0003072.TXT              ACME-0003076,D:\ACM001-001\FULLTEXT\ACME-0003076.TXT              ACME-0003081,D:\ACM001-001\FULLTEXT\ACME-0003081.TXT

d.  Metadata Load File Delimiters and Configuration

A document level delimited file containing a row for each document and a header row. Each row will contain all requested fields whether or not data exists.

- The name of the file is VOLUMENAME-Metadata.TXT
- Field Separator                    non-printable ASCII character 020
- Text Qualifier                    þ        (ASCII 254)
- Substitute Carriage Return or New Line in data   ®   (ASCII 174)
- Multi-value separator  (followed by a space)  ;        (ASCII 059)
- Date-time format        MM/DD/YYYY HH:MM:SS in 24-hour format (*e.g.*, 04:32 pm formatted to 16:32:00 – Do not include AM, PM, or time zone indicators).
  o   If date is missing but time is available populate date with "00/00/0000"
  o   If time is missing but date is available leave the time segment blank
  o   If both date and time are missing leave the field blank
- The first row of each metadata load file should be a header row containing the field names. Field names must match Division requested field names.
- There should be one line for every record in the load file. A carriage return and line feed (CRLF) must appear at the end of each record and ONLY at the end of each record.
- Field order must remain consistent in subsequent productions.

e.  Opticon Image Load File (.opt) Configuration

Page level comma-delimited file containing seven fields per line without a header row: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, and PageCount.

- The name of the file is VOLUMENAME.OPT.
- PageID – Page or Image ID of the image being loaded. MUST be identical to the image name without the file extension.
- VolumeLabel – Optional. If not left blank, the preferred value is the VOLUMENAME assigned in the corresponding metadata load file.
- ImageFilePath – The path to the image from the root of the delivery media.
- DocumentBreak – The letter "Y" denotes the first page of a document. If this field is

blank the page is not the first page of a document.
- FolderBreak – Leave empty
- BoxBreak – Leave empty

- PageCount – Optional
- Example entry: ABC-00030005, ,\ABC002-005\Images\001\ ABC-00030005.tif,Y,,,
- There should be one line for every record in the load file. There is no header row.

f.  Custodian Overlay File Configuration

Document level delimited file containing 4 fields per line with a header row; DOCID of the previously delivered document, and for each newly deduplicated record the ALLCUSTODIANS, FILEPATH, and FOLDERLABLE entries to be appended to the record. FILEPATH and FOLDERLABEL entries are prepended with a recognizable version of the name of the Custodian from which they were collected. Use the same delimiters as requested for the Metadata Load File. If collection and deduplication were completed prior to the first submission do not deliver separate Custodian Overlay files.

- The name of the file is Volumename-CustodianOverlay.TXT.
- DOCID – Beginning document control number of previously delivered document to be updated with additional Custodian names in the ALLCUSTODIANS field.
- ALLCUSTODIANS – Names of all custodians in whose collections any newly identified duplicate records were found (separating any following entries with semicolons).
- FILEPATH – The filepath to the native files as they existed in the original environment with the custodian's names prepended. For example, custodian Sally Jenkins' filepath entry would be: Jenkins, Sally-C\Documents and Settings\Application Data\Excel\ (separating any following entries with semicolons).
- FOLDERLABEL – The email folder path(s) as it existed in the original environment with the custodian name prepended. Example for Custodian Ned Kelly the folder entry would be: Kelly, Ned-Inbox\Contract Negotiations\Drafts\ (separating any following entries with semicolons).
- The first row of each file should be a header row containing the field names. Field names must match Division requested field names.
- There should be one line for every record in the load file.

g.  Translation Overlay File Configuration

Document level delimited file containing 4 fields per line with a header row; DOCID of the previously delivered foreign-language record to be updated with translation information, created BEGATTACH, created ENDATTACH, and all pre-existing EPROPERTIES entries supplemented with the translation designation. Use the same delimiters as requested for the Metadata Load File.

- The name of the file is Volumename-translation.txt.
- DOCID – Beginning document control number of the translated foreign-language record to be updated with translation information.
- BEGATTACH – The BEGATTACH field value of the translated foreign-language record when that record is part of a pre-existing "family". The DOCID field value of the foreign-language record when that record is not part of a pre-existing "family".
- ENDATTACH – The ENDATTACH field value of the translated foreign-language record when that record is part of a pre-existing "family". The ENDDOC value of the foreign-language record when that record is not part of a pre-existing "family".
- EPROPERTIES – All EPROPERTIES field values assigned to the translated foreign-language record supplemented with the additional entry "Translated".
- The first row of each file should be a header row containing the field names. Field

names must match Division requested field names.
- There should be one line for every record in the load file.

15. Appendix 2: Table of Requested Fields

All requested fields are to be included in the data load file whether populated or not. Pay particular attention to the field description as field names can vary from your system. A √ indicates the record types to which the field normally applies. "Other ESI" includes ESI other than emails, calendars and messages. Note that fields specifically for the IMs, Texts, Chats category are new.

| Field Name | Field Description | Field Type | Hard | Email | Other | Calendar | IMs, Texts, Chats |
|---|---|---|---|---|---|---|---|
| DOCID | The unique sequential document control number of the first page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDDOC | The unique sequential control number of the last page of the document. Cannot contain spaces or special characters. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| COMPANIES | Globally populated field containing the name of producing party (not the law firm or vendor name). Not pulled from metadata. | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| CUSTODIAN | Name of the individual, or group/department for shared resources, from whose files the document originated. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ALLCUSTODIANS | All custodians who were in possession of a deduplicated document, including the person or group identified in the CUSTODIAN field. Format: Last, First or ABC Dept. Use consistent naming and formatting across all productions. | Multi-Entry | | | ✓ | ✓ | ✓ |
| MEDIAID | The unique identifier applied to each physical piece of media delivered (e.g., ABC001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| VOLUMENAME | Unique production volume identifier applied (e.g., ABC001-001). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| BEGATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the document control number of the parent document. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| ENDATTACH | Used for documents in a family group (e.g. an email with attachments). Populated with the ENDDOC of the last child record in the family group. Populated for each child document as well as the parent document. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

| Field Name | Field Description | Field Type | Hard | Email | Other | Calendar | IMs, Texts. |
|---|---|---|---|---|---|---|---|
| EPROPERTIES | Indicates record type, privilege, translation and other notations. Include all that apply, only the applicable record type or notation category names should be entered: Record Type: Edoc, Edoc Attachment, Email, Email Attachment, Hard Copy, Calendar, Text Message, Text Attachment, IM, Chat, Chat Attachment, Audio, Video, Voicemail Other Notations: Placeholder, Translation, Translated Privilege Notations: Redacted, Privileged, Family Member of Priv Doc | Multi-Entry | ✓ | ✓ | ✓ | ✓ | ✓ |
| TIMEZONE | The TimeZone in which the custodian is normally located. | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |
| FOLDERLABEL | Full folder path of email within a mail store when collected, including file name; or full folder path of instant message or text message when collected including file name; or Hard Copy folder/binder title/label. Prepend with Custodian Name (sample: Smith, James-Inbox\Active). | Multi-Entry | ✓ | ✓ | | ✓ | ✓ |
| FROM | Sender of the Email, Instant Message, Text Message, Chat, or Calendar item. | Note Text | | ✓ | | ✓ | ✓ |
| TO | Primary recipients of the Email, Instant Message, Text Message, Chat, or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| CC | Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| BCC | Blind Copyees of the Email, Instant Message, Text Message, Chat or Calendar Item. Separate multiple entries with a semi-colon followed by a space. | Multi-Entry | | ✓ | | ✓ | ✓ |
| SUBJECT | Subject line of the Email, Instant Message, Text Message, Chat, calendar item, or Notes item. | Note Text | | ✓ | | ✓ | ✓ |
| DATEHC | Date of hard copy documents, if coded. Format: MM/DD/YYYY. Leave time segment blank. | Date | ✓ | | | | |

Antitrust Division U.S. Department of Justice

| Field | Description | Type | | | |
|---|---|---|---|---|---|
| DATESENT | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was sent. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | ✓ | ✓ | ✓ |
| DATERECEIVED | Date and time the Email, Instant Message, Text Message, Chat or Calendar Item was received. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | ✓ | ✓ | ✓ |
| HEADER | The internet header information from each Email. | Note Text | ✓ | ✓ | |

Antitrust Division U.S. Department of Justice

| Field Name | Field Description | Field Type | Hard | Email | Other | Calendar | IMs, Texts. |
|---|---|---|---|---|---|---|---|
| INTERNETMSGID | Internet message ID assigned by the outgoing mail server which typically includes messageid and a domain name. Example: 0E6648D558F3381179524D555@ml p.innovy.net | Note Text | | ✓ | | | |
| MESSAGEID | Unique identifier of email messages in mail stores. Entry ID for Microsoft Outlook, the UniqueID (UNID) for Lotus Notes, or equivalent value for other proprietary mail store formats. | Note Text | | ✓ | | | |
| INREPLYTOID | Internet message ID of the Email being replied to. | Note Text | | ✓ | | ✓ | |
| CONVERSATIONINDEX | Conversation index value for Microsoft Exchange emails. | Note Text | | ✓ | | ✓ | |
| IMPORTANCE | Indicates priority level set for message. | Note Text | | ✓ | | ✓ | ✓ |
| DELIVERYRECEIPT | Delivery receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| READRECEIPT | Read Receipt request notification for Email messages. | Note Text | | ✓ | | ✓ | |
| SENSITIVITY | Sensitivity field from Email messages or calendar items. | Note Text | | ✓ | | | |
| REVISION | Revision number extracted from metadata of native file. | Note Text | | | ✓ | | |
| DATECREATED | Date and time the electronic file was created. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included). | Date-Time | | | ✓ | | ✓ |
| DATESAVED | Date and time the electronic file was last modified. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | ✓ | | ✓ |
| EORGANIZATION | "Company" field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| EAUTHOR | Author field value pulled from the metadata of a native file. | Note Text | | | ✓ | | |
| LASTAUTHOR | Last Saved By field value pulled from metadata of a native file. | Note Text | | | ✓ | | |
| ESUBJECT | Title or Subject field value pulled from metadata from electronic file. | Note Text | | | ✓ | | |
| FILENAME | Original file name of the native file, including file extension. | Note Text | ✓ | | ✓ | ✓ | ✓ |
| APPLICATION | Application used to create or transmit the original native files, document, message, appointment (e.g., WhatsApp, Excel, Slack, Outlook, Snapchat, Word, Twitter, Gmail, Tango). | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

| FILEEXTENSION | File extension of original native file; e.g. XLSX, PDF, DOCX | Max 5 chars | | ✓ | ✓ | ✓ | |

| Field Name | Field Description | Field Type | Hard | Email | Other | Calendar | IMs, Texts. |
|---|---|---|---|---|---|---|---|
| FILEPATH | Full qualified original path to the native when collected, including original file name. Prepend with recognizable Custodian Name; e.g. Smith, James-C\My Documents\Sales Info\ACME\2017-Monthly-Sales.xlsx | Multi-Entry | | ✓ | ✓ | ✓ | |
| DOCLINK | File path location to the current native file location on the delivery medium. | Note Text | | | ✓ | | |
| DATESTART | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| DATEEND | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS (use 24 hour times, e.g., 13:32:00 for 1:32 pm); time zone indicators cannot be included. | Date-Time | | | | ✓ | ✓ |
| ACCOUNT | Unique account ID | Note Text | | | | | ✓ |
| DURATION | The elapsed time of the audio, video, voice message. Format HH:MM:SS | Note Text | | | ✓ | | |
| DIRECTION | Identifies direction of communication or other routing information; Outgoing, Incoming. | Note Text | | | | | ✓ |
| TXT-CHATROOMNAME | Name of chat room used in the communications. | Note Text | | | | | ✓ |
| TXT-PARTICIPANTS | List of participant names and/or telephone numbers. | Note Text | | | | | ✓ |
| TXT-BODY | Body of text messages, instant messages, notes, or chats. Do not populate for emails or calendar items. | Note Text | | | | | ✓ |
| TXT-STATUS | Indicates whether text was Sent or Read on the device. | Note Text | | | | | ✓ |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in a conversation or chat. | Note Text | | | | | ✓ |
| HASHMD5 | Document MD5 hash value (used for deduplication or other | Note Text | ✓ | ✓ | ✓ | ✓ | ✓ |

| | | | | | | |
|---|---|---|---|---|---|---|
| | processing). | | | | | ✓ |
| HASHSHA | Document SHA hash value (used for deduplication or other processing). | Note Text | ✓ | ✓ | ✓ | ✓ |
| SPECNO | Subpoena/request paragraph number to which the document is responsive. | Multi-Entry | ✓ | ✓ | ✓ | ✓ |
| SEARCHVALUES | Specific search terms used to identify the record as responsive (if used). | Multi-Entry | ✓ | ✓ | ✓ | ✓ |

Antitrust Division U.S. Department of Justice

16. Appendix 3: Checks to Make to Ensure Proper Delivery to DOJ Antitrust

   a.  Labeling and Organization

   ✓  The Division does not accept productions via email or those that are posted on
      download sites (e.g., FTP, secure server). All productions must be delivered on media.
   ✓  The exterior of each media item is labeled with the assigned MediaID.
   ✓  The root folders on the media bear the assigned VOLUMENAMEs.
   ✓  The Submission Index has been included on the delivery media as well as attached
      to the delivery notification or password email to Division staff.
   ✓  Data sets extracted from server based, corporate database application files such as SQL
      or SAP are not comingled on the same production media as image-based document
      productions.
   ✓  Corrected, replacement productions cannot be comingled with new productions.

   b.  Custodial Information

   ✓  Custodian names are consistent across all productions in spelling and format in
      Custodian and AllCustodians fields.
   ✓  The custodian overlay file contains only records for which ALLCUSTODIANS entries
      were changed to update previously produced records. It does NOT include records for
      which NO custodian entries are being updated. It does not include all previously
      delivered records unless EACH record is being updated with at least one new
      custodian.

   c.  Field Consistency Checks

   ✓  The document control numbers lead with a company identifier and are in the same format
      as all prior productions.
   ✓  The number of digits in numeric portion of the document control number matches
      all prior productions (section 5).
   ✓  Document control numbers do not contain any characters prohibited in the
      Document Numbering specifications.
   ✓  Document control numbers shall not duplicate previously used control numbers.
   ✓  All fields listed in Appendix 2: Table of Requested Fields are provided in the load file.
   ✓  Any requested field that is empty for all records is noted on the accompanying cover letter.
   ✓  Delimiter characters are not embedded in the contents of data fields.
   ✓  All family members of documents withheld for privilege have been properly
      flagged in EPROPERTIES.
   ✓  All redacted documents have been properly flagged in EPROPERTIES.
   ✓  All placeholder images have been properly flagged in EPROPERTIES.
   ✓  All Date/Time field types have been populated in the format MM/DD/YYYY
      HH:MM:SS using 24 hour time without time zone or AM/PM indicators.

   d.  File Consistency Checks

   ✓  The image and native file names exclude characters prohibited in the Document
      Numbering specifications (section 5).
   ✓  The UTF-8 Unicode character set is used for all records in the load files.
   ✓  The metadata, LST, OPT, and custodian overlay (if applicable) files are all
      present in the LOADFILES folder and file names are based on the VolumeName.
      The number of records matches across the metadata, and LST files for each
      volume.
   ✓  The number of native files in the DOCLINK folder equals both the total listed in the

submission index and the number of records with the DOCLINK field populated.

✓ The name of each linked native file must match the corresponding DOCID with the appropriate file extension.
✓ The number of image files in the IMAGES folder equals the total listed in the submission index.
✓ The number of TXT files in the FULLTEXT folder equals the total number on the submission index and equals the number of records in the control list (LST) load file.
✓ All images are 1- bit black-and-white Group IV Single-Page TIFFs (300 DPI), except where color is necessary to understand the file. Color images are in JPEG format, not color TIFF.
✓ For all presentations, images of all slides and notes, extracted text, and the native files are provided.
✓ For all spreadsheets, the image of the first page only, the entire extracted text, and the native files are provided.
✓ In the extracted text files, each hard and soft return in the native files is represented by a Carriage Return Line Feed (CRLF). In particular, email paragraphs are NOT rendered as a single line of text.
✓ Embedded objects such as logos, letterheads, backgrounds, or graphics have NOT been extracted from emails or presentations into separate attached documents.

e. Translation Checks

✓ The translation record and the foreign-language record are part of the same family or a Translation Overlay file is provided to update foreign language originals that were not part of a family group with BEGATTACH and ENDATTACH.
✓ All metadata fields except EPROPERTIES are identically populated on both the translation record and the foreign language record. The EPROPERTIES field is populated correctly on the translation record and the foreign-language records.
✓ The document control number of the translated record is based on the document control number of the foreign-language record (section 7.1)
✓ Translations that are delivered in a later volume than their foreign language originals are in a separate volume and not comingled with other production documents.
✓ No EPROPERTIES entries are omitted in the Translation Overlay file.

## 17. Appendix 4: Sample Submission Index

A sample spreadsheet is provided in the file ATR-2019-Specifications.zip.

Submission Index Spreadsheet for ABC Company's Production to DOJ

Name: ABC's Acquisition of XYZ

| Custodian | Media ID | Volume Name | Begin Control Number | End Control Number | Unused or Intentionally Left Blank | Number of Records | Number of Images | Number of Native Files | Number of Extracted Text/OCR'ed Text Files | Volume Size in GB |
|---|---|---|---|---|---|---|---|---|---|---|
| Doe, John K. | ABC001 | ABC001-001 | ABC-00000001 | ABC-00001337 | | 589 | 1337 | 53 | 589 | |
| Doe, Jane B. | ABC001 | ABC001-001 | ABC-000001338 | ABC-00031722 | ABC-00006982 - ABC-00006990 | 9,565 | 30384 | 421 | 9,565 | |
| TOTALS FOR THIS VOLUME | | | | | | 10,154 | 31,721 | 474 | 10,154 | 1.72 |
| Daniels, James | ABC001 | ABC001-002 | ABC-00031723 | ABC-00033506 | | 1,432 | 3383 | 77 | 1,432 | |
| Allure, Barry | ABC001 | ABC001-002 | ABC-00033507 | ABC-00062036 | | 29,948 | 46729 | 2,171 | 29,948 | |
| TOTALS FOR THIS VOLUME | | | | | | 31,380 | 50,112 | 2,248 | 31,380 | 2.41 |
| Brown, Charlene J. | ABC002 | ABC002-001 | ABC-00062037 | ABC-00111719 | | 8,209 | 29,682 | 1,418 | 8,209 | |
| Mahan, Freda | ABC002 | ABC002-001 | ABC-00111720 | ABC-00119333 | | 1,508 | 7,613 | 312 | 1,508 | |
| TOTALS FOR THIS VOLUME | | | | | | 9,717 | 37,295 | 1,730 | 9,717 | 1.94 |
| GRAND TOTALS | | | | | | 51,251 | 119,328 | 4,452 | 51,251 | 6.07 |

* This spreadsheet can be provided on a current production-specific or a cumulative production basis, but the totals per *volume* must be provided

** This spreadsheet is a sample of format and does not reflect the names/bates numbers of the sample files provided

*** Volume size is actual space used not total available space on the delivery media

Sample Submission Index Spreadsheet.xls