IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

United States of America, et al,

                Plaintiffs,

     v.

JetBlue Airways Corporation,
        and
Spirit Airlines, Inc.,

                Defendants.

Case No. 1:23-cv-10511-WGY

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF SPIRIT DOCUMENTS
<u>WRONGFULLY WITHHELD AS PRIVILEGED</u>**

At issue in this motion are textbook examples of privilege waiver. Spirit is improperly withholding thousands of relevant documents disclosed to two third-party consultants, FGS Global and Okapi Partners LLC, which provided Spirit with routine public relations and communications, or investor proxy solicitation services. Spirit withheld these documents under the guise of attorney-client privilege—despite failing to show that those third parties were retained to provide legal advice or were necessary for facilitating legal advice. These documents likely contain important information useful for cross-examining defense witnesses on issues at the heart of this case: the potential impact of JetBlue's proposed acquisition of Spirit, such as higher fares, and Spirit's own initial opposition to the JetBlue acquisition.

Spirit waived any attorney-client privilege by sharing those materials. Neither FGS nor Okapi were hired to provide legal advice. Nor were they "necessary" to facilitate the provision of legal advice. Instead, Spirit provided these third parties with materials to inform Spirit's

1

public relations and investor relations strategies, and the third parties, in turn, created materials to implement those strategies.

By refusing to produce thousands of documents that were disclosed to its public relations and communications consultant FGS and its investor proxy solicitation consultant Okapi, Spirit wields the sword of attorney-client privilege, and disavows waiver based on the Eighth Circuit's "functional equivalent" doctrine—a doctrine never accepted by the First Circuit and, in any event, inapplicable to the facts here. The practical effect of Spirit's position is to shield key competition documents, including documents that Spirit identified in its Hart-Scott-Rodino ("HSR") premerger notification filing as having been created "for the purpose of evaluating or analyzing the acquisition with respect to market shares, competition, competitors, markets, potential for sales growth or expansion into product or geographic markets."[1] Fed. Trade Comm'n, *HSR Form Instructions* (eff. Feb. 27, 2023), Item 4(c).

Plaintiffs have met and conferred with Spirit multiple times over the course of several months regarding these documents, but to no avail. Spirit originally claimed privilege over more than 16,000 documents shared with nearly *200* different third parties.[2] Spirit continues to withhold nearly 3,000 documents that were sent to FGS and Okapi.

The United States also sought to obtain these documents directly from FGS and Okapi through documentary subpoenas, but both consultants are represented by the same outside

---

[1] *See* Ex. 2 Spirit's HSR Form, at 7. In particular, Spirit's response to Item 4(c) on its HSR form identified two documents as being redacted or withheld, despite being shared with FGS (or its predecessor Sard Verbinnen) and Okapi. Those two documents are: "Discussion Materials Project Galaxy, prepared by Barclays and Morgan Stanley, dated May 10, 2022" and "Project Galaxy Analysis of JetBlue's New Proposal and Regulatory Claims, prepared by Paul, Weiss, Rifkind, Wharton & Garrison, LLP, dated May 18, 2022."

[2] *See* Ex. 3, Letter from S. Riblet to A. Finch, Dec. 22, 2022, at 3; Declaration of Michael D. Battaglia in Support of Plaintiffs' Motion to Compel ("Battaglia Declaration"), ¶ 2.

counsel that represents Spirit and have withheld documents based on Spirit's privilege claims. As a result, Plaintiffs now respectfully request that the Court compel the production of the documents identified in Exhibit 1.[3]

## BACKGROUND

Before executing its failed merger agreement with Frontier Airlines in February 2022, Spirit retained FGS to consult on public relations and communications strategy and Okapi to consult on investor proxy solicitations. After JetBlue began its hostile takeover of Spirit in May 2022, the work of Spirit's consultants shifted to convincing Spirit shareholders that a Frontier deal offered more value.

Throughout May and June 2022, Spirit made numerous public statements to its investors criticizing and opposing JetBlue's hostile takeover attempt. Spirit repeatedly told its investors that the "JetBlue proposal represents a high-cost, high-fare airline buying a low-cost, low-fare airline with half the synergies coming from reduced capacity and increased fares."[4] And Spirit repeatedly urged its investors to vote for the Frontier-Spirit merger (and, thus, against the JetBlue takeover). Spirit also told its investors to call Okapi directly "[f]or more information on how to vote for the merger."[5]

Ultimately, the Spirit Board was unsuccessful in persuading its shareholders to disregard JetBlue's hostile takeover attempts and support a Frontier-Spirit deal. Spirit shareholders

---

[3] Plaintiffs conferred with Spirit, FGS, and Okapi, and the parties agreed to redact certain portions of exhibits containing confidential financial information that is not relevant to Plaintiffs' motion.

[4] *See, e.g.*, Ex. 4, Spirit Airlines, Inc., presentation entitled "Rejected Proposal from JetBlue is Illusory and Not Superior," May 5, 2022, at Slide 2.

[5] *E.g.,* Spirit, Press Release: *Spirit Airlines Reaffirms Commitment to Merger with Frontier* (June 28, 2022), *available at* https://ir.spirit.com/news-releases/news-details/2022/Spirit-Airlines-Reaffirms-Commitment-to-Merger-with-Frontier-/default.aspx (last accessed Aug. 18, 2023).

rejected the Frontier bid, and the next day Spirit and JetBlue executed their merger agreement on July 28, 2022.

After the proposed deal was announced, the U.S. Department of Justice Antitrust Division opened an investigation to assess whether JetBlue's proposed acquisition of Spirit violates Section 7 of the Clayton Act. In response to the Division's requests for documents during its investigation, Spirit produced a privilege log on December 7, 2022.

Spirit's initial privilege log, produced during the investigation, claimed privilege over *16,000* documents that were shared with nearly *200* different third parties.[6] Those third parties included government agencies, other airlines, airports, airplane manufacturers, technology companies, and news outlets (including the New York Times, the Wall Street Journal, and airline industry blogger Cranky Flier)—in addition to FGS and Okapi, the two third-party consultants at issue in this motion.[7]

On March 7, 2023, Plaintiffs filed the Complaint, seeking to enjoin Defendants' illegal merger. Soon thereafter, on March 28, 2023, Plaintiffs issued Requests for Production to Spirit that sought documents (including communications with consultants) relating to a potential merger with JetBlue as well as Spirit's evaluation of other ultra low-cost carriers' effects on other airlines' fares, services offered, and ability to enter certain markets.[8] On May 1, 2023, Spirit stated that it did not intend to revisit its earlier privilege assertions and would instead rely

---

[6] *See* Ex. 3, Letter from S. Riblet to A. Finch, Dec. 22, 2022, at 3; Battaglia Declaration, ¶ 2.
[7] The Division asked Spirit to re-examine its position and produce non-privileged documents. Though Spirit withdrew a handful of privilege claims in response to other issues raised by the Division, it maintained its assertion of privilege for most materials exchanged with third parties. Ex. 5, Letter from A. Finch, Dec. 28, 2022, 3-4.
[8] Ex. 6, Plaintiffs' First Request for Production of Documents from Defendant Spirit Airlines, Inc. ("RFP"), March 28, 2023, RFP Nos. 2, 13, 22, and 24.

on its investigation privilege log to withhold the same documents shielded during the investigation.[9]

On May 16, 2023, the United States sent Spirit a letter identifying deficiencies with the investigation privilege log, including Spirit's claims of attorney-client privilege for materials that were shared with third parties.[10] Shortly thereafter, the United States narrowed its focus to call for the production of Spirit's communications with FGS and Okapi. Over a two-month span, Plaintiffs have met and conferred with Spirit numerous times to probe Spirit's purported basis for the blanket refusal to produce these documents. Spirit has de-privileged a small number of documents, but relief has been piecemeal and incomplete.

Spirit continues to withhold nearly 3,000 documents shared with FGS and Okapi without a legitimate basis. By depriving Plaintiffs of these documents, Spirit is blocking access to discovery to which Plaintiffs are entitled and compromising Plaintiffs' ability to effectively depose and cross-examine Defendants' experts.

## LEGAL STANDARD

In the First Circuit, "the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth." *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 22 (1st Cir. 2003) (citing *United States v. Nixon*, 418 U.S. 683, 709-10, 41 L. Ed. 2d 1039, 94 S. Ct. 3090 (1974)). "[T]he party who invokes the [attorney-client] privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived." *In re*

---

[9] Ex. 7, E-mail from K. Wald to M. Battaglia, May 1, 2023.
[10] Ex. 8, Letter from M. Battaglia to K. Wald, May 16, 2023.

5

*Keeper of the Records*, 348 F.3d at 22.  Under First Circuit law, to establish the existence of the attorney-client privilege, the proponent must show:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection may be waived.

*United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997).

"Generally, disclosing attorney-client communications to a third party undermines the privilege." *Cavallaro v. United States*, 284 F.3d 236, 246-247 (1st Cir. 2003) (holding that there was "no valid underlying privilege" over contested documents because "by having discussions with and disclosing the documents to. . . an accounting firm not necessary to permit [counsel] to communicate legal advice to its client, the [client] either waived the attorney-client privilege or undermined the privilege's confidentiality requirement").  There is a limited exception to third-party waiver: if the third party is "employed to assist a lawyer in rendering legal advice." *Id.* at 247.  In other words, for this exception to apply, the third party communication must: (1) be "necessary, or at least highly useful, for the effective consultation between the client and the lawyers which the privilege is designed to permit[;]" (2) "serve to translate information between the client and the attorney[;]" and (3) "be made for the purpose of rendering legal advice, rather than business advice." *Dahl v. Bain Capital Partners*, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010) (internal quotations omitted and citing *Cavallaro*, 284 F.3d at 248-49).

## ARGUMENT

This is a straightforward case of third-party waiver over Spirit's communications with its public relations consultant FGS and its investor proxy solicitation consultant Okapi.  FGS and Okapi provided routine public relations and investor communications services—which are not necessary for the provision of legal advice.  *See, e.g.*, *United States ex rel. Wollman v. Mass.*

*Gen. Hosp.*, 475 F. Supp. 3d 45, 67 (D. Mass. 2020) (holding defendants waived privilege by disclosing report to public relations firm where firm was not retained to assist in any "existing or objectively imminent litigation" and was "at most, simply providing ordinary public relations advice"); *In re Prograf Antitrust Litig.*, 2013 WL 1868227, at *3 (D. Mass. May 3, 2013) (holding that communications with public relations firm are not privileged where firm merely provided "standard public relations services related to the filing and outcome of the citizen petition and any subsequent business or media fallout.").

Spirit did not retain FGS or Okapi to assist its counsel in rendering legal advice. Spirit admits that it retained FGS in January 2022 as a "communications consultant" for the purpose of providing routine public relations services regarding a "potential transaction."[11] FGS has likewise represented that the services it provided to Spirit included: (1) drafting press releases; (2) drafting talking points for Spirit officers and managers; (3) preparing investor presentations; (4) drafting scripts for conference calls with investors and analysts; (5) assisting with social media posts; (6) drafting letters to Spirit employees; and (7) preparing scripts for employee videos.[12] FGS' invoices to Spirit confirm its role in providing standard public relations services.[13] Documents disclosed to a third-party public relations firm in these circumstances simply are not privileged. *See Cavallaro*, 284 F.3d at 248-49; *Wollman*, 475 F. Supp. 3d at 67; *Prograf Antitrust Litig.*, 2013 WL 1868227, at *3.

Likewise, Spirit's descriptions of Okapi's proxy services confirm that their services were routine communications services and divorced from the provision of legal advice. Okapi runs proxy solicitation campaigns for corporations in advance of special meetings to approve a

---

[11] Ex. 9, FGS-CID-00044886 at -886.
[12] Ex. 10, Letter from S. Bertran to S. Riblet and B. Sepulveda, Oct. 7, 2022, at 2-3.
[13] *See* Ex. 11, FGS-CID-00077374 at -376-377 and Ex. 12, FGS-CID-000074086 at -088-091.

merger or defend against a hostile bid.[14]  In February 2022, Spirit retained Okapi in connection with the proposed Frontier merger to "provide strategic advice and solicit proxies [] on behalf of the Company in connection with its upcoming 2022 Special Meeting of Stockholders."[15]  Such services included reviewing and distributing proxy materials, soliciting proxies from brokers, banks, and institutional investors, and conducting telephone campaigns aimed at shareholders.[16]  A few months later, the scope of Okapi's work expanded to include services related to the hostile takeover bid from JetBlue.[17]  Spirit regularly told its investors to call Okapi directly "[f]or more information on how to vote for the merger."[18]  As with FGS, documents disclosed to a proxy solicitation firm under these circumstances simply are not privileged.

Spirit has not claimed that its communications with FGS or Okapi were "necessary" or "highly useful" for the provision of legal advice, that the communications were made for the purpose of rendering legal advice, or that the consultants played an "interpretative" role for providing legal advice.  *See Dahl*, 714 F. Supp. 2d at 227-28.  Nor could it.  Spirit's counsel has represented that "Okapi was primarily engaged in providing advice and information to Spirit (and, on occasion, its counsel) regarding the solicitation of a transaction and tender offer by

---

[14] *See* https://okapipartners.com/mergers-acquisitions/ (last visited Aug. 18, 2023).
[15] Ex. 13, NK-2R-05523037 at -037.
[16] *Id.* at -042.  The limited scope of Okapi's services on behalf of Spirit—proxy solicitation—is also underscored in Spirit's May 11, 2022, public filing with the Securities and Exchange Commission in which Spirit stated that it had "made arrangements with Okapi Partners LLC to assist it in soliciting proxies and has agreed to pay Okapi Partners LLC approximately $25,000 plus reasonable expenses for these services." Ex. 14, Spirit Airlines Inc., Proxy Statement (Schedule 14A), May 11, 2022, at 55.
[17] Ex. 15, OP-CID-00004287 at -288.
[18] *See, e.g.,* Spirit, Press Release: *Spirit Airlines Reaffirms Commitment to Merger with Frontier* (June 28, 2022), *available at* https://ir.spirit.com/news-releases/news-details/2022/Spirit-Airlines-Reaffirms-Commitment-to-Merger-with-Frontier-/default.aspx (last accessed Aug. 18, 2023).

JetBlue and associated communications with investors and shareholders."[19] The mere fact that Okapi may have provided information to Spirit's counsel "on occasion" does not render Spirit's communications with Okapi privileged. *See, e.g.*, *Dahl*, 714 F. Supp. 2d at 229 (finding third-party waiver where JP Morgan was copied on or forwarded legal documents and communications to provide "feedback" based on its "financial expertise and industry experience" and where JP Morgan provided information regarding the sales process, because providing "feedback" was "not enough to show that JP Morgan was necessary, or at least highly useful, in facilitating the legal advice"). That Okapi's work may have been of interest to Spirit's counsel does not enable Spirit to sweep that work under the cloak of privilege; otherwise, virtually any work by third-party consultants could qualify as privileged. Creating such a loophole for parties to claim attorney-client privilege in merger litigation would frustrate the government's ability to discover ordinary course business documents relevant to determining whether a merger is anticompetitive. Simply put, there is no indication that Okapi provided information to legal counsel for the purpose of legal advice, let alone that such information was necessary, highly useful, or interpretative. Spirit has not even made this argument with respect to FGS.

In sum, there is no basis under First Circuit law for finding that the limited exception to third party waiver applies here.

It is unsurprising, then, that Spirit has instead resorted to relying on an Eighth Circuit doctrine that has never been accepted in this Circuit—and is, in any event, inapplicable. In particular, Spirit points to *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994), to argue that FGS and

---

[19] Ex. 16, E-mail from J. Sunshine to M. Battaglia, May 31, 2023, at 1. Notably, there is nothing in Okapi's retention letter or subsequent addendum indicating that its services were designed to aid in the provision of legal advice. *See* Ex. 13, NK-2R-05523037 at -037; Ex. 15, OP-CID-00004287 at -288-89.

Okapi should be treated as in-house employees rather than third parties because they were *de facto* operating as Spirit's "corporate public relations department" and Spirit's "public-facing" representatives.[20] But the First Circuit has never adopted or endorsed the "functional equivalent" doctrine.[21] *See Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *4 (D. Mass. Mar. 28, 2018) (noting that *Bieter* "has not been adopted within this Circuit or applied within this District"); *Wollman*, 475 F. Supp. 3d at 68 (stating that "the functional equivalent doctrine has not been adopted by the First Circuit or applied in the District of Massachusetts").

Spirit has also relied on *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213 (S.D.N.Y. 2001), to support its contention that the functional equivalent doctrine protects the communications shared with FGS and Okapi, but that case should be given little weight, if any. As one District of Massachusetts case noted, "[t]o the extent [*In re Copper Market*] rejects the position that third-party consultants come within the scope of the attorney-client privilege only when acting as conduits or facilitators of attorney-client communications …the expansive reach of the case is contrary to precedent in this district." *SEC v. Navellier & Assocs.*, 2018 WL 6727057, *3 (D. Mass. Dec. 21, 2018) (citing, among other cases, *Cavallaro*, 284 F.3d at 246-249; *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d at 227-229) (internal quotations omitted).

---

[20] Ex. 17, Letter from E. St. Matthew-Daniel to M. Battaglia, June 15, 2023, at 4, 6.

[21] Spirit may point to *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 24 n.21 (1st Cir. 2011), to claim that the First Circuit has cited *Bieter*. But in *Lluberes*, the First Circuit cited *Bieter* in dictum and in the context of a discussion of the applicability of *United States v. Kovel*, 296 F.2d 918, 24 n.20 (2d Cir. 1961). The First Circuit explicitly noted that "We have never actually adopted *Kovel*, despite its pedigree and wide acceptance, but have assumed for the sake of argument that we would do so in the right case." *Lluberes*, 663 F.3d at 24 n.2. The First Circuit further underscored the fact that it was "not intending to set any precedent for requiring district courts to engage in a particular procedure for discerning the validity of a privilege claim," and the decision was confined to "the particular procedural history before the district court and other unique circumstances." *Id.* at 27.

Besides, under *Bieter*, the "functional equivalent" doctrine only applies in limited circumstances absent here. *See, e.g.*, *Wollman*, 475 F. Supp. 3d at 68 (noting that, even if *Bieter* were the law, it would be inapplicable because "[u]nlike the facts in *Bieter*, [the public relations firm] was hired for specific projects, was a consultant to and not an agent of MGH, worked out of its own offices, and worked for clients other than MGH"); *Zebra Enter. Sols. Corp.*, 2018 WL 1532614, at *4 (noting that, even if *Bieter* were the law, it was inapplicable because the consultants "did not have longstanding relationships with [the client], were paid hourly, worked from their own locations, were not obligated to work exclusively for [the client], and did not act as [the client's] sole representatives with respect to the matters being negotiated."); *Bieter*, 16 F.3d at 938 (extending the attorney-client privilege to communications involving a contractor tasked with developing a plot of land owned by Bieter based, in part, on the fact that "[a]s Bieter's sole representative at meetings with potential tenants and with local officials, [the contractor] likely possesses information that is possessed by no other").

Here, Spirit has not (and cannot) claim it is the only client of FGS or Okapi or that these consultants were paid an annual salary. Nor is there any indication that FGS or Okapi acted as Spirit's sole representative or possessed unique information that Spirit wanted to convey to its counsel. Neither of their retention letters suggest that their work was at the direction of counsel.[22] FGS's and Okapi's retention letters demonstrate that they provided routine, ordinary consulting services of the type that businesses frequently use.

Accepting Spirit's privilege claims here would result in the exception swallowing the third-party waiver rule. *See Homeward Residential, Inc. v. Sand Canyon Corp.*, 2017 WL

---

[22] *E.g.*, Ex. 9, FGS-CID-00044886 at -886-887; Ex. 13, NK-2R-05523037 at -037; Ex. 15, OP-CID-00004287 at -288-89.

11

4676806, at *14 (S.D.N.Y. Oct. 17, 2017) ("Businesses routinely rely on other companies to carry out important functions and services[] . . . . If this relationship satisfied the functional equivalent standard, the exception could well swallow the rule."). Thus, Spirit's claims of attorney-client privilege over the FGS and Okapi materials should be rejected.

## CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to order Spirit to produce the 2,835 withheld documents, identified in Exhibit 1, that were exchanged with FGS and/or Okapi.

Dated: August 18, 2023                          Respectfully,

/s/ Edward W. Duffy
Edward W. Duffy
Michael Battaglia
Arianna Markel
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov

*Attorneys for Plaintiff United States of America*

/s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov

*Attorney for Plaintiff Commonwealth of Massachusetts*

/s/ Olga Kogan
Olga Kogan (*admitted pro hac vice*)
New York State Office of the Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005

Telephone: (212) 416-8262
Email: olga.kogan@ag.ny.gov

*Attorney for Plaintiff State of New York*


/s/ C. William Margrabe
C. William Margrabe (*admitted pro hac vice*)
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC 20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov

*Attorney for Plaintiff District of Columbia*

/s/ Schonette J. Walker
Schonette J. Walker (*admitted pro hac vice*)
Gary Honick (*admitted pro hac vice*)
Byron Warren (*admitted pro hac vice*)
Maryland Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff State Maryland*

/s/ Komal K. Patel
Komal K. Patel (*admitted pro hac vice*)
Deputy Attorney General
Office of the California Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
Tel: (213) 269-6000
Email: Komal.Patel@doj.ca.gov

*Attorneys for Plaintiff State of California*

/s/ Bryan S. Sanchez
Bryan S. Sanchez (*admitted pro hac vice*)
Ana Atta-Alla (*admitted pro hac vice*)
State of New Jersey - Office of the Attorney General
Division of Law

13

124 Halsey Street – 5th Floor
Newark, NJ 07102
Telephone: (973) 648-6835
Bryan.Sanchez@law.njoag.gov
Ana.Atta-Alla@law.njoag.gov

*Attorneys for Plaintiff State of New Jersey*

/s/ Jessica V. Sutton
Jessica V. Sutton (*admitted pro hac vice*)
Special Deputy Attorney General
North Carolina Department of Justice Post Office Box 629
Raleigh, NC 27602
Tel: 919-716-6000
E-mail: jsutton2@ncdoj.gov

*Attorney for Plaintiff State of North Carolina*

14