# EXHIBIT 5

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

| | |
|---|---|
| 1285 AVENUE OF THE AMERICAS<br>NEW YORK, NEW YORK 10019-6064<br>TELEPHONE (212) 373-3000<br><br>LLOYD K. GARRISON (1946-1991)<br>RANDOLPH E. PAUL (1946-1956)<br>SIMON H. RIFKIND (1950-1995)<br>LOUIS S. WEISS (1927-1950)<br>JOHN F. WHARTON (1927-1977)<br><br>WRITER'S DIRECT DIAL NUMBER<br>(212) 373-3417<br>WRITER'S DIRECT FACSIMILE<br>(212) 492-0417<br>WRITER'S DIRECT E-MAIL ADDRESS<br>afinch@paulweiss.com | UNIT 5201, FORTUNE FINANCIAL CENTER<br>5 DONGSANHUAN ZHONGLU<br>CHAOYANG DISTRICT, BEIJING 100020, CHINA<br>TELEPHONE (86-10) 5828-6300<br><br>SUITES 3601 – 3606 & 3610<br>36/F, GLOUCESTER TOWER<br>THE LANDMARK<br>15 QUEEN'S ROAD, CENTRAL<br>HONG KONG<br>TELEPHONE (852) 2846-0300<br><br>ALDER CASTLE<br>10 NOBLE STREET<br>LONDON EC2V 7JU, UNITED KINGDOM<br>TELEPHONE (44 20) 7367 1600<br><br>535 MISSION STREET, 24TH FLOOR<br>SAN FRANCISCO, CA 94105<br>TELEPHONE (628) 432-5100<br><br>FUKOKU SEIMEI BUILDING<br>2-2 UCHISAIWAICHO 2-CHOME<br>CHIYODA-KU, TOKYO 100-0011, JAPAN<br>TELEPHONE (81-3) 3597-8101<br><br>TORONTO-DOMINION CENTRE<br>77 KING STREET WEST, SUITE 3100<br>P.O. BOX 226<br>TORONTO, ONTARIO M5K 1J3<br>TELEPHONE (416) 504-0520<br><br>2001 K STREET, NW<br>WASHINGTON, DC 20006-1047<br>TELEPHONE (202) 223-7300<br><br>500 DELAWARE AVENUE, SUITE 200<br>POST OFFICE BOX 32<br>WILMINGTON, DE 19899-0032<br>TELEPHONE (302) 655-4410 |

[Attorney roster omitted]

*NOT ADMITTED TO THE NEW YORK BAR

December 28, 2022

SPIRIT CONFIDENTIAL
BY EMAIL

Sarah V. Riblet
Brendan Sepulveda, Esq.
U.S. Department of Justice
Antitrust Division
Media, Entertainment, and Communications Section
450 5th Street NW
Suite 7000
Washington, DC 20530

> ***Re: Apparent Deficiencies in the Privilege Log for Spirit Airlines, Inc.'s ("Spirit") Second Request Production Pursuant to the Division's Investigation of the Proposed Acquisition of Spirit by JetBlue Airways Corp. ("JetBlue") – HSR-2022-2842***

Dear Sarah and Brendan:

On behalf of Spirit, I write in response to Sarah's letter of December 22, 2022 letter and attachments ("DOJ Letter") which raised what were characterized as apparent deficiencies in the privilege log ("Log") submitted in connection with Spirit's

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                                2

response to the Request for Additional Information and Documentary Material issued by the Department of Justice ("DOJ") on September 12, 2022 (the "Second Request").

As an initial matter, you wrote that "apparent privilege log deficiencies will prevent us from proceeding with our evaluation of Spirit's privilege claims. Evaluating these claims is essential to determining whether Spirit has in fact complied with the Division's Second Request."[1] While Spirit does not dispute that your evaluation of the privilege log is important, it is also important to place the scope of the privilege log and Spirit's colossal efforts in complying with the Second Request in perspective. Spirit collected and processed for evaluation tens of millions of documents comprising many thousands of gigabytes of data belonging to the two dozen custodians selected at the sole option of the Division, and to date has produced well over two million documents in response to Second Request spanning seven million pages. Moreover, Spirit produced substantially all of these documents on an accelerated scheduled sought by the Division a month prior to certifying compliance, pursuant to the Timing Agreement entered on October 24, 2022 among the Division, Spirit, and JetBlue ("Timing Agreement").

Of this vast number, Spirit asserted privilege on fewer than 70,000 individual documents in whole or in part, as itemized on the Log—on the order of a mere 3% of the total production. Indeed, this percentage is considerably smaller than the quantum characterized as *de minimis* for a production in the Timing Agreement, as drafted by the Division.[2] To suggest that microanalysis of this *de minimis* number of privileged documents is "essential" to determining Spirit's overall compliance with the Second Request makes a mountain out of a molehill. At enormous cost and diversion of resources for an ultra-low-cost carrier with low overhead and lean staffing, Spirit has in fact substantially complied with the Second Request in good faith, as certified on December 12, 2022.

That said, Spirit takes its obligations under the Hart-Scott-Rodino Act seriously, as well as its duty to reasonably justify the privilege asserted. We look forward to working cooperatively with the Division to address and satisfy all of the legitimate concerns raised in the DOJ Letter or otherwise and to provide such further information as may be helpful and reasonable in the Division's evaluation. We are available to meet and confer on any questions or suggestions you may have to Spirit's responses below and enclosed supplemental submissions. We address each of the issues you raised in the DOJ Letter in turn, and for the sake of clarity employ the same subject headings. In doing so, Spirit does not adopt or concede the validity of the characterizations made in those headings.

1. **Third-Party Waiver Issue**

---

[1] DOJ Letter at 6.

[2] Timing Agreement at 3, n.1

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.     3

The DOJ Letter states that the Log contains 16,485 entries that were "authored by, or sent to, individuals who are neither employees of, nor attorneys for, Spirit," and goes on to suggest that such documents are presumptively non-privileged for lack of confidentiality or because such individuals give rise to an inference that the purpose of the communication is not for the purpose of legal advice.[3] This formulation misconstrues the test for privilege involving agents of a corporate entity client, especially one such as Spirit. Spirit is an ultra-low-cost carrier whose business model involves lowering overhead costs and offering low fares in order to stimulate demand in its markets and generate increased profits through increased volume on a narrow profit margin. Maintaining cost control is therefore vital to Spirit's fundamental business model, and part of how Spirit accomplishes that goal is to outsource standard business functions that can be performed more economically by an outside contractor, resulting in a great number of Spirit's ordinary corporate interests (which require legal involvement on occasion) being discharged by contractors rather than employees.

Privilege does not turn on the label and organizational affiliation attached to the human agent executing Spirit's interests, whether employee or contractor.[4] What matters is whether the individual "was, essentially, incorporated into [Spirit]'s staff to perform a corporate function that was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny obtaining at the time."[5] Put another way, if an agent is performing a standard business function for Spirit, then the participation of those agents is often "necessary, or at least highly useful, for the effective consultation between the client and the lawyer" to obtain legal advice upon matters encompassed in the agent's duties for Spirit.[6] As a corporate entity, Spirit can only obtain the legal advice to which it is entitled by and through the instrumentality of one of its agents. Nonetheless, to the Division's point, Spirit is well aware that agents such as "investment bankers, consultants, accountants, etc." may not always or even often

---

[3] DOJ Letter at 3.

[4] In re *Bieter Co.*, 16 F.3d 929, 937-38 (8th Cir. 1994) ("[W]hen applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors. . . . [T]oo narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely."); see *Pipeline Prods., Inc. v. Madison Companies, LLC*, No. 15-4890-KHV, 2019 WL 1900341, at *2-*3 (D. Kan. Apr. 29, 2019).

[5] In re *Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) ("In applying the principles set forth by the Supreme Court in *Upjohn*, there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice.").

[6] See *United States v. Kovel*, 296 F.2d 918, 922 (1961).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                          4

be necessary to Spirit's obtaining the legal advice it seeks, which is why the Division will no doubt have observed countless instances of the same individuals enumerated in the Log also appearing in the over two million documents produced in full.

The narrative provided in the privilege description serves to describe in general terms the subject matter as to which Spirit (through its agents) was soliciting or receiving legal advice in each entry, revealing the business function of the so-called "third party."  In any case, a presumption that these entries fail to state a prima facie case for privilege solely because Spirit, for reasons of economy, elects to contract with rather than employ many of its corporate agents, would be ill-founded.  There is no apparent deficiency in these entries on the basis specified.

Spirit is mindful, however, of the Division's apparent concerns and desire to obtain a greater understanding of the roles played by such individuals, and to assist in your continued review, we enclose with this letter a table identifying the business function performed for Spirit by third parties not employed by Spirit on the log.  Moreover, if there are any particular third parties, agents, or circumstances where you believe the situation warrants heightened scrutiny beyond the simple fact of being a non-Spirit-employee, we are amenable to discussing a more targeted reexamination of a subset.  Given the immense work and costs that Spirit has already expended in its compliance, including the Log, it would be unwarranted and unduly burdensome to rereview such a large number of documents with no particularized reason to suspect error.

In that vein, we also note that a substantial minority of the instances you flag involve third parties retained in connection with this transaction whose function for Spirit is not only known to the Division but indeed has been the subject of numerous discussions, namely Campbell-Hill and FGS Global.[7]  We are puzzled as to why such entries were included in this already overbroad category premised upon an unfamiliarity with the function played by the agent in question.

The DOJ Letter also inquired as to the role of JetBlue and its counsel prior to July 2022.  Entries involving privilege with JetBlue and its advisors during that time (and indeed, since that time) are premised upon a common legal interest understood by both parties to exist between Spirit and JetBlue in evaluating the legal and particularly antitrust ramifications of a potential merger between Spirit and JetBlue, as we discussed in a call with you of December 16, 2022.  On that call, we noted cases supporting such a view of the common interest doctrine nearly directly on all fours with this case, as well as additional supportive authority.[8]

---

[7] *See, e.g.*, Log entries 126, 127, 238, 243 (Campbell-Hill); 32126, 33326, 33328, 33332, 3333 (FGS).

[8] *See United States* v. *Anthem, Inc.*, 2016 WL 8461264, at *8-9 (D.C.C. Oct. 6, 2016) (special master determining that two merging parties had a "joint defense interest[] [in] achieving [a] merger" even though they had adverse interests with respect to a

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                      5

   2. *No Recipient Identified*

The DOJ Letter identifies 4,058 entries as lacking expected recipient information.[9] Upon reviewing this with Spirit's document vendor, we believe that this is the result of an internal technical error in the parsing of names from certain types of unusual or nonstandard files. We have worked with the vendor to remediate this omission, and have also manually assessed documents within this category to determine if recipient information can be ascertained. Replacement entries for those determined to be in fact lacking extant recipient information is included on the supplementary privilege log enclosed with this letter. As to those few that still lack recipient information and for which no replacement line is submitted: email, reports, and memoranda do not *always* have recipients—in some cases, they are drafted but not sent or distributed, and recovered only when collected from their authors. Further, in a handful of cases, we determined upon rereview that the document had been withheld in error,[10] as to which entries Spirit withdraws its claim of privilege and produces those documents herewith as part of the production labeled NK-2R-022. With these supplemental submissions, Spirit submits that no apparent deficiency remains in the identified corpus of Log entries.

   3. *Inadequate Work-Product Claims – No Named Litigation*

The DOJ Letter identifies 37 entries as failing to state "the anticipated litigation for any work-product claim."[11] After rereview of the documents in question, we have either clarified the nature of the litigation or other adversarial proceeding giving rise to work product protection or withdrawn the claim of work-product protection.

---

contractual dispute), *as adopted in* 2016 WL 11164028 (D.D.C. Oct. 14, 2016); *Chabot* v. *Walgreens Boots Alliance, Inc.*, 2020 WL 3410638 at *10 (M.D. Penn. June 11, 2020) (holding that the parties "shared a common legal interest… insofar as all three parties were interested in FTC approval of [a] merger" even if they also had "adversarial communications… relating to negotiations between themselves"); *see also Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381, 392 (S.D.N.Y. 1975) (rejecting the argument that, because there "might have been foreseeable" litigation between two parties, their interests were insufficiently aligned with respect to their "joint defense against [an] immediate SEC action"); *Youngevity International, Inc.* v. *Smith*, 2017 WL 6043669 at *2-3 (S.D. Cal. Dec. 5, 2017) (rejecting the argument that the parties could not "have had a common interest… because [they] were litigation opponents," as "parties [can] have adverse interests in some respects while still maintaining a common interest in other respects").

[9] DOJ Letter at 4.

[10] *Viz.* Log entries 17411, 22552, 22553, 29217, 34347, 34348, 34356, 34357, 36050, 36051, 36052, 36129, 36130, 36131, 19923, 68879, 68880, 69201, 69202, 69225, 69226, 69324, and 69325.

[11] DOJ Letter at 4.

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                          6

Replacement entries for these items are included on the supplementary privilege log enclosed with this letter. With this supplemental submission, Spirit submits that no apparent deficiency remains in the identified corpus of entries.

### 4. Deficient Attorney Involvement

The DOJ Letter states that "many entries in Spirit's privilege log do not have an attorney identifier," but only identifies 302 entries out of the 69,927 on the Log to which its observation applied.[12] Of them, 296 involve entries where legal advice is attributed to "outside counsel," and 5 where legal advice is attributed to "Spirit in-house counsel." As can be determined from the information and descriptions provided for these documents, the typical situation involves one businessperson informing another of legal advice received from counsel. Although it was almost always possible to determine the identity of the lawyer(s) who rendered the advice, in some cases the interlocutors referred to the source of legal advice only in generic terms and extrinsic information was insufficient for identification, even though the content made it clear that the information derived from an attorney of the affiliation specified. In only those cases was an assertion in this form made—the Division may be assured that Spirit provided more detailed information whenever it was available, as evidenced by these few rare exceptions comprising less than one half of one percentage of the total entries on the Log. We remain available to meet and confer on this issue should the Division wish to renew or refine its inquiry in light of this additional information.

The one remaining document, entry 19923, assigned Bates NK-2R-06720354, was withheld in error, and Spirit withdraws its claim of privilege and produces the document herewith as part of the production labeled NK-2R-022.

### 5. Deficient Subject Description

The DOJ Letter states that 47,848 entries, involving fifteen distinct descriptions of the subject matter of the privilege communication, "do[] not identify with sufficient particularity the subject of the communication," referring to Instruction 11's direction that the "description of the document's subject matter be 'sufficiently detailed to enable the Department to assess the privilege claim and the facts relied upon to support that claim.'"[13] The DOJ Letter further suggests that the descriptions complained of do not meet the "standard" set forth in Instruction 11. However, the Division does not explain with particularity, or at all, how or why all of the listed subject matters, or any one of them, are insufficient to assess the privilege claim. On their face, the descriptions state in ordinary English a circumscribed albeit generalized topic on which one might reasonably expect that in appropriate instances legal advice might be sought or given. That is all that is required to assess the privilege. Although some courts have doubted that *any* information on subject matter is required for assessment of a privilege claim in the

---

[12] DOJ Letter at 4.

[13] DOJ Letter at 5.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                              7

form of a log,[14] those that do view some quantum of information as necessary require only that the "general subject matter" be identified.[15] Spirit has done so; there is no apparent deficiency in any of the entries identified in this category on the basis specified.

As before, however, Spirit is mindful of the Division's apparent concerns about the subject matters identified here. While it would be unwarranted and overly burdensome to rereview such a large number of documents with no particular reason to suspect error, we are amenable to meeting and conferring with the Division as to whether some more reasonably targeted subset of documents with particularized indicia of concern might be identified.

### 6. Redaction/Withhold Errors

The DOJ Letter raises three largely unrelated subcategories of concern in its sixth section, unified by the contention that the documents in question ought to have been redacted rather than withheld. We address each in turn.

In the first subcategory, the DOJ Letter suggests that the presence of documents that are both alternatively "5+ Pages"[16] or "that exceed 5 pages" as well as withheld requires Spirit "to explain why it is necessary to withhold—rather than redact—these documents to protect information over which Spirit asserts a claim of privilege."[17] This novel assertion has no basis in the precedent of privilege; it is not incumbent on Spirit to meet some contrived test of document length, but rather it is required to explain why the document in question is privileged, which it has. After analyzing the corpus of documents within the scope of the Second Request, we have determined that the average length of each record as imaged is approximately 4.4 pages. Under the Division's novel test, therefore, something on the order of half of the entire production would be automatically suspect were it to be withheld for privilege: documents "failing" this test are not unusual in the slightest but perfectly average documents. There is no apparent deficiency in any of the entries identified in this category on the basis specified, and it would be disproportionate and unduly burdensome to rereview such a large number of documents with no particularized reason to suspect error. Spirit is, however, mindful of

---

[14] In re *Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (observing that providing information on the subject matter of documents withheld on a privilege log "goes beyond" the minimum standards required in *Dole* for privilege assertions on a log); see *Dole v. Milonas*, 889 F.2d 885, 888 n.3 (9th Cir. 1989) (promulgating categories required to make prima facie assertion of privilege via a log and omitting subject matter).

[15] *E.g., Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008); In re *Currency Conversion Antitrust Litig.*, No. 05 CIV. 7116 WHP THK, 2010 WL 4365548, at *2 (S.D.N.Y. Nov. 3, 2010).

[16] DOJ Letter at 5

[17] DOJ Letter at 6.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                                    8

the Division's apparent concerns about the withholding of unusually lengthy documents, and is amenable to discussing how it might address those concerns in a more proportionally reasonable manner.

In the second subcategory, the DOJ Letter takes issue with five present participles: entries for documents ostensibly "described as 'relaying,' 'transmitting,' 'filing,' 'regarding,' or 'including' legal advice."[18]

As for the first two, "relaying" and "transmitting", there is nothing objectionable about withholding a document whose entire substance consists of the relaying or transmitting of legal advice within a confidential attorney-client relationship, as from one Spirit agent to another. Redaction would only be appropriate if the document contained substantive additional material that that did not derive from a protected communication with counsel, and there is nothing about the act of relaying or transmitting that implies any such addition of extrinsic information. Rather, those words are most naturally read to mean (and were intended to convey) that legal advice is being relayed or transmitted unembellished—that is, that there is no such additional material to produce. The description is thus fully consistent with Spirit's having withheld those documents.

However, the Division is correct that, at times, extrinsic non-privileged information is appended when relaying or transmitting legal advice, and in those cases, Spirit has produced a document "relaying legal advice" or "transmitting legal advice" with redactions—as it did in over a thousand entries on the Log (872 times for "relaying" and 252 times for "transmitting"), where it was appropriate to do so. There is no apparent deficiency in any of the entries identified in this subcategory on the basis specified. Moreover, Spirit is mindful of the Division's apparent concerns about the participles identified here. While it would be unwarranted and overly burdensome to rereview such a large number of documents with no particular reason to suspect error, we are amenable to meeting and conferring with the Division as to whether some more reasonably targeted subset of documents with particularized indicia of concern might be identified.

The second pair, "filing" and "regarding," appear to be the result of a clerical error in the Division's compilation of its concerns. The phrases "filing legal advice" and "regarding legal advice" never occur on the log as asserted in the DOJ Letter. Rather, "regarding" is used in a prepositional sense to introduce the relative clause in the privilege description that identifies the general subject matter of the document in question, e.g., "…regarding regulatory approval of the proposed transaction with JetBlue." Analogously, "filing" appears only as a gerund, in the term "regarding financial planning and securities _filings_." There is no apparent deficiency in any of the entries identified in this subcategory on the basis specified.

---

[18] DOJ Letter at 6.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                                    9

    The final participle, "including," also never appears in the context of "including legal advice" but instead it appears in the phrase "Email chain including prior email(s)…" to indicate that the source of privilege arises somewhere in the trailing chain of transcribed emails included within the actual email presently being sent.  In the substantial majority of cases in which this phrase is used (200 of the 241 instances), Spirit produced the document in redacted form; the fact that a small minority of documents were withheld based on their particular features should not be a cause for concern. There is no apparent deficiency in any of the entries identified in this subcategory on the basis specified; nonetheless, given the reasonable proportional burden, Spirit will voluntarily undertake to rereview these documents and produce any as appropriate.

    In the third subcategory, the DOJ Letter observes that in 38 entries, the Redacted column has a value of "Not Privileged," and requests an explanation for why these documents are subject to privilege in face of a contrary assertion.[19]  This value is the result of a technical error arising from the procedure specified by the Timing Agreement for the production of documents.  All of these documents were produced on November 10, 2022, at least 30 days prior to certification of compliance, as required by the Timing Agreement.  During the good-faith review of privilege calls that followed this accelerated production, these documents were determined to be privileged in part and to have been inadvertently produced in full, and therefore a replacement copy including appropriate redactions was produced to the Division on December 2, 2022. However, the original privilege status of the document applicable on November 10—not privileged—was accidentally assigned to these items on the Log even though they are in fact properly subject to redaction on the basis of privilege and have been since reproduced with redactions.  Replacement entries for these items clarifying their redaction status as Redacted rather than Not Privileged are included on the supplementary privilege log enclosed with this letter.

    In one instance in this subcategory, however, NK-2R-05731780, no redactions were determined to be possible on the document despite its initial and inadvertent production on November 10.  Spirit therefore claws back that document as privileged.  Please return, sequester, or destroy all copies of the document in your possession, custody, or control. A replacement entry for this item is included on the supplementary privilege log enclosed with this letter.

*   *   *

    As outlined in this letter, Spirit has substantially complied with the Second Request and none of the items raised in the DOJ Letter suggests that it did not.  This is particularly so given that the sum total of the documents itemized on the Log comprise a *de minimis* percentage of the overall productions made by Spirit. Even if some few of this *de minimis* number of documents had been incorrectly and inadvertently withheld on the basis of privilege, or incompletely characterized on the log, that fact alone would not cast

---

[19] DOJ Letter at 6.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Sarah V. Riblet
Brendan Sepulveda, Esq.                                                                                     10

doubt on Spirit's overall substantial compliance. With that premise, Spirit reiterates that it takes its obligations as to privilege seriously, and we are committed to cooperation with you on addressing any remaining concerns regarding the Log, up to and including Spirit's assuming reasonable burdens to address those concerns, with the understanding that the Division will not take that cooperation as any concession that this investigation of concerns might implicate Spirit's compliance.

This letter and the enclosed materials have been labeled SPIRIT CONFIDENTIAL and contain confidential and commercially sensitive information. Accordingly, please afford this letter, enclosed material, and all information contained therein confidential treatment to the fullest extent possible under all applicable agreements, laws, and regulations.  Additionally, no production of privileged material is intended, and any potential inclusion of such matter is inadvertent.

                                        Very truly yours,

                                        */s/ Andrew C. Finch*
                                        Andrew C. Finch, Esq.

cc:      Sophia Bertran, Esq.
           Jared S. Sunshine, Esq.

Enclosures