# EXHIBIT 8



U.S. Department of Justice

Antitrust Division

*Michael D. Battaglia*
*450 5th St., NW, Suite 8000*
*Washington, DC 20530*
*Michael.Battaglia@usdoj.gov*

May 16, 2023

**BY EMAIL**
Kate Wald, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Re: *United States of America, et al. v. JetBlue Airways Corporation, et al.* (No. 1:23-cv-10511-WGY)

Dear Kate:

I write in regard to a number of deficiencies in the privilege logs that Spirit submitted to the Antitrust Division during the course of the Division's pre-complaint investigation ("Investigation Privilege Logs"). Per your May 1 email, Spirit confirmed that it is continuing to withhold all documents withheld during the investigation on privilege grounds and is relying on its Investigation Privilege Logs to substantiate claims of privilege for those withheld investigation materials in the above-referenced litigation.

However, for many entries in Spirit's Investigation Privilege Logs, Spirit appears to have improperly asserted privilege or failed to provide sufficient information to allow Plaintiffs to evaluate Spirit's claims of privilege. To remedy these defects, we ask (as specified below) that Spirit produce entirely withheld documents, redact only the privileged portions of otherwise unprivileged documents, and/or provide updated privilege logs with sufficient information to substantiate its claims of privilege or protection.

  I. **Many of Spirit's Investigation Privilege Log Entries Lack Sufficient Information.**

"The party invoking a recognized privilege has the burden of establishing, not only the existence of that privilege, but also that the established privilege was not waived." *Cavallaro v. United States*, 153 F. Supp. 2d 52, 56 (D. Mass. 2001), *aff'd* 284 F.3d 236 (1st Cir. 2002). Similarly, "[t]he party seeking work product protection has the burden of establishing its applicability." *In re Grand Jury Subpoena*, 220 F.R.D. 130, 141 (D. Mass. 2004). A party withholding otherwise responsive documents under a claim of

privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed" and provide enough information for "other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

### A. Spirit's Investigation Privilege Log Entries for Attachments Are Insufficient.

The information provided in Spirit's logs suggests that Spirit simply used metadata from parent emails to justify the withholding of email attachments. These are not isolated occurrences. Over **17,000** of the attachments withheld by Spirit have author, addressee, other recipient, and date information that is *identical* to their parent emails. Logging documents in this manner falls far short of Spirit's burden because Plaintiffs are unable to assess the privileged nature of these documents in any meaningful way. Further, the mere fact that some of these documents were attached to emails involving attorneys does not, by itself, render the documents privileged. *See America's Growth Capital, LLC v. PFIP, LLC*, 2014 U.S. Dist. LEXIS 38405, at *9 (D. Mass. March 24, 2014) ("[a]ttachments which do not, by their content, fall within the realm of the privilege cannot be privileged by merely attaching them to a communication with the attorney.") (quoting *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 511 (D.N.H. 1996)).

Plaintiffs request that Spirit produce unredacted copies of any withheld attachments that do not have an independent basis for privilege and provide updated privilege entries that includes information sufficient to assess Spirit's asserted claims of privilege over attachments.

### B. Spirit's Investigation Privilege Logs Identify Emails with Multiple Senders.

Spirit's logs have 1,049 entries described as emails with more than one individual identified as the author. It appears that this was done in error as an email cannot be sent from multiple accounts. Without knowing who sent a withheld communication, Plaintiffs are unable to determine the validity of Spirit's privilege claims with respect to these entries. Further, it appears that a subset of these entries is being withheld simply because they were attached to emails sent to counsel. For example, 95 of these entries are described in the "Third Party Details" column as "[e]mail attached to email sent to counsel soliciting legal advice." As explained above, such attachments, without more, are not privileged.

Plaintiffs request that Spirit correct these log entries to identify the actual sender of these withheld emails and produce unredacted copies of any email attached to an email sent to attorneys that do not have an independent basis for privilege.

## II. Spirit's Investigation Privilege Logs Fail to Establish that Its Communications with Various Third Parties Are Privileged.

The protection afforded by the attorney-client privilege "ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party."

2

*Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011). There is, however, a limited exception to this general rule for "third parties employed to assist a lawyer in rendering legal advice." *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227 (D. Mass. 2010) (quoting *Cavallaro*, 284 F.3d at 247) (internal quotations omitted). This limited exception requires the party asserting the privilege to establish the following elements: (1) the third-party communications are "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit" (*Dahl*, 714 F. Supp. 2d at 227 (internal citations and quotations omitted)); (2) the third party must be translating information between the attorney and the client (*id.* at 228); and (3) the communications with the third party "must be made for the purpose of rendering legal advice, rather than business advice." *Id.*

### A. Campbell-Hill Aviation Group

Spirit's logs identify 396 documents involving Campbell-Hill Aviation Group ("Campbell-Hill"), spanning from September 2019 to October 2022. Spirit's logs do not provide sufficient information to establish the elements necessary to justify the withholding of materials shared with its third-party consultant, Campbell-Hill. Plaintiffs' assessment of whether Spirit's communications with Campbell-Hill waived any valid privilege is further complicated by Spirit's use of parent-email details to justify the withholding of attachments exchanged with Campbell-Hill. While Plaintiffs understand that Spirit retained Campbell-Hill in connection with M&A activity, this fact alone is insufficient to establish the limited exception to third-party waiver set out in *Dahl v. Bain Capital Partners, LLC*, 714 F. Supp. 2d 225, 227-28 (D. Mass. 2010). Plaintiffs request that Spirit explain in further detail the role served by Campbell-Hill in connection with the JetBlue merger, as well as any other services provided by Campbell-Hill from September 2019 to October 2022 that are unrelated to that transaction, for the withheld entries.

### B. FGS Global

Spirit's logs identify 2,015 documents involving FGS Global, a third-party public relations consulting firm. Much like the withheld Campbell-Hill communications, Spirit's logs do not establish the elements required under the law to justify the withholding of its communications with third-party FGS Global. In addition, certain of Spirit's communications with FGS Global included representatives from Frontier or JetBlue for which Spirit claims a common interest.

Similar to Campbell-Hill, the fact that Spirit retained FGS Global in connection with the JetBlue merger does not, by itself, justify the withholding of materials disclosed to this firm. Plaintiffs request that Spirit provide further details regarding the role(s) served by FGS Global for the withheld entries. Further, Plaintiffs ask Spirit to clarify whether it is claiming that FGS Global also provided consulting services to Frontier and/or JetBlue for all the withheld communications that involved those entities.

### C. Okapi Partners

Spirit's logs identify 1,196 documents involving Okapi Partners ("Okapi"), a third-party investor relations consulting firm. Most of these entries are from 2022, but there are a handful of documents from 2020. Because Spirit's logs fail to provide sufficient information to establish the elements necessary to justify the withholding of materials shared with this third-party consultant, Plaintiffs ask Spirit to provide further details regarding the role(s) served by Okapi for the withheld entries.

### III.   The Lack of Log Entries with Charles River Associates Is Unexpected.

In May 2022, Spirit made public statements regarding its retention of an economic consulting firm that spent "hundreds of hours" to aid in its assessment of JetBlue's unsolicited merger bids. It is our understanding that this firm is Charles River Associates ("CRA") based on Spirit's identification of CRA on its HSR form. Despite these public statements, Spirit did not produce a single communication with CRA during the investigation and its privilege logs identify *only three* such communications. Given the apparent scope of CRA's work, it would seem highly unlikely that CRA-produced materials were not transmitted to Spirit. Again, Spirit's failure to properly log email attachments precludes Plaintiffs from identifying such materials.

Plaintiffs ask that Spirit confirm whether or not it is withholding additional materials related to CRA's assessment of the unsolicited JetBlue bids. If Spirit is in fact withholding such materials, Plaintiffs ask that Spirit either properly log all email attachments concerning CRA's communications (as discussed above) or provide a supplemental log identifying these documents.

*          *          *

Plaintiffs' review of Spirit's logs is ongoing. Plaintiffs note that Spirit's logs identify communications involving individuals from almost 200 different third-party organizations. Until Spirit provides the corrected entries sought in this letter, Plaintiffs lack the information required to properly assess Spirit's claims over materials disclosed to various third parties.

Plaintiffs are willing to meet and confer on these issues if you believe it would be helpful. We request a response by May 19, 2023 concerning Spirit's positions on the issues raised in this letter.

Sincerely,

/s/ *Michael D. Battaglia*

Michael D. Battaglia
Attorney, Antitrust Division
U.S. Department of Justice