# EXHIBIT 17

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON   (1946-1991)
RANDOLPH E. PAUL   (1946-1956)
SIMON H. RIFKIND   (1950-1995)
LOUIS S. WEISS   (1927-1950)
JOHN F. WHARTON   (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3229

WRITER'S DIRECT FACSIMILE

(212) 492-0229

WRITER'S DIRECT E-MAIL ADDRESS

tstmatthewdaniel@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
LYNN B. BAYARD
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
PAUL D. BRACHMAN
GERALD BRANT
ROBERT A. BRITTON
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
JOHN P. CARLIN
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
REBECCA S. COCCARO
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
TIHITINA DAGNEW
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
KATHERINE B. FORREST
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
MANUEL S. FREY
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
IAN M. HAZLETT
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
CHRISTOPHER HOPKINS
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
LUKE JENNINGS
JEH C. JOHNSON
MATTHEW B. JORDAN
CHRISTODOULOS KAOUTZANIS
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ROBERT A. KILLIP
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN
ALEXIA D. KORBERG
DANIEL J. KRAMER

ANDREW D. KRAUSE
BRIAN KRAUSE
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH M. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
SEAN A. MITCHELL
ERIN J. MORGAN
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
SUNG PAK
CRYSTAL L. PARKER
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
ANASTASIA V. PETERSON
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
LORIN L. REISNER
JEANNIE S. RHEE*
ANDREW N. ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY B. SAMUELS
PAUL L. SANDLER
AARON J. SCHLAPHOFF
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM
SUHAN SHIM
CULLEN L. SINCLAIR
MAURY SLEVIN
KYLE SMITH
AUDRA J. SOLOWAY
SCOTT M. SONTAG
JOSHUA H. SOVEN*
MEGAN SPELMAN
ROBERT Y. SPERLING
EYITAYO ST. MATTHEW-DANIEL
SARAH STASNY
AIDAN SYNNOTT
ROBERT D. TANANBAUM
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
ANDREA WAHLQUIST BROWN
JOHN WEBER
THEODORE V. WELLS, JR.
SAMUEL J. WELT
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
MARK B. WLAZLO
ADAM WOLLSTEIN
STACI YABLON
BOSCO YIU*
KAYE N. YOSHINO
TONG YU
TAURIE M. ZEITZER
KENNETH S. ZIMAN
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

June 15, 2023

SPIRIT CONFIDENTIAL
BY EMAIL

Michael Battaglia, Esq.
U.S. Department of Justice
Antitrust Division
450 5th Street NW
Washington, DC 20530

> Re:   *United States of America, et al. v. JetBlue Airways Corporation, et al.* (No. 1:23-cv-10511-WGY)

Dear Michael:

    On behalf of Spirit, we write in response to your request of June 9 for further explanation of the applicable law and pertinent facts supporting certain entries involving third parties in the privilege log ("Investigation Privilege Log") submitted on December 7, 2022 in connection with Spirit's response to the Request for Additional Information and Documentary Material issued by the Department of Justice ("DOJ") on September 12, 2022 ("Second Request").  The DOJ expressed generalized doubts about whether privilege could ever attach to certain nonemployees working on behalf of Spirit, and we address those doubts here.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq. 2

### A. *In re Bieter* is the Leading Statement of *Upjohn* as it Relates to Nonemployees Acting as a Corporate Client's Representatives for Purposes of Privilege

As we discussed in the June 9 meet-and-confer, the leading case regarding non-employees acting as representatives of a corporate client within the purview of privilege is *In re Bieter Co.*, which we have consistently cited in written and oral communications to the DOJ dating back to last year.[1] *Bieter* held that the form of employment does not dictate privilege, which turns on the role and duties to the corporate entity discharged by the persons involved in the communication over which protection is asserted. The case sets forth five factors to assess whether a person stands in the corporate client's shoes as its representative for purposes of privilege: (1) "that the communication be made for the purpose of seeking legal advice"; (2) "that the person making the communication do so at the direction of his superior"; (3) "that the superior request that the communication be made so that the client could secure legal advice"; (4) "that the subject matter of the communication be within the scope of the representative's duties"; and (5) "that the communication not be disseminated beyond those persons who, because of the structure of the client's operations, need to know its contents."[2] The overarching object of these factors, which turn on the particular circumstances of the communications at issue, is that a closely integrated person acting for and on behalf of a corporation in a communication is included within the privilege of that entity regardless of the person's formal employment arrangements.[3]

*Bieter* is well-accepted in courts throughout the country as a persuasive and practical framework for implementing the corporate privilege established by *Upjohn Co. v. United States*.[4] By its own terms, *Bieter* simply followed decisions holding that *Upjohn*

---

[1] *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994); *see* Letter of December 28, 2022 from Andrew Finch to Sarah Riblet and Brendan Sepulveda ("December 28 Letter"), at 3 ("[W]hen applying the attorney-client privilege to a corporation or partnership, it is inappropriate to distinguish between those on the client's payroll and those who are instead, and for whatever reason, employed as independent contractors. . . . [T]oo narrow a definition of 'representative of the client' will lead to attorneys not being able to confer confidentially with nonemployees who, due to their relationship to the client, possess the very sort of information that the privilege envisions flowing most freely.") (quoting *Bieter*).

[2] *Bieter*, 16 F.3d at 938-939 (discussing *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977)).

[3] *Id.* at 939-940.

[4] *E.g.*, *Berisha v. Lawson*, 973 F.3d 1304, 1317-20 (11th Cir. 2020); *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010) (adopting *Bieter* as following from *Upjohn*); Trustees of Elec. Workers Loc. No. 26 Pension Tr. Fund v. Tr. Fund Advisors, Inc., 266 F.R.D. 1, 8 (D.D.C. 2010) (comparing *Bieter* and noting the D.C. Circuit has likewise "rejected an interpretation of the privilege that makes its application a direct function of whether the person providing or receiving the information to or from

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq. 3

compelled a construction of privilege encompassing certain nonemployees acting in service of a corporate client.[5] *Bieter* does not state an exception to privilege but only clarifies who qualifies as the "client" in corporate attorney-client privilege under *Upjohn*.[6] In summarizing *Bieter*'s rule, *In re Copper Market Antitrust Litigation* (also cited in our December 28 Letter) stated that "because the consultant was involved in the activities which were the subject matter of the ensuing litigation and because the consultant possessed the information required by the attorney for informed advice, the consultant's confidential communications to counsel were protected."[7]

---

counsel is employed by the corporation") (citing *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002)); *see Ventrure Commc'ns Coop., Inc v. James Valley Cooperative Tel. Co.*, No. 3:20-CV-03011-RAL, 2021 WL 3048534, at *3, n.21 (D.S.D. July 20, 2021) (noting that "[s]everal courts have followed the Eighth Circuit's lead" and collecting cases); *U.S. ex. rel. Fry v. The Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5033940, at *4 (S.D. Ohio Dec. 11, 2009) ("'[T]he majority of case law' recognizes that an independent contractor serves 'as a "representative" of [the client] to the degree necessary to establish the attorney-client privilege.'") (quoting *Burlington Indus., Inc. v. Rossville Yarn, Inc.*, No. 4:95-cv0401-H, 1997 WL 404319, at *3 (N.D. Ga. June 3, 1997)); *Magten Asset Mgmt. Corp. v. Nw. Corp.*, No. CV 04-1494-JJF, 2007 WL 9811153, at *3 (D. Del. June 14, 2007), No. BR 03-12872, 2007 WL 9811128 (D. Del. July 10, 2007) ("[O]ther federal cases have considered this issue under the rubric of the 'functional employee' test. In those cases, the courts have attempted to determine whether the independent consultant's relationship is of such a degree of importance to the rendition of legal advice by the client's attorney that the independent consultant is a *de facto* employee"); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390-94 (1981).

[5] *Bieter*, 16 F.3d at 936 (discussing *McCaugherty v. Siffermann*, 132 F.R.D. 234, 239 (N.D. Cal. 1990)) (*McCaugherty* "held that under the Supreme Court's analysis in *Upjohn*, the privilege would apply to communications between two independent consultants hired by the client and the client's lawyers just as it would apply to communications between the client's employees and its lawyers.").

[6] *Id.*; *Graf*, 610 F.3d at 239; *Ventrure*, 2021 WL 3048534, at *3 (opining that to deny nonemployees privilege "goes against the Supreme Court's rejection of the 'control group' test and the Court's recognition that non-managerial employees may be considered part of the corporate client for purposes of the privilege"); Klein v. Meta Platforms, Inc., No. 20-CV-08570-JD (VKD), 2022 WL 767096, at *4 (N.D. Cal. Mar. 11, 2022) ("Underlying the decisions in *Graf* and *In re Bieter Co.* is the Supreme Court's holding in *Upjohn Co. v. United States* that 'a corporation's privilege extends to communications between corporate employees and corporate counsel as long as the communications are made at the direction of corporate superiors in order to secure legal advice.'") (quoting *Graf*, 610 F.3d at 1158); *McCaugherty*, 132 F.R.D. at 239.

[7] *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq.                                                                                                      4

During the June 9 meet-and-confer you suggested that *Bieter* does not apply in the First Circuit. This is incorrect. First Circuit precedent does not diverge from the approach adopted by its sister circuits, *Bieter*, or *Upjohn*. Indeed, in *Lluberes v. Uncommon Productions, LLC*, the First Circuit cited *Bieter* for its specific holding that a "communication between [a] real estate development partnership and developer it retained as an independent contractor for both development and subsequent litigation was protected," in support of the more general statement that "[i]f the communication contains only client confidences made in pursuit of legal advice—or legal advice based on such client confidences—that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one."[8] It is true that two magistrate opinions in the District of Massachusetts state in passing that the First Circuit has not adopted *Bieter*, but both go on to apply *Bieter* nonetheless and assess the assertions of privilege on the particular facts.[9] So too does the sole case cited in those opinions from a district judge in the District of Massachusetts apply *Bieter* even if not explicitly adopted by the First Circuit.[10] Rather than suggesting any conflict, the First Circuit and its district courts have consistently applied the reasoning in *Bieter* and its framework for assessing who constitutes the client for *Upjohn* purposes.[11]

**B. FGS and Okapi Qualify as Spirit's Representatives as Public Faces of the Company, Completely Intertwined with Senior Officers and Counsel, Operating Effectively as Spirit's PR Department**

Third parties similarly situated to FGS and Okapi discharging public relations and investor relations responsibilities on behalf of corporate clients in consultation with counsel have been found to be representatives of the corporation entitled to privilege in similar cases where the consultants are "completely intertwined" with the company's legal team, act as the "public face of the company," or effectively constitute an outsourced corporate public relations department.[12] *Bieter*'s endorsement of privilege

---

[8] *Lluberes v. Uncommon Productions, LLC*, 663 F.3d 6, 24, n.21 (1st Cir. 2011).

[9] *United States ex rel. Wollman v. Mass. Gen. Hosp. Inc.*, 475 F. Supp. 3d 45, 68 (D. Mass. 2020) (Dein, M.J.); *Banco de Brasil, S.A. v. 275 Washington St. Corp.*, No. 09-11343-NMG, 2012 WL 1247756, at *6 (D. Mass. Apr. 12, 2012) (Dein, M.J.).

[10] *Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, No. 15-12297-GOA, 2018 WL 1532614, at *3-4 (D. Mass. Mar. 28, 2018) (O'Toole, J.). In *Lynx*, the proponent failed to provide "*any* factual support for its contention" and the court accordingly held the burden unmet. *Id.* at *4.

[11] *Cf. supra* note 6.

[12] *FTC v. GlaxoSmithKline*, 294 F.3d 141, 148 (D.C. Cir. 2002) (finding public relations "consultants became integral members of the team assigned to deal with issues that were completely intertwined with [the corporation's] litigation and legal strategies"); *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1204 (N.D. Cal. 2015) ("When attending public meetings, interacting with neighbors, and otherwise being the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq.                                                                                                    5

follows from this logic, as held in virtually identical circumstances to Spirit's (illustrated by the quotation below altered only in the names and particulars):

> [FGS and Okapi were], essentially, incorporated into [Spirit's] staff to perform a corporate function that was necessary in the context of the government investigation, actual and anticipated private litigation, and heavy press scrutiny obtaining at the time. [Spirit] retained [FGS and Okapi] to deal with public relations problems following the [announcement of its merger plans]. [Spirit's] internal resources were insufficient to cover the task. [FGS's and Okapi's] public relations duties included preparing statements for public release and internal documents designed to inform [Spirit] employees about what could and could not be said about the [merger]. [FGS and Okapi] possessed authority to make decisions on behalf of [Spirit] concerning its public relations strategy. The legal ramifications and potential adverse use of such communications were material factors in the development of the communications. In formulating communications on [Spirit's] behalf, [FGS and Okapi] sought advice from [Spirit's] counsel and was privy to advice concerning the [merger] and attendant litigation.[13]

Spirit was obliged to augment its minimal fulltime employee staff responsible for public and specifically investor relations with an outsourced public relations corps in light of a high profile proposed transaction.[14] Spirit looked to its perennial trusted advisors at Sard Verbinnen (now FGS) to act for it in connection with the transaction, to "[w]ork with Spirit on the design and execution of appropriate public and investor relations programs," including representing Spirit in "[r]espond[ing] to inquiries from the press and other third parties,"[15] and to "develop written materials or make

---

face of the company, Gregory Village's attorneys counseled her actions. In all these activities, Craig acted as the public face of the company and provided information to Gregory Village's legal staff that was useful and necessary to evaluate legal strategy for the company going forward. Craig acted as Gregory Village's functional employee for the purposes of the attorney-client privilege."); *Medversant Technologies, L.L.C. v. Morrisey Associates, Inc.*, No. CV 09-05031, 2011 WL 13124128, at *4-5 (C.D. Cal. July 20, 2011) (finding the public relations firm "essentially functions as Medversant's public relations department").

[13] *In re Copper Market Antitrust Litigation*, 200 F.R.D. 213, 219 (S.D.N.Y. 2001). The district court's conclusion is dictated by the loftiest of precedents: "In applying the principles set forth by the Supreme Court in *Upjohn*, there is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." *Id.*

[14] *See id.*; *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2738, 2021 WL 3144945, at *8 (D.N.J. July 26, 2021); *Medversant*, 2011 WL 13124128, at *4-5.

[15] FGS-CID-00058930, at '930-931 (retention agreement).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq. 6

statements on Spirit's behalf," as they did.[16]  Okapi, likewise, was hired to "provide strategic advice" to Spirit and undertake proxy solicitation "on behalf of the Company,"[17] including representing Spirit in direct outreach to investors, proxy advisors, brokers, and banks.[18]  Both are required to strictly maintain any non-public information that Spirit shared with it in confidence.[19]

In the discrete set of communications withheld or redacted as privileged, FGS and Okapi personnel were acting on behalf of and for the sole benefit and interests of Spirit as its public-facing representatives, not as independent operators;[20] they were not third parties held at arm's length and communicated to only to convey an isolated assignment or by inferior functionaries.[21]  The roles they were hired for concerned, as in *Bieter*, the "*sine qua non* of the client's existence": here, the client's transformative merger.[22]  In those roles, they were "'intimately involved' in efforts to achieve that 'single objective,'"[23] regularly included in the most sensitive and strategic communications with and amongst Spirit's general counsel, CEO, and senior corporate officers.[24]  Through those

---

[16] *Id.* at '931.

[17] NK-2R-06685408, at '408 (retention agreement).

[18] *Id.* at '413.

[19] *Id.* at '410; FGS-CID-00058930, at '931.

[20] *Cf. Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1204 (N.D. Cal. 2015) (upholding representational exercise of privilege where public relations consultant served as "public face" of the corporation).

[21] This plainly distinguishes FGS and Okapi from the public relations consultant in *Wollman* found not to qualify under *Bieter*, who was "hired for specific projects, was a consultant to and not an agent of" the client, and of whom the proponent had not alleged "anything special about the relationship." *United States ex rel. Wollman v. Mass. Gen. Hosp. Inc.*, 475 F. Supp. 3d 45, 68 (D. Mass. 2020).  By contrast, here FGS and Okapi personnel were integral and integrated members of the decision-making team, acting as the company's face, included in highly confidential consultations regarding not some isolated or collateral project but the high stakes of the proposed merger.  *Wollman*'s additional consideration, which you raised on the June 9 meet-and-confer that the consultant there did not work out of the principal's offices is not probative.  Many of Spirit's fulltime employees in 2022 were also not working from the office in light of COVID and the ensuing transition to remote and hybrid work arrangements.

[22] *Hope For Fams. & Cmty. Serv., Inc. v. Warren,* No. 3:06-CV-1113-WKW, 2009 WL 1066525, at *10 (M.D. Ala. Apr. 21, 2009) (quoting *Bieter*, 16 F.3d at 934).

[23] *Id.* (quoting *Bieter*, 16 F.3d at 938).

[24] Analysis of the productions made in the Second Request together with the Investigation Privilege Log indicates that FGS was a participant in 5567 communications with Spirit's general counsel Thomas Canfield, 5789 with the other chief corporate officers

executive officers and counsel, Spirit closely directed and depended upon their work, and to the extent FGS and Okapi were involved in communications with Spirit's counsel of a privileged character, it was at the instruction of Spirit via its chief corporate officers so that Spirit itself could receive the benefit of fully-informed legal advice.[25]

To take a common example, when FGS (or Okapi) prepared a public statement by Spirit for the review and feedback of Spirit's counsel, the interest at stake was Spirit's in ensuring that the very words attributed to it as a corporate entity were legally sound and appropriate. FGS personnel were acting in their capacity as Spirit's representatives, and the advice sought and obtained from Spirit's counsel was solicited and given at Spirit's direction to vet any public statement with its legal advisors before issuance. Precisely these circumstances have been recognized as squarely within corporate privilege.[26] The fact that FGS and Okapi occupied such an integral role in speaking on Spirit's behalf shows why they qualify as Spirit's representatives under *Bieter* in that capacity, including in consultations with counsel as to what they should say.

### C. Campbell-Hill Qualifies as Spirit's Representative Operating as Its Outsourced Aviation Economics Department

Campbell-Hill served in a different role for Spirit from FGS or Okapi. As Campbell-Hill described in its submissions responding to the multiple Civil Investigative Demands issued to it last year, the company has a longstanding relationship with Spirit,[27] having assumed numerous duties at Spirit's behest over the years, largely of an

---

Ted Christie (CEO), Matt Klein (CCO), John Bendoriatis (COO), Scott Haralson (CFO), Linde Grindle (CHRO), or Rocky Wiggins (CIO) (including 4655 with Mr. Christie), 3735 with Spirit's outside counsel at Paul, Weiss, and 4377 with those at Debevoise. Okapi, meanwhile, participated in 2802 communications with Mr. Canfield, 2811 with the other chief corporate officers (including 2639 with Mr. Christie), 2355 with Paul, Weiss, and 2554 with Debevoise. These statistics evidence the close integration of both consultants into the heart of Spirit's deliberations as "functional employees" in the sense used by *Bieter*.

[25] *Cf. In re Bieter Co.*, 16 F.3d 929, 939 (8th Cir. 1994) (noting the requirements that the consultant communicating with counsel do so at the request of a superior, and that the purpose be to facilitate the client's receipt of legal advice).

[26] *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2738, 2021 WL 3144945, at *8-*9 (D.N.J. July 26, 2021).

[27] *Cf. Lynx Sys. Devs., Inc. v. Zebra Enter. Sols. Corp.*, No. 15-12297-GOA, 2018 WL 1532614, at *4 (D. Mass. Mar. 28, 2018) (finding a *Bieter* argument not supported because, *inter alia*, the proponent had not adduced evidence of a longstanding relationship).

econometric character, employing the consultancy's expertise in the economics of the aviation sector.[28]

As previously explained to the DOJ, Spirit engaged Campbell-Hill to do this work because it was not commercially feasible as an ultra-low-cost carrier for Spirit to maintain a full-time employed staff of aviation economic analysts for sporadic corporate needs. But when Campbell-Hill was performing the work assigned by Spirit, it was acting as Spirit's representative for purposes of assessing corporate privilege under *Bieter*. Note that nearly all communications in service of those responsibilities that were responsive to Second Request were submitted unredacted to the DOJ. Only rarely was Spirit's privilege invoked in connection with Campbell-Hill's work prior to 2022. As with any corporate representative, there were occasions when ad hoc legal questions germane to Spirit's interests arose in the course of Campbell-Hill discharging its responsibilities.[29] In those situations, Campbell-Hill personnel, when consulting with Spirit's counsel, were acting for a legal purpose, at the direction of their supervisors installed by Spirit, in service of Spirit's interest in obtaining legal advice, within the scope of their duties to Spirit, and limited only to those Spirit required for the advice, as stated in the itemized entries in the Investigation Privilege Log. The fact that the few assertions involving Campbell-Hill also involve either Thomas Canfield, the general counsel of Spirit, and/or Paul, Weiss, Spirit's outside counsel, only underscore that these communications were undertaken in service of Campbell-Hill's duties to Spirit in order for *Spirit* as the corporate client to obtain informed legal advice.

The DOJ suggested in the June 9 meet-and-confer that Campbell-Hill's work for other entities categorically negates privilege even in particular communications squarely within the scope of Campbell-Hill's retention by Spirit. That is not the law,[30] as

---

[28] *See* Letter of October 29, 2022 from Sophia Bertran to Sarah Riblet and Brendan Sepulveda re Civil Investigative Demand No. 31141 (Campbell-Hill Aviation Group, LLC) – Response to Specifications 1 and 2; Letter of May 24, 2022 from Sophia Bertan to Cory Braden Leuchten and Sarah Riblet re Civil Investigative Demand No. 30985 (Campbell-Hill Aviation Group, LLC) – Response to Specification 1 ("May 24 Letter").

[29] We note that a minority of the Campbell-Hill materials pertained to more manifestly legal work in connection with the Northeast Alliance (NEA) litigation against American Airlines and JetBlue Airways brought by the DOJ and tried in the District of Massachusetts in autumn 2022. The assertions in the Investigation Privilege Log as to such documents appropriately identify the general subject matter of such communications, and Campbell-Hill disclosed the work done concerning the NEA from June to September 2020 and July to September 2021 in its submissions to the DOJ in 2022. *See* May 24 Letter at 2-3.

[30] *See, e.g.*, *Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252, at *6 (N.D. Ill. Feb. 22, 2007) ("[I]n the instant case, GS was clearly acting on behalf of Stafford, not the public at large. Although GS serves a multitude of clients, it is clear in this case

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq.     9

*Bieter* addresses by its test of whether the communication is within the scope of the consultant's representation of the client—implying necessarily that some other communications may be out of scope.[31]

Finally, we disagree with your statement that "Spirit for the first time claimed [on the June 9 meet-and-confer] that it had not waived privilege on documents it shared with third parties Okapi, FGS Global, and Campbell-Hill because the employees of those third parties were the functional equivalent of Spirit employees." We refer you to our prior submissions to DOJ dating back to December 2022.[32] Ultimately, the question is not whether, considered in the abstract, Campbell-Hill (or FGS or Okapi) personnel fit within an overgeneralized conception of a "functional employee", but rather the participants' role in the specific communications as to which Spirit did assert privilege, as assessed by *Bieter*'s test. We have now provided information responsive to this very question to the DOJ on at least five prior occasions.[33]

\* \* \*

---

    that all of the players from GS, Stafford, and Kirkland considered their communications to be confidential, and that the communications were treated as such.").

[31] *Bieter*, 16 F.3d at 939 ("The fourth requirement is that the subject matter of the communication be within the scope of the representative's duties.")

[32] We brought *Bieter*, *In re Copper Market Antitrust Litigation*, and the framework of nonemployees serving as Spirit's representatives to the DOJ's attention in our December 28 Letter which responded to your initial concerns about the Investigation Privilege Log. We further discussed the facts, relevant cases and legal framework in our December 30, 2022 meet-and-confer with Sarah Riblet and Brendan Sepulveda. Following that meet-and-confer, the DOJ supplied a list of specific third parties with whom it had concerns, and over the course of the New Year's holiday we supplemented the Investigation Privilege Log with information related to those entries or reconsidered the assertion of privilege, resulting in a further submission as detailed in our letter of January 10, 2023 from Andrew Finch to Sarah Riblet and Brendan Sepulveda. The matter appeared for all intents and purposes resolved until we received your letter of May 16, 2023. In short order, we responded by our letter of May 21, 2023 from Kate Wald, expressing concerns at the belated resurrection of the same issues, and referring you to our prior correspondence and discussions in December 2022 and January 2023, including specifically to the December 28 Letter and its treatment of the proper analysis of corporate representatives under *Bieter*.

[33] In addition to those noted already and the Investigation Privilege Log itself, we also observed in the May 21 Letter that both Campbell-Hill's and FGS's own responses to CID interrogatories provide additional information about the nature of their work on Spirit's behalf. *See supra* note 28 and Letter of October 7, 2022 from Sophia Bertran to Sarah Riblet and Brendan Sepulveda re Civil Investigative Demand No. 31142 (FGS Global) – Response to Specifications 1 and 2.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Michael Battaglia, Esq. 10

      We remain available to meet and confer further on these matters of law and fact or particularized questions as to any instances of privilege asserted.

      This letter has been labeled SPIRIT CONFIDENTIAL pursuant to the protective order entered in this litigation and contains confidential and commercially sensitive information. Accordingly, please afford this letter and all information contained therein confidential treatment to the fullest extent possible under the protective order and all applicable agreements, laws, and regulations. Additionally, no divulgence of privileged material is intended, and any potential inclusion of such matter is inadvertent.

      Very truly yours,

      */s/ Etiyayo St. Matthew-Daniel*
      Eyitayo St. Matthew-Daniel, Esq.

cc:    Andrew C. Finch, Esq.
        Jared S. Sunshine, Esq.