**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JETBLUE AIRWAYS CORPORATION and )<br>SPIRIT AIRLINES, INC., )<br>)<br>Defendants, )<br> ) | Civil Action No. 1:23-cv-10511-WGY |

**DECLARATION OF SCOTT HARALSON**

I, Scott Haralson, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am Executive Vice President and Chief Financial Officer of Spirit Airlines, Inc. ("Spirit"). I make this declaration on behalf of Spirit based upon my own personal knowledge and information obtained during the course of my official duties. If called to do so, I could testify competently to the facts stated herein under oath.

2. Spirit is a commercial airline headquartered in Miramar, Florida. It operates as an "ultra-low cost carrier." Spirit's ultra-low cost carrier business model is based upon maintaining low operating costs, which allow Spirit to profitably offer low average fares. Spirit's low operating costs are an essential component of its viability as a business.

3. Key elements of Spirit's low cost structure include efficient asset utilization, high-density seating configurations, high employee productivity, rigorous cost control and use of outsourced services to supplement lean executive teams. For example, Spirit's investor

1

relations team consists of two individuals: DeAnne Gabel, Senior Director, Investor Relations, and Vivian Tavarez, Manager, Investor Relations.

4. Spirit relies on outsourced services provided by trusted third party advisors to address matters of unusual importance, or which require special capabilities or additional capacity that are not available in-house.

5. Spirit executed a proposed merger agreement with Frontier Airlines ("Frontier") on February 5, 2022. The proposed Frontier merger was subject to regulatory review by multiple state and federal authorities including the United States Department of Justice ("DOJ").

6. Spirit lacked the internal capacity—staffing, resources, and expertise—to navigate the proposed Frontier merger on its own. Spirit assembled a team of outside counsel and other third party advisors to assist with navigating the merger process, including with internal and external communications, investor relations, shareholder solicitation, and legal support.

7. Spirit retained communications consulting firm FGS Global (formerly Sard Verbinnen & Co.) ("FGS") to provide strategic communications and media relations counsel in connection with the proposed Frontier merger. Under the terms of Spirit's agreement with FGS, FGS is required to "keep confidential all non-public information provided to [FGS] by Spirit in connection with" its work for Spirit.

8. Spirit also engaged proxy solicitation and investor response firm Okapi Partners LLC ("Okapi"), to provide strategic shareholder engagement advice and solicit proxies on Spirit's behalf in connection with the proposed Frontier merger. Under the terms of Spirit's agreement with Okapi, Okapi is required to "preserve the confidentiality of (i) all material nonpublic information provided by [Spirit] or its agents for Okapi's use in fulfilling its obligations

hereunder and (ii) any information developed by Okapi based upon such material nonpublic information."

9. JetBlue Airways, Inc. ("JetBlue") made an unsolicited offer (the "Offer") to acquire Spirit on March 29, 2022. JetBlue revised the terms of the Offer several times between March 29, 2022 and the end of July, 2022, and also issued in parallel an unsolicited public tender offer direct to Spirit's stockholders that was ultimately withdrawn when Spirit agreed to the revised terms of the Offer and signed a merger agreement with JetBlue on July 28, 2022.

10. Following Spirit's receipt of the Offer, Spirit evaluated the proposed JetBlue transaction as required under its agreement with Frontier, focusing particularly on the likelihood that the JetBlue merger would receive regulatory clearance and its potential litigation risks. Spirit conducted a similar evaluation following each revision to the Offer.

11. Following Spirit's receipt of the Offer, FGS's work expanded to providing strategic communications advice relating to the Offer. The services rendered by FGS to Spirit were indistinguishable from the services an in-house communications team would have been required to perform if Spirit had built out a robust in-house communications team with the requisite staffing, resources, and expertise.

12. Also following Spirit's receipt of the Offer, Okapi's work expanded to providing strategic shareholder engagement advice and direct outreach, as well as outreach to the two main proxy advisory firms, ISS and Glass Lewis. Spirit updated its retention agreement with Okapi on May 16, 2022 to reflect the additional services provided by Okapi. Some of the services rendered by Okapi to Spirit were indistinguishable from the services an in-house investor relations team would have been required to perform if Spirit had built out a robust investor relations team

with the requisite staffing, resources, and expertise in investor response, proxy solicitation, and corporate governance matters.

13. Spirit directed FGS and Okapi to inform Spirit's legal counsel of Spirit's communications strategy and of what had been discussed with shareholders and stakeholders, and to submit proposed statements to counsel for legal review. Spirit also directed legal counsel to guide FGS and Okapi on Spirit's legal strategy generally, including legal analysis of both proposed mergers' regulatory approval and litigation risk prospects, as well as legal advice in the form of edits and comments to draft statements. Spirit believed that the private communications at its behest among legal counsel, FGS and Okapi were highly confidential and subject to privilege.

14. As Spirit's official spokespeople and strategic communications and investor relations advisors, FGS and Okapi worked directly with Spirit legal advisors—and were regularly included in the most sensitive and strategic communications with Spirit's CEO, general counsel, and senior corporate officers—to engage with all elements of the proposed Frontier merger and JetBlue offer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on August 31, 2023 in Fort Lauderdale, Florida.

_Scott Haralson_
Scott Haralson

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on September 1, 2023.

*/s/ Andrew C. Finch*
Andrew C. Finch *(pro hac vice)*