**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-10511-WGY |
| | ) |
| JETBLUE AIRWAYS CORPORATION and | ) |
| SPIRIT AIRLINES, INC., | ) |
| | ) |
| *Defendants*, | ) |

**DEFENDANT JETBLUE AIRWAYS CORPORATION AND SPIRIT AIRLINES, INC.'S MOTION IN LIMINE TO ESTOP THE DEPARTMENT OF JUSTICE FROM TAKING INCONSISTENT POSITIONS AND TO OVERRULE OBJECTIONS**

## <u>TABLE OF CONTENTS</u>

I.    PRELIMINARY STATEMENT ........................................................................................... 1

II.   JUDICIAL ESTOPPEL BARS DOJ FROM SWITCHING POSITIONS FROM THE
      NEA CASE TO THIS CASE ............................................................................................ 2

III.  THE NEA CASE FILINGS ARE ADMISSIBLE ........................................................... 11

IV.   CONCLUSION ................................................................................................................ 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agility Pub. Warehousing Co., K.S.C.P. v. United States*,
   143 Fed. Cl. 157 (2019), *aff'd in part, vacated in part on other grounds, and
   remanded*, 969 F.3d 1355 (Fed. Cir. 2020) ........................................................... 7

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
   374 F.3d 23 (1st Cir. 2004) .................................................................................... 7

*Clark v. Kitt*,
   No. 12-cv-8061, 2014 WL 4054284 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 Fed.
   App'x 34 (2d Cir. 2015) ........................................................................................ 12

*Cuyahoga Metro. Hous. Auth. v. United States*,
   65 Fed. Cl. 534 (2005)............................................................................................. 8

*F.T.C. v. Arch Coal, Inc.*,
   329 F. Supp. 2d 109 (D.D.C. 2004), *case dismissed*, No. 04-5291, 04-7120, 2004
   WL 2066879 (D.C. Cir. Sept. 15, 2004) ............................................................... 10

*In re Galaz*,
   841 F.3d 316 (5th Cir. 2016) ................................................................................. 12

*InterGen N.V. v. Grina*,
   344 F.3d 134 (1st Cir. 2003) ................................................................................... 7

*Kowalski v. Gagne*,
   914 F.2d 299 (1st Cir. 1990) ................................................................................. 12

*Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*,
   834 F.2d 208 (1st Cir. 1987) ................................................................................... 7

*Payless Wholesale Distrib., Inc. v. Alberto Culver (P.R.) Inc.*,
   989 F.2d 570 (1st Cir. 1993) ................................................................................... 7

*Perez v. Deutsche Bank Nat'l Tr. Co.*,
   No. 17-CV-839-A, 2018 WL 4853897 (N.D. Tex. Oct. 5, 2018) ......................... 12

*Scoma v. City of New York*,
   No. 16-cv-6693, 2021 WL 1784385 (E.D.N.Y. May 4, 2021) ............................. 11

*United States v. Am. Airlines Grp. Inc.*,
   No. 21-11558, 2023 WL 3560430 (D. Mass. May 19, 2023) ........................................4, 9-10

*United States v. Diaz*,
   878 F.2d 608 (2d Cir. 1989) ............................................................................................... 11

*United States v. H&R Block*,
   833 F. Supp. 2d 36 (D.D.C. 2011) .................................................................................... 10

*United States v. Kattar*,
   840 F.2d 118 (1st Cir. 1988) ................................................................................... 7, 11, 13

*United States v. Kindred Healthcare, Inc*,
   469 F. Supp. 3d 431 (E.D. Pa. 2020) ................................................................................ 12

*United States v. Levasseur*,
   846 F.2d 786 (1st Cir. 1988) ............................................................................................... 8

*United States v. Owens*,
   933 F. Supp. 76 (D. Mass. 1996) ........................................................................................ 8

*United States v. Watson*,
   695 F.3d 159 (1st Cir. 2012) ............................................................................................. 12

## Other Authorities

Fed. R. Evid. 201 ......................................................................................................... 1, 12

Fed. R. Evid. 402 ............................................................................................................. 11

Fed. R. Evid. 403 ............................................................................................................. 11

Fed. R. Evid. 801(d)(2) ................................................................................................. 1, 13

## I.   PRELIMINARY STATEMENT

This motion arises from the startling switch in positions by the Department of Justice ("DOJ") with respect to the competitive role that JetBlue plays in the airline marketplace.  Just last year, DOJ touted JetBlue as the antidote to the dominance of the legacy airlines (American, Delta, and United) and persuaded another court in this District that JetBlue is a "maverick" airline that makes it less likely for airlines to coordinate.  *United States v. Am. Airlines Grp. Inc.*, No. 1:21-cv-11558-LTS (D. Mass.) (the "NEA Case").  In this case, in an effort to stop the JetBlue/Spirit merger, DOJ is saying the opposite:  the transaction should not be allowed to proceed because it will facilitate collusion between JetBlue and its airline rivals post-merger.

Judicial estoppel prevents DOJ from switching positions here.  Litigants, including DOJ, are not permitted to successfully advance an argument in one case and make the opposite one in a second proceeding.  But, as set forth below, that is precisely the tack DOJ is attempting in its zeal to sidetrack a merger that will, in fact, benefit airline passengers.  While DOJ's admissions from the NEA Case undermine *all* of its arguments against the merger here, DOJ's "coordinated effects" argument before this Court is diametrically opposed to the positions that it advanced and the Court adopted in the NEA Case.  As a result, the principle of judicial estoppel—and fundamental notions of fairness—should lead this Court to exclude any such evidence or argument as to alleged coordinated effects.

The Court also should reject DOJ's attempt to hide from its admissions through its objections to their admissibility.  NEA Case briefs are judicially noticeable under Fed. R. Evid. 201 as federal court filings in this same court whose accuracy cannot reasonably be questioned.  Moreover, these filings are admissible as party admissions under Rule 801(d)(2).

1

## II.   JUDICIAL ESTOPPEL BARS DOJ FROM SWITCHING POSITIONS FROM THE NEA CASE TO THIS CASE

Last year, DOJ filed an action, the NEA Case, seeking to enjoin the alliance entered into between JetBlue and American Airlines in the Northeast.  In the NEA Case, DOJ argued that JetBlue is a "uniquely disruptive low-cost airline" and has "saved consumers a total of more than $10 billion" dollars, and therefore should not be allowed to align itself with a legacy, higher-cost airline such as American because that alliance would decrease JetBlue's independent competitive power.  Compl. at 2, ¶ 5, NEA Case (Sept. 21, 2021), ECF No. 1 ("NEA Compl.").

Throughout the case, DOJ emphatically touted the "JetBlue Effect."  As DOJ explained it:  "The 'JetBlue Effect' describes the decrease in fares that occurs after JetBlue enters a market, or the increase in fares that occurs after JetBlue exits a market.  PX0562 at 2-6.  The JetBlue Effect takes its name from an MIT study that determined that when JetBlue enters a market, other competitors lower their fares and passenger demand increases.  Land (JetBlue) Dep. 29:20–30:4, Apr. 28, 2022."  Plaintiffs' Proposed Findings of Fact ¶ 46, NEA Case (Dec. 2, 2022), ECF No. 332 ("NEA Proposed Findings of Fact").  This JetBlue Effect arises because, as DOJ repeatedly proclaimed, JetBlue offers a *unique* value proposition – low fares and high quality – that allows it to discipline the legacies in a way other low-cost airlines (like Spirit) cannot.  *See e.g.*, NEA Proposed Findings of Fact at 6; *id.* at; 7; *id.* at 12.  The following slide from DOJ's own opening in the NEA tells the story vividly:



When JetBlue Competes, Travelers Save Billions

In the end, DOJ asked the Court to adopt the following facts:

- "JetBlue is **unique** among low-cost airlines."  NEA Proposed Findings of Fact at 6.

- "JetBlue **differentiated itself from other low-cost airlines** by offering not only low fares, but also high-quality service."  *Id.* ¶ 24.

- "JetBlue's high quality of service allowed it to **compete effectively against the legacy airlines in ways other LCCs and ULCCs could not**."  *Id.* ¶ 27.

- "While AA, United, and Delta—'legacy' airlines—were busy consolidating, **JetBlue was attacking the harms that consolidation inflicted on passengers**."  Plaintiffs' Pre-Trial Brief at 7, NEA Case (Sept. 9, 2022), ECF No. 160 ("NEA Pre-Trial Brief").

- "For more than two decades, **JetBlue served as the legacy airlines' foil in the northeastern United States**."  *Id.* at 8.

- "JetBlue is a **close competitor to legacy airlines** and **is able to constrain their pricing**."  NEA Proposed Findings of Fact at 9.

3

- "The **JetBlue Effect produces lower prices and higher quality service** on routes where JetBlue competes." *Id.* at 12.

- "**Consumers benefited** from competition between JetBlue and the legacy airlines." *Id.* ¶ 43.

- "Travelers benefited from the JetBlue Effect **whether or not they flew on JetBlue**." *Id.* ¶ 53.

- "In total, competition between JetBlue and the legacy airlines **has saved travelers billions of dollars**." *Id.* ¶ 45.

(Emphasis added in all.)

Judge Sorokin accepted and relied upon those arguments by DOJ. Among other things, in its final findings of fact and conclusions of law, the Court found:

> The parties all agree, and the Court finds, that JetBlue has played a unique role in the domestic air travel industry and qualifies as a "maverick" competitor for present purposes. *E.g.*, Trial Tr. vol. 1 at 250. The Court finds JetBlue occupied such a role regardless of whether it remained an LCC or had migrated to a hybrid form somewhere between a traditional LCC and a GNC.[1] In either event, it was justifiably viewed by others—and it indisputably viewed itself—as a unique and disruptive force in the domestic air travel market.

*United States v. Am. Airlines Grp. Inc*., No. 21-11558, 2023 WL 3560430, at \*34, n.81 (D. Mass. May 19, 2023).

Less than a year later, DOJ has abruptly changed course. A fundamental premise of the transaction before the Court is that JetBlue is a mere 5% player focused primarily on the East Coast; however, with the purchase of Spirit, JetBlue will become a viable national competitor to the dominant airlines and spread the disruptive force of the JetBlue Effect (and the massive

---

[1] An "LCC" is a low-cost carrier. "GNC" refers to a "global network carrier," such as United, American, and Delta.

savings that go with it) to consumers throughout the country.  Based on its positions in the NEA, one would think DOJ would celebrate a bigger, more disruptive JetBlue.  But in its anti-merger zeal, DOJ instead has abandoned its view of JetBlue from the NEA Case.

Rather than adhere to its assertion that JetBlue is a disruptor of legacies and alleged coordination, DOJ alleges instead that JetBlue has "demonstrated its willingness to follow along with" certain "opportunities to coordinate and would have increased incentives to do so if the acquisition goes through."  Compl. ¶ 5; *see also id.* at ¶¶ 48–51, 54 ("As JetBlue grows into a more sizable airline that behaves more like the Big Four, it has fewer reasons to continue to compete aggressively with them.").  DOJ's new theory—advanced without any regard for the arguments that were successful in the NEA Case—is that JetBlue is a likely price coordinator, and thus the merger would lead to "coordinated effects," that is, that it would increase the likelihood that the airlines would harm competition through coordinated interaction.  *See* Horizontal Merger Guidelines § 7 (2010); Compl. ¶¶ 44–56.

Indeed, the recent deposition of DOJ's expert economist, Dr. Gautam Gowrisankaran, confirms DOJ's about face, as Dr. Gowrisankaran rejected DOJ's own proposed facts from the NEA Case as they relate to JetBlue.

- Although DOJ was asserting in the NEA Case that, over the past decade, "'legacy' airlines [] were busy consolidating [while] JetBlue was attacking the harms that consolidation inflicted on passengers" (NEA Pre-Trial Brief at 7),[2] DOJ's story in this case is that, over that same decade, JetBlue has had "less of a disruptive influence, and

---

[2]   *See also* NEA Proposed Findings of Fact ¶ 43 ("After JetBlue entered BOS-LGA in October 2016, however, American contacted State Street to renegotiate its contract, resulting in State Street's fare on BOS-LGA decreasing from over $400 to $125."); *id.* ¶ 50 ("For example, when JetBlue entered BOS-DCA—an NEA overlap route—in 2010, average fares fell by 29 percent, *i.e.*, prices were 40 percent higher before JetBlue's entry.").

less of an influence on lowering prices than it used to," and now "is looking more like a legacy carrier." Decl. of Ryan A. Shores, Ex. A (Gowrisankaran Dep. Tr. 107:22-108:6) ("Gowrisankaran Dep. Tr.").

- Dr. Gowrisankaran rejected DOJ's prior statement that "JetBlue's pricing strategy was to stimulate demand by offering lower fares" (NEA Proposed Findings of Fact ¶ 24), claiming that on "the majority of [routes], the offered prices from JetBlue were similar to legacy carriers" and that quality determinations "really depend[] on the person, the particular flight, the experience." Gowrisankaran Dep. Tr. 105:5-106:20.

- Dr. Gowrisankaran denied that JetBlue "differentiated itself from other low-cost airlines by offering not only low fares, but also high-quality service," (NEA Proposed Findings of Fact ¶ 24), asserting that "whether JetBlue has differentiated itself by high quality" was "not something [he] would agree with." Gowrisankaran Dep. Tr. 89:9-90:6.

- Dr. Gowrisankaran was unable to agree that "JetBlue's high quality of service allowed it to compete effectively against the legacy airlines in ways other LCCs and ULCCs could not," (NEA Proposed Findings of Fact ¶ 27), responding: "Is JetBlue some higher quality for everybody? Well, that's not what the record indicates at all." Gowrisankaran Dep. Tr. 108:7-109:4.

- Dr. Gowrisankaran could not agree that JetBlue is "uniquely disruptive," (NEA Compl. at 2), and tried to distance himself from the descriptors "disruptive" and "maverick." Gowrisankaran Dep. Tr. 106:21-108:6.

There is simply no way to reconcile the position DOJ is taking now with that it took before Judge Sorokin. Rather, it is clear that the DOJ has decided to cast JetBlue in a "radically different

light" due to "the strategic necessities of the separate litigations."  *United States v. Kattar*, 840 F.2d 118, 126–27, 129 (1st Cir. 1988).

DOJ's about-face is barred by the doctrine of judicial estoppel, which is designed to prevent a litigant from doing what the DOJ is doing here:  pressing a claim that is inconsistent with a position it successfully advanced in a prior case.  *See InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003); *Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987) (judicial estoppel "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another"); *see also Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32–33 (1st Cir. 2004).  The doctrine is an equitable one:  DOJ, "having obtained judicial relief on" one representation, may not obtain "relief on the opposite basis."  *Payless Wholesale Distrib.*, *Inc. v. Alberto Culver (P.R.) Inc*., 989 F.2d 570, 571 (1st Cir. 1993).  To do otherwise is an "unacceptable abuse of judicial proceedings," *id.*, and is playing "fast and loose with the courts."  *Patriot Cinemas,* 834 F.2d at 212.

In the First Circuit, "two conditions must be satisfied before judicial estoppel can attach.  First, the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive.  Second, the responsible party must have succeeded in persuading a court to accept its prior position.  And, although "not a formal element of a claim of judicial estoppel, courts frequently consider a third factor:  absent an estoppel, would the party asserting the inconsistent position derive an unfair advantage?"  *Alt. Sys. Concepts*, 374 F.3d at 33 (citations omitted).  While judicial estoppel against the Government will in many circumstances be inappropriate, it applies in appropriate circumstances to protect the integrity of the judicial system.  *See Agility Pub. Warehousing Co., K.S.C.P. v. United States*, 143 Fed. Cl. 157, 172 (2019) ("Judicial estoppel applies equally against the Government as it does private parties."),

7

*aff'd in part, vacated in part on other grounds, and remanded*, 969 F.3d 1355 (Fed. Cir. 2020);

*see also Cuyahoga Metro. Hous. Auth. v. United States*, 65 Fed. Cl. 534, 555 (2005) (collecting

cases, finding that judicial estoppel should apply against the Federal Government to "protect the

integrity of the judicial system").[3]

All of the prerequisites for judicial estoppel are present here.  DOJ is taking positions

here that are inconsistent with arguments that it advanced and upon which Judge Sorokin relied

in striking down the JetBlue/American alliance in the NEA Case.  And fairness also dictates

against the DOJ's side-switching story here.

In the NEA Case, DOJ alleged that JetBlue was "uniquely disruptive," NEA Compl. ¶

36, and quoted JetBlue's assertion that it serves as an "important counterweight to the

concentration of power held by our largest competitors," checking and lowering the fares they

bring to the market.  *Id.* ¶ 5.  DOJ pressed these themes at trial, writing in its post-trial brief that

"JetBlue historically has behaved like a maverick in the airline industry" and that the airline has

differentiated "itself from legacy airlines and other LCCs by other low fares and high-quality

services," NEA Post Trial Brief at 37, and is a "disruptive competitor," *id*. at 20.

DOJ also repeatedly distinguished JetBlue from the legacy carriers, stating that

"[c]onsumers benefited from competition between JetBlue and the legacy airlines."  NEA

---

[3]    Defendants respectfully submit that estoppel can and should apply to the Government in order to protect the integrity of the judicial process and as a matter of fundamental fairness.  Notably, the Government assertions at issue were made less than a year ago, in the same court, in a case involving the same parties, and by the same section at DOJ (indeed, some of the same lawyers).  DOJ may attempt to rebut this assertion and cite to cases in the First Circuit that found judicial estoppel did not apply to the Government.  *See e.g.*, *United States v. Owens*, 933 F. Supp. 76, 83–84 (D. Mass. 1996); *United States v. Levasseur*, 846 F.2d 786, 790–95 (1st Cir. 1988).  The holdings and underlying facts in those cases are distinguishable from this one.  In *Owens*¸ the court ruled that the judicial estoppel "doctrine cannot be invoked against the government so as to estop it from arguing that a statute must be applied in accordance with its terms."  *Owens*, 933 F. Supp. at 83–84.  There is no applicable statute in the current case that would prevent judicial estoppel from being applied to the Government. In *Levasseur*, the court held the Government was not judicially estopped from relying on arson violations that were "unequivocally promised to drop" by the Government in a prior matter as predicate acts for a later RICO prosecution because the Government did not play "fast and loose."  *Levasseur*, 846 F.2d at 792, 793.  Here, the Government is not attempting to use prior violations as predicate acts to support its current case.

Proposed Findings of Fact ¶ 43.  DOJ stated that "JetBlue's high quality of service allowed it to compete effectively against the legacy airlines in ways other LCCs and ULCCs could not," making clear JetBlue is more of a disciplining force than Spirit.  *Id.*  ¶ 27.  Also, DOJ stated that "[w]hile AA, United, and Delta"—the legacy airlines—were "busy consolidating," JetBlue was "attacking the harms that consolidation inflicted on passengers."  NEA Pre-Trial Brief at 7.  DOJ described JetBlue as the "foil" to the legacy airlines.  *Id.* at 7–8.

DOJ also highlighted the benefits that JetBlue has brought to consumers.  It said that the "JetBlue Effect produces lower prices and higher quality service on routes where JetBlue competes."  NEA Proposed Findings of Fact ¶ 12.  It said "[t]ravelers benefited from the JetBlue Effect whether or not they flew on JetBlue."  *Id.* ¶ 53.  DOJ's claims culminate in the stark recognition that the competition between JetBlue and the legacy airlines has saved travelers "billions of dollars."  *Id.* ¶ 45.

The Court ultimately relied on these assertions.  Judge Sorokin wrote that JetBlue "plainly occupies a unique position in the domestic airline industry" and cited JetBlue's "'disruptor' status."  *United States v. Am. Airlines Grp. Inc.*, No. 21-11558, 2023 WL 3560430, at *6 (D. Mass. May 19, 2023).  As one of the bases for his decision, Judge Sorokin held that by aligning with American Airlines, JetBlue "sacrificed a degree of its independence and weakened its status as an important 'maverick' competitor in the industry."  *Id.* at *34.  He characterized the "maverick" role as follows:

> The parties all agree, and the Court finds, that JetBlue has played a unique role in the domestic air travel industry and qualifies as a "maverick" competitor for present purposes.  E.g., Trial Tr. vol. 1 at 250.  The Court finds JetBlue occupied such a role regardless of whether it remained an LCC or had migrated to a hybrid form somewhere between a traditional LCC and a GNC.  In either event, it was justifiably viewed by others—and it indisputably viewed itself—as a unique and disruptive force in the domestic air travel market.

*United States v. Am. Airlines Grp. Inc.*, No. 21-11558, 2023 WL 3560430, at *34 n.81 (D. Mass. May 19, 2023). Based on DOJ's arguments, this Court concluded that the NEA caused "JetBlue to lose opportunities to independently secure greater access to busy, constrained markets where its 'maverick' competition would otherwise operate as an important competitive check on the conduct of larger carriers." *Id.* at *34. Judge Sorokin's competitive effects analysis included the finding that the NEA would "diminish JetBlue's ability to provide disruptive, low-cost competition." *Id.* at *19.

In an effort to enjoin the Spirit transaction, DOJ has turned 180 degrees. In arguing that the merger will lead DOJ to "coordinated effects," that is, that it would increase the likelihood that the remaining firms would make accommodating responses and ultimately harm competition through coordinated interaction, DOJ has backtracked from the "maverick" argument upon which Judge Sorokin relied.[4] Instead, DOJ now chronicles JetBlue's supposed "evolution from disrupter to closer ally of the Big Four" in its Complaint. Compl. at 6 . It argues in this Court— in stark contrast to the arguments advanced before Judge Sorokin—that JetBlue has "demonstrated its willingness to follow along with" certain "opportunities to coordinate and would have increased incentives to do so if the acquisition goes through." Compl. ¶ 5; *see also id.* at ¶¶ 48–51, 54 ("As JetBlue grows into a more sizable airline that behaves more like the Big Four, it has fewer reasons to continue to compete aggressively with them."); *id.* ¶¶ 44-56. In short, in the NEA Case, DOJ persuaded the Court that JetBlue is a "maverick" competitor *regardless* of how you characterize its business model. Here, by contrast, it claims that JetBlue

---

[4]   One important consideration in proving coordinated effects is whether the merger would result in the elimination of a "maverick" with less incentive to agree to the terms of coordination than those of its rivals. *F.T.C. v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 146 (D.D.C. 2004), *case dismissed*, No. 04-5291, 04-7120, 2004 WL 2066879 (D.C. Cir. Sept. 15, 2004); *United States v. H&R Block*, 833 F. Supp. 2d 36, 79 – 81 (D.D.C. 2011).

is *not* a maverick, in part because its business model may have evolved to something of a "hybrid," but instead has and will coordinate with its rivals.  While not a necessary factor, DOJ's flip-flop would unquestionably give it an unfair advantage, allowing it to cast JetBlue in a "radically different light" for its own litigation goals.  *Cf. Kattar*, 840 F.2d at 126.

DOJ should be judicially estopped from making any of these arguments.

### III.   <u>THE NEA CASE FILINGS ARE ADMISSIBLE</u>

In the alternative, and at a minimum, DOJ's prior statements in the NEA Case should come into evidence and any objections to their admission should be overruled.  As an initial matter, contrary to DOJ's relevance objection under Federal Rule of Evidence 402,[5] DOJ's assertions from the NEA speak directly to the key questions in this case: Is a bigger JetBlue – with its admitted unique and disruptive force – better for consumers, or will its acquisition of Spirit substantially lessen competition?   Will JetBlue's merger with Spirit allow JetBlue to *spread* its disruptive, procompetitive force to more areas of the country and routes, thwarting any coordination along the way?  DOJ's NEA admissions answer these questions, just not in the way it wants.

For the same reasons, DOJ's objection under Federal Rule of Evidence 403 is likewise baseless.  To be sure, these admissions undermine DOJ's case, but that does not make them "unfairly prejudicial" under Rule 403.  *Scoma v. City of New York*, No. 16-cv-6693, 2021 WL 1784385, at *6 (E.D.N.Y. May 4, 2021) ("Although introduction of the evidence may undermine plaintiff's claim, nothing in the record supports plaintiff's argument that such evidence amounts to 'unfair prejudice' within the meaning of Rule 403.") (citing *United States v. Diaz*, 878 F.2d 608, 615 (2d Cir. 1989) ("Unfair prejudice within [Rule 403's] context means an undue tendency

---

[5]   In objecting to the admission of its own proposed findings of fact and post-trial brief from the NEA Case, DOJ cited Federal Rules of Evidence 402 and 403.

to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.")).

Moreover, there are multiple reasons why these filings are admissible.  First, the Court may take judicial notice of DOJ's briefs and other statements in the NEA Case because they are "not subject to reasonable dispute" and whose "accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  It is "well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."  *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990); *United States v. Kindred Healthcare, Inc*., 469 F. Supp. 3d 431, 438 n.3 (E.D. Pa. 2020) ("[T]he Court may take judicial notice of . . . court filings that are publicly filed on the docket of a district court").

The Court may take judicial notice of the related court filings in order "to establish the existence of the [related] litigation, what claims were asserted, and what issues were argued and decided."  *Clark v. Kitt*, No. 12-cv-8061, 2014 WL 4054284, at *8 (S.D.N.Y. Aug. 15, 2014), *aff'd*, 619 Fed. App'x 34 (2d Cir. 2015).  Courts take judicial notice of filings in other cases that demonstrate that litigants are now taking a contrary position, including, as discussed below, to establish judicial estoppel.  *See, e.g.*, *Perez v. Deutsche Bank Nat'l Tr. Co*., No. 17-CV-839-A, 2018 WL 4853897, at *4 (N.D. Tex. Oct. 5, 2018) (taking judicial notice of positions taken in bankruptcy case that contradicted claims made in instant civil lawsuit); *In re Galaz*, 841 F.3d 316, 326 (5th Cir. 2016) (upholding bankruptcy court's judicial notice of filing in other litigation for the purpose of establishing that positions taken in the current lawsuit are "plainly inconsistent" in the instant case for purposes of judicial estoppel); *United States v. Watson*, 695 F.3d 159, 164–65 (1st Cir. 2012) (taking judicial notice of prior "bad acts" as stipulated in a prior litigation).

Second, the NEA Case filings are admissible as party admissions.  Statements by the DOJ in the NEA Case are admissions because DOJ is a party to both cases adverse to JetBlue. In *United States v. Kattar*, 840 F.2d 118, 131 (1st Cir. 1988), the court found that briefs filed by the DOJ in separate criminal cases were non-hearsay statements of a party opponent.  The briefs at issue, filed in prior criminal cases against different defendants, had "cast" the alleged victim— the Church of Scientology—in a "radically different light from that used by the prosecution in the instant case," and the First Circuit found it "disturbing to see the Justice Department change the color of its stripes to such a significant degree, portraying an organization, individual, or series of events variously as virtuous and honorable or as corrupt and perfidious, depending on the strategic necessities of the separate litigations."  *Id.* at 126, 127.  The court found that the briefs were admissible non-hearsay under Rule 801(d)(2), because DOJ had "manifested an adoption or belief in [the] truth" of those briefs under Rule 801(d)(2)(B) by "submit[ting] them to other federal courts to show the truth of the matter contained therein."  *Id.* at 131  The court also noted that because the "prior assertions were made by representatives of the specific party-opponent (the Justice Department) itself, they might be admissible as the party's own statements under Rule 801(d)(2)(A)."  *Id.* n.9.  Put simply, "the government cannot indicate to one federal court that certain statements are trustworthy and accurate, and then argue to a jury in another federal court that those same assertions are hearsay."  *Id.* at 131.  The same reasoning applies here.

## IV.    <u>CONCLUSION</u>

Defendants respectfully request that the Court admit the aforementioned evidence from the NEA Case, and judicially estop DOJ from taking inconsistent positions and characterizations

regarding JetBlue and to overrule its objections to the admissibility of its case briefs in that litigation.

Dated: September 11, 2023                      Respectfully submitted,

*/s/ Ryan A. Shores*
Ryan A. Shores (*Pro Hac Vice*)
David I. Gelfand (*Pro Hac Vice*)
Daniel P. Culley (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton, LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202-974-1500
rshores@cgsh.com
dgelfand@cgsh.com
dculley@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
ryan.shores@shearman.com
michael.mitchell@shearman.com
brian.hauser@shearman.com

Richard F. Schwed (*Pro Hac Vice*)
Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: 212-848-4000
Fax: 212-848-7179
rschwed@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

Elizabeth M. Wright (MA BBO #569387)

15

Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

*Attorneys for Defendant JetBlue Airways
Corporation*

Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019

16

Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I, Ryan A. Shores, hereby certify that on September 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 11th day of September, 2023.


*/s/ Ryan A. Shores*
Ryan A. Shores