**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:23-cv-10511-WGY |
| JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE**
**TO EXCLUDE ANTICIPATED TESTIMONY BY SARA NELSON**

Pursuant to Federal Rules of Evidence 402 and 701 and the doctrine of implied waiver, Plaintiffs respectfully ask this Court to exclude testimony of Sara Nelson, the president of the Association of Flight Attendants-CWA, AFL-CIO ("AFA-CWA"), concerning purported benefits of Defendants' proposed acquisition and the AFA-CWA's opinion of it. The AFA-CWA's constituents include Spirit flight attendants, and Plaintiffs expect, based on Ms. Nelson's deposition testimony, that much of her trial testimony will relate to the AFA-CWA's public support for the proposed acquisition—support secured after Defendants' promise to provide concessions to AFA-CWA. Ms. Nelson should be precluded from testifying about those concessions or offering any opinion about the acquisition based on those concessions because (1) the concessions are irrelevant, as demonstrated more fully in Plaintiffs' separate motion *in limine* regarding purported out-of-market benefits, (2) Ms. Nelson waived the ability to offer any such opinion because she has claimed privilege over a principal basis for that opinion, namely an

1

economic analysis that AFA-CWA conducted of a JetBlue-Spirit merger, and (3) opinion testimony by Ms. Nelson would not comply with Federal Rule of Evidence 701.

## BACKGROUND

In her deposition, Ms. Nelson testified about certain labor concessions that JetBlue promised and Spirit made to Spirit flight attendants in exchange for AFA-CWA's support of the proposed acquisition. Transcript of Deposition of Sara Nelson (Jun. 20, 2023) ("Nelson Dep. Tr.") 52:2-9, 54:16-25. Namely, she testified that JetBlue agreed to "no displacements, no furloughs, an expedite[d] contract bargaining, [and] all of the support that [the union] need[s] in a seniority integration" *Id*. at 26:20-28:10, 69:13-25, if the proposed acquisition closes, and Spirit agreed to make "scheduling improvements" and pay flight attendants more prior to the deal closing, which AFA-CWA thinks would provide a "higher floor to negotiate from" if the deal closes. *Id*. at 53:10-54:14. Ms. Nelson made clear that these concessions were "fundamental" and "critically important" to AFA-CWA's opinion that the proposed merger would be beneficial, and that AFA-CWA would not have supported the merger absent these concessions. *Id*. at 54:16-55:3.

Ms. Nelson also testified that AFA-CWA performed an economic analysis in forming its opinion that the JetBlue-Spirit merger would be beneficial. *Id*. at 62:21-23. Though that analysis forms the basis of AFA-CWA's opinions about the proposed acquisition, Ms. Nelson declined to testify about its substance on privilege grounds. *Id*. at 62:24-63:12. Even so, Ms. Nelson clarified that the economic analysis AFA-CWA performed did *not* evaluate the impact the merger would have on consumers, including the impact it would have on consumer airfares. *Id*. at 63:14-19.

Notably, Ms. Nelson's testimony also made clear that JetBlue's commitments concerning Spirit flight attendants are far from certain. JetBlue's current flight attendants belong to a

different union, the Transport Workers Union ("TWU"), which opposes the proposed deal. *Id*. at
35:24-36:5; 37:12-17. And whether AFA-CWA or TWU would represent flight attendants for
the proposed combined entity is an open question. *Id*. at 48:21-50:1.

Moreover, Ms. Nelson testified about numerous subjects for which she does not have
personal knowledge. For example, Ms. Nelson made broad, blanket assertions regarding
JetBlue's organic growth plan and how that growth plan affects competition with other airlines,
*id*. at 19:12–18, and the ability of other airlines to compete with legacy airlines, *id*. at 19:6-11.
But Ms. Nelson later admitted that she did not have familiarity with the specifics of JetBlue's
aircraft acquisition plans (other than the basic fact that such plans exist), the specifics of Spirit's
acquisition plans (other than that Spirit "has a large number of aircraft on order"), JetBlue's
growth strategy absent the acquisition, or JetBlue's integration strategy related to the acquisition
(other than general awareness regarding the integration's timeline and impact on flight
attendants). *Id*. at 65:7–67:11. Nor was Ms. Nelson able to "speak with any sort of level of
confidence" regarding Spirit's growth strategy absent the acquisition by JetBlue. *Id*. at 66:7–11.

## LEGAL STANDARD

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. To be relevant, evidence must
have "any tendency to make a fact more or less probable than it would be without the evidence"
and the fact must be "of consequence in determining the action." Fed. R. Evid. 401. The Court
has "considerable discretion in making relevancy determinations and in excluding evidence for
lack of relevance." *United States v. Vásquez-Botet*, 532 F.3d 37, 50 (1st Cir. 2008). It is well
within the Court's discretion to exclude legally irrelevant evidence before trial through a motion
*in limine*. *Fed. Refinance Co. v. Klock*, 352 F.3d 16, 25 (1st Cir. 2003) (affirming exclusion of
testimony at a bench trial through motion *in limine* because subject of testimony "was legally

3

irrelevant"); *see also Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) (finding it especially appropriate to exclude legally irrelevant evidence through a motion *in limine* because the purpose of such motions is to "perform[] a gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented . . . because they clearly would be inadmissible for any purpose").

"A litigant cannot use the attorney-client privilege as both a 'sword and shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion.'" *Rivera v. Kmart Corp.*, 190 F.R.D. 298, 304 (D.P.R. 2000) (quoting *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998)). This rule "ensures fairness" because "[w]ere the law otherwise, [a party] could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." *In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003). Therefore, when a party puts forth a contention that is "enmeshed in important evidence that will be unavailable to [the other side] if the privilege prevails," the party impliedly waives its ability to make that contention or waives privilege over the subject-matter of the contention. *Greater Newburyport Clamshell All. v. Pub. Serv. Co. of N.H.*, 838 F.2d 13, 20 (1st Cir. 1988); *see also Troublé v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (holding that defendant "waived any available advice of counsel defense by objecting, based on the attorney-client privilege, to [plaintiff's] discovery requests").

Lay witnesses may offer opinion testimony only if the testimony satisfies certain conditions, including that the opinion is both "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other

specialized knowledge." Fed. R. Evid. 701. A party may not evade the reliability requirements imposed on expert witnesses in Federal Rule of Evidence 702 "through the simple expedient of proffering an expert in lay witness clothing." *Roach v. Middleton Auto Sales, Inc.*, 623 F. Supp. 2d 139, 145 n.11 (D. Mass. 2009) (Young, J.) (quoting 2000 Amendments to Fed. R. Evid. 701).

## ARGUMENT

I.    **Testimony About Purported Labor Benefits Is Irrelevant To The Issues To Be Resolved In This Trial**

Ms. Nelson's testimony about the purported benefits of the proposed acquisition is a classic example of an attempt to justify harm to one market (airline consumers) based on purported benefits to a different market (airline employees). For the reasons described in Plaintiffs' separate motion *in limine* regarding purported out-of-market benefits, incorporated here by reference, the purported benefits of a merger to a market where harm is not alleged are irrelevant as a matter of law. The Seventh Circuit recently made the same point in an analogous situation: benefits to consumers (one market) cannot justify harm to workers (another market). *Deslandes v. McDonald's USA, LLC*, -- F.4th --, 2023 WL 5496957, at *2 (7th Cir. Aug. 25, 2023) (Easterbrook, J.). Here, the Amended Complaint does not allege any harm in labor markets. *See* Amended Compl. ¶¶ 61- 72 (ECF 69). Therefore, Ms. Nelson should be precluded from offering irrelevant testimony about Defendants' labor concessions or offering any opinion of the proposed acquisition based on such irrelevant concessions.

II.    **The Court Should Preclude Ms. Nelson From Offering Any Opinion About The Proposed Merger**

A.    **Ms. Nelson's Selective Reliance on a Purportedly Privileged Economic Analysis Waived Her Ability to Offer Any Opinion About the Proposed Merger**

An independent basis to preclude Ms. Nelson from offering any opinion about the proposed acquisition is that any such opinion would be "enmeshed in" an economic analysis that

AFA-CWA has shrouded in a claim of privilege. *See Greater Newburyport Clamshell All.*, 838 F.2d at 20. Because Ms. Nelson's opinion about the purported economic benefits of the proposed acquisition is based on this undisclosed economic analysis, permitting Ms. Nelson to testify to that opinion would run counter to the "fairness concerns" that underlay the doctrine of implied waiver. *See In re Keeper of Records*, 348 F.3d at 24. Namely, it would allow AFA-CWA to "kidnap the truth-seeking process" by offering an opinion in support of the acquisition while at the same time shielding from scrutiny or cross-examination the basis for that opinion. *Id*. Such use of the privilege as "both a sword and shield" is prohibited. *Rivera*, 190 F.R.D. at 304 (internal quotation marks omitted).

The appropriate remedy for AFA-CWA's selective disclosure of its purportedly privileged economic analysis is to preclude Ms. Nelson from offering an opinion about the proposed deal. *See, e.g., Troublé*, 179 F. Supp. 2d at 304; *see also In re Intuniv Antitrust Litig.*, 2021 WL 10362709, at *8-9 (D. Mass. Mar. 3, 2021) (holding that plaintiff may "request . . . preclusion" of argument and evidence at trial based on purportedly privileged advice "[s]hould [defendant] put [that] advice at issue"). Disclosing AFA-CWA's economic analysis on the eve of trial would not remedy the unfairness to Plaintiffs because Plaintiffs have already been deprived of the opportunity to cross-examine Ms. Nelson about this analysis at her deposition or to seek other discovery from AFA-CWA (or Defendants) based on that analysis.

### B.    Ms. Nelson's Opinion Testimony Would Run Afoul of Rule 701

Further, even if the economic analysis had been timely disclosed instead of shrouded in privilege, it would still be appropriate to preclude Ms. Nelson from offering opinion testimony based on that analysis because such testimony would not satisfy Federal Rule of Evidence 701. Because Ms. Nelson has not been qualified as an expert and has not disclosed any opinions under Rule 702, she may only offer opinions under Rule 701. And lay opinions offered under Rule 701

cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Performing and opining about economic analysis, however, requires "scientific, technical, or other specialized knowledge." *See*, *e.g.*, *United States v. Frazier*, 387 F.3d 1244, 1261 n.14 (11th Cir. 2004) (observing that "[s]cientific evidence encompasses . . . soft sciences (such as economics, psychology, and sociology), and it may be offered by persons with scientific, technical, or other specialized knowledge" (quoting William W. Schwarzer & Joe S. Cecil, "Management of Expert Evidence," *Reference Manual on Scientific Evidence* 39 (Federal Judicial Center, 2d ed.2000)). Any opinion offered by Ms. Nelson about the proposed acquisition would be inseparable from the economic analysis that AFA-CWA performed in forming that opinion. Therefore, Ms. Nelson should be precluded under Rule 701 from offering any such opinion at trial.

Based on her deposition, Ms. Nelson may also offer testimony on other subjects about which she lacks personal knowledge or that otherwise implicate the requirements of Rule 701 (*e.g.*, Defendants' growth strategies, purported benefits to airline employees other than flight attendants). Should Ms. Nelson's testimony exceed the bounds of her personal knowledge or attempt to "proffer[] an expert in lay witness clothing," *Roach*, 623 F. Supp. 2d at 145 n.11, Plaintiffs intend to raise contemporaneous objections.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude Ms. Nelson from testifying at trial concerning the purported labor benefits of the proposed acquisition and AFA-CWA's opinion or analysis of the proposed acquisition.

Dated: September 11, 2023                Respectfully submitted,

*/s/* Edward W. Duffy _____
Edward W. Duffy
Arianna Markel
Sarah V. Riblet
Brendan Sepulveda
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov


*/s/* William T. Matlack _____
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov


*/s/* C. William Margrabe _____
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC  20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov


*Attorneys for the United States of America, the*
*Commonwealth of Massachusetts, and the District of*
*Columbia, and on behalf of all Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

<u>/s/ Edward W. Duffy</u>
Edward W. Duffy
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov