**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) Civil Action No. 1:23-cv-10511-WGY |
| | ) |
| JETBLUE AIRWAYS CORPORATION and | ) |
| SPIRIT AIRLINES, INC., | ) |
| | ) |
| *Defendants*, | ) |

**DEFENDANTS JETBLUE AIRWAYS CORPORATION AND SPIRIT AIRLINES,**
**INC.'S MOTION IN LIMINE TO EXCLUDE CERTAIN DOCUMENTS**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   BACKGROUND .................................................................................................... 4

III.  ARGUMENT ......................................................................................................... 9

      A.    Admission of the Proxy Fight  Evidence Would Violate FRE 701 and 704 ............................................................................................................. 9

      B.    The Court Should Exclude the Proxy Fight Evidence Because It Would Result in Minitrials on Collateral Issues ........................................... 11

IV.  CONCLUSION .................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams* v. *New England Scaffolding, Inc.*,
No. CV 13-12629-FDS, 2015 WL 9412518 (D. Mass. Dec. 22, 2015) .............................. 10

*United States* v. *Am. Airlines Grp. Inc.*,
No. CV 21-11558-LTS, 2023 WL 3560430 (D. Mass. May 19, 2023) ............................... 8

*BanxCorp* v. *Bankrate, Inc.*,
No. CV 07-3398 (CCC), 2019 WL 2098842 (D.N.J. Mar. 21, 2019), *aff'd*,
847 F. App'x 116 (3d Cir. 2021) ........................................................................................ 10

*BoDeans Cone Co.* v. *Norse Dairy Sys., L.L.C.*,
678 F. Supp. 2d 883 (N.D. Iowa 2009) ............................................................................. 12

*United States* v. *Booz Allen Hamilton Inc.*,
No. CV CCB-22-1603, 2022 WL 9976035 (D. Md. Oct. 17, 2022) .................................... 6

*Carrelo* v. *Advanced Neuromodulation Sys., Inc.*,
777 F. Supp. 2d 315 (D.P.R. 2011) .................................................................................. 11

*Chow* v. *Zimny*,
No. CIV.A. 10-10572-GAO, 2014 WL 4964408 (D. Mass. Sept. 30, 2014) ..................... 10

*Fed. Trade Comm'n* v. *Meta Platforms Inc.*,
No. 5:22-CV-04325-EJD, 2023 WL 2346238 (N.D. Cal. Feb. 3, 2023) ............................. 7

*Fed. Trade Comm'n* v. *Microsoft Corp.*,
No. 23-CV-02880-JSC, 2023 WL 4443412 (N.D. Cal. July 10, 2023) ............................... 7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
No. 17 BK 3283-LTS, 2019 WL 4723730 (D.P.R. July 29, 2019) .................................... 12

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
No. 04-MD-1628RMBMHD, 2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009),
*aff'd sub nom. Am. Banana Co.* v. *J. Bonafede Co.*, 407 F. App'x 520 (2d
Cir. 2010) ........................................................................................................................... 10

*Gonzalez-Tomasini* v. *United States Postal Serv.*,
No. CV 17-1552 (MEL), 2022 WL 2816714 (D.P.R. July 19, 2022) ................................. 10

*Gulf States Utilities Co.* v. *Ecodyne Corp.*,
635 F.2d 517 (5th Cir. 1981) ............................................................................................ 11

*Lacaillade* v. *Loignon Champ-Carr, Inc.*,
    No. 10-CV-68-JD, 2011 WL 5520942 (D.N.H. Nov. 14, 2011)..........................................10

*Lund* v. *Henderson*,
    807 F.3d 6 (1st Cir. 2015) ...................................................................................................12

*Madison* v. *Cruz*,
    393 F. Supp. 3d 135 (D. Mass. 2019)....................................................................................4

*United States* v. *Meises*,
    645 F.3d 5 (1st Cir. 2011) .....................................................................................................9

*Ostler* v. *Codman Rsch. Grp., Inc.*,
    241 F.3d 91 (1st Cir. 2001) .................................................................................................12

*Park W. Radiology* v. *CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009) .................................................................................13

*Pelletier* v. *Main St. Textiles*,
    LP, 470 F.3d 48 (1st Cir. 2006) ..........................................................................................11

*United States* v. *Sanabria*,
    645 F.3d 505 (1st Cir. 2011) ...........................................................................................9, 10

*Santiago Garcia* v. *Costco Wholesale Corp.*,
    No. CV 19-1082, 2020 WL 8575169 (D.P.R. July 23, 2020)..............................................10

*Santiago* v. *Costco Wholesale Corp.*,
    No. CV 19-1082 (SCC), 2022 WL 767045 (D.P.R. Mar. 14, 2022)....................................13

*Town of Lexington* v. *Pharmacia Corp.*,
    No. 12-CV-11645, 2015 WL 1321457 (D. Mass. Mar. 24, 2015) ......................................10

*United States* v. *United States Sugar Corp.*,
    No. CV 21-1644 (MN), 2022 WL 4544025 (D. Del. Sept. 28, 2022), *aff'd*,
    73 F.4th 197 (3d Cir. 2023) ...................................................................................................6

*United States* v. *UnitedHealth Grp. Inc.*,
    630 F. Supp. 3d 118 (D.D.C. 2022), *dismissed*, No. 22-5301, 2023 WL
    2717667 (D.C. Cir. Mar. 27, 2023) ........................................................................................6

*United States* v. *Vazquez-Rivera*,
    665 F.3d 351 (1st Cir. 2011) ..................................................................................................9

**Other Authorities**

Fed. R. Evid. 403.............................................................................................................3, 11

Fed. R. Evid. 701....................................................................................................2, 9, 10, 11

Fed. R. Evid. 701–704 ................................................................................................................ 3

Fed. R. Evid. 704 ......................................................................................................... 2, 9, 11

## I.      <u>PRELIMINARY STATEMENT</u>

Spirit Airlines ("Spirit") and JetBlue Airways, Corporation ("JetBlue") move to exclude evidence or argument concerning opinions that Spirit offered in the period April through July of 2022 regarding antitrust objections that might be raised by the Department of Justice ("DOJ") if JetBlue acquired Spirit.  Those opinions—principally set out in documents created by Spirit in the context of a proxy fight mounted by JetBlue to upset a prior merger transaction agreed to between Spirit and Frontier Airlines, Inc. ("Frontier") (collectively, the "Proxy Fight Evidence"), are inadmissible for two reasons:  first, they are inadmissible opinions on the ultimate issues to be decided by the Court at the upcoming trial; and, second, admission of the Proxy Fight Evidence will draw the Court into wasteful minitrials on complicated and collateral issues relating to Spirit's decision to merge with Frontier, the proxy fight between Spirit and JetBlue as to whether Spirit shareholders should accept the Frontier or JetBlue offers, and the extensive negotiations between Spirit and JetBlue leading to the transaction before this Court.  None of the Proxy Fight Evidence will materially assist the Court in determining whether the DOJ has met its burden of proving that JetBlue's acquisition of Spirit—a transaction that will create a nimble and effective low-cost and low fare competitor to the Big Four airlines—Delta, United, American and Southwest, which carry 80 percent of passengers today—violates Section 7 of the Clayton Act.  As Spirit stated in announcing shareholder approval of the JetBlue transaction, and as the evidence will show at trial, a merger with JetBlue "will create the most compelling national low-fare challenger to the dominant U.S. carriers."  P0673 at 1.

The important context for this motion that the DOJ has consistently ignored:  in early 2022, Spirit had agreed to merge with Frontier.  Spirit believed that the Frontier merger would benefit its shareholders, its employees, and, most importantly, the flying public.  About six weeks later, JetBlue made an unsolicited offer to buy Spirit.  This triggered a fiduciary obligation on

behalf of Spirit to evaluate the JetBlue offer; as is customary in merger agreements between public companies, Spirit had bound itself to proceed with the Frontier deal unless it determined another offer to be a "superior proposal." P0552 at 1. In assessing the initial JetBlue offer— and in subsequent negotiations with JetBlue until a deal was ultimately struck—Spirit predicted in a number of documents that are part of the Proxy Fight Evidence that a deal with JetBlue would be more likely to face a protracted regulatory fight and litigation with the DOJ than the Frontier deal, particularly given the then-ongoing case in this Court brought by the DOJ against JetBlue over its alliance with American Airlines.

The DOJ no doubt will argue that the statements Spirit made in the Proxy Fight Evidence are admissions that the deal with JetBlue is anti-competitive. They are not. Rather, these statements, made in the context of a proxy fight during an ongoing negotiation between Spirit and JetBlue—and designed in part to elicit commitments from JetBlue to make regulatory concessions to get a transaction closed—are nothing more than Spirit's predictions about how the DOJ or even a court might assess the evolving transaction under the antitrust laws. They are statements of opinion, not fact, tied to the context of the proxy fight and focusing on the now-terminated NEA. The opinions that the DOJ seeks to introduce are inadmissible because they go to the ultimate issue to be decided by the Court in this case: whether the transaction that the parties entered into passes antitrust muster. Spirit's predictions before it agreed to merge with JetBlue are not binding, or even informative, for the Court and are clearly inadmissible under Federal Rules of Evidence ("FRE") 701 and 704.

Moreover, the admission of the Proxy Fight Evidence would necessarily drag the Court and the parties into a wasteful series of irrelevant minitrials regarding the negotiating history of the JetBlue and Frontier transactions, the NEA litigation, and the proxy fight. The Court will be

asked to evaluate the ways the deal changed over time, the context of the NEA, and the information Spirit had available to it at the time that it made the statements at issue. The amount of trial time that will be devoted to the Proxy Fight Evidence will be considerable. The DOJ will undoubtedly rely on the evidence in its opening statement. It has put multiple documents on its exhibit list that include Spirit's predictions about the regulatory reception that a JetBlue transaction might receive. The DOJ spent many hours at the depositions of Spirit witnesses examining them on the Proxy Fight Evidence, and has designated that testimony for trial. The DOJ has informed Spirit that it intends to call no fewer than seven Spirit witnesses, live, a number of whom will apparently be cross-examined at length on 2022 statements of opinion on the antitrust implications of the JetBlue transaction. And Spirit and JetBlue, working on the clock set by the Court for the presentation of evidence in this four-week trial, will in turn be required to spend many hours of trial time putting the Proxy Fight Evidence into the context of the proxy fight and ongoing negotiation with JetBlue. None of this will assist the Court in deciding the central issue before it, whether the DOJ can meet its burden of proving that the deal that was signed, in July 2022, substantially lessens competition in relevant markets.[1]

The Court should exclude the Proxy Fight Evidence to focus this trial on what matters. The statements the DOJ seeks to introduce are legal opinions on ultimate issues, and not helpful to the Court. Fed. R. Evid. 701–704. The "admissions" that Plaintiffs seek to elicit were created in a context that has changed, inviting minitrials. Fed. R. Evid. 403. It is the DOJ's burden to prove to the Court that the transaction actually executed by JetBlue and Spirit on July 27, 2022

---

[1]   Once the Court rules on this motion, the parties can no doubt meet and confer to reach agreement on the precise contours of the voluminous Proxy Fight Evidence that should be excluded. At minimum, Defendants will seek to exclude all or part of at least 30 documents on Plaintiffs' exhibit list pertaining to Proxy Fight Evidence, as well as certain deposition testimony of Messrs. Christie, Morgan, Gardner, Gorelik, and Gable on the same issues.

substantially lessens competition <u>in the future,</u> in relevant markets that the DOJ has the burden

of defining.  Spirit's prediction of the arguments that the DOJ might make in opposing a different

deal in the midst of a proxy fight does nothing to discharge the DOJ's burden.

## II.    <u>BACKGROUND</u>

On February 5, 2022, Spirit entered into a transaction to merge with Frontier Airlines,

another ultra-low-cost carrier ("ULCC") airline.[2]  When it signed the Frontier deal, Spirit

believed the Frontier-Spirit combination would deliver exceptional value to its guests,

employees, and shareholders, and would be a boon to competition, in part due to the increased

scale and relevance of the combined airline.

Six weeks later, on March 29, 2022, JetBlue made a competing, surprise offer to buy

Spirit.  P0697 at 3.  At the time, because the Frontier deal had already been executed, Spirit had

a contractual obligation to pursue the Frontier transaction, subject to a fiduciary exception that

it could consider any competing proposal that could be considered a "superior proposal."[3]

Spirit made an initial determination that the initial JetBlue proposal was not "superior"

to Frontier's.  Among other reasons, Spirit concluded that the JetBlue offer was not reasonably

---

[2]    *Frontier Airlines and Spirit Airlines to Combine, Creating America's Most Competitive Ultra-Low Fare Airline*, Feb. 7, 2022, *available from Spirit.com* at https://s24.q4cdn.com/507316502/files/doc_downloads/2022/FINAL-Frontier-Spirit-Transaction-Press-Release.pdf.  *See also* P0691 (announcement of amended deal with Frontier); P0671 (Spirit 8-k announcing merger with Frontier); *Madison* v. *Cruz*, 393 F. Supp. 3d 135, 137 (D. Mass. 2019) (taking judicial notice of press release).

[3]    *See* P0552 at 1, *Spirit Airlines Board of Directors Reiterates Support for Merger with Frontier Airlines*, May 2, 2022, *available at Spirit.com* at https://ir.spirit.com/news-releases/news-details/2022/Spirit-Airlines-Board-of-Directors-Reiterates-Support-for-Merger-with-Frontier-Airlines/default.aspx ("Spirit Airlines, Inc. ('Spirit' or the 'Company') (NYSE:SAVE) today announced that its Board of Directors (the 'Board'), in consultation with outside financial and legal advisors, has unanimously determined that the unsolicited proposal received from JetBlue Airways ('JetBlue') (NASDAQ: JBLU) does not constitute a 'Superior Proposal' as defined in Spirit's merger agreement with Frontier Group Holdings, Inc. ('Frontier') (NASDAQ: ULCC), parent company of Frontier Airlines, Inc., because it has determined that the proposed transaction is not reasonably capable of being consummated."); *supra* note 2.

capable of being consummated.[4]  This determination was informed by Spirit's prediction of the relative likelihood of regulatory clearance of JetBlue's proposal based in the then-existing competitive landscape, in comparison to the path to clearance of the Frontier deal.  *See* P0697 at 4.  In particular, JetBlue and American had entered into an alliance, called the Northeast Alliance ("NEA"), in July 2020, which aligned their operations in New York and Boston and included other collaborative agreements.[5]  Six months before JetBlue's takeover offer—on September 21, 2021—the DOJ had sued to block JetBlue's alliance with American in the NEA in this Court, before Judge Sorokin, arguing that the JetBlue-American arrangement violated the antitrust laws.[6]  Spirit predicted that the NEA, and the then-pending litigation between the DOJ and JetBlue over the NEA, would increase the likelihood that the DOJ would challenge a JetBlue/Spirit transaction, which in turn would create a longer and more uncertain path to regulatory approval and, perhaps, ultimately judicial approval in the event the DOJ sought to block the transaction.  *See* P0592 at 3–4, 8; P0570 at 9, 11.  After some dialogue with JetBlue, Spirit's "Board determined that JetBlue's original proposal represented an unsatisfactorily high degree of completion risk with inadequate protections for Spirit shareholders."  P0697 at 3.

Spirit nonetheless continued to engage with JetBlue.  For example, Spirit suggested that JetBlue withdraw from the NEA.  *Id.* at 3.  JetBlue, at that time, did not agree.  *Id.*  But Spirit

---

[4]   *Id.*

[5]   *Northeast Alliance Agreement Between American Airlines, Inc. and JetBlue Airways Corporation*, dated July 15, 2020, *available at* https://www.sec.gov/Archives/edgar/data/1158463/000115846320000063/ex103-northeastallianc.htm

[6]   *Justice Department Sues to Block Unprecedented Domestic Alliance Between American Airlines and JetBlue*, Sept. 21, 2021, *available at* https://www.justice.gov/opa/pr/justice-department-sues-block-unprecedented-domestic-alliance-between-american-airlines-and; *see supra* note 2.

kept negotiating, seeking additional concessions that would satisfy its concerns about the regulatory path a transaction might face.

On May 16, 2022, JetBlue launched a hostile tender offer directly to Spirit's shareholders.[7] As is customary when there are contested proposals for control of a public company, the disagreement between Spirit and JetBlue as to which transaction shareholders should support spilled over into the public arena. Spirit issued a series of public statements supporting its opinion that shareholders should continue to back the Frontier transaction. P0570. JetBlue, in turn, released its own statements, urging Spirit's shareholders to accept its cash offer (which was revised several times before the parties ultimately reached a deal).

In this context, the Proxy Fight Evidence contains a number of statements concerning Spirit's opinions of how the DOJ might assess a JetBlue/Spirit combination, particularly in light of the then-existing NEA litigation. *See* P0572 at 7.[8] For example, one of the documents comprising the Proxy Fight Evidence opines that it "stretches credulity to believe a JetBlue acquisition would be approved while the DOJ is suing to block the NEA." P0572 at 8. Spirit predicted that the DOJ would be "determined" to stop JetBlue's acquisition of Spirit in this context. *Id.* at 9; P0555 at 6. And it predicted that, if the DOJ did bring suit, the result would be a protracted legal fight and likely a trial, which in fact came to pass. P0555 at 6.[9] These

---

[7]     *Spirit Airlines Board of Directors to Review Unsolicited Tender Offer from JetBlue*, May 16, 2022, *available at* https://ir.spirit.com/news-releases/news-details/2022/Spirit-Airlines-Board-of-Directors-to-Review-Unsolicited-Tender-Offer-from-JetBlue/default.aspx; *see supra* note 2.

[8]     Many documents comprising the Proxy Fight Evidence also contain hearsay within hearsay and/or opinions based on hearsay and would be properly excluded on that basis.

[9]     Importantly, predicting that the DOJ may bring suit is a far cry from admitting that a given deal violates the law, and many recent agency challenges have proven unsuccessful. *See United States* v. *United States Sugar Corp.*, No. CV 21-1644 (MN), 2022 WL 4544025 (D. Del. Sept. 28, 2022), *aff'd*, 73 F.4th 197 (3d Cir. 2023); *United States* v. *Booz Allen Hamilton Inc.*, No. CV CCB-22-1603, 2022 WL 9976035 (D. Md. Oct. 17, 2022); *Booz Allen*, 2022 WL 16553230 (Oct. 31, 2022); *United States* v. *UnitedHealth Grp. Inc.*, 630 F. Supp. 3d 118, 123 (D.D.C. 2022), *dismissed*, No. 22-5301, 2023

statements were designed to illuminate for Spirit's shareholders the relative risk of delays in closing a JetBlue transaction (e.g., "After a thorough review and extensive dialogue with JetBlue, the Board determined that the JetBlue proposal involves an unacceptable level of closing risk that would be assumed by Spirit stockholders." P0552 at 2), as well as the preference of Spirit's Board of Directors at that point in time for what the Board perceived to be a superior offer from Frontier that it did not expect to receive such a hostile reception from the DOJ (e.g., "Spirit does not believe the DOJ, or a court, will be persuaded that JetBlue should be allowed to form an anticompetitive alliance that aligns its interests with a legacy carrier (American) and then undertake an acquisition that will eliminate the largest ULCC carrier in the U.S. (Spirit)." P0695 at 2).

Spirit emphasized to its shareholders that "[c]urrent DOJ antitrust leadership has expressed deep skepticism about the effectiveness of divestiture remedies and a preference for seeking to block transactions rather than accept divestiture-based settlements," and that "[t]he Spirit Board expects the DOJ would bring a lawsuit to block the acquisition, and that any such lawsuit is unlikely to be resolved until bet*ween 18 and 24 months after the date of JetBlue's initial HSR filing*." *Id.* at 3 (emphasis in original). Spirit stated that it had "no idea" how the DOJ would approve Spirit's transaction with JetBlue "while litigating against the NEA or if the NEA is allowed to remain in place," P0572 at 8, and that it was "inconceivable" to Spirit "that an acquisition of Spirit by JetBlue gets approved [by the DOJ] unless they abandon the NEA, the anticompetitive alliance with American Airlines." P0555 at 4.

---

WL 2717667 (D.C. Cir. Mar. 27, 2023); *Fed. Trade Comm'n* v. *Meta Platforms Inc.*, No. 5:22-CV-04325-EJD, 2023 WL 2346238, at *1 (N.D. Cal. Feb. 3, 2023); *Fed. Trade Comm'n* v. *Microsoft Corp.*, No. 23-CV-02880-JSC, 2023 WL 4443412, at *1 (N.D. Cal. July 10, 2023).

That said, the parties continued to negotiate.  As Mr. Christie explained in his June 6, 2023 deposition, JetBlue made additional agreements and concessions, reflected in the executed merger agreement, that demonstrated its commitment to clearing regulatory hurdles.  In the final deal, for example, JetBlue committed to divesting Spirit assets up to a material adverse effect on the combined JetBlue-Spirit, with a limited carve-out to this divestiture obligation for actions that would be reasonably likely to materially and adversely affect the anticipated benefits under JetBlue's NEA (a concession no longer applicable, given the termination of the NEA).  P0668 at 4.  These regulatory commitments by JetBlue, among other things, led Spirit to recommend approval of the transaction to its shareholders, which they did, by an overwhelming margin on July 28, 2022.  *See id* at 5.  In announcing shareholder approval, Spirit noted that the merger with JetBlue "will create the most compelling national low-fare challenger to the dominant U.S. carriers."  P0673 at 1.

The trial in the NEA case took place in the fall of 2022.  On May 19, 2023, Judge Sorokin held the NEA to be anticompetitive.  *United States* v. *Am. Airlines Grp. Inc*., No. CV 21-11558-LTS, 2023 WL 3560430 (D. Mass. May 19, 2023).  JetBlue withdrew from the NEA on July 5, 2023, rendering irrelevant the numerous statements in the Proxy Fight Evidence relating to the NEA.[10]

---

[10]   *JetBlue Issues Statement on Its Northeast Alliance with American Airlines*, July 5, 2023, *available at* https://news.jetblue.com/latest-news/press-release-details/2023/JetBlue-Issues-Statement-on-Its-Northeast-Alliance-with-American-Airlines/default.aspx#:~:text=Despite%20our%20deep%20conviction%20in,a%20wind%20down%20process%20that; *see supra* n.2.

III.   **ARGUMENT**

    A.   **ADMISSION OF THE PROXY FIGHT  EVIDENCE WOULD VIOLATE FRE 701 AND 704**

The Proxy Fight Evidence should be excluded because such documents and testimony, at best, seek improper "ultimate issue" or legal opinion testimony, that is, opinion testimony as to the DOJ's likely reception to the JetBlue deal.  Spirit's recitation of the potential regulatory hurdles that this deal might give rise to will not materially assist this Court in evaluating the DOJ's objection to the transaction under the Clayton Act.  It is for the Court, and the Court alone, to opine whether the DOJ can meet its burden of proving that the proposed combination substantially lessens competition in relevant markets.  Predictions made by Spirit in the context of the earlier proxy fight between Spirit, Frontier, and JetBlue on the very issue to be decided by the Court at this trial are plainly inadmissible under FRE 701 and 704.

    While "there is no categorical bar to such 'ultimate issue' opinion testimony," *United States* v. *Sanabria*, 645 F.3d 505, 516 (1st Cir. 2011) (quoting Fed. R. Evid. 704(a)), testimony on an ultimate question must satisfy FRE 701's helpfulness requirement.  *See* Fed. R. Evid. 701. The First Circuit has made clear that "lay opinions going to the ultimate issue will rarely meet this requirement, 'since the [trier of fact]'s opinion is as good as the witness's.'" *United States* v. *Vazquez-Rivera*, 665 F.3d 351, 358 (1st Cir. 2011) (quoting *Sanabria*, 645 F.3d at 516). Indeed, "lay opinion will fail this second, 'helpfulness' requirement 'when the [trier of fact] can readily draw the necessary inferences and conclusions without the aid of the opinion.'" *Sanabria*, 645 F.3d at 515 (quoting *Lynch* v. *City of Boston*, 180 F.3d 1, 17 (1st Cir. 1999)); *see also United States* v. *Meises*, 645 F.3d 5, 16 (1st Cir. 2011) ("The nub of [the helpfulness] requirement is to exclude testimony where the witness is no better suited than the [trier of fact]

to make the judgment at issue, providing assurance against the admission of opinions which would merely tell the [trier] what result to reach.") (cleaned up).

Spirit's opinions about the regulatory prospects of the deal are the statements in the Proxy Fight Evidence on which the DOJ will focus.  But the Court does not need Spirit's opinions— offered up in the throes of a proxy fight—concerning the regulatory prospects of evolving merger proposals by JetBlue in order to reach its ultimate conclusion regarding whether <u>this</u> deal comports with the Clayton Act.  Not only is such evidence of little utility, it is inadmissible. Testimony "on the merits of the lawsuit, essentially tell[ing] the [trier of fact] what result to reach," are precisely the type that Rule 701 precludes." *Lacaillade* v. *Loignon Champ-Carr, Inc.*, No. 10-CV-68-JD, 2011 WL 5520942, at \*2 (D.N.H. Nov. 14, 2011); *see also Sanabria*, 654 F. 3d at 515–16 (finding that trial judge abused his discretion in allowing government to elicit opinion from fact witness as to ultimate issue of whether authorities had confused defendant with someone else).[11]

Similarly, courts regularly exclude "testimony concerning a legal conclusion on the ground that it merely seeks to tell the [trier of fact] what decision to reach." *Adams* v. *New England Scaffolding, Inc.*, No. CV 13-12629-FDS, 2015 WL 9412518, at \*7 (D. Mass. Dec. 22, 2015) (citing *Specht* v. *Jensen*, 853 F.2d 805, 808–10 (10th Cir. 1988)).[12]  "A district court has

---

[11] *See also BanxCorp* v. *Bankrate, Inc.*, No. CV 07-3398 (CCC), 2019 WL 2098842, at \*2–3, n.4 (D.N.J. Mar. 21, 2019), *aff'd*, 847 F. App'x 116 (3d Cir. 2021) (portions of lay witness declaration "speculat[ing] about matters beyond his personal knowledge and offer[ing] legal conclusions" disregarded as unhelpful in "procedurally complex antitrust matter," collecting cases); *Gonzalez-Tomasini* v. *United States Postal Serv.*, No. CV 17-1552 (MEL), 2022 WL 2816714, at \*4 (D.P.R. July 19, 2022) (motion *in limine* granted as to testimony in connection with lay witness's sworn statement "that my ex-husband did not have a real case"); *Town of Lexington* v. *Pharmacia Corp.*, No. 12-CV-11645, 2015 WL 1321457, at \*6 (D. Mass. Mar. 24, 2015) (proffer of 30(b)(6) testimony "pertaining to the apportionment of liability among the defendants[,] call[ing] for legal conclusions from a witness without a legal background" did "not support the inference . . . [of] assumed liability").

[12] *See also Chow* v. *Zimny*, No. CIV.A. 10-10572-GAO, 2014 WL 4964408, at \*1 (D. Mass. Sept. 30, 2014) (motion *in limine* granted as to "whether the plaintiffs reasonably relied on the defendants'

broad discretion to exclude expert opinion evidence about the law that would impinge on the roles of the judge and the jury . . . statements that pretend to draw ultimate legal conclusions do not properly assist the trier of fact because they invade the province of the [trier of fact]." *Carrelo* v. *Advanced Neuromodulation Sys., Inc.*, 777 F. Supp. 2d 315, 320 (D.P.R. 2011).[13]  It is the role of the judge—and not any witness—to say what the law is.  *See Pelletier* v. *Main St. Textiles*, LP, 470 F.3d 48, 54 (1st Cir. 2006) ("As to testimony about the OSHA regulations, the general rule is that it is the judge's role, not a witness's, to instruct the jury on the law.").  Eliciting testimony about Spirit's views of the regulatory approval process for the deal and whether a JetBlue transaction would pass muster under the antitrust laws would impinge upon the Court's role as sole arbiter of the law and would not be helpful to the Court in this bench trial.

**B.     THE COURT SHOULD EXCLUDE THE PROXY FIGHT EVIDENCE BECAUSE IT WOULD RESULT IN MINITRIALS ON COLLATERAL ISSUES**

Admission of the Proxy Fight Evidence will also result in time-wasting "minitrials" regarding a collateral issue.  Although Defendants recognize that FRE 403 motions are sparingly granted in bench trials, "[e]xcluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power" under FRE 403.  *Gulf States*

---

representations" where expert did "not use the precise legal language" but opinion offered "a conclusion as to a key legal issue"); *Santiago Garcia* v. *Costco Wholesale Corp.*, No. CV 19-1082 (SCC/BJM), 2020 WL 8575169, at *6–7 (D.P.R. July 23, 2020) (motion *in limine* granted as to conclusion that plaintiff's "inattention led to her fall"); *In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-MD-1628RMBMHD, 2009 WL 3241401, at *12–13 (S.D.N.Y. Sept. 30, 2009), *aff'd sub nom. Am. Banana Co.* v. *J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010) (testimony on alleged "sham" litigations excluded in antitrust dispute, as it "impinge[d] upon the Court's role, would be inadmissible at trial, and [was] of no probative value on this motion")

[13]   While most of the case law in this area concerns expert testimony, FRE 701 and 704 draw no distinctions between lay and expert opinions.  These cases also support exclusion here.

*Utilities Co.* v. *Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (by contrast, using FRE 403 to exclude evidence for "unfair prejudice" is a "useless procedure" in a bench trial). This is just such a case.

Many of the opinions in the Proxy Fight Evidence were grounded in the context of JetBlue being a party to the now-dissolved NEA. The evidence also must be assessed in the context of the dynamic and evolving negotiations between JetBlue, Spirit, and Frontier. Admission of these documents would require the parties to delve into a protracted back-and-forth concerning the negotiations between Spirit and JetBlue. Admission of the Proxy Fight Evidence will require Spirit and JetBlue to spend many hours at trial providing the context that the DOJ ignores with respect to their negotiations throughout the spring and early summer of 2022, hours that are better spent eliciting evidence concerning the competitive impact of the deal that the parties actually struck. *See, e.g.*, *BoDeans Cone Co.* v. *Norse Dairy Sys., L.L.C.*, 678 F. Supp. 2d 883, 895 (N.D. Iowa 2009) (excluding minimally probative evidence where time "would necessarily be diverted into a minitrial about the validity of assumptions about the future market for the various products at issue, the future behavior of customers, the possibility of other competitors entering or leaving the market, and general business conditions in the future"). Courts recognize that, as here, "economic factors and projections underlying" evidence may change significantly over time, such that introducing them would create a sideshow at trial that is best avoided. *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17 BK 3283-LTS, 2019 WL 4723730, at *2 (D.P.R. July 29, 2019) (risk of a minitrial on "changes since July 2017 in the economic factors and projections underlying the opinion" of key evidence, and "the effect of such changes on the relevance and significance of that opinion," would be a "waste of

time and is not in the interest of efficient proceedings and use of judicial resources.")[14]  Spirit's evaluation of JetBlue's hostile tender offer is of no moment in the Court's determination of whether the transaction the parties have entered into passes antitrust scrutiny.

## IV.  **CONCLUSION**

For the foregoing reasons, Spirit and JetBlue respectfully request that the Court exclude the Proxy Fight Evidence.

Spirit and JetBlue also request that the Court exclude deposition designations and cross-examination concerning the Proxy Fight Evidence, and any evidence or argument concerning Spirit's statements during the proxy fight in spring 2022 concerning the likelihood of regulatory approval of the JetBlue merger.

Spirit and JetBlue remain ready and willing to meet and confer on this issue.

---

[14]  *See also Ostler* v. *Codman Rsch. Grp., Inc.*, 241 F.3d 91, 96 (1st Cir. 2001) ("To make any use of inferences from what other option-holders knew and did would have created three mini-trials [as to disparate treatment] . . . Weighing the benefit of this secondary evidence against its potential to delay and mislead is just the kind of issue on which the district court's latitude is at its zenith."); *Lund* v. *Henderson*, 807 F.3d 6, 11–12 (1st Cir. 2015) (district court did not abuse discretion in excluding evidence of complaints against arresting officer prior to arrest where evidence would have posed a threat of unfair prejudice and "[m]ore importantly . . . would have turned this trial into a series of mini-trials as Henderson contested each of the prior complaints"); *Park W. Radiology* v. *CareCore Nat. LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (motion to exclude "references to fraud allegations and other unlawful conduct by nonparties" granted in antitrust action where "the risk of turning the trial into a 'multi-ringed sideshow of mini-trials on collateral issues pertaining to the conduct and relationships of third parties that may have only tangential bearing, if at all, to the issues and claims disputed in this case'") (citation omitted); *Santiago* v. *Costco Wholesale Corp.*, No. CV 19-1082 (SCC), 2022 WL 767045, at *2 (D.P.R. Mar. 14, 2022) (motion *in limine* granted on expert opinion that defendant "negligently" arranged benches because "its probative value [was] substantially outweighed by a danger of wasting time").

Dated: September 11, 2023          Respectfully submitted,

*/s/ Samuel N. Rudman*
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA 02110
Tel: 617-248-4034
srudman@choate.com

Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

Elizabeth M. Wright (MA BBO #569387)
Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

Ryan A. Shores (*Pro Hac Vice*)
David I. Gelfand (*Pro Hac Vice*)
Daniel P. Culley (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton, LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202-974-1500
rshores@cgsh.com
dgelfand@cgsh.com
dculley@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
ryan.shores@shearman.com

15

michael.mitchell@shearman.com
brian.hauser@shearman.com

Richard F. Schwed (*Pro Hac Vice*)
Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: 212-848-4000
Fax: 212-848-7179
rschwed@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

*Attorneys for Defendant JetBlue Airways
Corporation*

**CERTIFICATE OF SERVICE**

I, Samuel N. Rudman, hereby certify that on September 11, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system.

DATED this 11th day of September, 2023.


*/s/ Samuel N. Rudman*
Samuel N. Rudman

1