IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Civil Action No. 1:23-cv-10511-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION IN LIMINE REGARDING PURPORTED OUT-OF-MARKET BENEFITS**

The Supreme Court has squarely rejected the proposition that in a merger the "anticompetitive effects in one market could be justified by procompetitive consequences in another." *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 370 (1963). Yet that is exactly what Defendants seek to do here. And so this motion asks this Court to keep the focus of the trial on the relevant markets where the effect of JetBlue's proposed acquisition of Spirit would be "direct and immediate"—the relevant markets identified in the Amended Complaint—and exclude evidence of purported benefits in markets where the Plaintiffs have not alleged harm.

The Amended Complaint describes how JetBlue's proposed acquisition of Spirit would substantially lessen competition in hundreds of routes across the United States, each of which constitutes a relevant antitrust market. The harm would be particularly significant on the dozens of routes serving tens of millions of passengers where both airlines currently provide non-stop air passenger service and where their market shares on each of those routes makes the acquisition

presumptively illegal.[1] Common sense and binding precedent dictate that any purported countervailing benefit to these harms must eliminate the threat that JetBlue's acquisition of Spirit poses to competition on those routes. One need only consider that a new flight between Fort Lauderdale and Grand Rapids, Michigan does not help passengers in Fort Lauderdale wanting to visit family in Lima, Peru, who are likely to have fewer choices and pay higher fares after the acquisition. Courts regularly reject invitations by merging parties to serve as social engineers who balance harms to a group of customers in one part of the country against purported benefits for customers in another. *See, e.g.*, *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 94 (D.D.C. 2017); *Miss. River Corp. v. FTC*, 454 F.2d 1083, 1090 (8th Cir. 1972).

Because the anticompetitive harms alleged in the Amended Complaint cannot be offset by purported out-of-market benefits elsewhere, evidence of such purported benefits is irrelevant and inadmissible under Federal Rules of Evidence 401 and 402. Accordingly, the Court should preclude any such evidence at trial.

## BACKGROUND

Plaintiffs allege that the proposed acquisition may substantially lessen competition for scheduled air passenger service in hundreds of routes served by JetBlue and Spirit. Am. Compl. ¶¶ 61–72. Each of these routes constitute a relevant antitrust market. *Id.* Those routes fall into three categories: (1) origin-and-destination pairs for scheduled air passenger service where both JetBlue and Spirit compete as of the date of the merger agreement (with either nonstop or connecting service); (2) origin-and-destination-pairs that JetBlue does not serve but where Spirit offered nonstop service as of the date of the merger agreement; and (3) origin-and-destination

---

[1] There were 51 markets in which JetBlue and Spirit competed head-to-head with nonstop service at the time they entered their merger agreement. Since executing that agreement, JetBlue and Spirit have stopped operations in some of those markets, and also entered new markets where the market concentration render the acquisition presumptively illegal.

pairs that Spirit plans to enter with nonstop service as an independent competitor.[2] *Id.* ¶ 71. Plaintiffs identified these three categories of routes as the relevant markets for assessing the acquisition's potential impact on competition because they are the routes where customers benefit today—or would benefit in the future—from head-to-head competition between JetBlue and Spirit and from Spirit's role as a unique disrupter in the industry. JetBlue's acquisition would eliminate Spirit from the market, leaving millions of passengers on these routes to face increased fares, fewer available seats, fewer options when choosing a flight and associated amenities, and in some cases, elimination of one or both airline's service. *See, e.g.*, Am. Compl. ¶¶ 2–9, 16–30.

Defendants have previewed that they will attempt to justify JetBlue's acquisition of Spirit by arguing that the harms to customers on the routes alleged in the Amended Complaint should be balanced against purported benefits to other customers in *different* markets (or non-customer groups in *different* markets). For example, Defendants have claimed that the acquisition will allow them to offer service on more routes than either JetBlue or Spirit could serve separately. *See, e.g.,* Def. JetBlue Airways Corp.'s Resp. and Object. to Plaintiffs' First Set of Interrog. to JetBlue Airways Corp. (Declaration of Edward Duffy (hereinafter, "Duffy Decl.") Ex. A), at 10 (The combined firm will be able to offer "more destinations . . . than either JetBlue or Spirit could offer on its own); JetBlue Ans. ¶ 6 ("The acquisition of Spirit will allow JetBlue to drastically expand its network and bring the JetBlue Effect to many new markets . . . ."). They have also claimed that the "combination of the Defendants' complementary networks will bring new routes online." JetBlue Ans. at 18; Spirit Ans. at 18. Defendants have also claimed that the

---

[2] Over 150 of those routes—including over 40 nonstop routes—are presumed to have anticompetitive effects because the proposed acquisition would significantly increase concentration and result in highly concentrated markets on those routes. *See* Am. Compl. ¶¶ 31–32.

proposed transaction will benefit Spirit's employees by offering them higher pay and benefits and have included Sara Nelson, the president of the Association of Flight Attendants-CWA, AFL-CIO, who testified extensively about the purported benefits that will inure to flight attendants at her deposition, on their witness list. Def. Spirit Airlines, Inc.'s Resp. and Object. to Plaintiffs' First Set of Interrog. (Duffy Decl. Ex. B), at 3; Transcript of Deposition of Sara Nelson (Jun. 20, 2023) (Duffy Decl. Ex. C), 14:2–16:22, 20:12–21:3, 22:10–26:13, 54:16–25.

Defendants' experts have also signaled that they may offer similar opinions. *See, e.g.*, Expert Report of Dr. Nicholas Hill, ("Hill Rpt.") (Duffy Decl. Ex. D) ¶¶ 80–81 (opining that the acquisition of Spirit will allow JetBlue to quickly expand service to new routes); Second Amended Expert Report of Richard Scheff ("Scheff Rpt.") (Duffy Decl. Ex. E) ¶ 37 ("the combined airline will be able to free up or 'pop' planes used on existing schedules for *new flying*") (emphasis added). In fact, one of Defendants' experts, Dr. Nicholas Hill, points to purported benefits from the creation of a larger JetBlue network that includes benefits to passengers *on entirely different routes* than the markets that Plaintiffs' expert has identified harm will occur. *See* Hill Rpt. ¶ 81; Transcript of Deposition of Nicholas Hill, PhD (Sept. 6, 2023) ("Hill Dep. Tr.") (Duffy Decl. Ex. F), 131:13–132:1. This approach is further exemplified by Dr. Hill's claims that the Defendants' proposed divestitures to airlines should count as benefits that justify the harms from the acquisition even if in some cases those airlines cannot fly routes that Defendants currently fly. Hill Rpt. ¶¶ 234–36. But neither Defendants nor their experts have explained how increased competition on routes that the combined airline may enter in the future will help JetBlue and Spirit customers traveling on existing routes who would be harmed by the acquisition.

**LEGAL STANDARD**

"Defining a relevant market is not an end unto itself; rather, it is an analytical tool used to ascertain the 'locus of competition.'" *United States v. Bertelsmann*, -- F. Supp. 3d --, 2022 WL 16949715 (D.D.C. Nov. 15, 2022) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320-21 (1962)). The markets alleged in the Amended Complaint are rightly the focus of a Section 7 case because the purpose of market definition is not to identify "where the parties to the merger do business or even where they compete, but where, within the area of competitive overlap, the effect of the merger on competition will be direct and immediate," *Phila. Nat'l Bank*, 374 U.S. at 357 (citation omitted).

Federal Rule of Evidence 402 prevents the admission of evidence that is not relevant. *See Adams v. Providence & Worcester Co.*, 721 F.2d 870, 872 (1st Cir. 1983). To be relevant, evidence must have "any tendency to make a fact more or less probable than it would be without the evidence" and the fact must be "of consequence in determining the action." Fed. R. Evid. 401. It is well within this Court's discretion to grant this motion *in limine* to exclude legally irrelevant evidence. *Refinance Co. v. Klock*, 352 F.3d 16, 25 (1st Cir. 2003) (affirming exclusion of testimony at a bench trial through motion *in limine* because subject of testimony "was legally irrelevant."); *see also Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997) ( it is especially appropriate to exclude legally irrelevant evidence through a motion *in limine* because the purpose of such motions is to "perform[] a gatekeeping function and permit[] the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented . . . because they clearly would be inadmissible for any purpose.").

**ARGUMENT**

The Supreme Court has squarely prohibited Defendants' efforts to justify the obvious harm to passengers in the relevant markets alleged in the Amended Complaint by pointing to purported benefits inuring to customers traveling on other routes, or by comparing the harms in one market with benefits in other markets. "If anticompetitive effects in one market could be justified by procompetitive consequences in another, the logical upshot would be that every firm in an industry could, without violating § 7, embark on a series of mergers that would make it in the end as large as the industry leader." *Phila. Nat'l Bank*, 374 U.S. at 370.

Defendants' efforts are further foreclosed by the plain language of Section 7, which condemns mergers that threaten to substantially lessen competition "in *any* line of commerce in *any* activity affecting commerce in *any* section of the country." *See* 15 U.S.C. § 18 (emphases added); *see also Brown Shoe*, 370 U.S. at 337 ("That section speaks of 'any section of the country,' and if anticompetitive effects of a merger are probable in 'any' significant market, the merger—at least to that extent—is proscribed."). "An acquisition is declared to be unlawful if it has the requisite anticompetitive effects 'in any line of commerce in any section of the country.' The statute thus plainly contemplates that mergers may involve more than one market, yet it bases legality on a separate market-by-market appraisal." *See* 4A, Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 972a, at 57 (4th ed. 2016) (internal citations omitted); *see also United States v. Anthem, Inc.*, 855 F.3d 345, 368 (D.C. Cir. 2017) ("[T]his holding [affirming injunction based on harm in one local market] provides an independent basis for the injunction, even absent a finding of anticompetitive harm in the fourteen-state national accounts market.").

Courts around the country have likewise held that benefits potentially accruing in separate markets cannot, as a matter of law, cure an otherwise illegal merger. *See, e.g., Aetna*,

240 F. Supp. 3d at 94 (merging parties must demonstrate efficiencies accrue to "the customers in the challenged markets") (citing *Phila. Nat'l Bank*, 374 U.S. at 370)); *Miss. River Corp.*, 454 F.2d at 1090 ("the anticompetitive effects of an acquisition in one market cannot be justified by pro-competitive effects in another market"); *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 24–25 (D.D.C. 2012) ("[A] merger that substantially decreases competition in one place—injuring consumers there—is not saved because it benefits a separate group of consumers by creating competition elsewhere.").[3]

The Supreme Court and the federal courts of appeals have condemned cross-market balancing in other antitrust contexts as well, including challenges to contracts, agreements, and combinations under Section 1 of the Sherman Act. For example, the Supreme Court explained that courts are ill-equipped "to weigh, in any meaningful sense, destruction of competition in one sector of the economy against promotion of competition in another sector. . . ." *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 609–10 (1972). Any decision "to sacrifice competition in one portion of the economy for greater competition in another" is reserved for the legislature, not for courts or private businesses. *Id.* at 611. The First Circuit has recognized that it is generally improper under Section 1 "to validate a practice that is decidedly in restraint of trade simply because the practice produces some unrelated benefits to competition in another market,"

---

[3] *See also, e.g.*, *United States v. Ivaco*, 704 F. Supp. 1409 (W.D. Mich. 1989) ("procompetitive effects outside the relevant geographic market cannot be used to offset anticompetitive effects in the relevant market") (citations omitted); *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 351 (3d Cir. 2016) (merging parties' enhanced ability to engage in risk-based contracting was not a cognizable efficiency because it was "unclear how this ability to engage in risk-based contracting will counteract any of the anticompetitive effects of the merger"); *Saint Alphonsus Med. Ctr.-Nampa Inc. v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 792 (9th Cir. 2015) ("At most, the district court concluded that [the acquiring health system] might provide better service to patients after the merger. That is a laudable goal, but the Clayton Act does not excuse mergers that lessen competition or create monopolies simply because the merged entity can improve its operations.") (citation omitted).

*Sullivan v. Nat'l Football League,* 34 F.3d 1091, 1112 (1st Cir. 1994), and that any procompetitive benefit should be considered only to the extent it may "ultimately have a beneficial impact on competition in the relevant market itself." *Id*. The Seventh Circuit recently explained that benefits to consumers cannot justify harms to workers. *Deslandes v. McDonalds USA, LLC*, -- F.3d --, 2023 WL 5496957, at *2 (7th Cir. Aug. 25, 2023) (Easterbrook, J.). And in ruling that the Northeast Alliance between American Airlines and JetBlue was illegal under Section 1 of the Sherman Act, another court in this district noted there was "logical appeal" in not allowing parties to justify harms caused "in one place" "by pointing to a benefit they created in another place." *United States v. Am. Airlines Grp.*, 2023 WL 3560430, at *42 n.111 (D. Mass. May 19, 2023) (Sorokin, J.).

      Defendants may attempt to justify the admissibility of out-of-market benefits by pointing to circumstances where the United States has—in a negotiated, out-of-court settlement or as part of its exercise of prosecutorial discretion—considered out-of-market benefits. *See generally,* Hill Rpt. ¶¶ 202–06, 113–16 But it is hardly novel for parties to consider factors and evidence during settlements that may be irrelevant to the elements of a claim. Parties may consider mitigation evidence, ability to pay, alternative priorities, or any number of other valid discretionary reasons when deciding to resolve a matter absent litigation that would be irrelevant to the claims in a litigated case. *See, e.g.*, *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 714 (4th Cir. 2021) (finding that the district court did not abuse its discretion by excluding evidence that DOJ had twice investigated merger without challenging it, since DOJ's decision to not pursue matter was not probative as to merger's legality); *U.S. ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 20 (D.D.C. 2008) (holding evidence relating to the DOJ's decision not to intervene in a False Claims Act case inadmissible under Rules 401 and 402 "because it is not

probative of any of the 'elements to be proved' at trial" since the government "may have had 'numerous reasons' for electing not to intervene in this case"). The United States, just like any other litigant, may properly consider factors and circumstances in when, how, and to what extent to assert claims; indeed, the United States is required to do so in the exercise of its prosecutorial discretion. *Cf. United States v. Marrero-Ortiz,* 160 F.3d 768, 775 (1st Cir. 1998) ("[Evidence of dropped charges] ordinarily does not prove innocence. After all, cases are dismissed for a variety of reasons, many of which are unrelated to culpability."). But the fact that such factors could be or even have been considered in one matter does not render such evidence admissible at trial in another.

Here, Defendants' claims that other airlines may use divestiture assets to serve different markets than those Spirit serves, and that the transaction may allow JetBlue to offer "new routes" cannot offset the competitive harm to the routes at issue in this case—routes in which Spirit and JetBlue overlap (or would have in the future) or routes that are served by Spirit but not JetBlue. Indeed, Dr. Hill conceded at his deposition that Defendants' proposed divestitures would not guarantee the divestiture buyers would operate on the routes touching the airports at issue in this transaction.  Hill Rpt. ¶ 236, Hill Dep. Tr. 262:6–16. The Fort Lauderdale-to-Lima passenger will still have to pay more for her seat because of the lost competition between Spirit and JetBlue in that market. New flights between Fort Lauderdale and domestic destinations will not change that. Put another way, Defendants cannot excuse reducing competition at the expense of passengers on the routes at issue in this action by claiming that it plans to offer something of value to some passengers in *other* markets.

Excluding such evidence will simplify and shorten the trial. Defendants' experts and some of their witnesses are expected to devote a substantial fraction of their testimony to

discussions around out-of-market benefits. Indeed, as described above, both Defendants' experts' reports include extensive discussions of out-of-market benefits and themes. Hill Rpt. ¶¶ 81, 113–16, 202–06, 234–236, 306; Scheff Rpt. ¶ 37. For example, although Dr. Hill claims he cannot evaluate harm in the relevant nonstop overlap markets, his defense of the proposed acquisition substantially rests on purported benefits that would occur from the expansion of JetBlue's network on routes beyond the relevant markets identified by Plaintiffs. Hill Dep. Tr. 244:1-11; Hill Rpt. ¶ 81; *see also id.* ¶¶ 80, 113–16, 202–06, 234–36.

As Justice Holmes put it long ago, refusing to introduce collateral issues at trial "is purely a practical one—a concession to the shortness of life." *Reeve v. Dennett*, 11 N.E. 938, 944 (Mass. 1887). Here there is a clear line to be drawn between evidence that relates to the potential harms (or purported benefits) of JetBlue's acquisition of Spirit in the relevant markets alleged in the Amended Complaint and the legally irrelevant purported benefits that Defendants point to elsewhere.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude evidence of out-of-market benefits, including (1) testimony that potential divestiture buyers can alleviate competitive harm in relevant markets by initiating or expanding flying in different markets, (2) evidence suggesting that the proposed transaction will allow JetBlue to initiate or expand service on routes that are not at issue in this action, (3) expert opinions purporting to establish benefits in other markets, and (4) other evidence Defendants may seek to introduce at trial of out-of-market benefits that have no bearing on the markets in which Plaintiffs allege harm.

Dated: September 11, 2023

Respectfully submitted,

*/s/* Edward W. Duffy
Edward W. Duffy
Daniel Loevinsohn
Arianna Markel
Brendan Sepulveda
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov


*/s/* William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov


*/s/* C. William Margrabe
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC  20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov


*Attorneys for the United States of America, the Commonwealth of Massachusetts, and the District of Columbia, and on behalf of all Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Edward W. Duffy
Edward W. Duffy
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov