# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:23-cv-10511-WGY |
| JETBLUE AIRWAYS CORPORATION. and SPIRIT AIRLINES, INC., | |
| *Defendants*. | |

## PROPOSED FINAL PRETRIAL ORDER

Plaintiff United States of America, and the State of California, District of Columbia, State of Maryland, Commonwealth of Massachusetts, State of New Jersey, State of New York, and State of North Carolina ("Plaintiff States"; and collectively with the United States, "Plaintiffs"), and JetBlue Airways Corp. and Spirit Airlines, Inc. ("Defendants"; and collectively with Plaintiffs, the "Parties"), hereby jointly submit this proposed Final Pretrial Order pursuant to Federal Rule of Civil Procedure 26(a)(3), Local Rule 16.5 of the United States District Court for the District of Massachusetts, and the Court's Scheduling and Case Management Order (ECF No. 79). A final pretrial conference has been scheduled for October 4, 2023, at 3:00 PM. Trial of this matter is scheduled to begin on October 16, 2023.

**Lead Counsel for Plaintiff the United States:**
Edward W. Duffy
U.S. Department of Justice
Antitrust Division
450 Fifth Street, N.W.
Washington, DC 20530
Phone: 202-812-4723
Fax: 202-307-5802

edward.duffy@usdoj.gov

**Lead Counsel for Plaintiff States:**
**Lead Counsel for Plaintiff Commonwealth of Massachusetts:**

William T. Matlack
Antitrust Division
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
William.matlack@state.ma.us

**Lead Counsel for Plaintiff District of Columbia:**

C. William Margrabe
Office of the Attorney General for the District of Columbia
400 Sixth Street NW, Suite 10100
Washington, DC 20001
will.margrabe@dc.gov

**Lead Counsel for Plaintiff State of New York:**

Olga Kogan
Antitrust Bureau
New York State Office of the Attorney General
28 Liberty Street
New York, NY 10005
olga.kogan@ag.ny.gov

**Lead Counsel for Plaintiff State of California:**

Jamie L. Miller
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Telephone: (415) 510-3565
Jamie.Miller@doj.ca.gov

**Lead Counsel for Plaintiff State of Maryland:**

Schonette J. Walker
Maryland Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6470
swalker@oag.state.md.us

**Lead Counsel for Plaintiff State of New Jersey:**

Bryan S. Sanchez
State of New Jersey Office of the Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, New Jersey 07102
Telephone: (973) 648-3070

|  | Bryan.Sanchez@law.njoag.gov |
|---|---|
| **Lead Counsel for Plaintiff State of North Carolina:** | Jessica V. Sutton<br>Special Deputy Attorney General<br>North Carolina Department of Justice<br>Post Office Box 629<br>Raleigh, North Carolina 27602<br>Tel: 919-716-6000<br>E-mail: jsutton2@ncdoj.gov |
| **Lead Counsel for JetBlue:** | Ryan A. Shores<br>Cleary Gottlieb Steen & Hamilton LLP<br>2112 Pennsylvania Avenue, NW<br>Washington, DC 20037<br>(202) 974-1876<br>Fax: (202) 974-1999<br>rshores@cgsh.com |
| **Lead Counsel for Spirit:** | Andrew C. Finch<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>Tel: 212-373-3000<br>Fax: 212-757-3990<br>afinch@paulweiss.com |

# Table of Contents

I.   Concise Summary of Evidence ................................................................................. 5

    A.   Plaintiffs' Submission ................................................................................. 5

    B.   Defendants' Submission ............................................................................. 6

II.   Facts ......................................................................................................................... 7

    A.   Uncontested Facts ..................................................................................... 7

    B.   Contested Facts ......................................................................................... 7

III.   Jurisdiction ........................................................................................................... 12

IV.   Pretrial Motions .................................................................................................... 12

    A.   Plaintiffs' Motion(s) ............................................................................... 12

    B.   Defendants' Motion(s) ............................................................................ 13

V.   Issues of Law ....................................................................................................... 13

VI.   Amendments to Pleadings .................................................................................... 13

VII.   Trial ...................................................................................................................... 16

    A.   Trial Schedule ........................................................................................ 16

    B.   Allocation of Trial Time ........................................................................ 16

    C.   Post-Trial Briefing Schedule ................................................................. 17

VIII.  Witnesses ............................................................................................................. 17

    A.   List of Witnesses Plaintiffs Expect to Call ........................................... 17

        1.  Fact Witnesses ................................................................................. 17

        2.  Expert Witnesses ............................................................................. 20

    B.   List of Witnesses Defendants May Call ................................................ 21

        3.  Fact Witnesses ................................................................................. 21

        4.  Expert Witnesses ............................................................................. 21

    C.   Identifying Witnesses and Order of Presentation .................................. 22

    D.   Testimony by Deposition ....................................................................... 23

IX.   Exhibits ................................................................................................................ 25

    A.   Exhibit Lists ........................................................................................... 25

    B.   Demonstrative Exhibits .......................................................................... 26

X.   Confidentiality Procedures ................................................................................... 29

XI.   Positions on Remaining Objections ..................................................................... 30

XII.   Settlement ............................................................................................................ 30

## I.  Concise Summary of Evidence

1.     The following are the Parties' respective summaries of the evidence that each party anticipates will be presented at trial. They are not intended to be a complete statement of every fact that will be adduced at trial, and each side reserves the right to submit additional evidence based on, among other things, the manner in which the case unfolds at trial. The Parties' Pretrial Briefs, due to be filed on October 9, will also supplement what is set forth below.

### A.     Plaintiffs' Submission

2.     This is a civil antitrust lawsuit arising under Section 7 of the Clayton Act, 15 U.S.C. § 18, challenging JetBlue Airways' proposed acquisition of Spirit Airlines (the "Transaction"). The evidence will show that, if consummated, the Transaction would substantially lessen competition in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, in each of the alleged relevant markets and thus must be enjoined. Am. Compl. ¶ 71.

3.     JetBlue's acquisition of Spirit would: (1) eliminate current and future head-to-head competition between JetBlue and Spirit; (2) lead to higher ticket prices and reduced passenger capacity; (3) reduce consumer choice; and (4) facilitate increased coordination among JetBlue and its remaining competitors. Am. Compl. ¶ 85. More specifically, if allowed to proceed, the Transaction would eliminate the United States' largest ultra-low-cost carrier from the relevant markets. Spirit's ultra-low-cost business model is appealing to customers— particularly to cost-conscious travelers—because of its low base fares and unbundled pricing, which allows customers to save money by only paying for the amenities (like a checked bag, carry-on bag, or pre-assigned seat) that they value, while forgoing others.

4.      In place of Spirit's low-cost, unbundled offerings, post-Transaction JetBlue would remove seats from Spirit aircraft and convert them to lower-density JetBlue seat configurations. These changes would mean higher fares, consistent with JetBlue's business model that has a greater focus on premium travelers and increased onboard amenities. JetBlue's elimination of Spirit would take some trips completely out of reach for cost-conscious Americans and raise airfares for many more. Contrary to what JetBlue contends, the Transaction would not result in more vigorous competitive pressure on the four largest U.S. airlines; rather, it would remove a disruptive, vigorous competitor—Spirit—from the marketplace altogether.

   **B.      Defendants' Submission**

5.      As the evidence will show, this is a merger of two small airlines – JetBlue and Spirit – that together account for less than 10% of the domestic airline market on a revenue basis. As the United States proclaimed in this Court less than a year ago, JetBlue is a low cost carrier ("LCC") that, through a combination of low fares and superior service, uniquely disciplines the prices charged by the dominant legacy airlines (American, Delta, and United).  This disciplining effect – coined the "JetBlue Effect" by MIT researchers – has generated *billions* of dollars in consumer savings.  Through its acquisition of Spirit, JetBlue will double its size, spreading the JetBlue Effect to many more routes across the country, generating even more consumer savings, and supercharging a maverick that – as the United States also recognized – thwarts anticompetitive coordination in the airline industry.

6.      The evidence will further show that JetBlue and Spirit are limited competitors; by far, their biggest competitors are the "Big Four" airlines (the legacies and Southwest) that control 80% of the domestic airline market.  In fact, as Plaintiffs' own data shows, Spirit (an "ultra-low cost carrier" or "ULCC") offers nonstop service on only about 30% of routes flown by JetBlue.

To ensure the transaction presents no competitive concern, JetBlue nevertheless has agreed to divest slots and gates at key airports where JetBlue and Spirit overlap (Boston, the New York airports, and Fort Lauderdale) to other ULCCs.  Moreover, there are low or no barriers to entry, expansion, or repositioning across routes, meaning other ULCCs can compete in these routes when Spirit no longer exists.  These ULCCs have massive aircraft order books and are well-positioned to "backfill" any demand for customers seeking a ULCC option.  In short, after the transaction, the ULCC segment of the domestic airline market (less than 10% of the market as whole) will remain healthy and strong, and the vast majority of Americans (particularly those flying the dominant legacies) will benefit from a magnified JetBlue Effect.

## II.  Facts

### A.     Uncontested Facts

7.      Defendant JetBlue Airways Corporation ("JetBlue") is a Delaware corporation with its headquarters in Long Island City, New York. JetBlue provides scheduled air passenger service in the United States, Canada, the Caribbean, Latin America, and Europe. JetBlue currently has six focus cities: Boston, New York City, Los Angeles, Miami/Fort Lauderdale, Orlando, and San Juan.

8.      Defendant Spirit Airlines, Inc. ("Spirit") is a Delaware corporation with its headquarters in Miramar, Florida. Spirit provides scheduled air passenger service in the United States, the Caribbean, and Latin America.

**The Proposed Transaction**

9.      On February 5, 2022, Spirit entered into a merger agreement with Frontier Group Holdings, Inc., which operates Frontier.

10.     On April 5, 2022, JetBlue announced an unsolicited tender offer to acquire Spirit.

11.     On July 28, 2022, JetBlue and Spirit entered into an agreement pursuant to which JetBlue would acquire Spirit for $33.50 to up to $34.15 per share in cash payable to Spirit's shareholders, depending on the timing of closing, including a prepayment of $2.50 per share in cash payable upon Spirit stockholders' approval of the transaction and a ticking fee of $0.10 per month starting in January 2023 through closing.

**Relevant Product Market**

12.     Scheduled air passenger service constitutes a relevant product market for purposes of analyzing the competitive effects of JetBlue's proposed acquisition of Spirit.

**Divestiture Agreements**

13.     JetBlue and Frontier have executed a divestiture agreement, pursuant to which Frontier agreed to purchase Spirit holdings at LaGuardia Airport if the proposed transaction is consummated, subject to necessary approvals and other conditions of the divestiture agreement.

14.     JetBlue and Allegiant have executed a divestiture agreement, pursuant to which Allegiant agreed to purchase Spirit holdings at Boston Logan International Airport and Newark International Airport (with the exception of one gate), and five JetBlue gates and related ground facilities at the Fort Lauderdale-Hollywood International Airport if the proposed transaction is consummated, subject to the conditions of that agreement, including receipt of necessary approvals and other conditions of the divestiture agreement.

### B.     Contested Facts: Plaintiffs' Submission

15.     The key factual issue is whether the Proposed Transaction may substantially lessen competition in any relevant antitrust market, as set forth in Plaintiffs' Statement of Issues of Law.  Plaintiffs intend to prove the following facts, among others, in support of that finding.

### 1.   Consumers Benefit from Spirit's ULCC Model

16.     Spirit's ultra-low-cost model has increased competition and brought low fares to hundreds of routes. Spirit enables more consumers to travel affordably by offering low unbundled fares, which allow travelers to only pay for the amenities they value. Spirit's unbundled product and on-average lower fares especially benefit cost-conscious travelers, many of whom would not fly without Spirit's marketplace presence.

17.     Spirit's competitors, including JetBlue, respond to Spirit's product innovations and low prices.  For example, legacy carriers and JetBlue introduced basic economy fares, such as JetBlue's "Blue Basic," to compete more effectively against unbundled product and fares. JetBlue and other airlines also respond to Spirit's low prices.

18.     Although there are other, smaller domestic ULCCs, Spirit is the most successful in competing head-to-head with larger airlines.  JetBlue considers Spirit its main ULCC rival.

**2.  The Proposed Acquisition Would Harm Consumers By Eliminating Spirit**

19.     JetBlue plans to eliminate Spirit's business model, remove seats from Spirit's planes, lessen domestic ULCC capacity, and charge Spirit's customers higher prices.

20.     The relevant geographic antitrust markets for evaluating the Proposed Transaction are origin-and-destination pairs where (1) JetBlue and Spirit compete head-to-head today; (2) Spirit flies nonstop, but JetBlue does not; and (3) Spirit plans to fly nonstop in the future. Each origin-and-destination endpoint is an airport or grouping of airports within a metropolitan area.

21.     The Proposed Transaction would eliminate substantial head-to-head competition between JetBlue and Spirit. In 183 markets, including 51 nonstop overlaps, the transaction is presumptively unlawful.  As one indication of lost competition, ticket data show that in markets in which Spirit began to compete with JetBlue, JetBlue's prices decreased an average of 15.5%.

22.     The airline industry is susceptible to coordination, including fare adjustments used to signal intentions and deter competitive responses. Spirit, however, generally does not "follow the herd" and provides important fare discipline to the airline industry that the Proposed Transaction would eliminate. The Proposed Transaction would increase the likelihood of coordination in the relevant markets by eliminating Spirit as a maverick and by reshaping JetBlue to have incentives more aligned with the legacy airlines and Southwest (the "Big Four").

23.     JetBlue's proposed acquisition of Spirit is likely to cause consumers almost $1 billion of net harm annually, including over $700 million in the 51 nonstop overlap markets. The most cost-conscious consumers would be disproportionately harmed.

### 3.  Defendants Cannot Show Consumer Benefits or Likely, Timely, Sufficient Entry

24.     Defendants have not demonstrated consumer benefits in the relevant antitrust markets.  Instead, JetBlue's own deal modeling shows that it expected to earn over $1 billion in annual *revenue* synergies – benefiting JetBlue, not consumers – from the Proposed Transaction.

25.     Other airlines are unlikely to make up for the loss of Spirit. Relative to other ULCCs, Spirit has presence in major airports and a track record of taking on the Big Four. Other ULCCs tend to serve smaller markets, use less convenient airports, and offer less frequent service. Other airlines would also have to overcome significant barriers to entry and expansion.

26.     JetBlue's proposed divestitures of Spirit assets would not replace lost competition from Spirit. The buyers are not likely to replicate Spirit's role in the marketplace. And even by their own terms, the divestitures do not purport to make up for all lost competition.

### C.   Contested Facts: Defendants' Submission

27.   As will be set forth in more detail in Defendants' forthcoming Pretrial Brief, Defendants have identified the following issues of fact and law, including mixed issues of fact and law, for resolution at trial.

28.   Whether, considering the totality of circumstances and the specific context of the airline industry, the merger of JetBlue and Spirit is likely to substantially lessen competition.

29.   Whether origin and destination pairs and/or the national market for air passenger service are relevant geographic market(s) for purposes of assessing the effects of the merger.

30.   Whether Plaintiffs can satisfy a presumption that the merger is likely to substantially lessen competition through proof of sufficiently high market shares in relevant markets.

31.   If Plaintiffs establish a presumption, whether plaintiffs' proposed market shares and market concentration statistics accurately predict the merger's probable effect on competition or whether they are misleading, considering a variety of factors, including, *inter alia*, the dynamic nature of the industry, the movement of planes across routes and fluctuating frequencies within routes, ease of entry, the agreements to divest JetBlue and Spirit assets in New York, Boston, and Fort Lauderdale, and the benefits of the transaction (including the "JetBlue effect").

32.   Whether barriers are high enough to impede future entrants, or whether entry, expansion, and repositioning is sufficiently easy for ULCCs and other airlines following the merger.

33.   Whether the divestitures, combined with the other consumer benefits of the merger, are sufficient to offset any potential harms.

34.     Whether and to what extent the elimination of the Spirit product is, itself, an anticompetitive harm.

35.     Whether Plaintiffs have proven that the merger makes it more likely that the combined entity will engage in coordination with other airlines.

36.     If Plaintiffs establish a prima facie case and Defendants successfully rebut that that case, whether Plaintiffs can adduce additional evidence sufficient to meet their ultimate burden of persuasion that the merger is anticompetitive.

## III. Jurisdiction

37.     This is an action for injunctive relief under Sections 7, 15, and 16 of the Clayton Act, 15 U.S.C. §§ 18, 25-26. The jurisdiction of the Court is not disputed and is based on Sections 15 and 16 of the Clayton Act, 15 U.S.C. § 25-26, and 28 U.S.C. §§ 1331, 1337(a), and 1345. Defendants consented to personal jurisdiction in this Court. Defendants also consented to venue in this Court, which is also proper under Section 12 of the Clayton Act, 15 U.S.C. § 22.

## IV. Pending Pretrial Motions

### A.     Plaintiffs' Motions

38.     Plaintiffs filed the following pretrial motions:

- Plaintiffs' Motion *in Limine* to Exclude Anticipated Testimony by Sara Nelson (ECF No. 171).

- Plaintiffs' Motion *in Limine* Regarding Purported Out-of-Market Benefits (ECF No. 174).

- Plaintiffs' Motion *in Limine* to Exclude Testimony from Richard Scheff (ECF No. 179).

39.     Pursuant to the Scheduling and Case Management Order (ECF No. 79 at 2), Defendants' oppositions to the motions *in limine* are due by September 20, 2023, with any replies due by September 26, 2023.

   **B.     Defendants' Motion(s)**

40.     Defendants filed the following pretrial motions with the court:

- Motion *in Limine* to Estop the Department of Justice from Taking Inconsistent Positions and to Overrule Objections (ECF No. 167).

- Motion *in Limine* to Exclude Certain Documents (ECF No. 175).

- Motion *in Limine* to Exclude Opinions of Dr. Tasneem Chipty (ECF No. 177).

## V.  Issues of Law

41.     Pursuant to Local Rule 16.3(c)(5), the parties submit the issues of law that they believe remain to be litigated.[1]

   **A.     Plaintiffs' Submission**

42.     The ultimate issue in this case is whether the Proposed Transaction may substantially lessen competition, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. There are several issues of law regarding the Court's analysis of this ultimate issue, including the following:

   a.  A merger is unlawful if it may result in a substantial lessening of competition in any line of commerce in any section of the country. Thus, if anticompetitive

---

[1] This list of issues of law does not include evidentiary issues that will be raised through motions *in limine*, other evidentiary objections, or other legal issues raised by pretrial motions.

effects of a merger are reasonably probable in any market, the merger violates Section 7.

b. A plaintiff may make out a prima facie case by showing that the merger would produce a firm controlling an undue percentage share of the relevant market and would result in a significant increase in the concentration of firms in that market.

c. Market definition, i.e., identifying the relevant market, helps specify the line of commerce and section of the country in which the competitive concern arises, and is intended to be a pragmatic, factual analysis rather than a formal, legalistic one.

d. The relevant market consists of both a product ("line of commerce") and geographic ("section of the country") component.

e. A relevant geographic market is the area to which consumers can practically turn for alternative sources of the product and in which the defendants face competition.

f. A relevant product market includes products reasonably interchangeable by consumers for the same purposes for which there is effective competition.

g. If the plaintiff makes out a prima facie case, defendants must show that anticompetitive effects in each of the relevant markets are unlikely by showing, for example, that new firms can enter or expand to counteract anticompetitive effects that would otherwise be expected.

h. Defendants bear the burden of proving that entry by new firms or expansion by existing firms will be timely, likely, and sufficient in magnitude, character, and scope to counteract the anticompetitive effects of the merger in each of the relevant markets.

i. A defendant arguing that entry will be facilitated by a divestiture bears the burden to show both that the entry is likely to occur, and that the proposed divestiture would restore the competition lost by the merger, including the competitive intensity that previously existed, thereby counteracting the anticompetitive effects of the merger in each of the relevant markets.

j. It is, at most, a rare circumstance where evidence of efficiencies would be sufficient to save an otherwise anticompetitive merger. To the extent that efficiencies can be cognizable, they must be in the relevant market, be verifiable, be merger-specific, not arise from anticompetitive reductions in output or service, ultimately be passed on to consumers, and must be sufficient to offset the transaction's likely anticompetitive effects.

**B.      Defendants' Submission**

43.      Plaintiffs' proposed Contested Facts and Issues of Law improperly inject substantive arguments into a document that is intended to facilitate the pretrial conference. *See* L.R. 16.5(d).  In addition to being improper for this document, Defendants dispute and disagree with the factual statements and legal standards presented in Plaintiffs' submission.  Defendants will be addressing their proposed findings of fact and conclusions of law in their pretrial brief, as requested by the Court in the Procedural Order entered by the Court (ECF No. 189).

**VI. Amendments to Pleadings**

44.      No party is seeking to amend its pleadings.

## VII.   Trial

### A.   Trial Schedule

45.     Under the Court's Order entered on March 21, 2023 (ECF No. 65), a 20-day bench trial in the above-entitled action will commence on Monday, October 16, 2023, and will take no longer than 20 trial days, sitting 9:00 AM to 1:00 PM, including a possible 25-minute break in the morning, for a total trial time of approximately 70 hours.

46.     The Parties agree that trial of this matter should not be consolidated with trial in *Garavanian, et al. v. JetBlue Airways Corporation, et al.*, 1:23-cv-10678-WGY.

### B.   Allocation of Trial Time

47.     The Court previously adopted the Parties' proposal to split the time evenly between Plaintiffs and Defendants. (3/21/23 Hr'g Tr. 17:5-10.) Plaintiffs will be allotted **50% of the total trial time** for opening statements, direct examinations during their case-in-chief, all cross-examinations of witnesses called by Defendants, and any direct examinations during a rebuttal case. Defendants will be allotted **50% of the total trial time** for opening statements, direct examinations during their case-in-chief and all cross-examinations during Plaintiffs' case-in-chief and any rebuttal case. In other words, Plaintiffs will be charged trial time when they are questioning a witness, and Defendants will be charged trial time when they are questioning a witness.

48.     The Parties will use a "chess clock" approach to apportion the approximately 70 hours of trial time.

49.     The Parties respectfully propose that each side be permitted to give an opening statement of up to 45 minutes. Opening statements will be deducted from each side's total allotted trial time.

50.     Pursuant to the Scheduling and Case Management Order (ECF No. 79 at 4), closing arguments shall be held the first business day following the close of evidence.  Closing arguments are not included in each side's total allotted trial time.

### C.     Post-Trial Briefing Schedule

51.     Consistent with the Court's Scheduling and Case Management Order entered on April 6, 2023, the parties shall file post-trial briefs, proposed findings of fact, and proposed conclusions of law by November 17, 2023. (ECF No. 79 at 4.)

52.     On November 28, 2023, each party shall submit to the Court two flash drives that contain electronic versions of their post-trial briefs, proposed findings of fact, and proposed conclusions of law that include hyperlinks to the evidence cited.

## VIII.  Witnesses

### A.     List of Witnesses Plaintiffs Expect to Call

#### 1.     Fact Witnesses

53.     Plaintiffs have identified the following fact witnesses as individuals likely to testify live at trial. Plaintiffs expect to call the JetBlue and Spirit witnesses as adverse witnesses; Plaintiffs understand that these witnesses may be contacted through counsel of record for JetBlue and Spirit. Plaintiffs have included the names, addresses, and telephone numbers for non-party witnesses.

| Name | Address/Telephone | Form of Testimony |
|------|-------------------|-------------------|
| David Clark (JetBlue) | Shearman & Sterling LLP 599 Lexington Avenue New York, NY 10022 (212) 848-4000 | Live and by deposition[*] |

---

[*] The Court rejected Defendants' proposed rule against use of deposition designations from witnesses who will testify live at trial. (ECF No. 79 at 23.) The Court ruled that "save for actual impeachment during cross examination

| | | |
|---|---|---|
| Eric Friedman (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Robin Hayes (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Michael Hillyard (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Ursula Hurley (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Evan Jarashow (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Derek Klinka (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Claire Roeschke (JetBlue) | Shearman & Sterling LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>(212) 848-4000 | Live and by deposition |
| Nicholas Bartolotta (Spirit) | Paul, Weiss, Rifkind, Wharton<br>& Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |

of a live witness, other admissible deposition testimony shall be submitted to the Court with appropriate designations and counter designations on the first day of trial." (*Id.*) The Parties have exchanged designations, counter-designations, and objections, are meeting and conferring regarding those objections, and will comply with the Court's direction to submit deposition testimony on the first day of trial.

| | | |
|---|---|---|
| Edward Christie (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| H McIntyre Gardner (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| Scott Haralson (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| John Kirby (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| Matthew Klein (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| Leonardo Lage (Spirit) | Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K St NW<br>Washington, DC 20006<br>(202) 223-7300 | Live and by deposition |
| Drew Wells<br>(Allegiant Travel Company) | WilmerHale<br>2100 Pennsylvania Ave NW<br>Washington, DC 20037<br>(202) 663-6000 | Live and by deposition |
| Brian Znotins<br>(American Airlines) | Latham & Watkins LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>(202) 637-2200 | Live and by deposition |
| Trevor Yealy<br>(Avelo Airlines) | Baker McKenzie LLP<br>815 Connecticut Ave NW<br>Washington, DC 20006<br>(202) 452-7000 | Live and by deposition |

| Mark Gale<br>(Broward County Aviation Department) | Broward County Attorney's Office<br>115 S. Andrews Ave., Suite 423<br>Fort Lauderdale, FL 33301<br>954-325-4993 | Live and by deposition |
| --- | --- | --- |
| Barry Biffle<br>(Frontier Airlines) | Latham & Watkins LLP<br>555 Eleventh Street NW<br>Suite 1000<br>Washington, DC 20004<br>(202) 637-2200 | Live and by deposition |

54.    Plaintiffs further incorporate by reference Exhibit A, which identifies additional witnesses from whom testimony may be offered exclusively through designated portions of deposition testimony.

## 2.    Expert Witnesses

55.    Plaintiffs intend to call Dr. Gautam Gowrisankaran and Dr. Tasneem Chipty for expert testimony regarding the opinions disclosed in their expert reports related to the proposed Transaction. Dr. Gowrisankaran will testify about market definition, unilateral and coordinated effects, and competitive harm. Dr. Chipty will testify about Defendants' proposed divestitures, barriers to entry, and Defendants' modeling of alleged synergies and benefits resulting from the proposed Transaction. Dr. Gowrisankaran will also respond to the opinions of Defendants' expert, Dr. Nicholas Hill, except inasmuch as those opinions address matters within the scope of Dr. Chipty's opening report.  Dr. Chipty will respond to those opinions of Dr. Hill and to the opinions of Defendants' expert, Mr. Richard Scheff.

56.    Dr. Gowrisinkaran and Dr. Chipty are expected to testify live.

B.      **List of Witnesses Defendants May Call**

3.      **Fact Witnesses**

57.     Defendants may call the following fact witnesses to testify live at trial:

(1)  Dave Clark, JetBlue

(2)  Eric Friedman, JetBlue

(3)  Robin Hayes, JetBlue

(4)  Mike Hillyard, JetBlue

(5)  Ursula Hurley, JetBlue

(6)  Richard Johns, JetBlue

(7)  Derek Klinka, JetBlue

(8)  Edward Christie, Spirit

(9)  Matthew Klein, Spirit

(10) Drew Wells, Allegiant

(11) Brian Znotins, American Airlines

(12) Sara Nelson, Association of Flight Attendants

(13) Trevor Yealy, Avelo Airlines

(14) David Neeleman, Breeze Aviation Group

(15) Eric Beck, Delta Airlines

(16) Barry Biffle, Frontier Airlines

(17) Vicki Jaramillo, Greater Orlando Aviation Authority

(18) Andrew Nocella, United Airlines

58.     Defendants further incorporate by reference Exhibit B, which identifies additional witnesses from whom testimony may be offered exclusively through designated portions of deposition testimony.

### 4.     Expert Witnesses

59.     Defendants will call Dr. Nicholas Hill, an economist, for expert testimony regarding his economic analyses, including the transaction's competitive effects.  Defendants also intend to call Mr. Richard Scheff as an airline industry expert for testimony regarding benefits from the transaction related to the combined network and increased utilization of planes.

60.     Defendants' expert witnesses are expected to testify live at trial.

### C.     Identifying Witnesses and Order of Presentation

61.     Any witness not listed in sub-sections A or B above will be precluded from testifying live at trial, unless such witness is used solely for impeachment, or for good cause shown.

62.     No later than 9:00 p.m. on October 7, 2023, Plaintiffs shall identify the list and expected order of fact witnesses they intend to call at trial.[2] No later than 9:00 p.m. on October 15, 2023, Defendants shall identify the list and expected order of witnesses they intend to call at trial.

63.     Unless otherwise agreed to by the parties during trial, starting on October 14, 2023, and thereafter two calendar days before each day of trial, Plaintiffs and Defendants shall provide by no later than 4:00 p.m. the list and order of witnesses to be presented each day of trial. Any change to the list and order of witnesses presented pursuant to this paragraph may not

---

[2] Defendants have proposed that Plaintiffs identify the order of all witnesses, including expert witnesses, which Plaintiffs have rejected.  Defendants are disappointed with Plaintiffs' proposal.  Defendants respectfully assert that, consistent with ordinary practice, Defendants are entitled to know the order of all Plaintiffs' witnesses in advance of trial.

be modified without prior consent of the opposing part(ies) or for good cause shown upon oral application to the Court.

64.     For the convenience of party and non-party witnesses, and for efficiency, any fact witness who is testifying live and called by both sides will only testify once and will be questioned by both sides at that time.  Accordingly, a party conducting a cross-examination will be permitted to go beyond the scope of the direct examination for witnesses on that party's final witness list.

65.     Fact witnesses shall remain outside the courtroom unless testifying, until such time as they are excused. Fact witnesses cannot discuss the substance of their testimony with counsel after having been sworn in until they are excused. Expert witnesses cannot discuss the substance of their testimony while under cross-examination.

**D.     Testimony by Deposition**

**Plaintiffs' Proposal for Paragraph 66:**

66.     Pursuant to the Scheduling and Case Management Order (ECF No. 79 at 23), the parties may offer into evidence designations and counter-designations from the depositions listed in their respective exhibits to this Order.  As set forth in the Scheduling and Case Management Order (ECF No. 79 at 23), the parties will submit the deposition designation packages to the Court by October 16, 2023.  The parties will endeavor to resolve objections to designated testimony before October 16, 2023.  A party may use any and all deposition testimony, whether or not designated, for impeachment purposes.

**Plaintiffs' Rationale**

The Court rejected Defendants' proposed language in the Case Management Order that would have prevented the Parties from designating deposition testimony from a witness who

would testify live, save for impeachment.  The Court's rejection of that limitation accords with Rule 32(a)(3) of the Federal Rules of Civil Procedure.  As Plaintiffs noted in their Case Management Order submission, even where a witness testifies live, designating the deposition testimony of that witness promotes efficiency, including through the admission of documents and providing evidence on background issues that may be included in pre-trial and post-trial briefing.  Defendants are not prejudiced by the process set forth in the Case Management Order, and they have followed suit in designating significant portions of deposition from third-party and other witnesses.  Defendants' concern that these designations will hinder the Court from making credibility determinations of witnesses who will be testifying live is unwarranted, as Defendants will be able to ask whatever questions they want of such witnesses to the extent permitted by the Federal Rules of Evidence and the Court.

**Defendants' Proposal for Paragraph 66:**

As set forth in the Scheduling and Case Management Order (ECF No. 79 at 23), the parties will submit the deposition designation packages to the Court by October 16, 2023.  The parties will endeavor to resolve objections to designated testimony before October 16, 2023.  A party may use any and all deposition testimony, whether or not designated, for impeachment purposes.  However, Defendants respectfully request that the Court revisit the question of whether, and the extent to which, a party may submit non-impeachment deposition designations for witnesses that the party intends to call live at trial.  It has become clear that for virtually all fact witnesses Plaintiffs intends to call live at trial, Plaintiffs also intend to submit significant portions of that witness's deposition transcript and/or play parts of their deposition at trial.  Defendants recognize the Court's order in the Case Management Order, but Defendants believe that Plaintiffs' over-designation warrants additional discussion at the Pretrial Conference.  To

allow Plaintiffs to elicit live testimony and submit extensive deposition testimony from the same witnesses has two potentially prejudicial results: (1) Plaintiffs are essentially getting more testimony time,  beyond the 35 hours permitted by the Court; and (2) Plaintiffs may impede the Court's ability to make credibility determinations by cherry-picking seemingly favorable deposition testimony and ignoring, or failing to question a witness about, the topics in that cherry-picked testimony.

## IX. Exhibits

### A.    Exhibit Lists

67.    Exhibit C is the parties' current list of unobjected-to exhibits.  Exhibit D is the parties' current list of objected-to exhibits.  The parties anticipate being able to resolve additional objections prior to trial, and the parties will file revised exhibit lists with the Court including objections on or before October 4, 2023, as directed by the Court.

68.    Exhibits to be used or offered into evidence solely for impeachment or to refresh recollection need not be included on the list of trial exhibits or disclosed in advance of being used or offered at trial.

69.    Unless otherwise provided by this Pretrial Order or agreement of the parties, exhibits not listed will not be admitted unless good cause is shown or agreed to by the parties.

70.    For any exhibits not objected to, the party sponsoring those exhibits may move the Court for admission of those exhibits prior to the Opening Statements on the morning of October 16, 2023, without need of any supporting witness. The exhibits included in any such motion must be listed by exhibit number. The Court will resolve any outstanding objections of exhibits at the time that a party seeks to use that exhibit with a witness (either live or by deposition).

71.     The listing of a document on the exhibit list is not an admission that such document is relevant or admissible for all purposes. Each party reserves the right to object to the propriety of any evidence under the Federal Rules of Evidence at the time such evidence is used at trial in view of the specific context in which such evidence is used.

72.     Each party reserves the right to use any exhibit on the joint exhibit list. Any exhibit, once admitted, may be used equally by any party for any proper purpose in accordance with the Federal Rules of Evidence.

73.     Exhibits that are documents created by a party or non-party and produced by that party or non-party from its own files are presumed to be authentic within the meaning of Federal Rule of Evidence 901 unless a party made a good faith objection to the exhibit's authenticity that has not been resolved.

74.     Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

**B.     Demonstrative and FRE 1006 Summary Exhibits**

**<u>Plaintiffs' Proposal:</u>**

75.     The parties will provide color representations of any demonstrative exhibits to be used in connection with the examination of a witness at trial to the other side's counsel of record no later than 5:00 p.m. two calendar days before any such exhibit may be introduced or otherwise used at trial, except that demonstrative exhibits to be introduced (or otherwise used) in connection with the rebuttal testimony of an expert witness for Plaintiffs do not need to be provided until one calendar day before such exhibits may be introduced (or otherwise used) if such rebuttal testimony begins sooner than two calendar days after Defendants rest their case.

Any objections to demonstrative exhibits shall be made by 9:00 a.m. the day after the demonstrative is received, and the parties shall promptly meet and confer regarding any objections that same evening. If any of the demonstratives change after the deadline, the party intending to use the exhibit will promptly notify the opposing side of the change(s). Any remaining disputes as to demonstrative exhibits shall be raised with the Court as appropriate before trial resumes on the day of their anticipated use. FRE 1006 summary exhibits must be disclosed by September 27, 2023 and included (with any objections) on the revised exhibit list filed with the Court on October 4, 2023; provided, however, that this shall not preclude a party from creating FRE 1006 exhibits responding to an opposing party's FRE 1006 exhibits and disclosing them by 5:00 p.m. two calendar days before they may be introduced or otherwise used at trial.

76.     A party need not pre-disclose demonstrative exhibits that will be (i) used during opening statements or closing arguments; (ii) used by an expert and were disclosed in any expert's report, if the exhibit has not been materially changed; (iii) used at any hearing other than trial; and (iv) created in court during a witness's examination.  Notwithstanding the foregoing, the parties will exchange opening slides at 7:00 p.m. on the calendar day preceding trial.

**Demonstrative and FRE 1006 summary exhibits representing data must rely only on data that has been produced to the opposing party by the close of expert discovery.**

**Plaintiffs' Rationale**:

The Court should reject Defendants' open-ended request for permission able to rely on purported demonstratives and summaries reflecting data created any time, even after the close of expert discovery. The parties have conducted extensive discovery and analyses regarding each others' contentions and interpretations of data from both public and non-public sources. To avoid

trial by surprise and unfairly prejudicing Plaintiffs, there must be a close of the evidence. *See* Fed. R. Evid. 403.  There is no good reason why data created after the close of expert discovery and not produced or identified during discovery should be used. While Defendants argument focuses on public data, Defendants' proposal may also permit Defendants to rely on their own non-public data that was not disclosed during discovery, compounding the unfair prejudice to Plaintiffs. Moreover, each side should be required to disclose its data-based demonstratives and any FRE 1006 summaries with sufficient time for the opposing side to assess them and meet them fairly, as Plaintiffs propose.

**Defendants' Proposal:**

77.     A party need not pre-disclose demonstrative and FRE 1006 summary exhibits that will be (i) used during opening statements or closing arguments; (ii) used by an expert and were disclosed in any expert's report, if the exhibit has not been materially changed; (iii) used at any hearing other than trial; and (iv) created in court during a witness's examination. Notwithstanding the foregoing, the parties will exchange opening slides at 7:00 p.m. on the calendar day preceding trial.  Demonstratives and FRE 1006 summary exhibits that the parties intend to use at trial need not be included on the trial exhibit list.

**Defendants' Rationale:**

Plaintiffs' request to limit the type of data that may be used in demonstratives to that which was produced by the close of expert discovery is unreasonable, unnecessarily restrictive, and unsupported by the law.  Defendants have produced significant data to Plaintiffs throughout this case.  However, the fact is that new data becomes available all the time, for example new quarters of the public fare and output data and new financial results for both Spirit and JetBlue. There is no reasonable basis on which to prevent Defendants from relying on this type of public,

judicially noticeable data simply because it post-dates the close of expert discovery. Indeed, under FRE 201, the Court can consider judicially noticeable facts "at any stage of the proceeding," regardless whether the facts arose before or after discovery.

78.     The notice provisions of Paragraph 75 shall not apply to the enlargement, highlighting, ballooning, or excerpting of trial exhibits or testimony.

79.     The party seeking to use a demonstrative or FRE 1006 summary exhibit will provide a color representation of the demonstrative to the other side in (OCR) PDF form. However, for demonstratives or FRE 1006 summary exhibits with video or animations, the party seeking to use the demonstrative or FRE 1006 summary exhibit will provide it to the other side via electronic mail in native format. For irregularly sized physical exhibits, the party seeking to use the physical exhibit will provide a color representation as a (OCR) PDF of 8.5 x 11 copies of the exhibits and will make the physical exhibit available for inspection at a mutually convenient time and place before the commencement of trial.

## X. Confidentiality Procedures

80.     On August 21, 2023, the parties filed a Joint Proposed Confidentiality Protocol (ECF No. 154) that addresses confidentiality procedures with respect to non-party evidence at trial. The Court has not yet entered an order approving of that protocol. The parties met and conferred on August 15 and August 30 regarding a confidentiality protocol for party documents. On September 8, the parties filed a Joint Proposed Confidentiality Protocol for Party Documents (ECF No. 166), which the Court entered on September 12, 2023.

## XI. Positions on Remaining Objections

81.     The Parties are meeting and conferring regarding their objections.  Plaintiffs will file written notice of remaining objections to proposed exhibits and witnesses on or before October 4, 2023. (ECF No. 189 at 2.)

## XII.   Additional Matters to Aid in the Disposition of the Action

### a.  Electronic Equipment

i.  Each party will be permitted to use electronic equipment for the presentation of evidence and will be permitted to have a technician in the courtroom to operate such system. No later than five days before trial, the parties will present to the Court a list of all audio and video equipment that will be used to present evidence during the trial and the names of the persons who will be responsible for delivering and setting up the equipment on the equipment set-up date, which will be provided by the Court.

The parties request that the Court grant access to the courtroom on the business day before trial for the purposes of setting up electronic and computer devices.

## XIII.   Settlement

82.     **Plaintiffs' Statement:**  Plaintiffs do not believe the controversy can be resolved by settlement.  The divestitures that Defendants have negotiated will not alleviate the competitive harm that is likely to result from their Proposed Transaction.  To date, Defendants have not offered any settlements that would do so. The fact that prior mergers involving different airlines were once settled has no bearing on the sufficiency of Defendants' proposed divestitures

nor on the question of whether Defendants could offer any divestitures that would address the harms that Plaintiffs have alleged in this particular case.

83.     **Defendants' Statement:**  In prior mergers involving much larger airlines, the United States has resolved competitive concerns by requiring the merging parties to divest assets (such as slots and gates) to other airlines at airports where both of the merging parties compete.[3] The United States has touted these divestitures as good for competition nationwide.  Consistent with this precedent, Defendants have entered into divestiture agreements with other ULCCs at key airports where Defendants overlap.  As Defendants have made clear for over a year, Defendants remain willing to engage in further settlement discussions regarding divestitures (or other appropriate relief) to resolve any possible competitive concern and allow this procompetitive merger to proceed.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of action, unless modified by the Court for good cause shown.

AGREED TO BY:

---

[3] *See, e.g.*, DEP'T OF JUST., ANTITRUST DIV., OFF. PUB. AFFAIRS, Press Release No. 13-1202, *Justice Department Requires US Airways and American Airlines to Divest Facilities at Seven Key Airports to Enhance System-wide Competition and Settle Merger Challenge* (Nov. 12, 2013).

**Counsel for Plaintiffs:**

*/s/* Edward W. Duffy
Edward W. Duffy
John M. Briggs
Brendan Sepulveda
Aaron M. Teitelbaum
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov


*/s/* William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov


*/s/* C. William Margrabe
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC  20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov


*Attorneys for the United States of America, the Commonwealth of Massachusetts, and the District of Columbia, and on behalf of all Plaintiffs*

**Counsel for Defendants:**

/s/ *Zachary R. Hafer*
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

/s/ *Jessica K. Delbaum*
Jessica K. Delbaum (*Pro Hac Vice*)
Leila R. Siddiky (*Pro Hac Vice*)
Richard F. Schwed (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

jessica.delbaum@shearman.com
leila.siddiky@shearman.com
richard.schwed@shearman.com

Michael Mitchell (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th St. NW
Suite 800
Washington, DC 20004
(202) 508-8000
michael.mitchell@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive St, 17th Floor
Dallas, TX 75201
(214) 271-5777
Rachel.Zieminski@Shearman.com

 _/s/ Ryan A. Shores_____
Ryan A. Shores (*Pro Hac Vice*)
David I Gelfand (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1876
Fax: (202) 974-1999
rshores@cgsh.com
dgelfand@cgsh.com

Daniel P. Culley (*Pro Hac Vice*)
Cleary, Gottlieb, Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000
dculley@cgsh.com

*Counsel for Defendant JetBlue Airways Corp.*

/s/ Samuel N. Rudman_____
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
Telephone: +1 617 248 4034
srudman@choate.com

/s/ Andrew C. Finch
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Counsel for Defendant Spirit Airlines, Inc.*

SO ORDERED this __ day of September 2023.

_____

Hon. William G. Young

United States District Court Judge