# EXHIBIT N

```
                    UNITED STATES DISTRICT COURT.
                   FOR THE DISTRICT OF MASSACHUSETTS

 UNITED STATES OF AMERICA              )
 450 Fifth Street NW, Suite 8000       )
 Washington, DC   20530                )   Case No.
                                       )   1:23-cv-10511-
 COMMONWEALTH OF MASSACHUSETTS         )   WGY
 One Ashburton Place, 18th Floor       )
 Boston, MA   02108                    )
                                       )
 DISTRICT OF COLUMBIA                  )
 400 Sixth Street NW, Tenth Floor      )
 Washington, DC   20001                )
                                       )
 STATE OF CALIFORNIA                   )
 300 South Spring Street               )
 Suite 1702                            )
 Los Angeles, CA   90013               )
                                       )
 STATE OF MARYLAND                     )
 200 St. Paul Place, 19th Floor        )
 Baltimore, MD   21202                 )
                                       )
 STATE OF NEW JERSEY                   )
 124 Halsey Street - 5th Floor         )
 Newark, New Jersey   07102            )
                                       )
 STATE OF NEW YORK                     )
 28 Liberty Street, 20th Floor         )
 New York, NY   10005                  )
                                       )
 and                                   )
                                       )
 STATE OF NORTH CAROLINA               )
 P.O. Box 629                          )
 Raleigh, NC   27602                   )
                                       )
              Plaintiffs,              )
        vs.                            )
 JETBLUE AIRWAYS CORPORATION           )
 27-01 Queens Plaza North              )
 Long Island City, NY   11101          )
        and                            )
 SPIRIT AIRLINES, INC.                 )
 2800 Executive Way                    )
 Miramar, FL   33025                   )

              Defendants.              )
```

1      form.
2              THE WITNESS:  Potentially.  If it
3      doesn't come at the -- at the expense of
4      harm somewhere else, then potentially.
5      And if it does, there's going to have to
6      be balancing, and that's not for me.
7              MR. MOORE:  Ethan, we've been
8      going about an hour and 15 now.  Are you
9      close to a breaking point?
10             MR. GLASS:  Yeah, let me just
11     finish this up.
12 BY MR. GLASS:
13     Q.    So as an economist it would be
14 relevant to look at the effects, positive or
15 negative, of a merger outside of the relevant
16 antitrust markets, correct?
17             MR. MOORE:  Objection to the
18     form.
19             THE WITNESS:  I think it's
20     important to identify the harms and the
21     benefits, and then let the trier of fact
22     weigh them in the way that he or she
23     might.
24 BY MR. GLASS:
25     Q.    And harms and benefits both

```
 1  inside and outside of the relevant antitrust
 2  markets, correct?
 3              MR. MOORE:  Objection to the
 4       form.
 5              THE WITNESS:  Yeah, correct.
 6              MR. GLASS:  Let's go off the
 7       record.
 8              THE VIDEOGRAPHER:  Off the record
 9       at 2:56.  This ends media unit number
10       four.
11              (Brief recess.)
12              THE VIDEOGRAPHER:  On the record
13       at 3:12.  This begins media unit number
14       four in the deposition of Tasneem
15       Chipty.
16  BY MR. GLASS:
17       Q.    Okay, timely, sufficiency,
18  likelihood.
19              So is there an objective measure
20  of timeliness that an economist would apply to
21  the entry analysis?
22       A.    It's a good question.  So as far
23  as I understand and recall sitting here, the
24  current merger guidelines don't actually have a
25  specific threshold number.  But in practice
```

1        there's a price effect, and when there's
2        exit, there's a price effect.  The
3        prospect of entry is not always enough
4        to alleviate a concern of price effects.
5  BY MR. GLASS:
6        Q.    Got you.  Not always enough but
7  in airlines the threat of entry could be enough
8  in some routes to keep prices at a competitive
9  level, correct?
10              MR. MOORE:  Objection to the
11        form.
12              THE WITNESS:  In principle, yes,
13        but from what I've seen on many routes
14        that's not been the case.
15  BY MR. GLASS:
16        Q.    So for entry to offset the
17  alleged competitive effects, we would not need
18  to completely replace Spirit on each and every
19  route; we would just need to be confident that
20  between replacing Spirit and the threat of
21  replacing Spirit that prices remain at a
22  competitive level; is that fair?
23              MR. MOORE:  Objection to the
24        form.
25              THE WITNESS:  So not quite.  What

```
 1        you call the threat of entry has to be
 2        credible, and it has to be -- so meaning
 3        that if an airline really thought they
 4        wanted to enter, they could.  It was
 5        like a feasible thing to do, they had,
 6        you know, airplanes and pilots, and they
 7        had gates, and they had all of the
 8        facilities they need to enter so that
 9        it's credible and that -- and that -- so
10        that's one aspect of credible.
11                 Another aspect of credible is
12        that it's truly -- it would make sense
13        that this airline, these airlines, if
14        you have more than one in mind, would
15        find it attractive to enter given their
16        overall network strategy.
17                 So if entry -- if the prospect of
18        entry was credible, and it could happen
19        quickly, then, yes, it's possible that
20        you don't have to replace loss Spirit
21        capacity one for one.  It's possibly one
22        of the reasons or one of the factors
23        that you might read into some of the
24        work that I did suggesting different
25        adjustment factors to replacing Spirit
```