UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al.,

    *Plaintiffs*,

    v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

    *Defendants*.

Civil Action No. 1:23-cv-10511-WGY

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION *IN LIMINE* TO EXCLUDE OPINIONS OF DR. TASNEEM CHIPTY**

Defendants argue that Dr. Chipty's opinions regarding alleged harm to competition should be excluded for two reasons: (1) Dr. Chipty's analysis relies simply on reading internal business documents without any verification of the statistical analysis done in those documents; and (2) Dr. Chipty's opinions that she labels as "efficiency arguments" are in fact thinly veiled arguments about alleged harm that overlap with the opinions of Plaintiffs' other economic expert, Dr. Gowrisankaran, and fly in the face of the Court's instruction to avoid duplicative expert testimony. *See* Mar. 21, 2023 Hr'g Tr. at 22:2-8 (this Court instructing the parties that it "will not have more than one expert per discipline here," and is "not looking to a trial with a battery of experts telling me the same thing and reinforcing each other"). Plaintiffs' Opposition does nothing to address these fundamental issues.

    **A. Plaintiffs Fail to Show that Dr. Chipty Performed Any Analysis to Verify JetBlue's Internal Studies**

Plaintiffs concede that Dr. Chipty simply read JetBlue documents to form her opinions, but still claim that she should be allowed to read business documents to the Court because of "her

1

training and expertise in antitrust economics." Dkt. 203 ("Opp.") at 5. Put simply, Plaintiffs take the view that because Dr. Chipty is an economist, her reading of business records constitutes "qualitative economic analysis." *Id*. at 2. Even where Plaintiffs claim that "Dr. Chipty also performed her own calculations to help frame the context and relevance of certain synergies," *id*. at 9 n.7, they cite to portions of Dr. Chipty's report in which she exclusively relies on JetBlue's deal modeling documents and related party testimony without performing any "calculations." *See, e.g*, Dkt. 184-1, Decl. of Elizabeth Wright, Ex. 1 ("Chipty Report") § V.D.

As explained in Defendants' Motion, the law is clear that reliance on business documents, without verification or something more, and repurposing them as economic analysis, is improper. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 292-93 (3d Cir. 2012);[1] *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (explaining experts "cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence" and excluding portions of report in which expert "merely read" and relied on party documents) (internal quotation marks and citation omitted). Contrary to Plaintiffs' assertion, Defendants do not dispute that an expert can review business documents or use them to ***assist their analysis***. But reading business records cannot be the entire analysis. *Id.*

Plaintiffs' cases are not to the contrary, each of which involve cases where experts performed independent economic analysis or did not have the underlying data allowing them to do so. *Compare US Airways, Inc. v. Sabre Holdings Corp.*, 2022 WL 1042273, at *1 (S.D.N.Y. Apr.

---

[1] Plaintiffs seek to distinguish *ZF Meritor*, asserting that the underlying issue justifying exclusion of the expert's testimony was that "the expert's unfamiliarity with the underlying work meant the moving party could not effectively cross-examine the expert." Opp. at 12. But *ZF Meritor* makes clear that the court's primary concern was with the expert's blanket reliance on party documents, despite being "unaware of the qualifications of the individuals who prepared the document, or the assumptions on which the estimates were based." 696 F.3d 254, 293 (3d Cir. 2012).

5, 2022) (expert testimony permitted where it used economic principles to opine on "relevant market dynamics" existing absent underlying contract); *FTC v. Wilh. Wilhelmsen Holding ASA*, 341 F. Supp. 3d 27, 72-73 (D.D.C. 2018) (allowing expert report to combat efficiencies defense, and noting "merging parties had failed to provide sufficient information for him to verify the likelihood and magnitude of the claimed cost savings"); *United States v. Dish Network LLC*, 2016 WL 157387, at *5, *9 (C.D. Ill. 2016) (allowing expert report where expert reviewed report created by "experienced economist qualified to perform statistical analyses" and "reviewed . . . the underlying data on which [the other economic expert] relied").

Here, Dr. Chipty did not independently verify the data underlying JetBlue's deal model (despite having access to it) nor perform any independent economic analysis (such as her own statistical or quantitative model). Dr. Chipty herself admitted this:

> Q. You didn't estimate demand in this case, correct?
> A. No, I didn't. JetBlue did based on its own analysis.
> Q. You didn't do any work to verify that that demand estimation was accurate, correct?
> A. I looked at their analysis of entry and exit, and I could see where they got it from. ***But no, I didn't do my independent assessment of their study beyond looking at their backup papers***.
> Q. Did you replicate their analysis?
> A. Yeah, I can see exactly how they calculated it.
> Q. So in your work you went through every step they went through with the data they used and confirmed that they did it correctly?
> A. I don't know what "every step" means. ***I didn't repull the data they show in there. But, sure, I looked at it, and I understood how they came up with it, and it seemed reasonable for what they were doing.***

*See* Declaration of Elizabeth M. Wright in Support of Reply ("Wright Decl."), Ex. 1 (Chipty Dep. Tr. at 106:25-107:22 (Aug. 31, 2023) (emphasis added)). Plaintiffs provide no explanation as to why Dr. Chipty did not pull and verify the data in those backup papers or rerun Defendants' model to arrive at her conclusions.

3

Being an economist does not entitle one to simply read business documents and cast one's opinion as an economic expert opinion. *Anderson News, L.L.C. v. Am. Media, Inc.*, 2015 WL 5003528, at *4 (S.D.N.Y. Aug. 20, 2015), *aff'd*, 899 F.3d 87 (2d Cir. 2018) (excluding expert report that "refer[red] to record evidence" without any "indication that she performed any actual analysis regarding Defendants' financial incentives," as such testimony "merely [recites] what is on the face" of produced documents (internal quotation marks and citation omitted)); *cf. McGovern ex rel. McGovern v. Brigham & Women's Hosp.*, 584 F. Supp. 2d 418, 424 (D. Mass. 2008) (Young, J.) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Plaintiffs attempt to distract from this central issue, asserting that it was "entirely reasonable for Dr. Chipty to rely on Defendants' calculations" to reach her opinions and that "Defendants nowhere explain how the work which Dr. Chipty considers is unreliable." *See* Opp. at 2, 11. But Defendants do not challenge here the reliability of the underlying data or "deal modeling" documents. The Court will have ample opportunity to hear from witnesses involved in creating the model, the inputs into the model, and the contours of the model. But Plaintiffs cannot try to artificially buttress their interpretation of JetBlue's business analysis and classify it as an economic model simply by having an economist review it, absent any other economic verification or testing.

*AngioDynamics, Inc. v. C.R. Bard, Inc.* clearly supports this position. There, the court excluded the proffered expert opinion because it did "little more than summarize record evidence (including sales and market share data and documents produced in this litigation) and lend [the expert's] credentials to AngioDynamics' interpretation of that evidence." 537 F. Supp. 3d 273,

4

333 (N.D.N.Y. 2021). Plaintiffs boldly assert that *AngioDynamics* is distinguishable from this case but fail to say how. That is because there is, in fact, no difference. Both Dr. Chipty and the expert in that case suffer from the exact same problem: they "offer[] no specialized economic analysis that would assist a fact-finder in interpreting the record evidence [they] rel[y] on." *Id.*

### B. Plaintiffs Fail to Show that Dr. Chipty's Opinions Will Not Be Cumulative to Those Offered by Dr. Gowrisankaran

Plaintiffs' Opposition contends that Dr. Chipty's opinions differ from Dr. Gowrisankaran's because Dr. Chipty analyzes "economic efficiencies" and "Dr. Gowrisankaran does not opine on JetBlue's own assessment of the acquisition." Opp. at 13. Plaintiffs further state that absent Dr. Chipty, "no one would testify as to why the purported benefits reflected in JetBlue's deal modeling analysis do not, in fact, show economic benefits." *Id.* at 13-14. But Dr. Chipty's opinions that are labeled "efficiencies arguments" are really just a duplicative means for Plaintiffs to argue about the merger's alleged "harms." *See, e.g.*, Dkt. 184-1, Ex. 1, Chipty Report ¶ 143 (opining that "[i]mplicit in JetBlue's [deal modeling] analysis is harm to . . . groups of customers"); Opp. at 5-7 (characterizing Dr. Chipty's analysis as concluding that "undesired price increases were a harm, not a benefit"). Thus, to the extent Dr. Chipty's opinions or trial testimony discuss "JetBlue's combined network plans, predicted revenue synergies, predicted changes in costs, and fleet rationalization plans," Opp. at 13, she would be opining on merger harm, as Plaintiffs' Opposition seems to acknowledge. *Id.* at 2 ("Dr. Chipty . . . goes on to independently apply qualitative economic analyses to explain why the fare increases and aircraft redeployment the deal modeling predicts, among other other things, ***reflect anticompetitive harms***."); *id.* at 9-10 (explaining Dr. Chipty's analysis concludes that JetBlue's deal modeling "reflects harm" to former Spirit customers, and that "customers in relevant markets would be harmed").

By Plaintiffs' own admission, this is precisely what Dr. Gowrisankaran was tasked to do—opine on the "likely anticompetitive effects and consumer harm of the acquisition." *Id.* at 13. Simply because Plaintiffs asked Dr. Chipty to review a set of documents that Dr. Gowrisankaran was not asked to review does not make their opinions "complementary," rather than "cumulative." *Id.*; *Price v. Fox Ent. Grp., Inc.*, 499 F. Supp. 2d 382, 390 (S.D.N.Y 2007) (excluding one of Defendants' experts because there was "substantial overlap" between their two experts' reports); *Sunstar, Inc. v. Alberto–Culver Co., Inc.*, 2004 WL 1899927, at *25 (N.D. Ill. Aug. 23, 2004) (allowing expert testimony only to the extent it was not cumulative to the party's other expert testimony because "[m]ultiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative"). Dr. Chipty's duplicative opinions should be excluded.

## CONCLUSION

Defendants therefore respectfully request that the Court exclude Dr. Chipty's expert report and testimony, and preclude her from testifying to the extent (1) her opinions are based solely on reviewing JetBlue's "deal modeling" documents and related party testimony, and (2) she opines on alleged anticompetitive harms related to the merger.

Dated: September 26, 2023                                   Respectfully submitted,

/s/ Elizabeth M. Wright
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

Ryan A. Shores (*Pro Hac Vice*)
Daniel P. Culley (*Pro Hac Vice*)
David I Gelfand (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1876
Fax: (202) 974-1999
rshores@cgsh.com
dculley@cgsh.com
dgelfand@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th St. NW
Suite 800
Washington, DC 20004
(202) 508-8000
michael.mitchell@shearman.com

Jessica K. Delbaum (*Pro Hac Vice*)

Leila R. Siddiky (*Pro Hac Vice*)
Richard F. Schwed (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
jessica.delbaum@shearman.com
leila.siddiky@shearman.com
richard.schwed@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive St, 17th Floor
Dallas, TX 75201
(214) 271-5777
Rachel.Zieminski@Shearman.com

*Attorneys for JetBlue Airways Corporation*

/s/ Samuel N. Rudman
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
Telephone:   +1 617 248 4034
srudman@choate.com

/s/ Andrew C. Finch
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Reply Memorandum in Support of Defendants' Motion *in Limine* to Exclude Opinions of Dr. Tasneem Chipty was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record registered on the CM/ECF system, on September 26, 2023.

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright