IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, *et al.*,

    *Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.,

    *Defendants*.

Civil Action No. 1:23-cv-10511-WGY

### REPLY TO IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE TESTIMONY FROM MR. RICHARD SCHEFF

Defendants' proffered expert Richard Scheff's testimony and opinions are not "the product of reliable principles and methods" and so are not admissible under Federal Rule of Evidence 702. Defendants' Opposition (Dkt. 194) concedes that Mr. Scheff compares an "as-is" baseline to an "optimized" post-merger schedule. Because he fails to allow the FAM software to analyze the schedules using the same settings, his findings cannot be attributed to shifting from standalone schedules to a combined schedule, and, therefore, are not reliable.

Defendants' Opposition provides a lengthy recitation of what Mr. Scheff does in reaching his conclusions. But it does not address Plaintiffs' fundamental arguments that Mr. Scheff: (1) does not employ the same methodology when attempting to compare pre- and post-acquisition schedules; (2) uses an optimization analysis that is less rigorous than those performed in the ordinary course; (3) fails to consider the likelihood, feasibility, and profitability of his assumed utilization increases; and (4) does not support his assertion that the combined firm will be able to

1

increase utilization in other ways that he cannot quantify and thereby fully backfill JetBlue's planned capacity reductions. Accordingly, Mr. Scheff's testimony should be excluded.

## ARGUMENT

### I. Defendants Do Not Dispute Mr. Scheff's FAM Analysis Applies Different Methodologies to the Standalone and Combined Schedules

Defendant's Opposition acknowledges that Mr. Scheff's FAM analysis employs an apples-to-oranges comparison by failing to allow FAM to make changes to flight departure times (retime) the airlines' standalone schedules: "he ***did not permit retiming of the standalone schedules*** because those are *actual* and *current* schedules that the existing airlines have *themselves* already optimized and put into place . . . [while ***t]he same cannot be said of the combined schedule*** that was run through FAM." Defs.' Opp'n to Pls.' Mot. in Lim. to Exclude Test. from Mr. Richard Scheff ("Opp'n"), ECF No. 194 at 8 (emphasis in bold added). In other words, the standalone schedules Mr. Scheff uses as a benchmark do not allow FAM to retime, while the combined fleet schedule he uses does allow FAM to retime.

In doing so, Mr. Scheff ignores sound research principles by using different settings in FAM to analyze and compare the standalone and combined schedules and their respective fleet requirements. As explained in Dr. Chipty's Supplemental Report, "[a]s a general principle of research design, when measuring the effect of a treatment (here the merger), one generally uses the *same* instrument to measure outcomes in the treatment and the control group. Only then, when all else can reasonably be considered to be equal, can one attribute any difference between the treatment and control group to the treatment itself." Suppl. Report of Tasneem Chipty, Ph.D. ("Chipty Suppl.") (Ex. A) ¶ 9 (Sept 22, 2023).[1]

---

[1] Unless otherwise indicated, all exhibits cited in this memorandum are exhibits to the Declaration of Edward Duffy in Support of Plaintiffs' Reply in Support of Motion in Limine to Exclude Testimony from Mr. Richard Scheff.

Defendants present no real rebuttal to this criticism. Instead, Defendants attempt to distract from Mr. Scheff's flawed analysis by casting aspersions on Plaintiffs for not retaining a former airline employee or airline industry consultant as an expert. Yet, in more important ways, Defendants have already conceded Dr. Chipty's ability to understand and evaluate Mr. Scheff's analysis: when Dr. Chipty identified its flaws, Mr. Scheff submitted an amended report to fix methodological errors that Dr. Chipty identified. Opp'n at n.3.

And, as Dr. Chipty illustrates in her Supplemental Report, this research best-practice exists for a reason. Declining to allow "modest retimings" in the standalone schedule while allowing retimings in the combined schedule significantly skews Mr. Scheff's results. Using FAM on each airline's standalone schedule and allowing for modest retimings, Dr. Chipty shows how each airline could free up (or "pop") up to six A320 aircraft—12 total, the same number of A320s that Mr. Scheff is able to pop from the combined fleet. Ex. A (Chipty Suppl.) ¶¶ 10-11.

## II. Mr. Scheff's Analysis Shows JetBlue Would Likely Decrease the Utilization of Spirit's Aircraft Post-Acquisition

Defendants claim that JetBlue will be able to increase utilization of Spirit's planes because JetBlue operates with higher utilization today. In making this argument, they clearly tie this claim to JetBlue's current utilization performance by admitting "there is no record evidence that post-merger JetBlue plans to change its current strategy or use the [current] Spirit aircraft . . . in a manner different from the rest of [JetBlue's] fleet." Opp'n at 13-14. Similarly, Mr. Scheff relies on the premise that JetBlue's utilization rates are clearly superior to Spirit's to support his opinion that the combined firm will have higher utilization rates than standalone Spirit. But Mr. Scheff's own analysis belies this point. That analysis showed that Spirit had higher utilization than JetBlue in July 2019 (the month he used for his analysis regarding possible utilization increases in certain days and months). Second Am. Expert Report of Richard Scheff Fig 1-2

3

(Aug. 30, 2023) Dkt. 183-1, Fig 1-2 (13.84 hours line utilization for JetBlue vs. 14.33 hours line utilization for Spirit in July 2019). Defendants do not dispute that "by numerous measures, Spirit has higher utilization than JetBlue." Mem. of Law in Supp. of Pls.' Mot. in Lim. to Exclude Test. from Mr. Richard Scheff, ECF No. 180 at 10.[2] Mr. Scheff's use of these July 2019 figures would lead to the conclusion that if JetBlue will use current Spirit aircraft in the same manner as the rest of JetBlue's fleet, then the acquired Spirit aircraft's utilization will decrease, rather than increase, as a result of the Acquisition.

### III. Mr. Scheff Makes No Attempt To Identify Which Routes Will Benefit From Purported Utilization Increases

Defendants attempt to wave away Mr. Scheff's failure to identify which routes would receive capacity increases as a "demand for perfection" that is not required by *Daubert*. Opp'n at 13 (internal quotation marks omitted). In so doing, Defendants fail to grapple with Plaintiffs' critique: Mr. Scheff cannot provide any basis that JetBlue would actually consider or implement any of the changes that he says will lead to increased utilization, because he does not consider the combined firm's ability or incentive to increase flying on a route-by-route basis.

Relatedly, Mr. Scheff does not consider whether it would be profitable to increase Spirit's off-peak flying. That is, Mr. Scheff ignores the fact that the combined firm would be running a business and considering the profitability of adding capacity on a particular route. Instead, he only evaluates whether there is the "capability" to add more flights, not whether the combined airline would do so. Deposition Transcript of Richard Scheff ("Scheff Tr.") (Ex. B) 106:17-107:8; 121:6-19. His analysis is only concerned with what the combined airline could do, not what would be profit-maximizing for it to do; he does not explain why things would change

---

[2] Mr. Scheff also acknowledges that July 2023 utilization statistics are not as informative for comparison due to Spirit operational issues. Ex. B (Scheff Tr.) 59:12–61:13.

other than "on an observational basis . . . [he] would think it's very possible." Ex. B (Scheff Tr.) 112:16–114:3. Even though, as Mr. Scheff acknowledged, Spirit could choose to increase off-peak utilization, Ex. B (Scheff Tr.) 110:1-12, it has chosen not to do so for a reason. Mr. Scheff's explanation as to why JetBlue can increase utilization of Spirit aircraft oversimplifies the issue. He claims that JetBlue's greater appeal with business travelers will allow the combined firm to fly more frequently on Spirit's current routes, yet he does not consider whether there is sufficient demand from business customers on these routes to allow JetBlue to profitably increase flying on them. Indeed, Spirit flies on many routes that are largely traveled by leisure passengers, so JetBlue's appeal to business travelers may be of no moment.

Further, all routes—including the overlaps—will experience decreased capacity due to JetBlue's plans to remove seats from Spirit's planes. Therefore, for Mr. Scheff's opinion regarding increased capacity to touch upon the ultimate question at issue—the impact on competition in each relevant market—he needs to show that there will be offsetting capacity increases in each of the relevant markets that will be harmed. He has undertaken no analysis to show this is the case.

## IV.     Mr. Scheff Does Not Use Relevant FAM Settings

It is clear that Mr. Scheff chooses not to use certain FAM settings that are applicable to the Acquisition. For example, FAM can consider slot constraints at airports such as John F. Kennedy, LaGuardia, and Reagan National, but Mr. Scheff does not instruct it to do so in conducting his analysis. Ex. B (Scheff Tr.) 146:14–147:17, 152:3–153:8. Defendants emphasize that Mr. Scheff did not use this setting when he was asked to evaluate a merger in one prior instance. Opp'n at 11. However, Defendants do not indicate whether that previously-considered

transaction involved airports with slot constraints, nor do they explain why his choice of settings for this prior analysis would be applicable for his current assignment.

V. **Claimed Utilization Increases Are Efficiencies That Must Be Verified By Reliable Evidence**

Defendants misstate Plaintiffs' arguments regarding the admissibility of Mr. Scheff's predictions that the combined firm will increase utilization relative to standalone JetBlue and Spirit by further optimizing the combined fleet, increasing the use of Spirit's A321 aircraft for longer flights, increasing red-eye flying, and reducing operational spares. Plaintiffs take issue with the lack of basis for Mr. Scheff's opinion, not with his failure to exactly quantify the purported increases.

Mr. Scheff posits that, notwithstanding JetBlue's plan to remove up to 28 seats from each of Spirit's planes, the combined airline will be able to increase available seats in a way that neither airline could on its own. This type of merger efficiency claim must be verified to be credited. *United States v. Bertelsmann SE & Co. KGaA*, -- F. Supp. 3d --, 2022 WL 16949715, at *35 (D.D.C. Nov. 15, 2022) (explaining that the Court "precluded the defendants' evidence of efficiencies, after determining that the defendants had failed to verify the evidence, as required by law"); Draft Horizontal Merger Guidelines § IV.3.B (2023); Horizontal Merger Guidelines § 10 (2010).

Mr. Scheff's attempt to calculate utilization changes recognizes the usefulness of providing quantification and measurements. After calculating the aggregate reduction of seats that will result from JetBlue's decision to remove seats from Spirit's planes and the alleged increases due to schedule changes and his FAM analysis, Mr. Scheff found a ***net decrease*** in seats. Yet, he concludes—despite this inconvenient result for Defendants—that the merger will result in an increase in seats. To do so, Mr. Scheff repeatedly relies almost solely upon his prior

6

experience, which (except for one instance) is based on the optimization of single, standalone fleets—and none of which involved the combination of the fleets of two large airlines. Despite his inability to quantify or estimate the gains in seats he asserts could result from additional fleet optimization beyond what he has already attempted to quantify in his FAM analysis, changing A321 flying, increasing redeyes, or decreasing spares, he assumes that these changes will increase seats by a specific number—the number required to counteract JetBlue's planned capacity decreases. Mr. Scheff cannot both decline to quantify and then assume a quantification in his client's favor.

Given that context, this is **not** one of the cases where "an expert can rely on their professional experience to offer a subjective, 'holistic assessment,'" where "ultimate opining is likely to depend in some measure on experiential factors that transcend precise measurement and quantification." Opp'n at 14 (citing *United States v. Monteiro*, 407 F. Supp. 2d 351, 371 (D. Mass. 2006)); *see also Bertelsmann SE & Co. KGaA*, 2022 WL 16949715, at *31 (finding that the credibility of an expert's "counterintuitive" testimony was weakened due to the presentation of "much contradictory testimony at trial").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude or limit Mr. Scheff's testimony regarding purported increased fleet utilization by the combined post-acquisition airline.

7

Dated: September 26, 2023            Respectfully submitted,

/s/ Edward W. Duffy
Edward W. Duffy
Maisie A. Baldwin
Michael B. DeRita
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov


/s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov


/s/ C. William Margrabe
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC  20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov


*Attorneys for the United States of America, the Commonwealth of Massachusetts, and the District of Columbia, and on behalf of all Plaintiffs*

8

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Edward W. Duffy
Edward W. Duffy
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov