**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JETBLUE AIRWAYS CORPORATION and | ) Civil Action No. 1:23-cv-10511-WGY |
| SPIRIT AIRLINES, INC., | ) |
| | ) |
| Defendants, | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**DEFENDANT JETBLUE AIRWAYS CORPORATION AND SPIRIT AIRLINES, INC.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION IN LIMINE TO ESTOP THE DEPARTMENT OF JUSTICE FROM TAKING INCONSISTENT POSITIONS AND TO OVERRULE OBJECTIONS**

## <u>TABLE OF CONTENTS</u>

I.   NONE OF DOJ'S ATTEMPTS TO EXPLAIN AWAY ITS CONTRADICTIONS BASED ON "FACTS AND CIRCUMSTANCES" HOLD UP TO SCRUTINY ............................... 2

II.  DOJ SHOULD BE ESTOPPED FROM ASSERTING A COORDINATION THEORY IN THIS CASE .................................................................................................... 7

III. ESTOPPEL CAN AND SHOULD APPLY BASED ON THE UNIQUE CIRCUMSTANCES HERE .................................................................................. 9

IV.  DOJ'S PRIOR STATEMENTS IN THE NEA CASE SHOULD BE ADMITTED............. 10

CONCLUSION............................................................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dantran, Inc. v. U.S. Dep't of Labor*,
　171 F.3d 58 (1st Cir. 1999)...........................................................................................9

*In re Domestic Airline Travel Antitrust Litig.*,
　No. 15-1404, 2023 WL 5930973 (D.D.C. Sept. 12, 2023)...........................................7

*Nagle v. Acton-Boxborough Reg'l Sch. Dist.*,
　576 F.3d 1 (1st Cir. 2009)..............................................................................................9

*New Hampshire v. Maine*,
　532 U.S. 742 (2001).......................................................................................................9

*New York v. Deutsche Telekom AG*,
　439 F. Supp. 3d 179 (S.D.N.Y. 2020)............................................................................8

*Patriot Cinemas, Inc. v . Gen. Cinemas Corp.*,
　834 F.2d 208 (1st Cir. 1987)..........................................................................................9

*United States v. Am. Airlines Grp. Inc.*,
　No. 21-11558, 2023 WL 3560430 (D. Mass. May 19, 2023)...................................2, 7

*United States v. Kattar*,
　849 F.2d 118 (1st Cir. 1988).......................................................................................10

**Other Authorities**

George Blum et al., 29A Am. Jur. 2d Evidence § 833 (2008 & 2016 supp.)................................10

Less than one year ago in a case involving the same parties in the same courthouse, DOJ made specific factual assertions about JetBlue and its unique role in the airline industry that led the Court to rule in its favor. Contrary to the straw man of DOJ's Opposition, Defendants do not assert that it would be "inconsistent to oppose any acquisition by JetBlue" or move for judgment as a matter law. Opp. at 8.[1] Defendants simply ask this Court to accept those same factual assertions DOJ made in one case, not one year ago, as conclusively true here, and to estop DOJ from seeking to prove at trial "facts" and a "coordination" theory that are directly contradictory.

DOJ now claims there are no "*meaningful* inconsistencies" between its assertions in the NEA Case and here. Opp. at 2 (emphasis added). But the Opposition highlights DOJ's about face. For example, in the NEA Case, DOJ asserted that JetBlue is "unique among low-cost airlines" and its "high quality of service allowed it to compete effectively against the legacy airlines in ways other LCCs and ULCCs could not." Plaintiffs' Proposed Findings of Fact at 6, ¶ 27, NEA Case (Dec. 2, 2022), ECF No. 332 ("NEA Proposed FOF"). In support, DOJ touted testimony from JetBlue's CEO that "when JetBlue flies a market, competitors react more broadly than when a ULCC flies the market, because JetBlue is flying a broader set of customers than ULCCs." *Id.* ¶ 27. Now, DOJ asserts that it is *Spirit* that is "unique," Opp. at 3, that Spirit's disruptive effect in the industry outweighs JetBlue's, and, according to its economist, that DOJ's prior assertions about JetBlue's unique quality and disciplining effect are untrue. *See* Opp. at 3; Decl. of Ryan A. Shores in Support of Defendants' Motion, Ex. A 90:4–6 , ECF No. 170 ("Gowrisankaran Dep. Tr., Ex. A") ("[A]s to whether JetBlue has differentiated itself by high quality, that's not something I would agree with.").

---

[1] Plaintiff's Opposition to Defendants' Motion in Limine to Estop the Department of Justice from Taking Inconsistent Positions and to Overrule Objections at 8 (Sept. 20, 2023), ECF No. 199 ("Opposition" or "Opp.").

There is simply no way to square DOJ's contradictory assertions between the NEA Case and this one.  The Court should estop DOJ from contradicting itself and overrule DOJ's objections to the admissibility of its statements from the NEA Case.

## I.   NONE OF DOJ'S ATTEMPTS TO EXPLAIN AWAY ITS CONTRADICTIONS BASED ON "FACTS AND CIRCUMSTANCES" HOLD UP TO SCRUTINY

In attempting to show there are no "meaningful" inconsistencies between the NEA Case and here, Opp. at 2, DOJ points to supposed distinctions between the NEA Case and this one.  As described below,[2] none of these supposed distinctions undo DOJ's contradictions.

***Adopting DOJ's proposed factual findings, Judge Sorokin found JetBlue's supposedly evolving business model had no impact on JetBlue's "maverick" status.***  DOJ justifies its newfound view that the "JetBlue Effect" is fading and JetBlue is a coordinator (not a disruptive maverick) by pointing to alleged changes to its business model, making it more like a legacy carrier (or "GNC").  *See, e.g.*, Opp. at 9 ("JetBlue's cost structure was looking more like that of a legacy carrier[.]").  But adopting DOJ's position in NEA, Judge Sorokin found the opposite:

> The parties all agree, and the Court finds, that JetBlue has played a unique role in the domestic air travel industry and qualifies as a 'maverick' competitor for present purposes.  *E.g.*, Trial Tr. vol. 1 at 250.  The Court finds JetBlue occupied such a role regardless of whether it remained an LCC or had migrated to a hybrid form somewhere between a traditional LCC and a GNC.  In either event, it was justifiably viewed by others—and it indisputably viewed itself—as a unique and disruptive force in the domestic air travel market.[3]

Indeed, if the JetBlue Effect was fading, and JetBlue was at risk of ditching its maverick role due to an evolving business model, then DOJ's position in the NEA Case would have made no sense—fundamentally, the NEA Case rested on a concern about the potential loss of JetBlue's

---

[2] Appendix A provides a fuller list of DOJ's prior statements that contradict DOJ's positions here.

[3] *United States v. Am. Airlines Grp. Inc.*, No. 21-11558, 2023 WL 3560430, at *34 n.81 (D. Mass. May 19, 2023).

maverick status through a partnership with a legacy airline.  That is why DOJ portrayed the JetBlue Effect as a continuing, powerful force that disciplined the legacy carriers, and asked the Court to let the "fight" between JetBlue and the legacies continue.[4]  And that is why DOJ offered direct, unqualified expert testimony that "JetBlue is a maverick"—a finding adopted by the Court.  Decl. of Ryan A. Shores in Support of Defendants' Reply ("Shores Reply Decl."), Ex. B (Trial Tr. Day 9, NEA Case, 111:8) (testimony of Dr. Town).

    ***DOJ's NEA statements were not limited to the business context.***  DOJ next tries to cabin its prior statements about JetBlue's competitive impact and maverick status to first-class and corporate customers.  Opp. at 13 (claiming the NEA Case "focused on how JetBlue's differentiated offerings, such as its business-class product, Mint, allowed JetBlue to compete with legacy airlines for first-class and corporate customers who low-cost airlines are normally not well-suited to serve").  To the contrary, DOJ argued to Judge Sorokin that "JetBlue competed successfully for both business and leisure passengers."  NEA Proposed FOF at 8.

    DOJ also touted how JetBlue's disciplining effect on legacy carriers benefitted *all* consumers.  For example, DOJ asserted: "American's documents confirm that JetBlue constrained the pricing of legacy airlines. In May 2019, American attempted a system-wide price increase, but ultimately reversed the attempted price increase in markets where JetBlue competed against American nonstop and did not increase its prices.  In the same month, when American attempted another system-wide price increase, JetBlue did not increase some of its prices, causing American to lower prices in markets in which it competed with JetBlue."  NEA

---

[4] As DOJ's counsel argued in his opening:  "And it didn't have to be this way, Your Honor. They could have continued to fight, and they could have continued that head-to-head competition that had been ongoing[.]"  Shores Reply Decl., Ex. C (Trial Tr. Day 1, NEA Case, 9:1–5) ("DOJ NEA Opening Statement").

Proposed FOF ¶ 33 (citations omitted).  In addition, DOJ highlighted how "[c]ompetition from JetBlue resulted in legacy airlines reducing ancillary fees."  *Id.* ¶ 39 ("Competition from JetBlue resulted in legacy airlines reducing ancillary fees.  In June 2020, JetBlue initiated $0 change fees—which Delta and United matched—leading American's Vice President of Revenue Management Jim Fox to note, 'We don't really have a choice but to match.'").

   ***DOJ touted the JetBlue Effect as a unique force that constrains rivals more strongly than Spirit; now, it argues the opposite.***  DOJ claims that its current focus on the loss of Spirit as a competitor excuses its contradictions.  Indeed, it is now apparent that DOJ will argue that Spirit, not JetBlue, more effectively disciplines other airlines.  *See* Opp. at 8 ("Dr. Gowrisankaran quantified both the JetBlue Effect and the Spirit Effect in calculating net harm[.]"); *id.* at 9 ("Dr. Gowrisankaran will show, however, that replacing Spirit with JetBlue will result in a net harm for consumers[.]").

   That flatly contradicts DOJ's position in the NEA Case.  From beginning to end in the NEA Case, DOJ repeatedly touted the *uniquely* disruptive impact of JetBlue compared to other carriers, including ULCCs like Spirit.  *See* Compl. at 2, NEA Case (Sept. 21, 2021), ECF No. 1 ("NEA Compl."); NEA Proposed FOF ¶ 27 (quoting JetBlue CEO, "[W]hen JetBlue flies a market, competitors react more broadly than when a ULCC flies the market, because JetBlue is flying a broader set of customers than ULCCs."); DOJ NEA Opening Statement 11:12–20 ("For starters, there's no dispute that JetBlue has been a unique competitive force in the airline industry.").

   Indeed, a cornerstone of the case was that "[t]ravelers benefited from the JetBlue Effect whether or not they flew JetBlue."  NEA Proposed FOF ¶ 53; *see also, e.g., id.* at 12 ("The JetBlue Effect produces lower prices and higher quality service on routes where JetBlue

competes."). DOJ asserted that "the JetBlue Effect ranges from 114 percent to 14 percent." NEA Proposed FOF ¶ 343. DOJ also cited enormous headline drops in fares from the JetBlue Effect on individual routes, such as BOS-LGA (69% fall in walkup fares), BOS-DCA (65% fall in walkup fares), BOS-Minneapolis-St. Paul (38% fall in walkup fares), BOS-BUF (50% fall in all fares), BOS-EWR (54% fall in all fares), BOS-CLE (53% fall in all fares), BOS-DTW (35% fall in all fares), JFK-RIC (65% fall in all fares), JFK-PIT (75% fall in all fares), and BOS-LON (50–60% fall in all fares). NEA Proposed FOF ¶¶ 49, 169, 170, 207, 251. DOJ also urged the court to adopt the defendants' estimate of 20–21% for the average JetBlue Effect. NEA Proposed FOF ¶ 343. Yet, as those estimates are inconvenient for this case, DOJ offers Dr. Gowrisankaran's alternative estimates, finding that the average JetBlue Effect is either 13.7% or 17.9%, depending on which of his models is used. Decl. of Elizabeth M. Wright in Support of Defendants' Motion in Limine to Exclude Opinions of Dr. Tasneem Chipty, ECF No. 184-4.

DOJ's economic expert in the NEA Case, Dr. Miller, also doubted Spirit's ability to replace the JetBlue Effect. Dr. Miller opined that "diversion to Spirit" would be "inadequate to discipline and decrease market power" among the carriers operating in New York City. Shores Reply Decl., Ex. D (Trial Tr. Day 10, NEA Case, 228:3–7) (Dr. Miller testimony); *see also* Plaintiffs' Post-Trial Brief at 37, NEA Case (Dec. 2, 2022), ECF No. 333 ("NEA Post-Trial Brief") ("Although other LCCs and ULCCs compete by offering lower prices, they do not have a premium business product like Mint, or comparable high-quality coach service."). It is no wonder, then, why DOJ did not retain Dr. Miller again in this case, instead choosing a new expert—Dr. Gowrisankaran—to walk back from his findings.

***Dr. Gowrisankaran's testimony disagreeing with DOJ's statements about JetBlue's quality cannot be explained away.*** Dr. Gowrisankaran's testimony contradicting DOJ's

statements from the NEA Case are not explainable by "context," by something unique about "the field of economics," or by resort to "the eye of the beholder." Opp. at 13. Asked simply and directly whether he agreed with the same statements about JetBlue's unique quality made by DOJ in the NEA Case, Dr. Gowrisankaran refused to agree.[5]

To be clear, and contrary to DOJ's characterization, Opp. at 11–12, Defendants are not moving the Court to estop Dr. Gowrisankaran himself from offering any opinions. Rather, Defendants are asking the Court to admit as facts in this case the same facts DOJ asserted in the NEA Case to be true less than a year ago, including that:

- "JetBlue differentiated itself from other low-cost airlines by offering not only low fares, but also high-quality service." NEA Proposed FOF ¶ 24.

- "JetBlue also offered superior service to many airlines, including legacies." *Id*.

- "JetBlue's high quality of service allowed it to compete effectively against the legacy airlines in ways other LCCs and ULCCs could not." *Id.* ¶ 27.

- "Competition from JetBlue resulted in higher-quality service offered by legacy airlines." *Id.* ¶ 40.

- "The JetBlue Effect produces lower prices and higher quality service on routes where JetBlue competes." *Id.* at 12.

---

[5] Instead, when presented with DOJ's own assertions of fact, Dr. Gowrisankaran gave long-winded, evasive answers, before finally disagreeing with them. For example, when asked if JetBlue "differentiated itself from other low cost carriers by offering not only low fares, but also high quality service," Dr. Gowrisankaran discussed how "some people like the snacks on Spirit, and some people like the snacks on JetBlue," (Shores Reply Decl., Ex. E (Gautam Gowrisankaran Dep. Tr. 104:17–19 (Sep. 1, 2023) ("Gowrisankaran Dep. Tr., Ex. E")), before finally saying: "Is JetBlue some higher quality for everybody? Well, that's not what the record indicates at all." Gowrisankaran Dep. Tr., Ex. A, 110:2–4; *see also* Gowrisankaran Dep. Tr., Ex. E, 103:17–19; Gowrisankaran Dep. Tr., Ex. A, 89:9–92:15, 105:5–106:20; Gowrisankaran Dep. Tr., Ex. A, 91:4–6 ("[A]s to whether JetBlue has differentiated itself by high quality, that's not something I would agree with.").

## II. DOJ SHOULD BE ESTOPPED FROM ASSERTING A COORDINATION THEORY IN THIS CASE

Based on the positions DOJ successfully advanced in the NEA Case, there is no plausible coordination story left for DOJ to pursue here.  In attempting to square its story between the cases, DOJ points to the fact that, in the NEA Case, it alleged "the airline industry is concentrated and certain aspects of the passenger airline market make it easier for airlines to coordinate with one another."  Opp. at 9 (citing NEA Proposed FOF ¶¶ 352–68).  But even in the face of these alleged industry factors, DOJ urged the Court to find that "JetBlue historically has behaved like a maverick in the airline industry," "exert[ing] a particularly unique, disruptive force on the marketplace."  NEA Post-Trial Brief at 37.  The Court agreed.  *Am. Airlines Grp.*, 2023 WL 3560430, at *34 n.81 ("The parties all agree, and the Court finds, that JetBlue has played a unique role in the domestic air travel industry and qualifies as a 'maverick' competitor for present purposes. . . . [I]t was justifiably viewed by others—and it indisputably viewed itself—as a unique and disruptive force in the domestic air travel market.").  Put simply, DOJ asserted—and the Court found—that JetBlue's business model is built on *disrupting* other carriers; that necessarily means JetBlue does not *cooperate* with them.

DOJ also claims that "[c]oordination in the airline industry is…very real," citing a court's recent finding "that domestic airlines 'admittedly and openly' engaged in the parallel conduct of capacity discipline for many years 'with the effect that diminished capacity resulted in higher industry profits.'"  Opp. at 10 (quoting *In re Domestic Airline Travel Antitrust Litig.*, No. 15-1404, 2023 WL 5930973, at *33 (D.D.C. Sept. 12, 2023)).  DOJ fails to inform the Court, however, that JetBlue was not a defendant in that case, which alleged a conspiracy among four domestic airlines to coordinate and limit capacity between 2009 and mid-2015.  *In re Domestic Airline Travel*, 2023 WL 5930973, at *1.  In fact, DOJ argued in the NEA Case that JetBlue

acted wholly at odds with any capacity coordination, asserting that "JetBlue mitigated the effects of capacity discipline by growing capacity" and "[b]etween 2009 and 2019, JetBlue grew more in the Northeast in percentage terms than any other airline[.]"  NEA Proposed FOF at 13, ¶ 400.

Finally, DOJ's assertion in the NEA Case that "an airline *can* tacitly coordinate pricing decisions with competitors" through so-called "flashing" hardly indicates that JetBlue, a disruptive industry maverick, will coordinate with other airlines on pricing in the future.  Opp. at 9–10 (emphasis added) (citing NEA Proposed FOF ¶ 365).  Of the millions of pricing actions that occur in the airline industry annually, DOJ points only to a single example of JetBlue supposedly flashing from three years ago.  NEA Proposed FOF ¶ 365.  That is far too thin a reed on which to hang a coordination theory in the face of a judicial finding that JetBlue is maverick disruptor of coordination.[6]  *See supra* at 5 (discussing examples of JetBlue Effect).

If anything, based on the position DOJ took in the NEA Case, the only plausible conclusion is that JetBlue's growth through the Spirit transaction—from 5% market share to about 9% market share—*will further disrupt* the nationwide coordination in the airline industry that DOJ now alleges to be occurring.  Any suggestion that a maverick airline, with a long history of undercutting its competitors, is now going to become a tacit or explicit co-conspirator due to a 4% bump in market share is farcical.  This runs counter to the narrative DOJ adopted in the NEA Case and is refuted by the case law, which requires more than mere growth (in this case, modest growth) to support such a claim.  *See, e.g.*, *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 245 (S.D.N.Y. 2020) ("Anticompetitive results such as higher prices and lower

---

[6] DOJ also points to a proposed finding from the NEA where, in 2019, JetBlue lowered its prices on certain routes where it was competing with American after American did the same on another JetBlue route.  Opp. at 10 (citing NEA Proposed FOF ¶ 364).  Putting aside that this took place four years ago, nothing about this scenario suggests anything other than competition.

quality produced by coordinated or unilateral effects of a merger do not just 'happen'; they are not self-executing outcomes spontaneously set in motion upon the creation of a presumed level of market concentration of fewer competitors, or the large market shares amassed by particular participants.").[7]  DOJ should be estopped from pursing such a theory, and wasting the time of the parties and the Court, after its success in persuading the Court in the NEA Case that JetBlue is a disruptive maverick.

### III.   ESTOPPEL CAN AND SHOULD APPLY BASED ON THE UNIQUE CIRCUMSTANCES HERE

As DOJ agrees, "the Supreme Court has never definitively ruled out the possibility of an estoppel against the government."  *Dantran, Inc. v. U.S. Dep't of Labor*, 171 F.3d 58, 66 (1st Cir. 1999).  For estoppel to apply against the Government, a party must demonstrate "more than negligence"—some form of "affirmative misconduct," which means more than "careless misstatements."  *Nagle v. Acton-Boxborough Reg'l Sch. Dist.*, 576 F.3d 1, 5 (1st Cir. 2009).

This case involves nothing like negligence or careless misstatements.  Just one year ago, in the same court, some of the same lawyers from the same division of DOJ took contrary positions and convinced the Court to grant their requested relief.  *See New Hampshire v. Maine*, 532 U.S. 742, 755 (2001) (applying estoppel based on inconsistent litigation positions).  DOJ's attempt to "assert[] a position in one legal proceeding [] contrary to a position [] in another" undermines the integrity of the judicial process.  *Patriot Cinemas, Inc. v . Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir. 1987).  Estoppel is appropriate on the unique facts here.

---

[7] Indeed, DOJ has *promoted* growth by low-cost carriers like JetBlue through divestitures.  *See* Response of Plaintiff United States to Public Comments on the Proposed Final Judgment at 10–11, *United States v. US Airways Grp., Inc.*, No. 13-cv-01236 (D.D.C) (Mar. 10, 2014), ECF No. 159 (arguing that by providing additional slots to JetBlue, the proposed divestiture "eases some of the most intractable barriers to LCC entry and expansion throughout the country").

## IV.    DOJ'S PRIOR STATEMENTS IN THE NEA CASE SHOULD BE ADMITTED

DOJ concedes that the Court can take judicial notice of its statements in the NEA Case. Opp. at 14–15.  As for DOJ's objection to admitting those statements for the truth of the matter, it is settled First Circuit law that DOJ is a party opponent whose briefs from prior cases can come in as party adopted statements in a later case against DOJ.  *United States v. Kattar*, 849 F.2d 118, 130–31 (1st Cir. 1988); *see also* George Blum et al., 29A Am. Jur. 2d Evidence § 833 (2008 & 2016 supp.) ("[S]tatements of government agents or employees may be introduced as substantive evidence in civil actions as party-admissions of the United States government . . . .").  DOJ took issue with Defendants' not "identify[ing]" which documents or statements to admit. Opp. at 14. In response to DOJ's stated concern, Defendants identified them to DOJ last Friday and met and conferred with DOJ today.  While DOJ indicated no change in its legal position that none of the statements should be admitted, Defendants and DOJ agreed to continue discussing whether, apart from the threshold legal issue raised here, there are other objections to specific statements or additions that would be requested for completeness.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion.

Dated: September 26, 2023                 Respectfully submitted,


                                          */s/ Ryan A. Shores*
                                          Ryan A. Shores (*Pro Hac Vice*)
                                          David I. Gelfand (*Pro Hac Vice*)
                                          Daniel P. Culley (*Pro Hac Vice*)
                                          Cleary Gottlieb Steen & Hamilton, LLP
                                          2112 Pennsylvania Avenue, NW
                                          Washington, DC 20037
                                          Tel: 202-974-1500
                                          rshores@cgsh.com

dgelfand@cgsh.com
dculley@cgsh.com

Joseph M. Kay (*Pro Hac Vice* forthcoming)
Cleary Gottlieb Steen & Hamilton, LLP
One Liberty Plaza
New York, NY 10006
Tel: 212-225-2000
jkay@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP
401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
michael.mitchell@shearman.com
brian.hauser@shearman.com

Richard F. Schwed (*Pro Hac Vice*)
Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069
Tel: 212-848-4000
Fax: 212-848-7179
rschwed@shearman.com
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

Elizabeth M. Wright (MA BBO #569387)
Zachary R. Hafer (MA BBO #569389)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com

11

zhafer@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com

Beatriz Mejia (*Pro Hac Vice*)
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Tel: 415-693-2000
Fax: 415-693-2222
bmejia@cooley.com

Joyce Rodriguez-Luna (*Pro Hac Vice*)
Cooley LLP
55 Hudson Yards
New York, NY 10001-2157
Tel: 212 479 6895
Fax: 2124796275
jrodriguez-luna@cooley.com

*Attorneys for Defendant JetBlue Airways
Corporation*

Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jay Cohen (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com

kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant*
*Spirit Airlines, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that this document was filed through the ECF system on September 26, 2023 and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

<u>*/s/ Ryan A. Shores*</u>
Ryan A. Shores