# EXHIBIT C

```
                        UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS


     _____

     UNITED STATES OF AMERICA, et al.

             Plaintiffs,                          Civil Action No.
                                                  1:21-cv-11558-LTS
         v.

     AMERICAN AIRLINES GROUP, INC.,
     et al.,

             Defendants.


     _____


         BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE


                               BENCH TRIAL
                                  Day 1



                       Tuesday, September 27, 2022
                               9:00 a.m.




     John J. Moakley United States Courthouse
     Courtroom 13
     One Courthouse Way
     Boston, Massachusetts


     Rachel M. Lopez, CRR
     Official Court Reporter
     raeufp@gmail.com
```

1  MR. JONES: Your Honor, may I proceed from the
2  podium?
3  THE COURT: Sure. Of course.
4  MR. JONES: Good morning, again, Your Honor, and
5  I'll say good morning again to Mr. Wall, to Mr. Schwed, and
6  to your teams.
7  Your Honor, the Northeast Alliance extinguishes
8  head-to-head competition between American and JetBlue at four
9  airports in the northeast, at Logan, at LaGuardia, at JFK,
10  and at Newark, competition that has been ongoing for around
11  20 years. Competition that has benefitted travelers and the
12  end of which will cost travelers in this country hundreds of
13  millions of dollars.
14  For its part JetBlue has opted from going with that
15  head-to-head competition with American to entangling itself
16  with American. Your Honor, it's abandoning its historic
17  disruptive role in the airline industry. A role that, by
18  JetBlue's own calculations, has saved travelers in this
19  country $10 million since its founding. JetBlue's
20  calculations, Your Honor, $3 billion in savings to Boston
21  area travelers alone.
22  Now, JetBlue and American are collaborators instead
23  of competitors at those four airports in the Northeast, and
24  JetBlue won't be that disruptive competitive check that it
25  had been.

1    And it didn't have to be this way, Your Honor.
2    They could have continued to fight, and they could have
3    continued that head-to-head competition that had been
4    ongoing, and their business documents will show that they
5    were planning on continuing that competition.
6    For example, one of American's most senior
7    executives told other employees at American that they should
8    gird their loins and that they should be prepared to swing
9    the bat in Boston, that it was time to swing the bat in
10   Boston.  So they were prepared to continue fighting, but
11   instead they adopted this collaboration.
12   The collaboration, Your Honor, the Northeast
13   Alliance, the NEA, is unprecedented between domestic airlines
14   in this country, never been done before.  But, really, it
15   just disguises what is a de facto merger at those four
16   airports.
17   Now, defendants may suggest that the NEA, because
18   it's technically not a merger, couldn't possibly eliminate
19   competition, but that's putting form over substance.  And I
20   suspect the defendants will -- will get up here at some point
21   and say they figured out how to preserve competition by
22   constructing some complicated revenue-sharing formula that
23   tries to create incentives for each of them to continue
24   growing.
25   But, you know, Your Honor, they can say that, but

1  already recognized.
2         The evidence, Your Honor, on this point will
3  include late-night text messages between executives of
4  American that show that these executives recognized that
5  their purported benefits weren't real when they concluded
6  that, if you look at the NEA across their whole networks,
7  that the results were, quote, no bueno, end quote.  Their
8  words, Your Honor.  Not mine.  And that if they were the DOJ,
9  they could, quote, "easily kill any deal."
10        With all of that said, let me start at the heart of
11 the story here, that head-to-head competition between
12 American and JetBlue here in Boston and in New York.  For
13 starters, there's no dispute that JetBlue has been a unique
14 competitive force in the airline industry.  JetBlue has
15 called itself a fundamentally different kind of airline, and
16 it's distinguished itself from legacy carriers like American.
17 As you'll see during the trial, also, Your Honor, JetBlue's
18 CEO highlighted JetBlue's critical role -- critical role --
19 in keeping the immense power of the legacy airlines in
20 check -- legacies, again, like American.
21        And this is -- this isn't just talk in regulatory
22 filings and in speeches either, Your Honor.  We have the
23 receipts, or I should say JetBlue has the receipts.  Taking
24 Boston Logan, for example, when JetBlue started serving
25 Cleveland from Logan, average fares dropped 53 percent in the

1  first year from what they were before JetBlue started serving
2  that market.  Fares dropped by double-digits percentages in
3  other markets JetBlue entered as well.
4          And after a while, you take a double-digit drop
5  here and a double-digit drop there, and it starts to add up
6  to some real money, some real savings -- $3 billion, again,
7  for Boston area travelers, according to JetBlue's
8  calculations.
9          It's also not just the fares dropping when JetBlue
10 enters a market.  They shoot up when JetBlue exits a market
11 as well.  When JetBlue exited the route from JFK to
12 Pittsburgh, fares shot up 75 percent.  When JetBlue exited
13 the market JFK to Richmond, fares shot up 65 percent.
14         The result of these efforts, Your Honor, is the
15 back bone here of the competition between American and
16 JetBlue before they formed the NEA, the competition that
17 benefited travelers.  And first and foremost, Your Honor, it
18 benefited travelers to and from Boston and popular locations
19 like Los Angeles, Miami, Washington National, LaGuardia, and
20 JFK.
21         And the eleven markets where both American and
22 JetBlue operated, competing nonstop service before they
23 entered the NEA, the combined market shares of these two
24 defendants ranged from nearly 49 percent to 96 percent --
25 meaning that in these markets, many travelers were choosing