# EXHIBIT D

```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF MASSACHUSETTS


     _____

     UNITED STATES OF AMERICA, et al.

             Plaintiffs,                    Civil Action No.
                                            1:21-cv-11558-LTS
         v.

     AMERICAN AIRLINES GROUP, INC.,
     et al.,

             Defendants.

     _____


        BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE


                            BENCH TRIAL
                             Day 10



                    Wednesday, October 12, 2022
                            9:00 a.m.




     John J. Moakley United States Courthouse
     Courtroom 13
     One Courthouse Way
     Boston, Massachusetts


     Rachel M. Lopez, CRR
     Official Court Reporter
     raeufp@gmail.com
```

1  **Q.**   That was for exactly the same purpose as we're talking
2  about here, isn't it, sir?
3  **A.**   The purpose for this market definition is to inform the
4  likely competitive effects of the NEA.
5  **Q.**   And that was for an airline merger, right?  And you claim
6  that they're the same thing.
7  **A.**   I've evaluated, I have observed that -- no, no, no.
8  Mergers are different.  What -- each merger is different.
9  NEA is different than other mergers may be, for NEA we
10 observe important competition between American and JetBlue
11 that occurs at LaGuardia and JFK, and the evidence is
12 consistent that the consumers would not substitute towards
13 Newark in a great enough degree to offset a loss of
14 competition among JetBlue and American.  And all of that
15 Delta share coming out of JFK and LaGuardia, too.  That's
16 meaningful competition and it gets picked up in the
17 hypothetical monopolist test.  It's really not surprising to
18 me that JFK LaGuardia would pass the hypothetical monopolist
19 test, given what we're talking about the complete loss of
20 competition with the two very large and important airports in
21 New York City.  Just looking at the economics, it's not
22 really a surprising conclusion.
23 **Q.**   Well, Dr. Miller, do you believe that Spirit, based upon
24 its services from Newark-Liberty airport, is a substantial
25 competitor to American, JetBlue, and Delta and other airlines

1   operating on routes that end or begin in LaGuardia/JFK?
2   **A.**   It's the same question that you've already asked, which
3   asked me to put a meaning to an adjective.  And what I can
4   say is that the data that I've analyzed indicates the
5   diversion to Spirit and other areas in New York City that
6   would be inadequate to discipline and decrease market power
7   among carriers that operate out of JFK and LaGuardia.
8   **Q.**   Are you saying that, after two years of work, you can't
9   answer the question of whether Spirit is a substantial
10  competitor in the New York markets?
11  **A.**   I've answered that question, and the answer is that the
12  diversion to all of the carriers at Newark, including Spirit
13  and including United, and in addition, diversion outside
14  of -- you know, to other options, for example, staying at
15  home, you can add all of that together, and together, that's
16  not enough to limit increase in market power out of JFK and
17  LaGuardia, which, again, is not really surprising, because
18  you're talking about a combination of American and JetBlue
19  and Delta, and everybody else is flying out of two of the
20  largest airports in the world.
21  **Q.**   Sir, I'm not asking you anything about what would happen
22  in some hypothetical world with a hypothetical monopolist and
23  a SSNIP.  I just mean today, in the real world, is Spirit a
24  substantial competitor to the airlines that are operating out
25  of LaGuardia and JFK?