UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC., <br><br> *Defendants*. | Civil Action No. 1:23-cv-10511-WGY |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION IN LIMINE REGARDING PURPORTED OUT-OF-MARKET BENEFITS**

This case is about JetBlue's bid to acquire Spirit Airlines, and whether, under Section 7 of the Clayton Act, 15 U.S.C. §18, the effect of that acquisition "may be substantially to lessen competition" in "any line of commerce" in "any section of the country." Plaintiffs allege that the proposed acquisition has a reasonable probability of doing just that: harming competition for airline passengers ("any line of commerce") in the origin-and-destination ("O&D") pairs where Spirit flies or plans to fly ("any section of the country"). JetBlue and Spirit do not seriously dispute that these O&D markets are relevant and properly defined or that Plaintiffs allege harm in those markets. Given that undisputed premise, Plaintiffs' motion asks the Court to resolve a narrow but important evidentiary question: May Defendants introduce evidence or argumentation at trial of purported benefits outside of these O&D markets for the purpose of arguing that such benefits justify or offset harm within these O&D markets? Because the plain text of the Clayton Act and binding Supreme Court precedent, *United States v. Phila. Nat'l Bank,* 374 U.S. 321

(1963), holds that the answer is "no," Plaintiffs' motion should be granted.

Plaintiffs are not asking the Court to resolve a dispute about relevant markets or whether Defendants' proposal of a national market for passenger airline service is *also* relevant to evaluating the proposed acquisition. Nor are Plaintiffs asking the Court to decide whether evidence of national (or even international) conditions facing the airlines industry is relevant for the Court to consider at trial. The Court need not reach any of those questions to grant Plaintiffs' motion. Even if Defendants were correct that a national market is relevant (they are not), binding precedent would still preclude them from trying to use purported benefits in that national market to justify harm in the Spirit O&D markets. This is not just a binding legal principle; it is also common sense. Millions of passengers travel on the Spirit O&D routes alleged in the Complaint, and those passengers tangibly benefit from the lower fares that competition between Spirit and JetBlue has yielded on those routes. Those same passengers would be harmed by the proposed acquisition's elimination of Defendants' vibrant competition, and that harm could not be wiped away by promised improvements to other routes where those passengers do not and may never fly. If the acquisition would result in an increase to the price of a consumer's flight from Boston to San Juan, it is cold comfort to that consumer that a different flight from Los Angeles to Honolulu that she may never travel on would have more leg room, for example, post-acquisition.

Defendants' opposition offers no persuasive basis to depart from the text of Section 7 and binding Supreme Court precedent and turn the trial into a zero-sum comparison of whether JetBlue or Spirit is better for the airline industry as a whole. *Philadelphia National Bank*'s clear prohibition on so-called cross-market balancing has never been overruled or questioned. It remains hornbook antitrust law and is as vital as ever. The alleged harm to competition that Defendants must overcome to avoid a violation of Section 7 is harm within each O&D market

where Spirit flies or plans to fly. The focus of trial in this case must therefore be (1) to what extent the proposed acquisition would harm competition in these O&D markets, and (2) whether Defendants can present evidence of benefits within these O&D markets that would overcome the presumption that the effect of their proposed acquisition may be to lessen competition in those markets. In other words, Section 7 dictates that the ultimate question here is whether it is reasonably probable that the proposed acquisition may substantially lessen competition in any relevant O&D market, not whether benefits in some other market might outweigh those harms.

Because Defendants' concession about the relevance of the Spirit O&D markets dooms their position, they attempt to obscure what is at stake in various ways, none of which provides a basis to deny Plaintiffs' motion. Defendants' primary argument is to propose an additional (not alternative) national market for passenger airline service and claim that purported benefits somewhere in that broader market are good enough. That is incorrect, as demonstrated by the complete absence of legal authority supporting Defendants' position. No court has ever adopted Defendants' suggestion that, under Section 7, a claimed benefit somewhere—anywhere—can justify harm to competition in a properly defined market. This Court should not be the first. Defendants also compare apples to oranges by citing the United States' consideration of benefits in other markets when exercising discretion to settle one case (American Airlines/US Airways in 2014) and not to bring suit in another (Southwest/AirTran in 2010). That comparison falls flat because litigants may properly consider a broad range of factors when deciding whether to settle or to sue at all, including factors that a court would be prohibited from considering when deciding the merits of a contested case. Defendants also obfuscate what evidence Plaintiffs seek to exclude. Plaintiffs do not seek wholesale exclusion of evidence about entry or divestitures, or evidence that may be relevant to both the O&D markets and other markets. Rather, Plaintiffs

narrowly seek to exclude evidence of purported benefits that fall outside of the Spirit O&D markets that is offered for the purpose of justifying harm within those markets.

Defendants ask the Court to commit legal error by doing precisely what the Supreme Court has held this Court cannot do: justify harm to competition in one market by positing procompetitive benefits in another. *Phila. Nat'l Bank*, 374 U.S. at 370. The Court should decline Defendants' invitation and should instead grant Plaintiffs' motion *in limine*.

## I.  ARGUMENT

### A. The Principle Against Cross-Market Balancing Explained in *Philadelphia National Bank* Remains Good Law and Has Been Consistently Applied Over the Years

Defendants contend that the Court should ignore Supreme Court precedent clearly stating that "anticompetitive effect in one market" cannot "be justified by precompetitive consequences in another." *Phila. Nat'l Bank*, 374 U.S. at 370. Defendants' attempts to criticize the "vitality" of *Philadelphia National Bank* miss the mark. *Philadelphia National Bank*'s prohibition on cross-market balancing endures because it stems directly from the text of Section 7 of the Clayton Act, and that holding has not been questioned by courts or revisited by the Supreme Court. 15 U.S.C. § 18 (prohibiting acquisitions where "the effect of such acquisition may be substantially to lessen competition" "in *any line of commerce*" "in *any section of the country*") (emphasis added).[1] Rather, the holding has been consistently applied in the decades since it was decided. *See, e.g.*, *United States v. Aetna Inc.*, 240 F. Supp. 3d 1, 94 (D.D.C. 2017) (citing *Philadelphia National*

---

[1] Defendants correctly note (ECF No. 196 at 5 n. 3) that "line of commerce" and "section of the country" are commonly understood as aligning with relevant product market and relevant geographic market. *See, e.g.*, *United States v. Energy Sols., Inc.*, 265 F. Supp. 3d 415, 436 (D. Del. 2017). But it is also commonly understood, including by the authorities that Defendants cite, that the statute's use of "any" establishes the "any market" principle that forecloses cross-market balancing. *Brown Shoe*, 370 U.S. at 337 ("That section speaks of 'any section of the country,' and if anticompetitive effects of a merger are probable in 'any' significant market, the merger—at least to that extent—is proscribed.").

*Bank* in support of view that defendants must show that claimed efficiencies "benefit customers, and, more particularly, the customers in the challenged markets.") (other citations omitted); *Miss. River Corp. v. FTC*, 454 F.2d 1083, 1090 (8th Cir. 1972) (citing *Philadelphia National Bank* in support of holding that "the anticompetitive effects of an acquisition in one market cannot be justified by procompetitive effects in another market.") (other citations omitted); *see also United States v. Anthem, Inc.*, 855 F.3d 345, 368 (D.C. Cir. 2017) (finding harm in one relevant market, Richmond, was sufficient to block merger "even absent a finding of anticompetitive harm in the fourteen-state national accounts market"). And it is recognized in a widely-used antitrust treatise. 4A, Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law ¶ 972a, at 57 (4th ed. 2016) ("The statute . . . plainly contemplates that mergers may involve more than one market, yet *it bases legality on a separate market-by-market appraisal*.") (emphasis added).

In *Philadelphia National Bank* itself the Supreme Court analyzed arguments very similar to those Defendants make here. In that case, the United States sought to enjoin a merger of two major Philadelphia banks that would have harmed banking customers in Philadelphia. The banks sought to justify the merger on the grounds that the merged bank would be large enough to compete with New York banks for larger loans business. *Phila. Nat'l Bank*, 374 U.S. at 334, 370. The Supreme Court made clear: "we reject this application of the concept of 'countervailing power'" and restricted its consideration of benefits to those that would allow the merged firm "to compete more successfully with the leading firms in *that* [local] market." *Id.* 370-71 (emphasis added).

Unsurprisingly, the lower court decisions Defendants cite do not flout *Philadelphia National Bank*'s clear direction, nor do they otherwise support the free-wheeling approach to cross-market balancing that Defendants contend is part of "modern case law applying Section 7."

5

*See* ECF No. 197 at 20; *see also United States v. Anthem, Inc.*, 855 F.3d 345, 354 (D.C. Cir. 2017) (cautioning against a "modern approach" to antitrust law and recognizing that it is "not a lower court's role to ignore on point precedent," from the Supreme Court that is several decades old). One case Defendants cite is a class-certification decision they contend applies this "modern," precedent-defying approach, *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 24 (D.D.C. 2012). Contrary to Defendants' suggestion, *Kottaras* does not skirt *Philadelphia National Bank*. ECF No. 196 at 18–19. Rather, *Kottaras* explicitly acknowledged the prohibition against cross-market balancing but distinguished it from an argument that the court should not "count benefits against harms in the same market." *Kottaras*, 281 F.R.D. at 24-25 (emphasis in original).[2]

*Baker Hughes* similarly does not support Defendants' position because that case did not address, let alone endorse, cross-market balancing. Indeed, *Baker Hughes* affirmed that rebuttal arguments like entry are only pertinent in a Section 7 case insofar as they occur in the market where harm is alleged (in that case, a market for a specific kind of underground drilling rig). *See*, *e.g.*, *United States v. Baker Hughes Inc.*, 908 F.2d 981, 984, 987-89 (D.C. Cir. 1990) (evaluating whether "entry into the United States [hardrock hydraulic underground drillings rigs] market would likely avert anticompetitive effects from [the challenged] acquisition"). And the discussion about *Philadelphia National Bank* only concerned the quantum of evidence needed to rebut a prima facie case (which it noted had not been "disavow[ed]"). *Id*. at 990–91. Courts applying *Baker Hughes* recognize that the analysis of competitive effects must occur within the

---

[2] Defendants' misunderstanding of *Kottaras* is driven by their misstatement of the relevant markets there. In that case the relevant markets were not alleged to be plaintiffs' "individual products," as Defendants incorrectly contend (ECF No. 196 at 19), but the "market for premium, natural, and organic supermarkets," which subsumed all the listed grocery items. *See* Compl., *Kottaras v. Whole Foods Mkt., Inc.*, Case No. 08 Civ. 01832 (D.D.C., filed Oct. 27, 2008), ¶ 39.

market(s) where harm is alleged—and not by introducing purported benefits in completely different markets. *See Aetna*, 240 F. Supp. 3d at 94 (recognizing that claimed efficiencies must benefit "customers in the challenged markets). In fact, the same appeals court that decided *Baker Hughes* more recently instructed that lower courts should apply antitrust law "as it currently is" notwithstanding that the Supreme Court has not assessed the lawfulness of a horizontal merger under Section 7 since 1975. *Anthem, Inc.*, 855 F.3d at 354.

### B. O&D Pairs Are the Relevant Markets for Assessing Plaintiffs' Case to Block the Acquisition

Plaintiffs allege that the acquisition would lead to competitive harm on routes Spirit currently flies, or plans to fly in the future, because it will eliminate competition between JetBlue and Spirit on overlap routes, and it will eliminate the Spirit ULCC offering on routes that Spirit flies, or plans to fly, but JetBlue does not. *See, e.g.*, Am. Compl. ¶¶ 7, 2–30. These are the relevant markets for considering the harms to competition (and thus any benefits Defendants claim will offset those harms) that result from the acquisition. Defendants try to muddy the waters on the relevant geographic markets by making a supply-side substitution argument that is neither intuitive nor consistent with the market realities that ordinary people face when considering a flight.[3]

---

[3] Defendants argue for a "broader view" of the relevant market, implying that customers fly on multiple routes as frequently as they buy multiple items at the grocery store. While Plaintiffs are not asking the Court to resolve the market definition question on this motion, in fact evidence will show that many airline customers do not buy tickets on multiple routes in a given year, especially those cost-conscious customers served by Spirit. Further, Defendants cite no legal support for their proposition that relevant markets should be aggregated just because customers participate in multiple markets. As explained above, Defendants misunderstand *Kottaras*—the court in that case considered effects in the same market as clearly contemplated by Section 7. *Kottaras*, 281 F.R.D., at 24-25.

Defendants do not seriously contest that these origin-and-destination pairs constitute relevant antitrust markets.[4] It would be near impossible for them to do so. In the NEA case last year involving JetBlue, it was undisputed that O&D pairs were relevant markets. *United States v. Am. Airlines Grp. Inc.*, -- F. Supp. 3d --, No. CV 21-11558-LTS, 2023 WL 3560430, at *36 (D. Mass. May 19, 2023) (Sorokin, J.) ("Here the parties agree, and the Court finds, that the relevant product market is 'scheduled air passenger service,' and the relevant geographic markets are O&Ds "in which Defendants compete or would likely compete absent the NEA."). And, other than with respect to the scope of certain end-points (Orlando and Puerto Rico), Defendants' economic expert does not contest the opinions of Plaintiffs' expert, Dr. Gowrisankaran, regarding the defined O&D markets.[5] Ex. A at 30:2-7.[6] Defendants' expert confirmed that he did not define a national airline market in his report. *Id.* at 109:13-19. And common sense and other court decisions underscore that a ticket from Boston to San Juan does not serve as a substitute for a ticket from Orlando to Richmond.[7]

Defining a relevant market "is not an end unto itself." *United States v. Bertelsmann SE & Co. KGaA*, -- F. Supp. 3d --, 2022 WL 16949715 (D.D.C. Nov. 15, 2022). Rather the purpose of

---

[4] Indeed, Defendants' opposition brief is the first time they have advanced an argument for a "national market."

[5] Defendants incorrectly state that Dr. Gowrisankaran's regression estimates "harm at the national level across routes." ECF No. 196 at 17–18 n. 7. Dr. Gowrisankaran's estimates of consumer harm concerns each of the markets "currently served nonstop by Spirit," not across all routes at the national level. Ex. B at ¶ 289.

[6] All exhibits cited in this memorandum are exhibits to the Declaration of Edward W. Duffy in Support of Plaintiffs' Reply in Support of Motion in Limine Regarding Purported Out-of-Market Benefits.

[7] Other courts have also recognized that origin-and-destination pairs are the relevant markets to evaluate harm resulting from a loss in airline competition. *See, e.g.*, *Malaney v. UAL Corp.*, No. 3:10-CV-02858-RS, 2010 WL 3790296, at *12 (N.D. Cal. Sept. 27, 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011) (adopting city-pair markets and rejecting national market because "plaintiffs have not shown how, for example, a flight from San Francisco to Newark would compete with a flight from Seattle to Miami"); *In re: AMR Corp.*, 502 B.R. 23, 40 (Bankr. S.D.N.Y. 2013) (noting that both parties accept that "city-pair markets are properly defined" and rejecting a national market because "[a] product market contemplates products that are viable substitutes for each other" and plaintiffs have not explained how "a flight from Los Angeles to New York would compete with a flight from Detroit to Seattle").

the inquiry is to ascertain where "the effect of the merger on competition will be direct and immediate." *Phila. Nat'l Bank*, 374 U.S. 357; Merger Guidelines § 4.1.1 ("[T]he purpose of defining the market and measuring market shares is to illuminate the evaluation of competitive effects."). Therefore, the existence of other markets, including a potentially broader national market for scheduled air passenger service, is not relevant to evaluating Plaintiffs' claims. A "broad product market . . . may contain smaller markets . . . which themselves 'constitute relevant product markets for antitrust purposes.'" *FTC v. Peabody Energy Corp.*, 492 F. Supp. 3d 865, 885 (E.D. Mo. 2020) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962)). A focus on O&D-level markets—where Plaintiffs assert competitive harm will occur and which Defendants cannot dispute are relevant antitrust markets—is the relevant frame of the Section 7 inquiry here.

### C. Appeals to Earlier Prosecutorial Decisions Cannot Support Ignoring Binding Law

In their quixotic attempt to convince the Court to ignore binding law, Defendants argue that cross-market balancing should be permitted here because of earlier exercises of prosecutorial discretion by the United States. As explained in Plaintiffs' opening brief, the United States, like any other litigant before the Court, may, in its prosecutorial discretion, consider facts that are neither relevant nor admissible to the elements of a claim or defense at trial. *See* ECF No. 181 at 89. Any such choices certainly provide no basis to ignore binding legal precedent. *See generally In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 664–65 (7th Cir. 2002) (Justice Department's decision not to bring civil price-fixing case, that could have been motivated by many factors, does not justify dismissal of claims).

Trial in this case should focus on what matters: the relevant law—*Philadelphia National Bank* and its progeny—and the relevant facts: the loss of competition from JetBlue's acquisition

of Spirit on hundreds of routes across the country and any evidence Defendants can bring forward that rebuts that loss *on those same routes*.

### D. Defendants Misrepresent What Plaintiffs are Trying to Exclude

As part of their attempt to sow confusion about the clear application of *Philadelphia National Bank*, Defendants obfuscate the scope of Plaintiffs' motion. Plaintiffs' motion identifies specific examples in which Defendants appear poised to introduce irrelevant evidence of out-of-market benefits, such as Dr. Hill's opinion that the harm caused by lost competition in certain markets should be balanced against benefits brought by divestiture recipients using acquired assets to fly in different markets. *See* ECF No. 181 at 3–4, 10. Defendants do not explain how such opinions can be legally relevant, so long as (1) O&D markets in which Plaintiffs allege harm are relevant antitrust markets; and (2) *Philadelphia National Bank* remains good law. Nor could they.

Plaintiffs do not broadly seek to prevent the introduction of evidence of "frequent entry" and "divestitures," as Defendants say (ECF No. 196 at 13), or, for that matter, other evidence which may bear on whether the pleaded O&D markets are in fact relevant markets for purposes of evaluating the competitive effects of the acquisition. Such evidence may be relevant if it relates to the likely competitive effects the acquisition may have *in harmed markets* identified in the Amended Complaint.[8] For example, Plaintiffs will introduce evidence regarding aircraft and pilot constraints that limit the ability of other ULCCs to grow through at least the end of the

---

[8] Once Plaintiffs have established a prima facie case, Defendants may produce rebuttal evidence that entry would be "timely, likely, and sufficient in its magnitude, character, and scope to deter or counteract the competitive effects of concern." *Aetna*, 240 F. Supp. 3d at 52 (quoting Horizontal Merger Guidelines § 9). Plaintiffs will show at trial that entry in relevant markets is not likely, timely, or sufficient to restore competition lost from the acquisition, even accounting for the proposed divestitures.

decade; such evidence applies across both the pleaded O&D markets (where Plaintiffs allege harm) and other markets.

The cases Defendants cite accord with this principle. Contrary to Defendants' assertion, in *New York v. Deutsche Telekom AG*, the court did not hold that efficiencies do not need to be traceable to consumers in the individual cellular market areas where plaintiffs alleged harm. Defendants in that case asserted efficiencies in the form of improved service and reduced marginal costs that would be passed on to consumers. *Deutsche Telekom*, 439 F. Supp. 3d 179, 208–09 (S.D.N.Y. 2020). The court's opinion specifically noted that defendants claimed these efficiencies would "decrease consumer prices," and "would improve the speeds at which *current subscribers* could use data services," which defendants valued at "over $15 per month *per subscriber*—all effects that the court found would benefit consumers in the markets in which plaintiffs alleged harm. *See id.* at 209, 210, 214 (emphasis added). *Deutsche Telekom* does not suggest that a Section 7 case should be resolved by an analysis of an acquisition's likely effects on competition in markets not defined by Plaintiffs, posited by Defendants, but, rather, that efficiencies must redound to consumers in the markets where the alleged harm would purportedly occur. The same is true here.

## II.  CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion *in Limine* Regarding Purported Out-of-Market Benefits.

11

Dated: September 26, 2023					Respectfully submitted,

/s/ Edward W. Duffy
Edward W. Duffy
Daniel Loevinsohn
John R. Thornburgh II
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov

/s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov

/s/ C. William Margrabe
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC 20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov

*Attorneys for the United States of America, the Commonwealth of Massachusetts, and the District of Columbia, and on behalf of all Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Edward W. Duffy
Edward W. Duffy
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov