## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al.

*Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.

*Defendants*.

Case No. 1:23-cv-10511-WGY

GABRIEL GARAVANIAN, et al.

*Plaintiffs*,

v.

JETBLUE AIRWAYS CORPORATION and
SPIRIT AIRLINES, INC.

*Defendants*.

Case No. 1:23-cv-10678-WGY

### NON-PARTY BREEZE AVIATION GROUP, INC.'S UNOPPOSED MOTION TO SEAL CONFIDENTIAL MATERIALS

Pursuant to Local Rule 7.2, the Stipulated Joint Protective Order in the above-captioned actions, and the Joint Proposed Confidentiality Protocols in the above-captioned actions, non-party Breeze Aviation Group, Inc. ("Breeze") respectfully moves the Court to enter an order to place under seal—through targeted redactions—highly confidential information contained in (i) certain deposition designations from the Transcript of the Deposition of David Neeleman (Breeze's Chief Executive Officer), dated July 17, 2023 (the "Neeleman Deposition"), and (ii) documents produced by Breeze (in response to party subpoenas) that are reflected in Neeleman Deposition Exhibits 3,

1

5-6, and 8, in a document bates numbered BREEZE – 032001-07, and in the "Unified Ticket Data" exhibit on Plaintiffs' trial exhibit list in Case No. 1:23-cv-10511-WGY.  The parties in the above-captioned actions have informed Breeze that they may introduce these deposition designations and documents at trial, and Breeze seeks to seal through redaction the highly confidential information contained in these materials to the extent that any of them are offered and admitted into evidence. Breeze further requests that the sealed materials remain impounded until further order of the Court.

Pursuant to Local Rule 7.1, Breeze has met and conferred with the Plaintiffs in Case No. 1:23-cv-10511-WGY, with the Defendants in Case No. 1:23-cv-10511-WGY and in Case No. 1:23-cv-10678-WGY, and with the Private Plaintiffs in Case No. 1:23-cv-10678-WGY regarding Breeze's confidentiality designations and the relief sought in this motion.  These parties have informed Breeze in writing that they do not oppose Breeze's motion but reserve the right to request that the Court unseal specific Breeze documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

Recognizing that the public's right to access trial materials is "not unfettered," the First Circuit instructs that the "court must carefully balance the competing interests that are at stake in the particular case" when a party requests sealing of judicial records.  *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998).   Breeze's unopposed motion is based on two "important countervailing interests, [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F. 3d at 10).  First, Breeze moves to redact from the public record personal information of individuals, the disclosure of which would infringe upon the privacy rights of those individuals.   Second, Breeze moves to redact from the public record confidential proprietary or competitively sensitive business information, the disclosure of which would likely

result in serious competitive injury to Breeze. Breeze has endeavored to narrow its confidentiality claims to the fullest extent possible by proposing targeted redactions. The narrow categories of information that Breeze seeks to keep confidential are set forth below.[1]

## I. CONFIDENTIAL INFORMATION THAT IMPLICATES INDIVIDUAL PRIVACY INTERESTS.

"Privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records. Third-party privacy interests, in particular, have been referred to as a venerable common law exception to the presumption of access, and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted).

Here, Breeze moves to redact from Neeleman Deposition Exhibit 5 and from Neeleman Deposition Exhibit No. 6 only personal phone numbers. Courts routinely accept targeted redactions of phone numbers. *See, e.g.*, *Jean-Pierre v. J&L Cable TV Servs.*, No. 1:18-cv-11499, 2021 WL 6773087, at *2 (D. Mass. June 28, 2021) (named plaintiffs' personal contact information should remain redacted because those individuals maintained a "legitimate privacy interest in their contact information and there [was] no compelling countervailing interest which require[d] the public disclosure of that information"); *Santiago Garcia v. Costco Wholesale Corp.*, No. 19-1082, 2020 WL 3669642, at *4 (D.P.R. July 6, 2020) ("There is a recognized privacy interest in keeping personal facts away from the public eye.") (internal citations and quotations omitted); *NFocus Consulting Inc. v. Uhl*, No. 2:20-CV-5106, 2020 WL 6791232, at *2 (S.D. Ohio Nov. 19, 2020) (redacting personal cell phone numbers is "narrowly tailored and balances [the moving party's] concern of protecting the witness with the public's interest in accessing the record in this case");

---

[1] On September 18, 2023, Breeze provided the parties in the above-captioned actions with redacted copies of the deposition designations and documents at issue on this motion that could be used for public disclosure.

*Am. Auto. Ass'n of N. Cal., Nevada & Utah v. Gen. Motors LLC*, No. 17-CV-03874, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019) (granting motion to seal documents containing personal identifiable information including phone numbers).

## II.   CONFIDENTIAL PROPRIETARY OR COMPETITIVELY SENSITIVE BUSINESS INFORMATION.

Breeze also moves to seal—again, solely through targeted redactions—portions of the following deposition designations and documents that contain confidential proprietary or competitively sensitive business information.  As set forth in the supporting Declaration of Tom Doxey (Breeze's President) (the "Doxey Decl."), a copy of which is attached hereto as Exhibit A, Breeze has taken reasonable efforts to maintain the secrecy of this information, which is sufficiently valuable and secret to afford a potential or actual advantage over others, and disclosure of this information to existing or potential business competitors, customers, or related parties would cause significant injury to Breeze's business, commercial, competitive, or financial interests.  [Doxey Decl. §§ 2-4.]

Breeze seeks redaction of:

- Certain Neeleman Deposition designations that reflect information about Breeze's potential acquisition of certain used aircraft. These designations reflect competitively sensitive information related to Breeze's future plans and strategy, including Breeze's ongoing strategic initiatives that impact Breeze's immediate and future competitive decision-making. The discussion around Breeze's potential acquisition of certain used aircraft is under active negotiation with relevant counterparties, and disclosure of Breeze's interest in acquiring these used aircraft, and on what terms, would seriously disadvantage Breeze's competitive ability to consummate this transaction on Breeze's desired terms.  [Doxey Decl. § 6.]

- Certain Neeleman Deposition designations, Neeleman Deposition Exhibit 3, and the document bates numbered BREEZE – 032001-07 to the extent that they reflect information about Breeze's non-public interest in, and evaluation of, potential strategic combinations with other air carriers. This information reflects Breeze's competitively sensitive (i) future plans and strategy, including network planning, strategic planning regarding potential partnerships or mergers with other airlines or investing in new product lines or ancillary services, and ongoing strategic initiatives that impact

Breeze's immediate and future competitive decision-making; (ii) pricing strategy; and (iii) financial data. This information exposes how Breeze analyzes network planning and profitability, as well as projected cost and revenue synergies of the combined entities. Disclosure of this analysis and related projections could impact Breeze's ability to successfully negotiate and consummate a strategic combination in the future. In addition, disclosure of non-public financial data of Breeze that went into the analysis of this transaction would further harm Breeze by providing competitors with insight into Breeze's financial strengths and weaknesses that would otherwise not be available to them. [Doxey Decl. § 7.]

- Certain portions of Neeleman Deposition Exhibit 8 that reflect:

  o Breeze exploring changes to its current fleet make-up pursuant to agreements with counterparties on terms that have yet to be agreed or finalized. This information reflects Breeze's competitively sensitive (i) future plans and strategy, including network planning, strategic planning regarding potential partnerships or mergers with other airlines or investing in new product lines or ancillary services, and ongoing strategic initiatives that impact Breeze's immediate and future competitive decision-making; (ii) pricing strategy; and (iii) financial data. Disclosure of Breeze's desire to change the make-up of its current fleet, and the reasons therefor, could negatively impact Breeze's ability to enter into such transactions on favorable terms. [Doxey Decl. § 8(a).]

  o Breeze's ongoing settlement negotiations with a major supplier. This information provides insight into Breeze's competitively sensitive future plans and strategy, including strategic planning regarding supplier terms that impacts Breeze's immediate and future competitive decision-making, and reflects customer names and specific pricing or discount information. Disclosure of the information about Breeze's ongoing settlement negotiations with the major supplier would seriously disadvantage Breeze's competitive ability to obtain favorable settlement terms. [Doxey Decl. § 8(b).]

  o Competitively sensitive financial data in the form of financial cash balance projections prepared for Breeze's Board of Directors. The projections include the impact of various potential cash raises via various forms of transactions, disclosure of which would be competitively damaging to Breeze as it negotiates the terms of these transactions. In addition, these projections show—in great detail—Breeze's projected cash positions in future quarters, which competitors could use to target Breeze in route selections and other strategic decisions. [Doxey Decl. § 8(c).]

  o Competitively sensitive pricing strategy information that lays out Breeze's revenue and expenses relating to Breeze's operations as a charter flight operator. This is a highly competitive segment of the industry, and disclosure of these details would have a significantly injurious impact on Breeze's ability to maintain and grow its charter operations. [Doxey Decl. § 8(d).]

- o Competitively sensitive financial data related to a full-year 2023 forecast prepared for Breeze's Board of Directors. The projections include the impact of industry-wide and company-specific pressures on Breeze and Breeze's projected year-end operating income. These projections show—in great detail—Breeze's projected strong and weak financial positions, which competitors could use to target Breeze in route selections and other strategic decisions. [Doxey Decl. § 8(e).]

- o Competitively sensitive pricing strategy and revenue data related to various Breeze ancillary revenue initiatives. Ancillary revenue is a highly competitive segment of airline pricing, and disclosure of this data would have a significantly injurious impact on Breeze's competitive edge in this regard. [Doxey Decl. § 8(f).]

- o Confidential per-passenger pricing, strategy, and revenue data related to various Breeze ancillary revenue initiatives. Ancillary revenue is a highly competitive segment of airline pricing, and disclosure of this data would have a significantly injurious impact on Breeze's competitive edge in this regard. [Doxey Decl. § 8(g).]

- o Breeze's 2023 commercial roadmap and operations roadmap, which reflect ongoing strategic initiatives that impact Breeze's immediate and future competitive decision-making. These roadmaps lay out Breeze's plans for rolling out strategic program additions and adjustments. These program additions and adjustments are commercially sensitive because they identify to competitors Breeze's priorities and timing for roll-outs of new revenue and operational initiatives. [Doxey Decl. § 8(h).]

- Certain Breeze booking data contained in the "Unified Ticket Data" exhibit on Plaintiffs' trial exhibit list in Case No. 1:23-cv-10511-WGY. This booking data reflects highly confidential and competitively sensitive information regarding Breeze's pricing strategy, financial data, and customer names. Disclosure of Breeze booking data would be extraordinarily damaging to both Breeze and the traveling public. This data shows, on the most granular level, exactly how Breeze prices each reservation, what other services were purchased, when along the booking curve it was purchased, and more. If another carrier took this data and reacted to it, they could precisely allocate a very small amount of their own capacity to effectively price Breeze out of everything that works well for Breeze. While many carriers are abandoning small cities (over 120 airports have lost more than 25% of their service in the last few years), Breeze is growing in those cities and providing destinations like Las Vegas, Orlando, Charleston, and others that people really want to travel to, while doing it with low fares. Disclosure of Breeze's booking data would harm the traveling public by almost certainly increasing fares in these markets—if such markets were sustainable at all after the disruption that would likely result. [Doxey Decl. § 9.]

Each of these targeted redaction requests is squarely grounded in case law and is necessary to protect against serious competitive injury to Breeze.

First, disclosure of Breeze's above-referenced future planning and strategy information would significantly harm Breeze's competitive standing. Competitors could, for example, use the plans to preempt Breeze's growth plans by targeting growth at the same place or pursue a particular partnership more aggressively armed with the knowledge that Breeze plans to pursue a similar partnership. *Williams v. Apple, Inc*., No. 19-CV-04700, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (information that "would provide competitors with insight that they could use to unfairly compete" qualifies as "business information that might harm a litigant's competitive standing"). As a result, courts accept sealing of future plans or strategy documents. *See, e.g.*, *U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should … be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

Breeze's future planning and strategy information also reflects investment of substantial time and resources by Breeze to identify attractive strategies for growth. Thus, the information is proprietary and disclosure would unfairly advantage competitors against Breezes. *See, e.g.*, *Bauer Bros. LLC v. Nike, Inc*., No. 09-CV-500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate

Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. CV 11-10294, 2013 WL 12122289, at *2 (C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding … prospective projects") (internal citation omitted).

Breeze does not seek to seal information about future plans that are "stale," and has proposed targeted redactions mindful of the need for public access to portions of documents that are relevant to the issues at trial.  Breeze's proposed redactions leave available to the public any portions of documents that reflect plans or information regarding plans that no longer provide an insight into what Breeze plans for the future.  Breeze also does not seek to seal any information regarding future network plans that have been made public.

Instead, Breeze seeks to redact information about a narrow set of highly sensitive, non-public future plans and strategic initiatives that would give Breeze's competitors a preview of how Breeze plans to make competitive decisions.  The information proposed to be sealed is therefore highly relevant for competition at present, is a product of substantial time and resources by Breeze to identify attractive strategies for growth, and is highly competitively sensitive.

Second, as explained above, Breeze seeks to redact information about its pricing strategies. Pricing in the airline industry is technical and airlines spend considerable resources to monitor other airlines' pricing to remain competitive and find an edge to win customers.  Allowing competitors access to detailed confidential information that reveals Breeze's pricing strategies, including, for example, how and when Breezes decides to match the pricing of competitors or undercut pricing of competitors, would "provide competitors with insight that they could use to unfairly compete" and harm Breeze's competitive standing. *Williams*, 2021 WL 2476916, at *4, 7; *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 3:20-CV-01765,

2022 WL 3578260, at *2 (S.D. Cal. Aug. 18, 2022) (finding that "pricing models and approaches," if disclosed, could hurt competitive standing).

Third, as discussed above, Breeze seeks to redact information that reveals detailed, granular financial data regarding revenue, cost, and profitability for Breeze's flights. Detailed financial data are routinely sealed in federal court proceedings. *See, e.g., Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (finding that "confidential financial information … outweigh the presumption of access"); *Cohen v. Trump*, No. 10-CV-0940, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016) ("Where parties have been able to point to concrete factual information or expert testimony that the material sought to be sealed contained confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data, courts have been willing to find that information confidential.") (internal citations omitted); *Trapp v. SunTrust Bank*, No. 1:15-CV-937, 2016 WL 6833986, at *2 (M.D.N.C. Nov. 18, 2016) ("The court may seal … confidential and proprietary commercial information such as highly sensitive financial and business information.") (internal quotations and citations omitted).

The need to prevent disclosure of granular financial data regarding Breeze's flights is particularly important in the airline industry, where airlines are constantly assessing where to deploy their aircraft to compete more effectively. Access to granular confidential data that would allow a competitor to conclude that Breeze has struggled to generate profits on a certain route or at a certain airport, for example, could motivate that competitor to dial up the pressure for Breeze to exit those routes or airports by adding more capacity to those routes or airports. Conversely, access to granular financial data would allow a competitor to identify routes or airports where

Breeze is successfully generating substantial revenue as attractive strategic targets for future growth.

Further, given the significant advantage that disclosure of this data would provide to Breeze's competitors at substantial harm to Breeze, *see Williams*, 2021 WL 2476916, at *4, Breeze does not view historical granular financial data as stale. The information that competitors can glean from historical financial data regarding relative profits, revenues, or costs of certain routes remain highly relevant to competition today and in the future. Breeze, however, does not propose to seal general references regarding profitability, costs, or revenue in certain regions or airports.

Finally, as noted above, Breeze seeks to redact information that reveals certain corporate customer names and references to specific customer pricing. This Court has found that "specific customer lists and pricing information … can constitute trade secrets where the information provides its holder with a competitive advantage." *See Bruno Int'l Ltd. v. Vicor Corp.*, No. 14-10037, 2015 WL 5447652, at *12 (D. Mass. Sept. 16, 2015) (internal citations omitted). Revealing identities of Breeze's corporate customers or specific terms provided to these customers would allow competitors to target Breeze's customers with knowledge they have gained regarding Breeze's customers and the terms provided to those customers through this trial. *See Trade W. Inc. v. E.-W. Aloha Corp.*, No. CV 01-00096, 2016 WL 11713185, at *2 (D. Haw. Aug. 22, 2016) (public disclosure of customer lists would harm a litigant's competitive standing).

Disclosure of customer names would also infringe upon the privacy rights of Breeze's customers. As referenced above, "[t]hird-party privacy interests … have been referred to as a venerable common law exception to the presumption of access and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted).

Similarly, specific customer pricing is a trade secret, the disclosure of which would cause significant harm to Breeze's competitive position.  *See, e.g.*, *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (pricing information "plainly falls" within the definition of trade secrets and should be sealed).

## CONCLUSION

For all the foregoing reasons, Breeze respectfully requests that this Court grant Breeze's Unopposed Motion to Seal Confidential Materials.

Respectfully submitted,

BREEZE AVIATION GROUP, INC.
By its attorney,

Dated:  September 29, 2023

*/s/ Andrew T. O'Connor*
Andrew T. O'Connor (BBO # 664811)
John F. White III (BBO# 706589)
GOULSTON & STORRS PC
400 Atlantic Avenue
Boston, MA 02110
Telephone: (617) 482-1776
Facsimile: (617) 574-4112
E-mail:  aoconnor@goulstonstorrs.com
               jwhite@goulstonstorrs.com

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), I hereby certify that, on multiple occasions, Breeze met and conferred in good faith with counsel for the Plaintiffs in Case No. 1:23-cv-10511-WGY, with counsel for the Defendants in Case No. 1:23-cv-10511-WGY and in Case No. 1:23-cv-10678-WGY, and with counsel for the Private Plaintiffs in Case No. 1:23-cv-10678-WGY regarding the confidentiality of the Breeze materials identified and discussed above.  Each of the parties has informed Breeze that they do not oppose Breeze's motion to seal but reserve the right to request that the Court unseal specific Breeze documents or deposition testimony and/or to address issues raised during any future court hearing regarding confidentiality.

*/s/ Austin J. Riter*
Austin J. Riter (*pro hac vice pending*)
PARR BROWN GEE & LOVELESS, P.C.
101 South 200 East, Suite 700
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Fax: (801) 532-7750
ariter@parrbrown.com

*Counsel for Non-Party Breeze Aviation Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 29, 2023, I electronically filed the foregoing with the Clerk's Office using the Court's CM/ECF system, which will send notification of this filing (NEF) to all registered participants, and paper copies will be sent to those indicated as non-registered participants.

*/s/ Andrew T. O'Connor*
Andrew T. O'Connor