UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA, et al.,

    Plaintiffs,

v.

JETBLUE AIRWAYS CORPORATION
and SPIRIT AIRLINES, INC.,

    Defendants.

Civil Action No.: 1:23-cv-10511-WGY

**NON-PARTIES FRONTIER AIRLINES, INC. AND FRONTIER GROUP HOLDINGS, INC.'S MOTION FOR AN ORDER OF IMPOUNDMENT OF <u>PROPOSED TRIAL EXHIBITS</u>**

Pursuant to Local Rule 7.2 and the Joint Proposed Confidentiality Protocol [Dkt. No. 154] non-parties Frontier Airlines, Inc. and Frontier Group Holdings, Inc.[1] (collectively "Frontier") respectfully move the Court to enter an order of impoundment, placing under seal certain portions of proposed trial exhibits and deposition transcripts that contain highly confidential, competitively sensitive information (collectively, the "Frontier Confidential Materials"). Frontier files this motion pursuant to Paragraph 5 of the Joint Proposed Confidentiality Protocol [Dkt. No. 154], which calls for non-parties to file a motion to seal confidential material by this date. While the proposed pre-trial order has not been entered by the Court, Frontier is nevertheless filing this motion out of an abundance of caution to ensure that its confidential business information remains under seal. Frontier respectfully submits that there is

---

[1] Both entities received a subpoena and are jointly represented.

good cause to impound the Frontier Confidential Materials until further order of the Court, as described further below.

## BACKGROUND

Frontier is not a party to this case. The Frontier Confidential Materials were produced in response to investigation by the Department of Justice in connection with Frontier's attempted merger with Spirit Airlines, Inc. ("Spirit"), a Civil Investigative Demand in connection with Defendants' proposed merger, and Rule 45 subpoenas from the parties. In addition, Plaintiffs and Defendants took the deposition of Frontier's CEO Barry Biffle twice in the past year and expect to call Mr. Biffle to testify at trial, during which time one or both parties may use the Frontier Confidential Materials or seek to elicit confidential information in connection with his testimony.

In total, the Frontier Confidential Materials, identified in Appendix A, are Frontier documents and deposition transcripts with proposed redactions for confidential, competitively sensitive information that the parties indicated they may use at trial through correspondence with counsel for Frontier and based on the Proposed Final Pretrial Order [Dkt. Nos. 191, 191-3, 191-4]. The parties have designated for use at trial many other Frontier documents for which Frontier does not request impoundment. Frontier has met and conferred with counsel for Plaintiffs and Defendants regarding impounding the Frontier Confidential Materials. Defendants do not oppose Frontier's requested sealing and Plaintiffs oppose only some of Frontier's proposed redactions. Appendix A identifies the documents and redactions in question, specifies which redactions the parties do not oppose and which ones Plaintiffs oppose, and describes the basis for sealing.

## ARGUMENT

"[T]he right to inspect and copy judicial records is not absolute," and non-public, commercially sensitive documents may be protected from public disclosure. *Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("Every court has supervisory power over its own records and files[.]"). Under First Circuit case law, the "court must carefully balance the competing interests that are at stake in the particular case" when considering a motion to impound. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). A non-party may file a document under seal when "good cause" exists to keep the information confidential. Fed. R. Civ. P. 26(c). Good cause exists when "harm [] would be sustained if the court did not allow the filing under seal." *Dunkin Donuts Franchised Restaurants, LLC v. Agawam Donuts, Inc.*, No. 07-cv-11444-RWZ, 2008 WL 427290 at *1 (D. Mass. Feb. 13, 2008). Documents revealing "business information that might harm a litigant's competitive standing" are the quintessential type of materials that courts protect because their disclosure can result in injury. *Nixon*, 435 U.S. at 598.

Here, there are two "important countervailing interests . . . [that] overwhelm the usual presumption" of the public's right of access to judicial records. *Siedle*, 147 F.3d at 10. First, Frontier is a non-party to this litigation. Second, Frontier narrowly requests impoundment of just portions of documents and transcripts that contain confidential and competitively sensitive information.

### A. Frontier is a Non-Party

Frontier is not a party to this action. Nevertheless, the parties have designated for use at trial a substantial volume of Frontier's internal business documents and indicated they will call Mr. Biffle to testify at trial. Frontier has consistently maintained that the Frontier Confidential Materials contain confidential, competitively sensitive information. The law offers non-parties special protection for confidential, competitively sensitive information: "Third-party privacy interests, in particular, have been referred to as 'a venerable common law exception to the presumption of access,' and 'weigh heavily in a court's balancing equation[.]'" *United Sates. v. Kravetz*, 706 F.3d 47, 62 (1st Cir. 2013) (citation omitted).

3

### B. Frontier Narrowly Moves to Impound Confidential and Competitively Sensitive Information.

The Frontier Confidential Materials are mainly highly confidential presentations to Frontier's Board of Directors, network planning presentations, and other internal strategy documents. The remainder are highly confidential portions of (i) deposition testimony of Mr. Biffle; (ii) a letter submitted to the Department of Justice; and (iii) a proposal to JetBlue to acquire certain Spirit slot pairs and leasehold interests at New York's LaGuardia Airport as part of a divestiture agreement. As detailed in Appendix A, Frontier moves to impound only confidential and competitively sensitive information. It is well-settled that documents revealing "business information that might harm a litigant's competitive standing" are the type of materials that courts protect because their disclosure can result in injury. *Nixon*, 435 U.S. at 598.

#### 1. Future Plans and Strategy

Frontier moves to impound competitively sensitive information related to its future plans and strategy. Frontier regularly generates network plans that specify where, when, and how it will fly its aircraft in the future. Frontier's strategic plans also include information discussing ongoing strategic initiatives that impact its immediate and future competitive decision-making, such as budget plans and revenue projections.

Disclosure of these types of information would significantly harm Frontier's competitive standing. Competitors could, for example, use the plans to preempt Frontier's growth plans by targeting growth in the same places. *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *4 (N.D. Cal. June 17, 2021) (information that "would provide competitors with insight that they could use to unfairly compete" qualifies as "business information that might harm a litigant's competitive standing" (citation omitted)). As a result, courts routinely accept sealing of future plans or strategy documents. *See, e.g., United States v. IBM Corp.*, 163 F.3d 737, 739 n.3

4

(2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 3:17-cv-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business").

The future plans and strategy documents reflect investment of substantial time and resources by Frontier to identify attractive strategies for growth. That information is proprietary and disclosure would unfairly advantage competitors against Frontier. *See, e.g., Bauer Bros. LLC v. Nike, Inc.*, No. 09-CV-500-WQH-BGS, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. CV 11-10294 MMM (JCGx), 2013 WL 12122289, at *2 (C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding . . . prospective projects"). Courts regularly seal competitively sensitive information of this sort. *See, e.g., In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Litig.*, No. 10-02193-RWZ, 2012 WL 5239726, at *1 (D. Mass. Oct. 24, 2012) (granting motion for protective order to protect "confidential commercial information about [a bank's] internal policies and procedures, as well as the internal policies and procedures of its third-party vendor" because material at issue "could unfairly disadvantage [the bank and its vendor] vis-à-vis their economic competitors."

Frontier does not seek to seal information regarding future plans and strategy that is "stale," and has proposed targeted redactions mindful of the need for public access to portions of documents that are relevant to the issues at trial. For example, Frontier does not seek to seal information regarding future network plans that have been made public, nor does it seek to redact information that is no longer relevant to Frontier's future plans.

### 2. Pricing Strategy

Frontier also moves to seal information pertaining to its pricing strategies. Allowing competitors access to detailed confidential information that reveals Frontier's pricing strategies, including, for example, how and when Frontier decides to match the pricing of competitors or undercut pricing of competitors, would "provide competitors with insight that they could use to unfairly compete" and harm Frontier's competitive standing. *Williams*, 2021 WL 2476916, at *4, *7; *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 3:20-CV-01765-RBM-BGS, 2022 WL 3578260, at *2 (S.D. Cal. Aug. 18, 2022) (finding that "pricing models and approaches," if disclosed, could hurt competitive standing).

### 3. Financial Data

Frontier also moves to redact detailed and granular financial data regarding revenue, cost, and profitability of its flights, as well as salary information. Detailed financial data are routinely sealed in federal court proceedings. *See, e.g., Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (finding that "confidential financial information . . . outweigh the presumption of access"); *Cohen v. Trump*, No. 10-CV-0940-GPC-WVG, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016) ("Where parties have been able to point to concrete factual information or expert testimony that the material sought to be sealed contained confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data, courts have been

willing to find that information confidential."); *Trapp v. SunTrust Bank*, No. 1:15-CV-937, 2016 WL 6833986, at *2 (M.D.N.C. Nov. 18, 2016) ("The court may seal . . . confidential and proprietary commercial information such as highly sensitive financial and business information.") (internal quotation marks and citations omitted).

Frontier needs to prevent disclosure of granular financial data because competing airlines are constantly assessing where to deploy their aircraft to compete more effectively. A competitor could use Frontier's granular financial data to, for example, conclude that Frontier has struggled to generate profits on certain routes or at certain airports and decide to dial up the pressure for Frontier to exit those routes or airports by adding more capacity there. Or a competitor could identify routes or airports where Frontier is successfully generating substantial revenue as attractive strategic targets for future growth. This concern is particularly acute for Frontier because it is vastly smaller than the Big Four (American, Delta, United, and Southwest). The Big Four in particular have repeatedly pushed and kept Frontier out of routes by aggressively adding capacity and matching Frontiers' ultra-low fares, leveraging their massive scale advantage to absorb short-term revenue losses that Frontier cannot.

Given the significant advantage that disclosure of this data would provide to Frontier's competitors at substantial harm to Frontier, *see Williams*, 2021 WL 2476916, at *4, Frontier's historical granular financial data is not stale. Competitors can glean from current *or* historical financial data important information regarding relative profits, revenues, or costs of certain routes, and thus that data remain highly relevant to competition today and in the future.

### 4. Confidential Contract Terms

Frontier also seeks to impound certain confidential contract terms, including the purchase price of JetBlue and Frontier's divestiture agreement in which Frontier would acquire certain Spirit slot pairs and leasehold interests at New York's LaGuardia Airport. Negotiated contract terms

7

constitute paradigmatic trade secrets that, if disclosed, would harm a company's competitive standing in the market. *See, e.g., In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (holding that contract terms contained in licensing agreement are "the precise sort of information . . . that plainly falls within the definition of 'trade secrets'"). Disclosure of these terms would "provide competitors with insight that they could use to unfairly compete," *Williams*, 2021 WL 2476916, at *4, or put Frontier "at a disadvantage in future negotiations" with other partners that could leverage that information to extract more favorable terms from Frontier. *See Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2015 WL 984121, at *3 (N.D. Cal. Mar. 4, 2015) ("[T]he Court is satisfied that disclosing the terms of these agreements would put Specialized at a disadvantage in future negotiations for similar agreements.").

### 5. Narrow Tailoring

Frontier's motion for impoundment is narrowly tailored. As identified in Appendix A, Frontier seeks to impound only limited portions of the Frontier Confidential Materials through redactions. This protects Frontier's confidential information while permitting the public to have the fullest possible access otherwise. Therefore, the Court should impound the Frontier Confidential Materials as requested in Appendix A.

Finally, if Mr. Biffle is called as a witness during trial, the Court should impound any portions of Mr. Biffle's testimony that would otherwise result in the public disclosure of any highly confidential and competitively sensitive Frontier information, until further order of the Court.

## CONCLUSION

For the foregoing reasons, Frontier respectfully requests that this Court grant its Motion for an Order of Impoundment.

Dated: September 29, 2023

Respectfully submitted,

*/s/ Jennifer L. Giordano*
Jennifer L. Giordano (BBO# 650537)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004-1304
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
jennifer.giordano@lw.com

*Attorney for Frontier Airlines, Inc. and Frontier Group Holdings, Inc.*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), non-parties Frontier Airlines, Inc. and Frontier Group Holdings, Inc. hereby certify that they met and conferred with counsel for Plaintiffs and Defendants regarding the relief requested in this motion. Defendants do not oppose this motion. The proposed confidentiality designations that Plaintiffs oppose are set forth in Appendix A.

*/s/ Jennifer L. Giordano*
Jennifer L. Giordano

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

*/s/ Jennifer L. Giordano*
Jennifer L. Giordano