IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Case No. 1:23-cv-10511-WGY |

### PLAINTIFFS' MOTION TO EXCLUDE DEFENDANTS' LATE-DISCLOSED AND SELF-SELECTED EVIDENCE OF SPIRIT ROUTE CHANGES

Two weeks prior to trial, Defendants disclosed to Plaintiffs that Spirit plans to stop service on three routes to and from Aguadilla, Puerto Rico and Ponce, Puerto Rico. Spirit decided to stop flying these routes on October 4 and subsequently informed other third parties about this decision, but Defendants waited until October 16 before telling Plaintiffs. Despite extensive efforts to confer on a path forward, Defendants have offered only limited discovery regarding these route changes to Spirit's network, and none at all about similar Spirit network plans to add routes where JetBlue also competes. Defendants' plan to use this late-disclosed and self-selected evidence at trial attempts the sort of prejudicial "trial by ambush" that the federal rules are designed to avoid. *See Macaulay v. Anas*, 321 F.3d 45, 50 (1st Cir. 2003). Moreover, this incomplete evidence has minimal probative value because Spirit's decisions were made long after signing the merger agreement, rendering them subject to manipulation and therefore entitled to little or no weight. *See*, *e.g.*, *Chi. Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 434 (5th Cir. 2008). Therefore, Plaintiffs respectfully request that the Court exclude evidence of Spirit's eleventh-hour route changes.

1

## BACKGROUND

Spirit has recently faced operational challenges as a result of problems with Pratt & Whitney-manufactured "NEO" engines, which Spirit and many other airlines use on Airbus A320 family aircraft. As a result of the NEO engine problems, Spirit has taken a number of aircraft out of service and anticipates that about ten to fifteen percent of its fleet will be grounded into 2024. This problem is not limited to Spirit. It also impacts JetBlue and many other U.S. carriers that operate aircraft equipped with the same NEO engines.

The grounding of aircraft due to the NEO engine issues has also prompted the decision to stop service in some markets. In particular, Spirit has decided to stop flights on three routes as of December 4, 2023 in response to NEO engine issues: (1) Aguadilla-Orlando, (2) Aguadilla-Fort Lauderdale, and (3) Ponce-Orlando (collectively, the "Puerto Rico Routes"). Today, Spirit and JetBlue not only compete with each other on all three of these Puerto Rico Routes, but their combined shares on these routes are so high that they render JetBlue's proposed acquisition of Spirit presumptively illegal under Section 7 of the Clayton Act. Spirit's decision to exit the Puerto Rico Routes is unusual because Spirit rarely exits markets. Indeed, Spirit's historical practice is to *enter* new routes and remain there. For example, Spirit has served Aguadilla for approximately fifteen years continuously, increasing its capacity there by more than any other airline during that time. Spirit also entered a number of new markets earlier this year, including routes between Boston and several hub cities of legacy carriers: Charlotte, Dallas, Houston, Los Angeles, and Phoenix.

Defendants' counsel have represented that Spirit made its decision to stop service on the Puerto Rico Routes on October 4, after apprising its counsel on October 3. Plaintiffs currently know little about the circumstances leading up to Spirit's decision, including when Spirit began evaluating whether to exit these three routes and what considerations prompted that evaluation.

What Plaintiffs do know, from Defendants' counsel, is that Spirit informed the airport authority responsible for the Aguadilla and Ponce airports of its decision on October 9, but Defendants waited until October 16 to inform Plaintiffs. They have not explained why they waited 12 days after reaching a decision to do so.

Since October 16, Plaintiffs have been conferring with Defendants about their stated intention to make Spirit's decision to exit these Puerto Rico Routes a subject of the forthcoming trial. Under the Scheduling and Case Management Order, ECF No. 79, fact discovery closed on June 28, 2023, and expert discovery closed on August 31. Therefore, Spirit's decision about the Puerto Rico Routes was not subject to discovery in this case, and Defendants have offered to provide only incomplete and inadequate discovery.

*First*, Defendants have offered a supplemental deposition of John Kirby, Spirit's vice president of network planning, but they have not confirmed which Spirit employees, other than Mr. Kirby and two other employees (Matthew Glover and Pavlina Patrana), were involved in the decision, including the extent to which Spirit CEO Ted Christie and Spirit CCO Matthew Klein (who are both expected to testify at trial) were involved. *Second*, Spirit pre-selected the documents it was willing to produce about the Puerto Rico Routes and has declined to produce documents from custodians other than Mr. Kirby. Spirit has limited that production to a subset of Mr. Kirby's files, many of which that Defendants had collected and reviewed before disclosing Spirit's decision to Plaintiffs on October 16, using search terms that they deemed appropriate. *Third,* Spirit has not offered to make Mr. Christie, Mr. Klein, or any Spirit employee other than Mr. Kirby available for a supplemental deposition, despite their possible involvement in the decisions at issue. *Finally*, Spirit has refused to provide discovery relating to other route entry

3

decisions that have happened since the close of fact discovery, including Spirit's recent decisions to begin service on routes where it would then compete with JetBlue.

## ARGUMENT

### I. Plaintiffs would be prejudiced by introduction of late-produced evidence

Defendants' discovery disclosures relating to Spirit's decision to exit the three Puerto Rico Routes are untimely, and permitting Defendants to rely on this untimely evidence at trial would prejudice Plaintiffs. In the context of a fast-track litigation brought under Section 7 of the Clayton Act—which Defendants urged be tried as quickly as possible—Defendants' twelve-day delayed disclosure is both unreasonable and grounds to exclude the late-disclosed evidence.

A party has a duty to supplement its responses to discovery requests "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party does not supplement "in a timely manner," the court has the authority to exclude the late-disclosed evidence. One source of this authority is the Federal Rules, which provide that a failure to timely disclose discovery means that "the party is not allowed to use that information or witness . . . at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). This rule "requires the near automatic exclusion of Rule 26 information that is not timely disclosed." *Wilson v. Bradlees of New Eng., Inc.*, 250 F.3d 10, 20 (1st Cir. 2001). The Court also has "implicit authority" to exclude "material when not *timely* produced." *Fusco v. Gen. Motors Corp.*, 11 F.3d 259, 266 (1st Cir. 1993).

"[T]he focus of the preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure." *Thibeault v. Square D Co.*, 960 F.2d 239, 246 (1st Cir. 1992). The court also considers "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late

4

disclosure," and "what the late disclosure portends for the court's docket." *Macaulay*, 321 F.3d at 51. "[I]t is the obligation of the party facing [exclusion] to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction [other than exclusion]." *Wilson*, 250 F.3d at 21. Exclusion does not require a finding of intentionality or bad faith because "in the Rule 26(e) context, preclusion can be imposed in response to a party's subversion of the trial process, even if the responsible party was guilty of laxity rather than bad faith." *Thibeault*, 960 F.2d at 245l; *see also HipSaver Co. v. J.T. Posey Co.*, 497 F. Supp. 2d 96, 104 (D. Mass. 2007) ("[N]egligence is not substantial justification for non-production.").

Here, the factors relevant to the preclusion inquiry weigh in favor of excluding Defendants' late-disclosed evidence regarding Spirit's exit from the Puerto Rico Routes. Most importantly, the timing and narrowness of Defendants' disclosure would make it impossible to "palliate the ill effects stemming from the late disclosure" without delaying trial and disrupting the Court's docket. *Thibeault*, 960 F.2d at 246. When new evidence is disclosed very close to trial, it presents the court with "a Hobson's choice: either force the [other side] to trial without appropriate preparation (such as targeted pretrial discovery) or to reopen discovery and vacate the trial assignment." *Macaulay*, 321 F.3d at 45. And even when it might be possible to conduct some discovery on eleventh-hour evidence before trial begins, "it is [n]either reasonable [n]or fair to expect a litigant to bear so onerous a burden," because it requires the innocent party to engage in "a frantic, last-minute scramble to investigate the emergent" evidence, and "this full-court press [must] take[] place during the last few days of the trial period." *Thibeault*, 960 F.2d at 247. In addition to the unfairness of imposing this fire drill on an innocent party, it would be prejudicial to impose the time and expense of such last-minute discovery on Plaintiffs. *See Genereux v. Raytheon Co.*, 754 F.3d 51, 60 (1st Cir. 2014).

That prejudice would be further exacerbated by the fact that the last-minute discovery Defendants have offered would be incomplete, leaving Plaintiffs "without the [full] means to explore and challenge" the newly disclosed evidence. *AVX Corp. v. Cabot Corp.*, 251 F.R.D. 70, 78 (D. Mass. 2008); *see also Valle v. Vornado Realty Trust*, 2009 WL 10680925, at *1 (D.P.R. July 8, 2009) (excluding late-disclosed witness where "on the eve of trial [the other side] are devoid of information crucial for developing an effective cross examination"). Defendants' proposed disclosures are incomplete in two ways. *First*, Defendants have failed to give a complete picture of Spirit's decisions to exit the Aguadilla and Ponce routes. Most glaringly, they have limited their document collection and production to Mr. Kirby's files, even though Mr. Christie and Mr. Klein (both of whom are expected to testify in the first few days of trial) likely have documents relevant to these decisions. Similarly, Defendants have not agreed to make Mr. Christie, Mr. Klein, or any Spirit employee other than Mr. Kirby available for a supplemental deposition.

*Second*, although Defendants want to present evidence of *exit* decisions made after the close of discovery, they have declined to likewise produce discovery regarding Spirit's other recent decisions to *start* serving other routes, including those in which it has begun to compete with JetBlue. Such documents would provide a more complete picture of Spirit's network planning decisions since the close of discovery and the current number of overlap routes where Defendants currently compete with each other. But Defendants have refused to do so. If post-discovery network planning decisions are relevant at all, then all such decisions should be subject to discovery because "in the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Patterson*, 578 U.S. 266, 272 (2016). Conducting discovery about

only the late-breaking network planning decisions Defendants wish to highlight would prejudice Plaintiffs by permitting a one-sided restriction on the evidence the Court can consider.

Other factors also support preclusion. Because Plaintiffs would be unable to conduct adequate supplemental discovery of Spirit's entry and exit decisions without delaying trial, "allowing the belated disclosure would have a negative effect on [the Court's] docket." *Gonzalez-Rivera v. Centro Medico Del Turabo, Inc.*, 931 F.3d 23, 28 (1st Cir. 2019). Defendants' lack of justification for their delay in disclosing to Plaintiffs the evidence at issue likewise supports exclusion. *See*, *e.g.*, *Macaulay*, 321 F.3d at 52 (affirming preclusion where "appellant has not advanced any real justification for [evidence's] tardy emergence"). And, as discussed *infra* Part II, the evidence at issue is entitled to little or no weight, and therefore Defendants' "need for the challenged evidence" is minimal or non-existent, which is all the more reason to exclude it from consideration at trial. *Id*. at 51.

## II. Evidence regarding Spirit's decision to end service on the Aguadilla and Ponce routes is minimally probative and entitled to little, if any, weight

In addition to being untimely and incomplete, evidence related to Spirit's decision to stop competing with JetBlue on the three Puerto Rico Routes is entitled, at best, to minimal weight because the decision was made after Defendants signed their merger agreement. Because that minimal probative value pales in comparison to the undue prejudice that their use at trial would cause, *supra* Part I, it underscores the appropriateness of exclusion. *See* Fed. R. Evid. 403.

Courts considering possible antitrust violations have repeatedly recognized that evidence created after a merger agreement is signed is of limited value because it is "arguably subject to manipulation." *See, e.g., Chi. Bridge & Iron Co. N.V*, 534 F.3d at 434; *see also Hosp. Corp. of Am. v. FTC*, 807 F.2d 1381, 1384 (7th Cir. 1986) (Posner, J.) ("Post-acquisition evidence that is subject to manipulation by the party seeking to use it is entitled to little or no weight."). Whether

or not manipulation occurred is irrelevant; the mere possibility of manipulation is enough to render the evidence untrustworthy and entitled to little or no weight. *Chi. Bridge & Iron, N.V.*, 534 F3.d at 434 ("[T]he price reductions cited by the Respondents occurred well after the Complaint in this case issued and are the type of evidence that is wholly manipulable."). Here, the evidence at issue concerns decisions made long after Plaintiffs filed the complaint and months after discovery closed. These decisions by Spirit therefore must be viewed with great skepticism, and their limited probative value further supports exclusion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court preclude Defendants from introducing evidence concerning Spirit's decision to suspend service on the Puerto Rico Routes, including eliciting any testimony from fact or expert witnesses regarding this decision. Alternatively, should the Court allow Defendants to introduce such evidence, Plaintiffs request the Court accord it "little or no weight," *Hosp. Corp. of Am.*, 807 F.2d at 1384, because it was generated on the eve of trial, it is incomplete, and it ignores other, similar route changes that occurred after the close of discovery.

Dated: October 30, 2023					Respectfully submitted,

/s/ Edward W. Duffy
Edward W. Duffy
Arianna Markel
Brendan Sepulveda
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov

/s/ William T. Matlack
William T. Matlack (MA Bar No. 552109)
Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
Email: William.Matlack@mass.gov

/s/ C. William Margrabe
C. William Margrabe (*pro hac vice*)
Assistant Attorney General
Office of the Attorney General
400 6th Street NW, Suite 10100
Washington, DC 20001
Telephone: (202) 727-6294
Email: will.margrabe@dc.gov

*Attorneys for the United States of America, the Commonwealth of Massachusetts, and the District of Columbia, and on behalf of all Plaintiffs*

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that Plaintiffs conferred with counsel for Defendants in a good-faith effort to resolve or narrow the issues presented in this motion prior to filing. Defendants confirmed that they oppose the motion.

                                                */s/* Edward W. Duffy
                                                Edward W. Duffy
                                                U.S. Department of Justice, Antitrust Division
                                                450 Fifth Street, NW, Suite 8000
                                                Washington, DC 20530
                                                Phone: 202-812-4723
                                                Facsimile: 202-307-5802
                                                E-mail: edward.duffy@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

/s/ Edward W. Duffy
Edward W. Duffy
U.S. Department of Justice, Antitrust Division
450 Fifth Street, NW, Suite 8000
Washington, DC 20530
Phone: 202-812-4723
Facsimile: 202-307-5802
E-mail: edward.duffy@usdoj.gov