# Exhibit C

**Remarks by Charles Leocha at ACPAC meeting on July 28th 2022**

I am Charlie Leocha, President and co-founder of Travelers United.  I was also the First consumer member of this Advisory Committee appointed by Secretary Ray LaHood.

Sometimes I feel like life is deja-vu all over again. My apologies to Yogi Berra. It was more than a decade since I first forcefully fought for full transparency for ancillary fees. I have continued to bug the Office of Consumer Protections at DOT since the last major debate about ancillary fees.

The first debates came around 2010. Cnsumers had the friendliest Secretary of Transportation with whom I developed a close relationship. The head of DOT Enforcement and consumer protection division was on the consumers' side. And we had a friendly Congress.

We also had strong friends within the travel industry. I worked hand in glove with the distribution side of aviation. Like today, the American Society of Travel Agents

(now advisors), Sabre, Amadeus, and Travel Port, still the major GDSs of the day worked hard to bring a world of transparency to ancillary fee pricing.

It has been a long haul to get to this point. Some of us have been working here since the beginning, but most of the consumer advocates are here only for a short time.

**Initially, I have no appetite for this fight all over again.**

The first time I heard the subject of this meeting, I rolled my eyes and thought to myself – I have fought this battle too long and lost too often, even with good support. I really don't have the appetite for this fight again.

When first approached to be a member of the discussions I said I would demur. I even whined (yes, I do that occasionally) to John Breyault, the consumer member of the committee, about having to fight this same battle again. I was glad that I would be in Spain during this meeting.

But after my initial whining was follow by an enthusiastic response from John, he reminded me of how I felt a decade ago when this discourse was started.

I said to myself, "We are so close to knowing how much passengers will pay for an airline ticket including all ancillary fees; I can't leave the field without another lash. Plus, when DOT added their NPRM about families sitting together, I knew I was headed out to duel with the airline powers that be one more time.

Here I am. But this time we have a new NPRM that is focused on families and ancillary fees. Plus, after a dozen years, we may prevail. I certainly hope so.

**Let's look what we accomplished with the second passenger protection rulemaking back in 2012.**

Debate started early in 2010. I led the arguments together with Kevin Mitchell and leaders from the major GDSs to reveal all ancillary fees and make them available to passengers purchasing airline tickets.

In the beginning there was little cooperation between consumer groups. And there was little coordination when it came to passenger protections. Today, after a decade of working together, consumer groups come together on issues regularly to work towards a common good. This very Advisory Committee is a fruit

of our early labors which continued with appointment of a Passenger Advocate as part of DOT.

We have all learned that having a dozen organizations working together toward one goal is more powerful that working individually.

**We did get the requirement that airfare advertising include the airfares and all mandatory taxes and fees.  Plus, the advertised airfares must be able to be purchased for the advertised price.**

But optional fees were excluded from the purchasing path.  These fees included "baggage fees," "change fees," and "cancellation fees," at the time of ticket purchase. A page was required to be added to airline websites that provided a generalized list of all other ancillary fees and new fees as they were developed.

But those fees were allowed to be listed as ranges and none were individually linked to the passenger's actual flights. Plus, many passengers did not know whether they would check bags and how many. They did not know whether they would change or cancel their tickets.

However, through this page many airlines did make an effort to clarify these additional fees. Today, I believe that most passengers are aware of baggage fees, cancellation and change fees. A decade seems to be long enough to expect the public to get used to a new kind of marketing.

All of us consumer advocates and distribution oriented companies, together failed to have baggage, cancellation, and change fees presented during the airline ticket buying process. The airlines prevailed. And today we have the current system of ancillary fee disclosure.  Some love it, others hate it. There seem to be good arguments made on both sides.

**There have been some advantages to less transparency.**

Low-cost airlines grew after the implementation the new DOT rules. New breeds of airlines came into their own – such as the low-cost carriers like JetBlue and Southwest. They grew with lower fees and fewer fees. Another type of airline was the Ultra-low-cost carrier – Spirit was one followed by Allegiant and eventually by Frontier Airlines. Today additional ULCCs are sprouting such as Breeze, Avelo, and Aha!

More ULCC airlines are planned. These ULCCs offer rock-bottom airfares and charge for any extras – carry-on bags, checked-baggage, extra weight for your baggage, seat assignments, early boarding, and change fees.

The fact that network carriers were still allowed to advertise only airfares bothered consumer advocates as well as the leadership of low-cost and ultra-low-cost carriers. After suing DOT for exceeding their authority the carrier group lost and the rule became the law of the land. It was not perfect, but it was the best possible at that time. And it was a beginning.

**Will more individualized information on ancillary fees help or harm consumers?**

Is there a point where too much information is hard to digest? Are American fliers already saturated with extra fees? The answer is yes and yes.

However, this is no reason withhold publication of passenger-specific carry-on bags, checked-baggage, extra weight for your baggage, seat assignments, early boarding, and change fees. And coming rules for families sitting together for no extra fees should always be accessible within the booking paths. The more transparency the better.

As for the argument about consumers becoming confused with too many ancillary fees -- such as different baggage charges, weight limits, carry-on allowances, and differences in frequent flier exclusions – It is best if passengers have access to these costs during the buying process. For those who do not want to deal with the minutia of baggage fees, they can opt out of those until later in the buying path.

**There is another debate taking place at the same time that our discussions of transparency of ancillary fees – that is the discussions of the latest airline merger and an attempt by JetBlue and American Airlines to form what they call an alliance – clearly it is an attempt to go around the antitrust regulations and based on the system in place to allow international airline alliances to flourish.**

This new debate is taking place about the merger of ULCCs to other LCCs. JetBlue has started a hostile takeover of Spirit airlines. And Frontier has moved to add Spirit's system to their ULCC network. Both have benefits for consumers. Unlike other mergers of similar network carriers, this merger will affect the lay of the airline land for some time.

A Frontier/Spirit merger will provide a large ULCC with nationwide reach to compete with the big three network carriers and Southwest. A JetBlue/Spirit combination will provide a strong challenge to current airlines power ranking – the JetBlue/Spirit merger will allow JetBlue to grow more quickly by adding thousands more planes and pilots to their system. This merger will provide direct competition to the current four majors.

Both will have significant effects that will benefit consumers. Which one will have the biggest effect on moving the needle is yet to be seen.

**Now back to ancillary fees.**

My short answer is YES we need as much disclosure as possible. But when we began this discussion about a decade ago, we basically only had baggage fees, change and cancellations fees. There was not the proliferation of seat reservation fees and entitled frequent flier elites involved.

Planes were not traveling packed, and families could sit together, or passengers would move willingly. Today that is not the same.

Because airlines have started to charge for seat assignments, passengers have become far more entitled. There are no longer many passengers ready and willing to change seats, even the same type of seat. That makes it especially harder to shift seats for families to sit with minors.

The proposed NPRM is masterfully crafted.

- It deals with parental supervision of minors.
- It provides those who want more information before purchasing airfare all the extra fees they can consume with individualized, flight-specific prices.
- Finally, it allows passengers who want to bypath the ancillary fees and deal with airline packages that bundle fees to do that.

Travelers United fully supports this DOT NPRM.

---

Notes:

    From Docket No. DOT-OST-2017-0007

    This SNPRM proposes to require air carriers, foreign air carriers, and ticket agents to clearly disclose to consumers at all points of sale customer-specific fee information, or itinerary-specific information if a customer

Remarks by Charles Leocha, President Travelers United, ACPAC, July 28, 2022 -- 9

elects not to provide customer-specific information, for a first checked bag, a second checked bag, and one carry-on bag wherever fare and schedule information is provided to consumers. This SNPRM further proposes to require each covered carrier to provide useable, current, and accurate (but not transactable) baggage fee information to all ticket agents that receive and distribute the carrier's fare and schedule information, including Global Distribution Systems and metasearch entities. On covered carrier and ticket agent Web sites, the SNPRM would require the baggage fee information to be disclosed at the first point in a search process where a fare is listed in connection with a specific flight itinerary, adjacent to the fare. The SNPRM would permit carriers and ticket agents to allow customers to opt-out of receiving the baggage fee information when using their Web sites.

From DOT June 22, 2022

This rulemaking would amend DOT's aviation consumer protection regulations to **ensure that consumers have ancillary fee information, including "baggage fees," "change fees," "cancellation fees," and seat fees that impact families traveling with children at the time of ticket purchase.** This rulemaking would also examine whether fees for certain ancillary services should be disclosed at the first point in a search process where a fare is listed. This rulemaking implements section 5, paragraph (m)(i)(F) of Executive Order 14036 on Promoting Competition in the American Economy, which directs the Department to better protect consumers and improve competition.

Remarks by Charles Leocha, President Travelers United, ACPAC, July 28, 2022 -- 10