UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA et. al., <br><br> Plaintiffs, <br><br> v. <br><br> JETBLUE AIRWAYS CORPORATION, and SPIRIT AIRLINES, INC., <br><br> Defendants. | Case No. 1:23-cv-10511-WGY |

*AMICUS CURIAE* BRIEF OF THE ASSOCIATION OF FLIGHT ATTENDANTS-CWA, AFL-CIO IN SUPPORT OF DEFENDANTS' POSITION

The Association of Flight Attendants-CWA, AFL-CIO submits this amicus brief in support of JetBlue Airway's acquisition of Spirit Airlines ("the Transaction") because a merged JetBlue/Spirit will improve quality for consumers, be more competitive with the four major legacy carriers, and will not have the effect of reducing competition for labor. In short, the merger will create stronger incentives for airlines to provide consumer and employment benefits that profoundly affect the working conditions of flight attendants.

STATEMENT OF INTEREST

The Association of Flight Attendants-CWA, AFL-CIO ("AFA-CWA") is the labor union organized by flight attendants for flight attendants, serving as a voice for flight attendants at their workplace and in the industry. AFA-CWA represents nearly 50,000 flight attendants at 19 airlines, including 5,600 flight attendants at Spirit Airlines. The chief goal of flight attendants who become part of AFA-CWA is to negotiate better pay, benefits, working conditions and work rules at their airline, and to improve their safety on the job. AFA-CWA is a democratic labor union representing

1

flight attendants at every type of carrier, and it is the only flight attendant union that solely represents flight attendants' concerns within the AFL-CIO, the 13-million-member American labor federation. AFA-CWA also works in conjunction with other transportation-focused unions around the world through the International Transport Workers Federation (ITF).

As the AFA-CWA's history of advocacy shows[1], flight attendants' interests are aligned with consumers' interests.  That is because flight attendants are airlines' first responders, charged with the safety, health and security of the passengers.  Additionally, a flight attendant's work space is a passenger's travel space, meaning both share many of the same concerns about how industry developments will affect the flying experience.

AFA-CWA has experienced eight airline mergers in the past ten years, but this is the first it has enthusiastically supported.  AFA-CWA has witnessed several mergers where the effect of consolidation was to eliminate an important, independent competitive force in the market and worsen conditions for flight attendants and consumers alike.  AFA-CWA has not hesitated to oppose problematic mergers.  In sharp contrast to those mergers, AFA-CWA is confident this Transaction will reverse the trend of anticompetitive consolidation in the industry over the last ten years by creating a new important competitive force, independent from the four largest carriers who control more than 80% of flight traffic in the United States.

AFA-CWA encourages the Court to approve this Transaction because it will help achieve the principal goals of the organization: it will create a stronger airline competitor, which will in turn increase flight attendant pay, improve benefits, and increase safety on the job.

---

[1] *See, e.g.*, Sara Nelson, International President, Association of Flight Attendants-CWA, AFL-CIO, "Enhancing Consumer Protections and Connectivity in Air Transportation," Testimony Before the U.S. Senate Committee on Commerce, Science, and Technology (Mar. 23, 2023), available at
https://www.commerce.senate.gov/services/files/AA2B879F-4796-494A-8D29-E70B072E8272.

**ARGUMENT**

I.  **The Transaction Will Improve Quality for Consumers, Which Will Lead to Improvements for Flight Attendants.**

For all the reasons that Defendants have shown, this Transaction is likely to lead to improved service to consumers, over a network that is larger than either airline can serve alone.[2] This in turn will immediately improve working conditions for flight attendants.

Although industry regulations mandate the flight attendant-to-passenger ratio, the consumer experience can vary widely between flights based on metrics like seat pitch, entertainment, and food service options. JetBlue competes by offering better performance on these metrics for leisure travelers—for instance, it offers the best minimum standard seat pitch in the industry at 32 inches, and will replace Spirit's seat pitch at 28 inches, which is the smallest in the industry. Seat pitch, in particular, significantly contributes to the working conditions of flight attendants and safety of consumers in reducing conflict between passengers and passenger disruptions with flight attendants, as well as providing easier evacuations in the event of an emergency. Additionally, JetBlue is the only airline with a clear passenger bill of rights, which lays out protections like an automatic $15 refund when the in-flight Wi-Fi or entertainment systems are out of service.[3]

---

[2] Economic literature supports that airline mergers can create quality benefits. For instance, after the American Airlines/U.S. Airways merger, post-transaction research confirmed not only a significant reduction in price for consumers after the American Airlines/U.S. Airways merger, but also that there was a significant reduction in flight cancellations. See Somnath Das, "Effect of Merger on Market Price and Product Quality," 55 REV. IND. ORG. 339 (2019). Courts have agreed that some mergers can be procompetitive because they enable more effective competition. *See, e.g.*, *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 720 (D.C. Cir. 2001) ("a merger's primary benefit to the economy is its potential to generate efficiencies"); *St. Alphonsus Med. Ctr.–Nampa v. St. Luke's Health Sys., Ltd.*, 778 F.3d 775, 789 (9th Cir. 2015) ("a primary benefit of mergers to the economy is their potential to generate significant efficiencies and thus enhance the merged firm's ability and incentive to compete, which may result in lower prices, improved quality, enhanced service, or new products"); *ProMedica Health Sys., Inc. v. FTC*, 749 F.3d 559, 571 (6th Cir. 2014) (same).

[3] Sara Nelson, International President, Association of Flight Attendants-CWA, AFL-CIO, "Enhancing Consumer Protections and Connectivity in Air Transportation," Testimony Before the U.S. Senate Committee on Commerce, Science, and Technology (Mar. 23, 2023), *available at* https://www.commerce.senate.gov/services/files/AA2B879F-4796-494A-8D29-E70B072E8272.

After the Transaction, JetBlue will be able to compete with its improved service on more routes, ensuring flight attendants are better empowered to perform their important work. Moreover, when the combined entity competes this way—by offering more choice and more comfort on more routes—it will put pressure on the legacy airlines to offer similar minimum standards to their consumers, further improving the working conditions for flight attendants across the industry.

When airlines improve their offerings to consumers this immediately benefits flight attendants. Flight attendants serve a unique and mandatory role in the airline industry: foremost, they are safety professionals, and they secondarily serve in a customer service capacity. When airlines increase the overall quality of offerings to consumers, flight attendants are better equipped to maintain the delicate balance between safety and service. This Transaction ensures that flight attendants will be safer and better able to ensure a high-quality experience for all passengers.

II.  **The Transaction Will Create a More Effective Competitor to the Legacy Airlines, Which Will Lead to Improved Labor Conditions for Flight Attendants.**

As Defendants have shown, this Transaction is about enabling JetBlue to compete more effectively with the four largest legacy airlines. Effective competition with the legacy airlines will have an important effect on labor conditions, just like it will on consumer benefits. Legacy airlines engage in a practice known as two-tier flying, where they use subsidiary or contracted planes and crews for regional or "non-mainline" flights. This practice means that not all flight attendants flying under the mainline label are receiving the same benefits of the collective bargaining agreement ("CBA") negotiated directly with the mainline airline. These second-tier flights provide on average 45% lower compensation to the crew than mainline airline workers receive for doing the same work under the terms of their collective bargaining agreements. AFA-CWA strongly believes that regional flight attendants should receive the same pay and benefits as their mainline

4

peers and this Transaction will increase competitive pressure on the airlines not to use the legacy two-tier model.

That is because JetBlue does not use two-tier flying and plans to continue competing with a strategy of insourcing.[4] JetBlue has made it clear that its strategy post-Transaction will be to use its enhanced fleet and additional slots to compete with the network structure of mainline airlines' use of regional second-tier flights. This will make the JetBlue a more attractive airline to work for: it will have an excellent CBA, and the CBA will not be undermined by the threat that JetBlue will use regional airlines, with inferior labor conditions, as a substitute. In directly competing with the legacy airlines over an expanded network, JetBlue will be able to offer a more consumer-friendly experience with improved service metrics that will attract consumers to their business model and pressure the legacy carriers' two-tier model. In turn, JetBlue will attract more experienced flight attendants, and offer excellent service that is reliable whenever the traveling public chooses to fly with JetBlue.

### III.   JetBlue and Spirit Commitments to Improved Labor Agreements Demonstrate that the Transaction Will Not Have the Effect of Reducing Competition for Labor.

As others correctly identify, transactions which reduce competition for labor may violate the antitrust laws.[5] This Transaction, however, does not. First, the Plaintiffs in this case have not alleged such effects, because none are likely.[6] Second, there is significant affirmative evidence that the incentive of the combined JetBlue and Spirit will be to compete vigorously for specialized labor (as represented by unions like AFA-CWA) against the big four legacy carriers. This evidence

---

[4] Sara Nelson, International President, Association of Flight Attendants-CWA, AFL-CIO, "Enhancing Consumer Protections and Connectivity in Air Transportation," Testimony Before the U.S. Senate Committee on Commerce, Science, and Technology (Mar. 23, 2023), *available at* https://www.commerce.senate.gov/services/files/AA2B879F-4796-494A-8D29-E70B072E8272.
[5] As explained above, the AFA-CWA has never before enthusiastically supported a merger in the airline industry in part because prior instances of consolidation have risked anticompetitive consequences for labor.
[6] *See* Plaintiffs' Trial Brief, Dkt. 326.

undermines the argument that JetBlue and Spirit are important competitive constraints on each other today. Spirit has recently entered an industry-leading CBA with flight attendants[7], and JetBlue has committed to honoring that CBA post-transaction for Spirit flight attendants (as well as its own CBA with JetBlue flight attendants), subject only to a procedure for joint collective bargaining, which will allow flight attendants a "second bite at the apple" to negotiate even higher wages and better benefits.[8]

Moreover, these positive effects on labor conditions are not temporary: the CBAs negotiated with Spirit and JetBlue never expire, so the flight attendants can expect to benefit from this commitment to compete for labor long after the Transaction closes. The fact that Spirit and JetBlue were willing to commit to these excellent labor conditions in the long-run shows that they do not expect to face less competition for labor post-Transaction. To the contrary, JetBlue is preparing to compete more vigorously with the legacy airlines by offering best-in-class service with the support of a best-in-class labor agreement for flight attendants.

## CONCLUSION

For the foregoing reasons, AFA-CWA believes that this Transaction will undo some of the harmful effects of legacy airline consolidation in the last ten years. It will result in a stronger competitor to the big four legacy airlines, which will improve service to consumers and cause increased competition to attract specialized workers like flight attendants. The AFA-CWA urges the Court to enter judgment for the Defendants and allow the Transaction to close.

---

[7] *See* AFA-CWA.ORG Press Release, "Spirit Flight Attendants Ratify New Contract" (Apr. 13, 2023), https://www.afacwa.org/spirit_ratify_new_contract_042023.

[8] *See* Sara Nelson, International President, Association of Flight Attendants-CWA, AFL-CIO, "Enhancing Consumer Protections and Connectivity in Air Transportation," Testimony Before the U.S. Senate Committee on Commerce, Science, and Technology (Mar. 23, 2023), available at https://www.commerce.senate.gov/services/files/AA2B879F-4796-494A-8D29-E70B072E8272.

Dated: December 13, 2023

           <u>/s/Taylor M. Owings</u>
Taylor M. Owings (DC Bar No. 1031064, *pro hac vice* motion pending)
Jamie R. Lynn (MA Bar No. 667350)
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, DC 20001
Tel: (202) 639-7711
Fax: (202) 639-1182
Email: taylor.owings@bakerbotts.com
Email: jamie.lynn@bakerbotts.com

*Counsel to Amicus Curiae Association of Flight Attendants-CWA, AFL-CIO*