UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION and<br>SPIRIT AIRLINES, INC.,<br><br>*Defendants*. | Civil Action No. 1:23-cv-10511-WGY |

### JETBLUE AIRWAYS CORPORATION AND SPIRIT AIRLINES, INC.'S MOTION TO SEAL CERTAIN TRIAL EXHIBITS

Defendants JetBlue Airways Corporation ("JetBlue") and Spirit Airlines, Inc. ("Spirit") (collectively, "Defendants") respectfully move the Court under Local Rule 7.2 to enter an order directing that the admitted trial exhibits identified in Appendix A (the "Proposed Sealed Exhibits") be placed under seal and remain impounded until further order of the Court.

While Plaintiffs do not join this motion, Plaintiffs do not oppose the relief sought herein.

### PROCEDURAL BACKGROUND

Prior to trial, the parties negotiated and submitted the Joint Confidentiality Protocol for Party Documents (Dkt. No. 166, the "Joint Confidentiality Protocol"), which was approved by this Court via electronic order (Dkt. No. 187). Pursuant to the Joint Confidentiality Protocol, the parties reviewed and met and conferred about a subset of documents on the parties' exhibit lists, a subset of which were admitted and used at trial. Consistent with the Joint Confidentiality Protocol, Defendants moved this Court for temporary sealing of certain of the exhibits on Appendix A. Defendants' first motion was filed on October 10, 2023, (Dkt. No. 291; approved on October 11,

1

2023 (Dkt. No. 293)) and Defendants' second motion was filed on October 25, 2023, (Dkt. Nos. 310-312; approved on October 26, 2023 (Dkt. No. 315)).

Since the close of evidence, Defendants have reviewed all admitted trial exhibits that were not subject to the Joint Confidentiality Protocol to determine if additional confidentiality designations were required.

With this motion, Defendants now respectfully move to seal all of Defendants' confidential information contained in the admitted trial exhibits identified in Appendix A.[1]

## DISCUSSION

The First Circuit recognizes that the public's right to access trial materials is "not unfettered," and that courts "must carefully balance the competing interests that are at stake in the particular case" when a party requests sealing of judicial records. *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998). Defendants move to seal portions of documents, and in limited instances whole documents, identified in Appendix A on the basis of two "important countervailing interests, [which] can, in given instances, overwhelm the usual presumption" of the public's right of access to judicial records. *Id.*; *see also U.S. v. Kravetz*, 706 F.3d 47, 59 (1st Cir. 2013) (quoting *Siedle*, 147 F. 3d at 10). First, Defendants move to seal personal information of individuals, the disclosure of which would infringe upon the privacy rights of those individuals. Second, Defendants move to seal non-public, competitively sensitive business information, the disclosure of which would likely result in serious competitive injury to Defendants. As reflected in the enclosed Appendix A, Defendants have endeavored to narrow any confidentiality claims to the extent possible and

---

[1] There are 223 admitted trial exhibits identified in Appendix A. 36 admitted trial exhibits have been sealed or redacted pursuant to third party motions to seal and do not appear in Appendix A, and therefore are not subject to this motion. *See* Dkt. Nos. 236, 243, 246, 248, 254, 256, 260, 261, 262 (all granted on October 30, 2023 (Dkt. 330)). The remaining 640 of the 899 admitted trial exhibits have been deemed "Not Confidential" based on Defendants' review and are not listed in Appendix A, and therefore are not subject to this motion.

2

practical, including proposing targeted redactions. The narrow categories of confidential information that may apply to certain of the Proposed Sealed Exhibits that Defendants seek to seal are set forth below.

**I.    CONFIDENTIAL INFORMATION THAT IMPLICATES INDIVIDUAL PRIVACY INTERESTS**

"Privacy rights of participants and third parties are among those interests which, in appropriate cases, can limit the presumptive right of access to judicial records. Third-party privacy interests, in particular, have been referred to as a venerable common law exception to the presumption of access, and weigh heavily in a court's balancing equation." *Kravetz*, 706 F.3d at 62 (internal citations and quotations omitted). In order to protect these privacy interests, Defendants have proposed targeted redactions of documents identified in Appendix A that contain personally identifiable information or otherwise implicate individual privacy interests.[2]

In particular, Defendants move to redact personal phone numbers and certain contact information of uninvolved third-party vendors from the documents identified in Appendix A. Courts routinely accept targeted redactions of phone numbers. *See, e.g.*, *Jean-Pierre v. J&L Cable TV Servs.*, No. 18-CV-11499, 2021 WL 6773087, at *2 (D. Mass. June 28, 2021) (named plaintiffs' personal contact information remained redacted because they maintained a "legitimate privacy interest in their contact information and there [was] no compelling countervailing interest which require[d] the public disclosure of that information."); *Santiago Garcia v. Costco Wholesale Corp.*, No. 19-CV-1082, 2020 WL 3669642, at *4 (D.P.R. July 6, 2020) ("There is a recognized 'privacy interest in keeping personal facts away from the public eye,' that applies with particular force to the personal information of innocent third parties.") (internal citations and quotations omitted);

---

[2] The parties have agreed that personally identifiable information in any admitted trial exhibits should receive confidential treatment and be appropriately redacted.

*NFocus Consulting Inc. v. Uhl*, 2020 WL 6791232, at *2 (S.D. Ohio Nov. 19, 2020) (redacting personal phone numbers is "narrowly tailored and balances [the moving party's] concern of protecting the witness with the public's interest in accessing the record in this case"); *Am. Auto. Ass'n of N. Cal., Nevada & Utah v. Gen. Motors LLC*, No. 17-CV-03874, 2019 WL 1206748, at *2 (N.D. Cal. Mar. 14, 2019).

## II. CONFIDENTIAL PROPRIETARY OR COMPETITIVELY SENSITIVE BUSINESS INFORMATION[3]

Defendants also move to seal portions of documents, and in limited instances whole documents, (as identified in Appendix A) that contain confidential proprietary or competitively sensitive business information. Courts deny public access to information where "court files might . . . become a vehicle for improper purposes," including "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). This Court has recognized "a legitimate and significant interest in protecting . . . sensitive business information" to "avoid the serious competitive injury that dissemination would more than likely entail." *Glass Dimensions, Inc. v. State St. Corp.*, No. CV 10-10588, 2013 WL 6280085, at *1 (D. Mass. Dec. 3, 2013) (citing *Kravetz*, 706 F.3d at 62). Defendants, based on discussions with employees involved in the day-to-day business of JetBlue and Spirit, have identified a limited number of categories of information that are proprietary and the most competitively sensitive that, if revealed, would harm Defendants' competitive standing. Defendants move to seal the exhibits in Appendix A falling under each of these categories as described below:

---

[3] Defendants have proposed redacting substantive confidential information and testimony from third parties that appears within Defendants' documents but, as noted above, have not included in Appendix A documents produced by third parties. *See supra* n.1 (citing standard from *Kravetz*, 706 F.3d at 62).

4

### A. Future Plans and Strategy, including the Non-Public Future Combined Network Plan and Other Initiatives for Both JetBlue and Spirit

Defendants move to seal portions of documents, and in limited instances whole documents, (as detailed in Appendix A) that reflect competitively sensitive information related to Defendants' future plans and strategy. Among these competitively sensitive materials are Defendants' future network plans, which reflect where, when, and how they plan to fly their aircraft in the future. This includes JetBlue's future network plan (the "Combined Network Plan") assuming the merger between JetBlue and Spirit is approved—the trial exhibits comprising the Combined Network Plan are identified in Appendix A. Defendants have also created analyses of other, more strategic plans involving potential partnerships or mergers with other airlines or investing in new product lines or ancillary services. Those strategic plans can also include information discussing ongoing strategic initiatives that impact the airlines' immediate and future competitive decision-making. Where airlines choose to fly, when and how they will fly is the most essential part of their business, and an airline's future plans with respect to these questions are one of the most (if not *the* most) competitively sensitive information an airline maintains.

In situations like this, courts, including this one, have accepted sealing of future plans or strategy documents. *See U.S. v. IBM*, 163 F.3d 737, 739 n.3 (2d Cir. 1998) (noting in an antitrust case that "strategic planning documents [were] filed under seal"); *In re Qualcomm Litig.*, No. 17-CV-0108, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (holding that documents "should . . . be sealed" where they provide "insight into the parties' business model and strategy" because disclosure "could harm the parties in future negotiations with existing customers, third-parties, and other entities with whom they do business"); *see also U.S. v. American Airlines Group Inc., et al.*, 1:21-CV-1158-LTS (Dkt. 360, 352-2) (granting JetBlue's request to continue sealing of its confidential future financial plan post-trial decision). This is particularly true in antitrust cases

concerning mergers, where documents produced by the merging parties often discuss the future state of the combined company. *C.f. F.T.C. v. OSF Healthcare Sys.,* No. 11-CV-50344, 2012 WL 1144620, at *10-11 (N.D. Ill. Apr. 5, 2012) (sealing, among other things, defendants' documents that discuss "future opportunities," "post-affiliation strategic plans," and "discussions of future goals and strategies."); *see also United States v. Sabre Corp.*, 452 F. Supp. 3d 97, 149 (D. Del. 2020), *vacated on other grounds*, No. 20-1767, 2020 WL 4915824 (3d Cir. July 20, 2020) (discussing the various instances the Court closed the courtroom to the public "to protect competitively sensitive information, such as forward-looking business analyses, commercial agreements, and strategic plans").

In addition to the Combined Network Plan (identified in Appendix A), other documents listed in Appendix A contain information about future fleet plans and other specific initiatives, which contain non-public, highly sensitive information about the airlines' strategic intentions. These future plans and strategy documents also reflect investment of substantial time and resources by the Defendants to identify attractive strategies for growth. Thus, the information contained in these other documents is similarly proprietary and disclosure would unfairly advantage competitors against the Defendants. *See, e.g.*, *Tourangeau v. Nappi Distributors*, No. 20-CV-00012-JAW, 2023 WL 2164381, at *5 (D. Me. Feb. 22, 2023) (allowing redaction of propriety business information for documents placed in the public record to prohibit defendant's competitors from "improperly gain[ing] a competitive advantage"); *Bauer Bros. LLC v. Nike, Inc.*, No. 09-CV-500, 2012 WL 1899838, at *2 (S.D. Cal. May 24, 2012) ("[P]ublic disclosure of Nike's confidential business materials, including marketing strategies, sales and retailer data, product development plans, unused prototypes, and detailed testimony regarding the same, could result in improper use by business competitors seeking to replicate Nike's business practices and

circumvent the considerable time and resources necessary in product and marketing development."); *Morawski v. Lightstorm Ent., Inc.*, No. 11-CV-10294, 2013 WL12122289, at *2 (C.D. Cal. Jan. 14, 2013) (sealing "prospective business plans" because they contain "proprietary information regarding . . . prospective projects").

Defendants do not seek to seal documents that reflect future plans that are "stale," and have proposed targeted redactions mindful of the need for public access to portions of documents that are relevant to the issues at trial. Defendants' proposed redactions leave available to the public any portions of documents that reflect historical plans or information that no longer provide an insight into Defendants' plan for the future. Defendants also do not seek to seal any information regarding future network plans that have already been made public.

Instead, Defendants seek to seal a narrow set of highly sensitive, non-public future plans and strategic initiatives that would give Defendants' competitors a preview of how Defendants plan to make competitive decisions. The information proposed to be sealed is therefore highly relevant for competition at present, is a product of substantial time and resources by Defendants to identify attractive strategies for growth, and is highly competitively sensitive.

**B.   Pricing Strategy**

Defendants move to seal portions of documents, and in limited instances whole documents, (as detailed in Appendix A) that discuss Defendants' pricing strategies, to the extent the pricing strategies are currently relevant, or are likely to be relevant in the future. Pricing in the airline industry is technical and airlines spend considerable resources to monitor other airlines' pricing in order to remain competitive and find an edge to win customers. Allowing competitors access to detailed confidential information that reveals Defendants' pricing strategies, including, for example, how, where and when Defendants decide to match the pricing of competitors or undercut

7

pricing of competitors, would "provide competitors with insight that they could use to unfairly compete" and harm Defendants' competitive standing. *Williams*, 2021 WL 2476916, at *4, 7; *see also Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20-CV-01765, 2022 WL 3578260, at *2 (S.D. Cal. Aug. 18, 2022) (finding that "pricing models and approaches," if disclosed, could hurt competitive standing); *OSF Healthcare Sys.*, 2012 WL 1144620 at *10-11 (sealing, among other things, defendants' documents that contain "pricing information").

### C. Financial Data

Defendants move to seal portions of documents, and in limited instances whole documents, (as detailed in Appendix A) that reveal detailed and granular financial data regarding revenue, cost, and profitability of Defendants, particularly regarding merger related analysis and route specific financial information. Detailed financial data is routinely sealed in federal court proceedings. *See, e.g.*, *Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914, 2021 WL 5165010, at *3 (D. Mass. Nov. 5, 2021) (finding that "confidential financial information . . . outweigh the presumption of access"); *Cohen v. Trump*, No. 10-CV-0940, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016) ("Where parties have been able to point to concrete factual information or expert testimony that the material sought to be sealed contained confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data, courts have been willing to find that information confidential."); *Trapp v. SunTrust Bank*, No. 1:15-CV-937, 2016 WL 6833986, at *2 (M.D.N.C. Nov. 18, 2016) ("The court may seal . . . confidential and proprietary commercial information such as highly sensitive financial and business information.") (internal quotations and citations omitted).

Merger-related analysis, particularly synergies analysis and modeling and its underlying assumptions, formulas, and calculations, contain highly sensitive and confidential business

information. Specifically, these analyses often contain granular, non-public financial data, the disclosure of which could put JetBlue and Spirit at a significant disadvantage to other airlines. The need to prevent disclosure of granular financial data regarding Defendants' flights is particularly important in the airline industry, where airlines are constantly assessing where to deploy their aircraft to compete more effectively. Access to such granular confidential data that would allow a competitor to conclude that one of the Defendants has struggled to generate profits on a certain route or at a certain airport, for example, could motivate that competitor to dial up the pressure for Defendants to exit those routes or airports by adding more capacity to those routes or airports or otherwise engaging in anti-competitive behavior. Conversely, access to such granular financial data would allow a competitor to identify routes or airports where Defendants are successfully generating substantial revenue as attractive strategic targets for future growth. Such disclosure of Defendants' granular financial data regarding revenue, cost, and profitability raises the risk of significant competitive harm.

      Given the substantial harm to Defendants and significant advantage that disclosure of this data would provide to Defendants' competitors, *see Williams*, 2021 WL 2476916, at *4, Defendants do not view historical granular financial data as stale. The information that competitors can glean from route-specific historical financial data regarding relative profits, revenues, or costs remains highly relevant to competition today and in the future. This is particularly true for data that relates to the pre-COVID period. The data from 2019 and earlier reflects a period of time that does not reflect the impact of COVID and thus is much more akin to the current market conditions than those in more recent years. Defendants, however, do not propose to seal general references regarding profitability, costs, or revenue nor do they propose to

seal any historical financial data that has been previously publicly disseminated, such as data disclosed through public filings, or that would in fact no longer be competitively sensitive.

### D. Pricing and Network Planning Tools

Defendants move to seal portions of documents, and in limited instances whole documents, (as detailed in Appendix A) that reveal certain highly sensitive features of Defendants' pricing and network planning tools used to make strategic decisions. For example, certain documents identified in Appendix A contain screenshots of confidential information pulled from JetBlue's pricing and network planning tools, which JetBlue uses in the ordinary course of business to develop its network or pricing strategy. These tools, which are used for important business decisions, are "the kind of confidential and proprietary non-public business information that could harm a party's competitive standing if disclosed." *Fortson v. Garrison Prop. & Casualty Ins. Co.*, No. 19-CV-294, 2022 WL 824802, at *4 (M.D.N.C. Mar. 18, 2022) (allowing a valuation services company to redact information regarding the methodology used in valuing loss vehicles); *OSF Healthcare Sys.*, 2012 WL 1144620 at *10-11 (sealing, among other things, defendants' documents that contain "pricing information"). As a result, Defendants have proposed targeted redactions of screenshots containing such confidential information or detailed statements regarding the use of these tools. Information regarding the general purpose and output of these tools, remains unredacted.

### E. Business Contracts

Defendants move to seal portions of documents, and in limited instances whole documents, (as detailed in Appendix A) that reveal certain details of business contracts including, but not limited to, the merger agreement and its ancillary documents, divestiture contracts stemming from the merger agreement, and contracts with uninvolved third-party vendors. Importantly,

Defendants move to redact only portions of these documents which are otherwise not relevant to the issues at trial, but will protect competitively sensitive information or business interests of uninvolved non-parties.  Other courts have "found it appropriate to seal customer names or similar information, ***business contracts****,* and other internal documents**.**" *Apex.AI, Inc. v. Langmead*, No. 5:23-CV-02230-BLF, 2023 WL 4157629, at *2 (N.D. Cal. June 23, 2023) (emphasis added); *see also Virun, Inc. v. Cymbiotika, LLC*, No. 822CV00325SSSDFMX, 2022 WL 17401698, at *2 (C.D. Cal. Aug. 19, 2022) ("Courts in this Circuit commonly find compelling reason to seal business contracts to the extent necessary to preserve the confidentiality of cost and pricing information"); *OSF Healthcare Sys.*, 2012 WL 1144620 at *10-11 (sealing, among other things, defendants' documents that contain "contract terms").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court enter an order to place under seal and impound the Proposed Sealed Exhibits as identified in Appendix A until further order of the Court.

Dated: December 28, 2023          Respectfully submitted,

*/s/ Michael P. Mitchell*
Michael P. Mitchell (admitted *pro hac vice*)
Brian Hauser (admitted *pro hac vice*)
Shearman & Sterling LLP
401 9th St. NW
Suite 800
Washington, DC 20004
(202) 508-8000
michael.mitchell@shearman.com
brian.hauser@shearman.com

Jessica K. Delbaum (admitted *pro hac vice*)
Leila R. Siddiky (admitted *pro hac vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
(212) 848-4000
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (admitted *pro hac vice*)
Shearman & Sterling LLP
2601 Olive St, 17th Floor
Dallas, TX 75201
(214) 271-5777
Rachel.Zieminski@Shearman.com

Ryan A. Shores (admitted *pro hac vice*)
Daniel P. Culley (admitted *pro hac vice*)
David I Gelfand (admitted *pro hac vice*)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 974-1876
Fax: (202) 974-1999

rshores@cgsh.com
dculley@cgsh.com
dgelfand@cgsh.com

Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
ewright@cooley.com
zhafer@cooley.com

Ethan Glass (admitted *pro hac vice*)
Deepti Bansal (admitted *pro hac vice*)
Matt K. Nguyen ((admitted *pro hac vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

*Attorneys for Defendant JetBlue Airways Corporation*

/s/ Samuel N. Rudman
Samuel N. Rudman (MA BBO #698018)
Choate, Hall & Stewart LLP
Two International Place
Boston, MA  02110
Telephone:   +1 617 248 4034
srudman@choate.com

/s/ Andrew C. Finch
Andrew C. Finch (admitted *pro hac vice*)
Eyitayo St. Matthew-Daniel (admitted *pro hac vice*)
Jay Cohen (admitted *pro hac vice*)
Jared P. Nagley (admitted *pro hac vice*)
Kate Wald (admitted *pro hac vice*)
Jackson Yates (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000

13

Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com
jyates@paulweiss.com

Meredith R. Dearborn (admitted *pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
535 Mission Street, 24th Floor
San Francisco, CA 94105
Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system on December 28, 2023, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Leila R. Siddiky*
Leila R. Siddiky