# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | ) <br> ) <br> ) |
| *Plaintiff*, | ) <br> ) |
| v. | )    Civil Action No. 1:23-cv-10511-WGY <br> ) |
| JETBLUE AIRWAYS CORPORATION and <br> SPIRIT AIRLINES, INC., | ) <br> ) <br> ) |
| *Defendants*. | ) <br> ) |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs have submitted as supplemental authority a recent decision by the United States District Court for the Southern District of New York in *Federal Trade Commission v. IQVIA Holdings Inc.*, No. 23 Civ. 06188, --- F. Supp. 3d. ----, 2024 WL 81232 (S.D.N.Y. Jan. 8, 2024). Pls.' Notice of Supp. Authority, ECF No. 459 ("Notice"). For at least five reasons, the *IQVIA* decision is neither instructive nor supportive of the Government's case here.

First, *IQVIA* involved a request for a preliminary injunction by the FTC under Section 13(b) of the FTC Act. Section 13(b) authorizes a preliminary injunction to prevent a merger from closing until the merits have been fully considered in an FTC administrative proceeding. *IQVIA*, 2024 WL 81232, at *7. Thus, the court simply considered "whether the FTC has raised serious questions about the antitrust merits that warrant thorough investigation in the first instance by the FTC." *Id.* at *9. In that preliminary analysis, "the Court may not require the FTC to prove the merits of its case or to establish a violation of the Clayton Act. That inquiry is reserved for the administrative proceeding." *Id.* This is different from the standard applicable to the Government's request for a

permanent injunction here, which imposes a burden on the Government to prove a violation of Section 7 of the Clayton Act by a preponderance of the evidence. *See id.* at *9–10.

Second, *IQVIA* is a highly fact-based decision in a technology market that bears no resemblance to airlines. *Id.* at *1 (noting that DeepIntent and Lasso, a division of IQVIA, compete in "the field of programmatic advertising to health care professionals"). For one, airplanes are among the most mobile capacity imaginable and comprise the primary productive asset in the airline industry. *See, e.g.*, Defs.' Post-Trial Brief at 16–18, 24, ECF No. 450 ("Defs.' Post-Trial Br."). Further, the merging parties in *IQVIA* are very differently situated than Defendants here. For example, the *IQVIA* court credited FTC arguments that the merging parties included two of the Big 3 "preeminent players" in programmatic advertising to health care professionals, while the remaining suppliers were at the "competitive fringe" and generally declining. *IQVIA*, 2024 WL 81232, at *1, *5, *38, *44–45. By contrast, JetBlue and Spirit are number 6 and 7 in the U.S. airline industry, competition between them is limited to a small percentage of flights and passengers, and other airlines in the industry including the legacy carriers, Southwest, Alaska, Frontier, Allegiant, and upstart ULCCs can hardly be described as a declining "competitive fringe."

Third, the *IQVIA* court did not, as the Government claims, "agree[] that the industry at issue is 'dynamic and fast-moving.'" Notice at 1. To the contrary, while the court recognized the industry had experienced "many changes," it found that these changes did not "render the market so unstable that the Court cannot rely on recent revenues and current market shares to guide its analysis." *IQVIA*, 2024 WL 81232, at *44; *see id.* (noting certain "trends undermine Defendants' characterization of the market as so dynamic and volatile that relying on current market shares would be misleading"). But here the evidence reflects hundreds of entry events (the Government's expert estimated 4,701 entry events by just four ULCCs from 2017 to 2022 alone), frequent

changes in route-level shares, rivals eager to seize post-merger entry opportunities, and over a dozen nonstop overlap routes originally identified by the Government that are no longer at issue because of changes in the airlines serving those routes. *See* Defs.' Post-Trial Br. at 23–41.

This evidence renders the Government's route-level shares based on 18-month-old data unreliable as to future competition and rebuts the Government's alleged presumptions here.[1] Indeed, the most recent court to adjudicate an airline merger challenge found low route-level entry barriers as one of various reasons that the plaintiffs' alleged presumption was rebutted. *In re AMR Corp.*, 625 B.R. 215, 258 (Bankr. S.D.N.Y. 2021), *aff'd*, 2023 WL 2563897 (2d Cir. Mar. 20, 2023) ("[B]arriers to entry for existing [airline] carriers into new routes are relatively low, suggesting that the further expansion of LCCs and ULCCs remains a possibility."). Unlike airline routes, where entry barriers are low and rivals routinely enter with ease, the *IQVIA* court found that entry barriers in that market were high. *Compare IQVIA*, 2024 WL 81232, at*46–47 (crediting industry testimony that there had been no rival entry since 2020) *with* TX 696 & 697 (finding 19 entry events, 30 exits, and 713 service changes on the Government's original 51 nonstop overlap routes during a 10-month period). Therefore, its findings are inapposite.

Fourth, the Government notes the *IQVIA* court rejected a "'weakened competitor' defense" under the facts there. Notice at 2. Again, the case is distinguishable. In *IQVIA*, the court stated that one party's share decreased by about 3 percentage points from 2022 to 2023. *Id.* at *45. The

---

[1] *See, e.g.*, *United States v. Baker Hughes Inc.*, 908 F.2d 981, 984 (D.C. Cir. 1990) ("[A] variety of factors can rebut a prima facie case. These factors include, but are not limited to, the absence of significant entry barriers in the relevant market."); *United States v. Syufy Enters.*, 903 F.2d 659, 664 (9th Cir. 1990) ("[Absent] significant barriers to entry, . . . rais[ing] prices above the competitive level will lure into the market new competitors able . . . to offer their commercial goods . . . for less."); *United States v. Waste Mgmt., Inc.*, 743 F.2d 976, 983 (2d Cir. 1984) (when entry is "relatively easy," then any "impact of the merger before us would be eliminated more quickly by such competition than by litigation").

court held that this was insufficient to find the company's share declined enough to undermine the FTC's prima facie case. *Id.* Here, by contrast, the evidence shows that Spirit has experienced several years of significant losses and is facing headwinds, including Spirit-specific engine issues, which are only worsening and have already forced it to ground planes, exit or reduce service on many routes, and downgrade prior growth plans. *See* Defs.' Post-Trial Br. at 43–48. Combined with the other rebuttal evidence in this case, Spirit's declining performance is more analogous to that of Sprint in *New York v. Deutsche Telekom AG*, 439 F. Supp. 3d 179, 217–18 (S.D.N.Y. 2020).

As the Government concedes, the *IQVIA* court found that "more recent revenues are going to be more informative about what is going to happen in the future." Notice at 1 (quoting *IQVIA*, 2024 WL 81232, at *29). Accordingly, Spirit's mounting losses since early 2020 ranging from $400 million to $500 million annually and its negative 14.2% adjusted operating margin for Q3 2023 are more predictive of future competitiveness than its historical shares or the outdated anecdotes about ULCC competition the Government cited at trial. Defs.' Post-Trial Br. at 45.

Fifth and finally, the *IQVIA* court's findings about the efficiencies asserted there are distinguishable from the nationwide competitive benefits that will result from the JetBlue/Spirit merger. The Government itself has touted JetBlue as a "maverick" that offers a "unique" blend of low fares and high quality, which enables it "to compete effectively against the legacy airlines in ways other LCCs and ULCCs could not" to the benefit of consumers nationwide. TX 912 ¶ 27 (DOJ's Proposed Findings of Fact in the Northeast Alliance case); TX 668; *United States v. Am. Airlines Grp.*, --- F. Supp. 3d. ----, 2023 WL 3560430, at *34, n.81 (D. Mass. May 19, 2023). Indeed, Defendants' expert Dr. Hill calculated benefits of hundreds of millions of dollars in savings that will be realized by the public after the merger. Tr. 11/27/23 (Hill) 88:24-89:14.

For the foregoing reasons, the *IQVIA* decision is distinguishable from the evidence elicited at trial, which conclusively demonstrates that the proposed merger between JetBlue and Spirit will greatly enhance airline competition – not substantially lessen it.

Dated: January 12, 2024                    Respectfully submitted,

/s/ Elizabeth M. Wright
Zachary R. Hafer (MA BBO #569389)
Elizabeth M. Wright (MA BBO #569387)
Zachary Sisko (MA BBO #705883)
Cooley LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
Tel: 617-937-2300
zhafer@cooley.com
ewright@cooley.com
zsisko@cooley.com

Ethan Glass (*Pro Hac Vice*)
Deepti Bansal (*Pro Hac Vice*)
Matt K. Nguyen (*Pro Hac Vice*)
Cooley LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 2004-2400
Tel: 202-842-7800
Fax: 202-842-7899
eglass@cooley.com
dbansal@cooley.com
mnguyen@cooley.com

Ryan A. Shores (*Pro Hac Vice*)
David I. Gelfand (*Pro Hac Vice*)
Daniel P. Culley (*Pro Hac Vice*)
Cleary Gottlieb Steen & Hamilton, LLP 2112
Pennsylvania Avenue, NW
Washington, DC 20037
Tel: 202-974-1500
rshores@cgsh.com
dgelfand@cgsh.com
dculley@cgsh.com

Michael Mitchell (*Pro Hac Vice*)
Brian Hauser (*Pro Hac Vice*)
Shearman & Sterling LLP

401 9th Street, N.W., Suite 800
Washington, DC 20004
Tel: 202-508-8005
Fax: 202-661-7480
michael.mitchell@shearman.com
brian.hauser@shearman.com

Jessica K. Delbaum (*Pro Hac Vice*)
Leila Siddiky (*Pro Hac Vice*)
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022-6069 Tel: 212-848-4000
Fax: 212-848-7179
jessica.delbaum@shearman.com
leila.siddiky@shearman.com

Rachel Mossman Zieminski (*Pro Hac Vice*)
Shearman & Sterling LLP
2601 Olive Street, 17th Floor
Dallas, TX 75201
Tel: 214-271-5385
rachel.zieminski@shearman.com

*Attorneys for Defendant JetBlue Airways Corporation*

Jay Cohen (*Pro Hac Vice*)
Andrew C. Finch (*Pro Hac Vice*)
Eyitayo St. Matthew-Daniel (*Pro Hac Vice*)
Jared P. Nagley (*Pro Hac Vice*)
Kate Wald (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: 212-373-3000
Fax: 212-757-3990
afinch@paulweiss.com
tstmatthewdaniel@paulweiss.com
jcohen@paulweiss.com
jnagley@paulweiss.com
kwald@paulweiss.com

Meredith R. Dearborn (*Pro Hac Vice*)
Paul, Weiss, Rifkind, Wharton & Garrison LLP 535 Mission Street, 24th Floor
San Francisco, CA 94105

Tel: 628-432-5100
Fax: 628-232-3101
mdearborn@paulweiss.com

*Attorneys for Defendant Spirit Airlines, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Defendants' Response to Plaintiffs' Notice of Supplemental Authority, which was filed with the Court through the ECF system on January 12, 2024, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Elizabeth M. Wright*
Elizabeth M. Wright
